# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CIF LICENSING, LLC, d/b/a       )
GE LICENSING                   )
                                      )
         Plaintiff,            )
                                      )
        v.                     )      C.A. No. 07-170 (JJF)
                                      )
AGERE SYSTEMS INC.,          )
                                      )
         Defendant.         )

## PLAINTIFF CIF LICENSING, LLC, d/b/a GE LICENSING'S
## REPLY TO DEFENDANT AGERE SYSTEMS INC.'S RESPONSE TO PLAINTIFF'S
## MOTION TO COMPEL PRODUCTION AND RESPONSES

1.   Defendant Agere Systems Inc.'s ("Agere") opposition relies on two propositions: (1)

Plaintiff CIF Licensing LLC's ("GE Licensing") Third Sets of Interrogatories and Production

Requests ("third requests" or "third discovery requests") are "new" and not supplemental to its

earlier requests, and (2) the requests are untimely under the Scheduling Order. (D.I. 32.) Based

on these propositions, Agere asserts that it need not even respond to the requests. Agere's first

point is irrelevant, and the second is plainly incorrect. Whether the third requests are new and

different from GE Licensing's prior requests for damages-related documents or simply more

detailed requests for the same information is a red herring. The requested documents are

indisputably relevant to and within the proper scope of damages discovery, and as such Agere

has no basis to object to their production. Nor are Agere's vague and undocumented claims of

burden persuasive.[1] Agere concedes that there is overlap between GE Licensing's earlier

---

[1] Agere's claims of alleged burden in responding to GE Licensing's third discovery requests fall
flat. GE Licensing's requests for information are specific, tailored and easily understood. Agere
produces documents entirely in native format, simply copying databases onto DVDs and

requests for damage-related documents and the third requests, state that it has not investigated and does not know to what extent its present production of damage-related documents already incorporate GE Licensing's specific third requests yet assert that responding to the requests would impose an unreasonable burden. To the extent that Agere did not previously collect and produce the documents requested in the third requests, it should have done so, and therefore cannot now protest that a second round of collection and review is unduly burdensome. Moreover, the third requests are specific and targeted, and as such should not impose any significant additional burden that would outweigh their obvious relevance and probative value to the case.

2.    Further, contrary to Agere's position, GE Licensing's Third Sets of Interrogatories and Production Requests were timely and appropriate under the Scheduling Order. The core issue is that the parties interpret Section 3(a) of the Scheduling Order differently. Agere takes the position that all discovery requests should have been issued at least 30 days prior to January 31, 2008, because the Scheduling Order states that "document production" is to be "commenced so as to be completed by January 31, 2008" (moved to February 8 by agreement of the parties). (D.I. 32 ¶ 3(a).) Agere provides no reasoning for why this language would bar further interrogatories.[2] Under GE Licensing's reading, however, discovery is an ongoing process that continues through the close of fact discovery, June 1. GE Licensing understood the January 31 date to be a target for the initial production of documents and contention interrogatory responses,

---

assigning each DVD a single Bates number. Copying files to a DVD is a simple process and one can hardly fathom a less-burdensome approach to document production. Although this production format has caused GE Licensing considerable additional effort and expense to process and review, GE has accepted this format in order to keep the discovery process moving forward without further delay.
[2] Contrary to Agere's position in its Response, this week Agere represented that it is refusing to provide certain witnesses based on GE Licensing's "ample opportunity to explore legal contentions through interrogatories…". Agere Response to GE Licensing Notice of 30(b)(6) Deposition (Gen'l Obj. 3) (Exhibit A).

so that the parties could assess the adequacy of written discovery responses and plan for depositions well before the final cutoff of June 1. The Scheduling Order states that "all fact discovery, including depositions, shall be completed by June 1, 2008," (D.I. 32 ¶ 3(a)), implying that fact discovery other than depositions, such as document production and responses to interrogatories, may take place up until June 1st.

3.    Parties often engage in multiple rounds of discovery—each successive round informed and narrowed by previous ones. In particular, it is quite common in patent cases for damages discovery to occur later in the discovery process as plaintiffs become more familiar with the scope of the defendants' infringing activities and products. Agere's unreasonable delay in producing the most basic information about its products exacerbated this timing issue in this case. GE Licensing's third set of discovery requests were served with ample time—almost four (4) months—remaining in fact discovery, well before any depositions were scheduled; accordingly, prompt production of the requested documents will not require retaking or rescheduling of any depositions or any change in the June 1 cutoff date.

4.    Despite its position that GE Licensing's third sets of discovery requests are untimely, Agere provided responses to certain of these requests for which it wanted *quid pro quo* discovery from GE Licensing (regardless of timing). Agere's willingness and ability to provide discovery responses relevant to its exhaustion defense evince the ongoing nature of fact discovery and Agere's penchant for taking inconsistent positions. Apparently, Agere believes that discovery has ended with respect to GE Licensing's case, but can continue for Agere's defenses, simply because it chose to raise them very late in the game. .

5.    Finally, even if the Scheduling Order were intended to require service of all written discovery so as to be completed by January 31, the Court should amend the Order to require

3

Agere to respond to GE Licensing's Third Sets of Interrogatories and Requests for Production. GE Licensing's third sets of requests were filed because GE Licensing became increasingly concerned that Agere's document production was tardy and incomplete. GE Licensing's concern has since been vindicated, and will be the subject of a motion to compel to be filed this week.[3] GE Licensing's initial document requests were filed in August 2007. Agere waited until February 8 to provide the bulk of its production (which is still far from complete).[4] Allowing Agere to delay its production for five months to the eve of the deadline and then precluding any further follow-up requests would reward delay rather than encouraging prompt and efficient discovery practice. GE Licensing's requests are clearly relevant and within the scope of discovery and would impose no undue burden on Agere. Accordingly, Agere should be ordered to respond to them immediately, so that the case can stay on track for close of fact discovery on June 1.

---

[3] Agere's Response is less than candid when discussing Agere's production. Agere misleadingly informs the Court that it has fulfilled its production obligations, stating in its Response that "Agere has produced all non-privileged documents, subject to its objections, that are responsive to GE's timely-served requests." (Agere Resp. ¶ 1.) In fact, GE Licensing had, over a week prior to Agere's filing of its Response, provided Agere with an extensive, 17-page letter detailing the missing documents, incomplete files and entire product lines that were not included in Agere's production. *See* Amanda Koenig's letters to Ian Saffer dated March 19, 2008 and March 20, 2008 (Exhibits B and C, respectively). Since February 8, GE Licensing has been attempting to engage Agere in discussions regarding these very specific but significant deficiencies, to no avail. (*Id.*) Agere's discovery responses to GE Licensing's discovery requests are both incomplete and in violation of the Court's January 22, 2008 Order (Exhibit D). In addition, it has now been three weeks since Agere received GE Licensing's notice of 30(b)(6) deposition, and Agere has failed to provide any witness names or available dates. Because Agere has never responded to any of GE Licensing's attempts to meet and confer, GE Licensing will be filing yet another motion to compel.
[4] Contrary to Agere's statement that it produced 100,000 pages on this date (Agere Resp. ¶ 3), Agere actually produced over 108,000 documents, or over 500,000 pages.

**CONCLUSION**

As stated in GE Licensing's Motion to Compel, efficient and equitable resolution of this situation calls for compelling Agere to respond to GE Licensing's third sets of discovery requests. Therefore, in view of the obvious relevance of the requested discovery and the undue prejudice to GE Licensing from Agere's failure to respond, and for the other foregoing reasons, GE Licensing respectfully requests the Court to order Agere to provide (i) complete and responsive answers to Interrogatory No. 44 and (ii) the documents requested in Document Request Nos. 46-61, to the extent these have not already been produced.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Joel M. Freed
Brian E. Ferguson
Michael W. Connelly
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005-3096
(202) 756-8000

Edwin H. Wheeler
McDermott Will & Emery LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
(650) 813-5000

Dated: April 4, 2008
858716

By: _____
    Richard L. Horwitz (#2246)
    Philip A. Rovner (#3215)
    David E. Moore (#3983)
    Hercules Plaza
    P. O. Box 951
    Wilmington, Delaware 19899
    (302) 984-6000
    rhorwitz@potteranderson.com
    provner@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Plaintiff*
*CIF Licensing, LLC, d/b/a*
*GE Licensing*

5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on April 4, 2008, the within document was filed with the Clerk of the Court using CM/ECF; that the document was served on the following party as indicated; and that the document is available for viewing and downloading from CM/ECF.

### BY HAND DELIVERY AND E-MAIL

Josy W. Ingersoll, Esq.
John W. Shaw, Esq.
Chad S. C. Stover, Esq.
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

I hereby certify that on April 4, 2008 I have sent by E-mail the foregoing document to the following non-registered participants:

David E. Sipiora, Esq.
Ian L. Saffer, Esq.
Chad E. King, Esq.
Ryan D. Phillips, Esq.
Townsend and Townsend and Crew LLP
1200 17th Street, Suite 2700
Denver, CO 80202
desipiora@townsend.com
ilsaffer@townsend.com
ceking@townsend.com
rdphillips@townsend.com

Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CIF LICENSING, LLC, d/b/a<br>GE LICENSING, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 07-170 (JJF) |
| v. | ) | |
| | ) | |
| AGERE SYSTEMS INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OBJECTIONS OF DEFENDANT AGERE SYSTEMS INC. TO CIF LICENSING, LLC,
D/B/A GE LICENSING NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P.
30(B)(6) OF AGERE SYSTEMS INC.**

Pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, Defendant Agere

Systems Inc. ("Agere") hereby objects to Plaintiff CIF Licensing, LLC, d/b/a GE Licensing's

("GE") Notice of Deposition Pursuant to Fed. Civ. P. 30(b)(6) of Agere Systems, Inc.

("Notice"), stating as follows:

## <u>GENERAL OBJECTIONS</u>

1.     Agere objects to the Notice to the extent it seeks to impose upon Agere any duties

or obligations which exceed or are inconsistent with those imposed by the Federal Rules of

Civil Procedure and the Local Rules for the District of Delaware.

2.     Agere objects to the Notice on the grounds that it seeks testimony protected by the

attorney-client privilege, the attorney work product doctrine, or any other applicable legal

privilege. Agere will not permit witnesses to testify regarding privileged information. Pursuant

to the terms of the Protective Order in this case, the inadvertent disclosure of any privileged

information shall not constitute a waiver of any applicable privilege.

3.    Agere objects to the Notice on the grounds that it is premature and unduly burdensome because it would require Agere to testify as to legal conclusions which are more appropriately explored through interrogatories and expert discovery. Agere will make a reasonable and good faith effort to produce one or more witnesses to testify in response to the Notice with information of which Agere presently is aware. However, as Agere's representatives will be fact witnesses, they will not provide testimony on or regarding legal conclusions. Discovery in this matter is ongoing, and GE has ample opportunity to explore legal contentions through interrogatories and the depositions of Agere's testifying expert witnesses.

4.    Agere objects to the Notice on the grounds that it seeks information that is outside of the scope of Agere's knowledge and exists within the knowledge of third parties.

5.    Agere objects to the Notice to the extent it seeks non-relevant business information that is sensitive, proprietary and/or confidential to third parties. Agere will only testify to third parties' confidential information if permitted by the terms of Agere's confidentiality agreements with third parties.

6.    Agere objects to the Notice on the grounds that the persons knowledgeable regarding the specified topics are not available at the time and location specified in the Notice. Agere will meet and confer with GE to schedule an appropriate the time and location for the deposition.

7.    Agere continues to object to GE's definition of the term "Agere Product(s)" as overly broad and unduly burdensome. Agere will provide a representative knowledgeable regarding Agere's modem products, and will in good faith attempt to locate a representative knowledgeable about Agere products identified with more particularity. However, Agere

maintains its objection that GE's definition of Agere Products and its proposed inquiry into broad categories of Agere products based on compliance with standards and GE's listing of over 100 products are not within the scope of a Rule 30(b)(6) deposition and thus unduly burdensome and overly broad.

8.    Agere objects to the Notice to the extent any of the topics within the Notice seek information related to ITU-T recommendations or any other industry standard or recommendation. Such standards or recommendations are not relevant to this action.

9.    Agere objects to the Notice in that it seeks information that can more readily and reliably be obtained through documents produced by Agere. While Agere will produce one or more witnesses on the topics identified below, in many instances Agere witnesses will not have testimony beyond information in any documents produced during discovery and documents presented during the deposition.

## OBJECTIONS TO DEPOSITION TOPICS

1.    Agere incorporates herein by reference all General Objections set forth above. Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic, Agere will produce one or more witnesses to respond to questions on this topic.

2.    Agere incorporates herein by reference all General Objections set forth above. Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic, Agere will produce one or more witnesses to respond to questions on this topic.

3.    Agere incorporates herein by reference all General Objections set forth above. Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic, Agere will produce one or more witnesses to respond to questions on this topic.

4.     Agere incorporates herein by reference all General Objections set forth above.
Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic,
Agere will produce one or more witnesses to respond to questions on this topic.

5.     Agere incorporates herein by reference all General Objections set forth above, and
particularly General Objection No. 8. Subject to and notwithstanding these objections, to the
extent Agere has knowledge of this topic, Agere will produce one or more witnesses to respond
to questions on this topic, but not with respect to identification of code required for compliance
with ITU-T recommendations v.34 and v.92.

6.     Agere incorporates herein by reference all General Objections set forth above.
Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic,
Agere will produce one or more witnesses to respond to questions on this topic.

7.     Agere incorporates herein by reference all General Objections set forth above.
Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic,
Agere will produce one or more witnesses to respond to questions on this topic.

8.     Agere incorporates herein by reference all General Objections set forth above, and
particularly General Objection No. 8. Subject to and notwithstanding these objections, to the
extent Agere has knowledge of this topic, Agere will produce one or more witnesses to respond
to questions on this topic, but not with respect to testing of compliance with ITU-T
recommendations v.34 and v.92 and the testing of the code referenced in GE Interrogatory No. 5.

9.     Agere incorporates herein by reference all General Objections set forth above.
Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic,
Agere will produce one or more witnesses to respond to questions on this topic.

10.    Agere incorporates herein by reference all General Objections set forth above.
Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic,
Agere will produce one or more witnesses to respond to questions on this topic.

11.    Agere incorporates herein by reference all General Objections set forth above.
Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic,
Agere will produce one or more witnesses to respond to questions on this topic.

12.    Agere reiterates its General Objections, and particularly General Objection No. 2.

13.    Agere reiterates its General Objections, and particularly General Objection No. 3.

14.    Agere reiterates its General Objections, and particularly General Objection No. 8.

15.    Agere reiterates its General Objections, and particularly General Objection No. 8.

16.    Agere reiterates its General Objections, and particularly General Objection No. 8.

17.    Agere reiterates its General Objections, and particularly General Objection No. 8.

18.    Agere incorporates herein by reference all General Objections set forth above.
Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic,
Agere will produce one or more witnesses to respond to questions on this topic.

19.    Agere incorporates herein by reference all General Objections set forth above.
Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic,
Agere will produce one or more witnesses to respond to questions on this topic.

20.    Agere incorporates herein by reference all General Objections set forth above.
Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic,
Agere will produce one or more witnesses to respond to questions on this topic.

21.    Agere incorporates herein by reference all General Objections set forth above. Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic, Agere will produce one or more witnesses to respond to questions on this topic.

22.    Agere incorporates herein by reference all General Objections set forth above. Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic, Agere will produce one or more witnesses to respond to questions on this topic.

23.    Agere incorporates herein by reference all General Objections set forth above, and further objects to this topic as irrelevant.

24.    Agere incorporates herein by reference all General Objections set forth above, and further objects to this topic as irrelevant.

25.    Agere incorporates herein by reference all General Objections set forth above. Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic, Agere will produce one or more witnesses to respond to questions on this topic.

26.    Agere incorporates herein by reference all General Objections set forth above. Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic, Agere will produce one or more witnesses to respond to questions on this topic.

27.    Agere incorporates herein by reference all General Objections set forth above. Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic, Agere will produce one or more witnesses to respond to questions on this topic.

28.    Agere incorporates herein by reference all General Objections set forth above. Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic, Agere will produce one or more witnesses to respond to questions on this topic.

29.     Agere incorporates herein by reference all General Objections set forth above. Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic, Agere will produce one or more witnesses to respond to questions on this topic.

30.     Agere incorporates herein by reference all General Objections set forth above. Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic, Agere will produce one or more witnesses to respond to questions on this topic.

31.     Agere incorporates herein by reference all General Objections set forth above, and further objects to this topic as unduly burdensome and overly broad.  Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic, Agere will produce one or more witnesses to respond to questions on this topic.

32.     Agere incorporates herein by reference all General Objections set forth above. Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic, Agere will produce one or more witnesses to respond to questions on this topic.

33.     Agere does not understand the scope of this topic, and requests clarification regarding the topic and the information sought under the topic.

34.     Agere incorporates herein by reference all General Objections set forth above. Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic, Agere will produce one or more witnesses to respond to questions on this topic.

35.     Agere incorporates herein by reference all General Objections set forth above. Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic, Agere will produce one or more witnesses to respond to questions on this topic.

36.     Agere incorporates herein by reference all General Objections set forth above. Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic, Agere will produce one or more witnesses to respond to questions on this topic.

37.     Agere incorporates herein by reference all General Objections set forth above. Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic, Agere will produce one or more witnesses to respond to questions on this topic.

38.     Agere incorporates herein by reference all General Objections set forth above, and particularly General Objection No. 8. Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic, Agere will produce one or more witnesses to respond to questions on this topic.

39.     Agere incorporates herein by reference all General Objections set forth above, and particularly General Objection No. 8. Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic, Agere will produce one or more witnesses to respond to questions on this topic.

40.     Agere incorporates herein by reference all General Objections set forth above, and particularly General Objection No. 8. Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic, Agere will produce one or more witnesses to respond to questions on this topic.

41.     Agere incorporates herein by reference all General Objections set forth above. Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic, Agere will produce one or more witnesses to respond to questions on this topic.

42.     Agere incorporates herein by reference all General Objections set forth above, and particularly General Objection No. 3. Subject to and notwithstanding these objections, to the

extent Agere has knowledge of this topic, Agere will produce one or more witnesses to respond to questions on this topic.

43.    Agere incorporates herein by reference all General Objections set forth above, and particularly General Objection No. 3.  Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic, Agere will produce one or more witnesses to respond to questions on this topic.

44.    Agere incorporates herein by reference all General Objections set forth above, and particularly General Objection No. 3.

45.    Agere incorporates herein by reference all General Objections set forth above, and particularly General Objection No. 3.

46.    Agere incorporates herein by reference all General Objections set forth above, and particularly General Objection No. 3.

47.    Agere incorporates herein by reference all General Objections set forth above. Subject to and notwithstanding these objections, to the extent Agere has knowledge of this topic, Agere will produce one or more witnesses to respond to questions on this topic.

| Dated: April 1, 2008 | TOWNSEND AND TOWNSEND AND CREW LLP |
|---|---|
| | _(signature)_<br><br>David F. Sipiora<br>Ian L. Saffer<br>Chad E. King<br>1200 17th Street, Suite 2700<br>Denver, Colorado 80202<br>Telephone: (303) 571-4000<br>Facsimile: (303) 571-4321<br>Email: desipiora@townsend.com<br>Email: ilsaffer@townsend.com<br>Email: ceking@townsend.com |
| | YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>Josy W. Ingersoll<br>John Shaw<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>Wilmington, DE 19899-0391<br>Telephone: 302-571-6600<br>Facsimile: 302-571-1253<br>Email: jingersoll@ycst.com<br>Email: jshaw@ycst.com |
| | **ATTORNEYS FOR AGERE SYSTEMS INC.** |

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of April 2008, I served the foregoing **OBJECTIONS OF DEFENDANT AGERE SYSTEMS INC. TO CIF LICENSING, LLC, D/B/A GE LICENSING NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(B)(6) OF AGERE SYSTEMS INC.** on the following via e-mail and U.S. Mail, first class, postage prepaid:

| | |
|---|---|
| Richard L. Horowitz<br>Philip A. Rovner<br>David E. Moore<br>Potter Anderson & Corroon LLP<br>Hercules Plaza, 6th Floor<br>1313 North Market Street<br>Wilmington, DE  19801<br>Tel:  302-984-6000<br>Fax: 302-658-1192<br>rhorowitz@potteranderson.com<br>provner@potteranderson.com<br>dmoore@potteranderson.com | Joel M. Freed<br>Brian E. Ferguson<br>D. Sean Trainor<br>McDermott Will & Emery LLP<br>600 13th Street, N.W.<br>Washington, DC  20005-3096<br>jfreed@mwe.com<br>bferguson@mwe.com<br>dtrainor@mwe.com<br>Tel:  202-756-8327<br>Fax:  202-756-8087 |
| Edwin H. Wheeler<br>McDermott Will & Emery LLP<br>3150 Porter Drive<br>Palo Alto, CA  94304-1212<br>Tel:  650-813-5000<br>Fax: 650-813-5100<br>mwheeler@mwe.com | |

*[signature]*

61318922 v1

- 11 -

# EXHIBIT B

# McDermott
# Will & Emery

Boston Brussels Chicago Düsseldorf Houston London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Amanda E. Koenig
Associate
akoenig@mwe.com
202.756.8075

March 19, 2008

VIA E-MAIL

Ian L. Saffer
Townsend and Townsend and Crew LLP
1200 Seventeenth Street
Suite 2700
Denver, CO 80202

Re:     *CIF Licensing, LLC, d/b/a GE Licensing v. Agere Systems Inc.,* **C.A. No. 07-170**

Dear Mr. Saffer:

I write with respect to various deficiencies in Agere's responses to GE Licensing's discovery requests, which are not exclusive to documents subject to GE Licensing's pending motion to compel.  For clarity, GE Licensing's concerns are set forth in numbered paragraphs as follows:

1.  *GE Licensing Interrogatory No. 1*:  Interrogatory No. 1 seeks, *inter alia*, the date each Agere Product "was first sold, offered for sale, or marketed."  In its latest supplemental response to GE Licensing's interrogatories, dated February 8, 2008, Agere responded to Interrogatory No. 1 primarily by incorporating Exhibit 1 by reference.

    Exhibit 1 does not include all "Agere Products" as required under the Court's January 22, 2008 stipulated order.  In that order, Agere was to, at least "complete production of documents for all products, whether or not enumerated, within GE Licensing's revised definition of 'Agere Products' set out in the Motion To Compel that were sold or offered for sale after March 23, 2001."[1]  The order further required Agere to supplement its interrogatory answers.  However, Agere did not include several products in Exhibit 1 that are or were, according to Agere's own documents, sold or offered for sale after March 23, 2001 and which are compliant with at least the V.34 recommendation.  These products include (given the form of Agere's production, references to documents below use their names or titles where possible):

    a.  MDC1.5 Soft Modem.  If the MDC1.5 Soft Modem is the same product as the SV92A3, please confirm.

---

[1]  The definition for "Agere Products" in that motion was "any analog modem compliant with ITU-T recommendation V.34, V.90, V.92 . . . ."

Ian L. Saffer
March 19, 2008
Page 2

    b.  Montblanc Family.  Publicly available documents indicate that the Montblanc family of modems includes the SV92P, SV92PL and SV92P2 modems.  However, Exhibit 1 states that the "Common Name" of these products are "Soft Mars" and "Scorpio2." We have also seen documents in Agere's production which state that the Montblanc design is a "Mars3/Perseus" design.  We have also seen a "Marketing Requirements Documents" which describes the Montblanc design as the "Mars/Perseus Reference Design."  Please confirm if Exhibit 1 is correct and which products constitute the Montblanc family.

    c.  Olympia Family.  We have seen documents which disclose an "Olympia USB Modem."  Other documents refer to this as the "SV92U2 USB 2.0 Soft Modem Olympia AM1 Reference Design."  However, we note that the "common name" for the SV92U2 on Exhibit 1 is listed as "U2."  We also note that Agere's documents show the "Olympia SV92U2+1040" as shipping prior to January 1, 2007.  Please confirm whether Exhibit 1 is correct and to which products the Olympia and U2 names apply.

    d.  Maui.  Agere's presentations to customers in 2001 indicate that the "Maui" modem product was to be available in 4Q01.  The Maui product is described as "Maui+APL43+CSP1035" or "Maui+SV9xM+CSP1035."

    e.  Mars5.  Agere's presentations to customers in 2001 indicate that the "Mars5" modem product was to be available in 4Q01 and was described as "Mars5/CSP1035."

    f.  Pinball/Dorado.  We have seen documents which disclose a "Pinball/Dorado PCI Modem."  We have also seen documents which show that this product was offered for sale to at least one customer.  We also note that Agere's documents show the "Pinball SV92PP+1040" as shipping prior to January 1, 2007.

    g.  Dorado.  We have seen documents which disclose a "Dorado" modem.  We have also seen documents which show that this product was offered for sale to at least one customer.

    h.  Hidalgo.  We have seen documents which disclose a "Hidalgo" described as an "Audio Modem Combo" and shipping prior to January 1, 2007.

    i.  Concorde.  We have seen documents which disclose a "Concorde PCIe Modem" which is also described as a "V.92 PCI-E Modem."

    j.  SVx.  We have seen documents which disclose a "SVx" modem which is described as a "soft embedded interface device."

    k.  Sparta.  We have seen documents which disclose a "Sparta" modem described as a "V.92 MoM Design."

Ian L. Saffer
March 19, 2008
Page 3

l.   PC-ROMA.  We have seen documents which disclose a "PC-ROMA" modem
     described as a "Complete MCM."

m.   CV-ROMA.  We have seen documents which disclose a "CV-ROMA" modem
     described as a "Complete MCM" and a "Complete Modem MCM (Embedded)."

n.   Delphi.  We have seen documents which disclose a "Delphi MDC Modem."  We have
     also seen documents which show that this product was offered for sale to at least one
     customer.

o.   Athens.  We have seen documents which disclose an "Athens MDC Modem."

p.   Cricket.  We have seen documents which disclose a "Cricket" design described as
     "Venus/Levana International Compact Flash Reference Design."

q.   Haleakala.  We have seen documents which disclose a "Haleakala" design described
     as "Modem Expansion Card Dragnet2+Perseus."

r.   Parkway.  We have seen documents which disclose a "Parkway" design described as
     "APL43/Levana International PCMCIA Reference Design."

s.   Midas.  We have seen documents which disclose a "Midas" or "Midas_AM1" design
     described as "DP3 or OCFP/CSP1040 (Polaris) Fax/Modem Reference Design."

t.   Condor.  We have seen documents which disclose a "Condor" or "Condor AM1.0"
     design described as "SV92P/Levana International SoftModem Reference Design."

u.   Mt. McKinley.  We have seen documents which disclose a "Mt. McKinley" or "Mt.
     McKinley AM1.0" design described as "SV92P/Perseus International Reference
     Design."

v.   DP3FX.  We have seen documents which disclose a "DP3FX" design described as
     "DP3 or OCFP/CSP1040 (Polaris) Fax/Modem Reference Design."

w.   Fiji.  We have seen documents which disclose a "Fiji" or "Fiji AM1" or "Fiji Flex
     AM1" design described as "Dragnet2/CSP1043 (Mercury) Fax/Modem Reference
     Design."

x.   Peregrine.  We have seen documents which disclose a "Peregrine" design described
     as "International Softmodem PCI Reference Design."

y.   Bacchus.  We have seen documents which disclose a "Bacchus" design described as
     "Dragnet2/CSP1043 (Mercury) Fax/Modem Reference Design."

Ian L. Saffer
March 19, 2008
Page 4

    z.  Yogi.  We have seen documents which disclose a "Yogi" design described as "Yogi (Mercury International) – ASP Product."

    aa. Matterhorn.  We have seen documents which disclose a "Matterhorn" design described as a "reference design" for the "PCISoft (SV92P) Design Pack."

    bb. Samurai.   We have seen documents which disclose a "Samurai" design described as an available product based on the "Apollo 3" or APL43 and CSP1034.

    cc. Apollo 3.  While Exhibit 1 includes Apollo 1, 2 and 4, Apollo 3 is absent from this list.  "Apollo 3" or "Apollo3" is referenced in numerous Agere documents.  This includes public documents which refer to the "Apollo 3 (APL43) design."  We note, however, that Exhibit 1 lists the common name for the APL43 as "Dragnet2."  We have also seen a May 25, 2001 Marketing Account Review which shows planned sales of "Apollo3" to IBM for use in Thinkpad laptops starting September, 2001.  Please confirm whether Exhibit 1 is correct and to which products the "Apollo 3" name applies.

    dd. Cobalt.  We have seen documents which disclose a "Cobalt" design described as "Modem Expansion Card Apollo3+Mercury."

    ee. Siena/Nomad.  We have seen documents which disclose a "Sienna/Nomad" reference design.

    ff. Siena+.  We have seen documents which disclose a "Sienna+" reference design.

    gg. USB 2.0 Soft Modem.  Certain Agere public documents offer for sale a product known as "USB 2.0 Soft Modem."

    hh. L56xAF.  According to public documents, the L56xAF modem was offered for sale after March 23, 2001.

    ii. DSP1642C, DSP1643, DSP1644, DSP1645, DSP1646.  It is our understanding from public documents that these products were sold after March 23, 2001 and, therefore, should be included in the production and in response to GE Licensing's interrogatories.  For example, the DSP1643 is a component of the L56xAF, which is included in Exhibit 1.

    jj. DP2LV34D.  This product is included in Agere's July 2006 Client Solutions Line Card.

    kk. DP2LV34X.  This product is included in Agere's July 2006 Client Solutions Line Card.

Ian L. Saffer
March 19, 2008
Page 5

      ll. DP2S. The "Soft DP2 Test Chip" is referred to as the "DP2S" in Exhibit 1 and listed as an unreleased product. However, the DP2S is listed as an available product in at least Agere's June 2004 Client Solutions Line Card.

      mm. DP3S. Agere's product roadmaps indicate that the DP3S and DP3 are different products and were both shipping by at least January 1, 2007. The DP3S is described as "synthesizable IP cores for SOC integration."

      nn. We note that there is only one "Test Chip" listed in Exhibit 1. Please confirm if that is the only such "Test Chip" made by Agere.

      oo. DSP1648C. The DSP1648C is listed as an available product in at least LSI's September 2007 Network and Standard Storage Products document.

      pp. SV92S. Agere's documents indicate that the SV92S is an "I2S Soft Modem using 1040" and was to be released for sale in "3Q05."

      qq. SV92A4. Agere's documents indicate that the SV92A4 is an "HAD Audio/Soft Modem Combo using 1040" and was to be released for sale in "4Q05."

      rr. DP2P. Agere's documents indicate that the DP2P is a "FAX data pump using 1040" and was to be released for sale in "4Q05."

      ss. OCFP. Agere's documents indicate that the OCFP was to be released for sale in "1Q06."

      tt. OCMP. Agere's documents indicate that the OCMP is a "Complete Modem using 1040" and was to be released for sale in "1Q06."

      uu. CV92A. Agere's documents indicate that the CV92A is in development.

      vv. HV1040. Agere's documents indicate the HV1040 was shipping as of 4Q07.

      ww. Tiger, Sparrow, Panther, Eagle. We have seen reference in product roadmaps to four different V.90 devices named Tiger, Sparrow, Panther and Eagle.

Further, Exhibit 1 does not contain the requested information for the Agere Products which were included. Although the chart in Exhibit 1 appears to contain a column listing the "Release Date" for the Agere Products' manufacture ("Mfg"), there is no discernable connection between the "Mfg" column and the date of first sale, offer for sale, or marketing of Agere's Products. Moreover, Exhibit 1 lists "Mfg" dates for only eight (8) of the eighty-

Ian L. Saffer
March 19, 2008
Page 6

six (86) entries. (Another eight (8) entries simply state "none" in the "Mfg" column.)[2]

Exhibit 2 proves similarly unsatisfactory. In Chad King's February 8, 2008 letter to Michael Connelly Mr. King stated: "To the extent that a date of first sale of a particular product occurred after March 23, 2001, that information is available in Exhibit 2 to Agere's supplemental responses to GE's interrogatories." Even notwithstanding the fact that Exhibit 2 was not incorporated by reference into Agere's response to Interrogatory No. 1, Exhibit 2 only discloses shipping information about the various Agere Products listed. Shipping—while part of the product cycle—is functionally distinct from marketing, offers for sale, and the sale of products. Moreover, Exhibit 2 contains no description or definition for the column headings and entries, many of which are uninformative and confusing. Thus, the information in Exhibit 2 does little, if anything, to satisfy Agere's obligations to provide the requested information.

Due to the deficiencies identified above, which render Agere's response to Interrogatory No. 1 substantially incomplete and/or non-responsive, GE Licensing requests that Agere supplement its response to Interrogatory No. 1 with:

xx. Information responsive to Interrogatory No. 2 with respect to *all* Agere Products;

yy. The date on which each Agere Product "was first sold, offered for sale, or marketed";

zz. Definitions for the terms "Spec", "Mask", and "Mfg" as they are used in Exhibit 1;

aaa.    A definition for the term "none" as used in the "Mfg" column of Exhibit 1;

bbb.    The missing information for the "Spec", "Mask", and "Mfg" columns of Exhibit 1, or an explanation as to why that information is not included in Agere's response;

ccc.    Definitions for the column headings "MPL", "AWB", "SHIP_TO_PARTY", "ULTIMATE_CUSTOMER", and "NAME" as used in Exhibit 2; and

ddd.    Definitions for the terms "STANDARD," SAMPLE", and "REPLACEMENT" as used in the "NAME" column of Exhibit 2.

2. *GE Licensing Interrogatory No. 2*: Agere states that "Defendant is not aware of licenses to Defendant from" the entities named in its response. However, Interrogatory No. 2 also requests that Agere identify "any…other agreements" with the named entities. To the extent that Agere has not responded to Interrogatory No. 2 with respect to non-license agreements, its response is incomplete.

---

[2] Exhibit 1 also contains columns titled "Spec" and "Mask." Without a definition for these terms, however, the information contained in those columns is meaningless.

Ian L. Saffer
March 19, 2008
Page 7

Moreover, Exhibit 7 (incorporated by reference to Agere's response to Interrogatory No. 2), contains several flaws and/or omissions which undermine its usefulness. Exhibit 7 also uses a number of undefined terms, including "IC Design", "Software", "Fab", "Assy", and "Test" in the "Function" column.

Due to the deficiencies identified above, which render Agere's response to Interrogatory No. 2 substantially incomplete and/or non-responsive, GE Licensing requests that Agere supplement its response to Interrogatory No. 2 with:

    a.  Information responsive to Interrogatory No. 2 with respect to *all* Agere Products;

    b.  Definitions of the terms "IC Design", "Software", "Fab", "Assy", and "Test" in the "Function" column; and

    c.  The identity of all other (*i.e.*, non-license) agreements with the entities identified in response to Interrogatory No. 2.

3.  *GE Licensing Interrogatory No. 3*: Agere's response to Interrogatory No. 3 is incomplete to the extent that it (1) fails to identify the persons involved in and knowledgeable about "activities, projects or programs…directed to the design and development of each Agere Product…" and (2) fails to "state precisely where such activities were undertaken."

To the extent that Agere's response to Interrogatory No. 3 incorporates Exhibits 1 and 2 by reference, we also direct your attention to the concerns raised in numbered paragraphs 1 and 2 above.

Due to the deficiencies identified above, which render Agere's response to Interrogatory No. 3 substantially incomplete and/or non-responsive, GE Licensing requests that Agere supplement its response to Interrogatory No. 3 to:

    a.  Identify the persons involved in and knowledgeable about "activities, projects or programs…directed to the design and development of each Agere Product…" and

    b.  State precisely where any "activities, projects or programs…directed to the design and development of each Agere Product…" were undertaken.

4.  *GE Licensing Interrogatory No. 7*: Agere's response to Interrogatory No. 7 incorporates its response to Interrogatory No. 3 (and therefore Exhibits 1 and 2) by reference.  Please see numbered paragraphs 1, 2, and 3 above and supplement Agere's response to Interrogatory No. 7 accordingly.

5.  *GE Licensing Interrogatory No. 8*: To the extent that Agere's response to Interrogatory No. 8 incorporates its response to Interrogatory No. 3 (and therefore Exhibits 1 and 2) by reference,

Ian L. Saffer
March 19, 2008
Page 8

please see numbered paragraphs 1, 2, and 3 above and supplement Agere's response to
Interrogatory No. 8 accordingly.

6. *GE Licensing Interrogatory No. 9*: Agere's response to Interrogatory No. 9 is incomplete
   and/or non-responsive to the extent that it fails to identify the quantity produced and revenue
   data for each Agere Product, component, or product containing same. Moreover, Exhibit 2,
   incorporated by reference into Agere's response to Interrogatory No. 9, merely contains sales
   and shipping information. Please see numbered paragraph 1 above and supplement Agere's
   response to Interrogatory No. 9 to identify:

   a. The quantity of each "Agere Product, component thereof, or product containing
      same" produced, and

   b. The "revenues that Agere has received, expects to receive and/or has projected to
      receive from the sale, lease, license, sublicense or use of any Agere Product,
      component thereof, or product containing same."

7. *GE Licensing Interrogatory No. 14*: Agere's response to Interrogatory No. 14 is non-
   responsive. Although Agere acknowledges the existence of "statements...by Agere
   concerning or relating to" one or more GE Patents in its response, it fails to identify "all
   documents containing or evidencing such statements." The fact that all such statements
   purportedly took place during negotiations between Agere and GE Licensing provides Agere
   no refuge from its obligation to respond to this discovery request in full.

   Due to the deficiencies identified above, which render Agere's response to Interrogatory No.
   14 substantially incomplete and/or non-responsive, GE Licensing requests that Agere
   supplement its response to Interrogatory No. 14 to:

   a. Identify all documents containing or evidencing any statements, oral or written, by
      Agere concerning or relating to any GE Patent.

8. *GE Licensing Interrogatory No. 16*: Agere's response to Interrogatory No. 16 is non-
   responsive. Although Agere acknowledges that it has taken positions with regard to the GE
   Patents "in conjunction with negotiations with Plaintiff," it fails to substantively respond in
   any detail. The fact that Agere's positions with respect to the GE Patents evolved in the
   context of negotiations with GE provides Agere no refuge from its obligation to respond to
   this discovery request in full.

   Due to the deficiencies identified above, which render Agere's response to Interrogatory No.
   16 substantially incomplete and/or non-responsive, GE Licensing requests that Agere
   supplement its response to Interrogatory No. 16 to describe:

Ian L. Saffer
March 19, 2008
Page 9

    a. The position(s) Agere has taken regarding the validity, enforceability, or infringement by Agere of any of the GE Patents;

    b. The circumstances in which each such position was taken;

    c. The specific bases for each such position;

    d. The identity of all documents or prior art relating to those bases; and

    e. How those documents and that prior art support each such position.

9. GE Licensing Interrogatory No. 25: In its February 8, 2008 supplemental responses to GE Licensing's Interrogatories, Agere identifies and incorporates various documents that we have been unable to locate in Agere's document production. Specifically, Agere identifies, "Agere/GE 000113-001036". We have been unable to locate documents bearing production numbers Agere/GE 000141-44 or Agere/GE 1036.

GE Licensing requests that Agere produce documents bearing production numbers:

    a. Agere/GE 000141-44, and

    b. Agere/GE 1036.

10. *GE Licensing Interrogatory No. 30*: In its February 8, 2008 supplemental responses to GE Licensing's Interrogatories, Agere states that it is attempting to obtain additional documents responsive to Interrogatory No. 30.

GE Licensing requests that Agere supplement its response to Interrogatory No. 30 to:

    a. Confirm whether Agere's production of documents responsive to Interrogatory No. 30 is complete, and

    b. If so, identify by production number where those documents may be found in Agere's production.

11. *GE Licensing Interrogatory No. 38*: Despite the fact that Interrogatory No. 38 requested that Agere "*[d]escribe in detail* and *identify* any documents relating to communications between Agere and Motorola, Inc., Lucent Technologies Inc., Broadcom Corp. or AltoCom, Inc.," with respect to Motorola, Inc., Broadcom Corp. and AltoCom, Inc., Agere responded by merely stating that "Defendant has produced relevant and non-privileged documents, to the extent that any exist, that are responsive to this interrogatory...." (Emphasis supplied.)

Due to unspecific and generalized reference to non-enumerated documents, which render Agere's response to Interrogatory No. 38 substantially incomplete and/or non-responsive, GE

Ian L. Saffer
March 19, 2008
Page 10

Licensing requests that Agere supplement its response to Interrogatory No. 38 to, at the very least:

 a. Pursuant to Fed. R. Civ. P. 33(d), identify by Bates number documents produced that are responsive to Interrogatory No. 38, and

 b. State whether Agere's production of documents responsive to Interrogatory No. 38 is complete.

12. *GE Licensing Interrogatory No. 40*: Despite the fact that Interrogatory No. 40 requested that Agere state whether each Agere Product complied with any of eighteen (18) identified standards or recommendations, Agere initially responded as to only the V.34 and V.92 recommendations. In a spirit of compromise, GE Licensing accepted Agere's proffered response on a trial basis. *See* Letter from M. Connelly to I. Saffer, Jan. 25, 2008. Without waiving any right to request further supplementation based on other standards or recommendations, GE Licensing now requests that Agere supplement its response to Interrogatory No. 40 to include the V.90 standard.

Furthermore, Exhibit 1 appears to contain two deficiencies with respect to Interrogatory No. 40: (1) compliance information with respect to the L56XT ChipSet is missing and (2) the term "NA" in the V.34 and V.92 Compliance columns is undefined.

GE Licensing requests, therefore, that Agere supplement its response to Interrogatory No. 40 to:

 a. Indicate whether each Agere Product complies with the V.90 recommendation;

 b. State whether the L56XT ChipSet is compliant with any standard or recommendation; and

 c. Define the term "NA" as used in the V.34 and V.92 Compliance columns of Exhibit 1.

We look forward to receiving Agere's supplemental responses to the interrogatories and exhibits identified above.

Agere's responses to GE Licensing's Requests for Production of Documents also identify a number of incomplete production issues, as follows:

13. *GE Licensing Request for Production No. 2*: In its February 8, 2008 supplemental response to Request for Production No. 2, Agere states that it "has produced currently-available samples of Agere's products and will produce additional samples as they become available." Thus far, we have been unable to locate samples of Agere Products within Agere's document production, nor do we appear to have received subsequent production of any additional

Ian L. Saffer
March 19, 2008
Page 11

samples.

GE Licensing requests, therefore, that Agere:

    a.   Identify the Agere Products for which Agere has produced samples;

    b.   Identify the location of said produced samples within Agere's document production; and

    c.   Provide a date certain on which Agere will produce additional samples of Agere Products.

14. *GE Licensing Request for Production Nos. 7, 8, 9, 11, and 23*: In its responses to Request for Production Nos. 7, 8, 9, 11, and 23, Agere states that it "has produced responsive, non-privileged documents." Agere's responses, however, are incomplete and/or non-responsive to the extent that Agere fails to confirm that it has produced the requested "[d]ocuments… sufficient to identify" the requested information.

GE Licensing requests, therefore, that Agere confirm that it has produced "[d]ocuments… sufficient to identify" the requested information.

15. *GE Licensing Request for Production Nos. 15, 16, 17, and 27*: In its responses to Request for Production Nos. 15, 16, 17, and 27Agere states that "no responsive, non-privileged documents exist." We remind Agere, that Request for Production No. 16 requests all documents "relating to *any* plan or attempt by Agere to redesign any Agere Product" and, therefore, is not limited to redesign plans or attempts initiated in an effort to design around patents. (Emphasis added.)

GE Licensing requests that Agere confirm that the lack of production responsive to GE Licensing Request for Production Nos. 15, 16, 17, and 27 is due to privilege rather than the nonexistence of responsive documents.

16. *GE Licensing Request for Production No. 43*: In its February 8, 2008 supplemental responses to Request for Production No. 43, Agere states that it is "still attempting to obtain additional documents from its prior counsel."

GE Licensing requests that Agere supplement its response to Request for Production No. 43 to:

    a.   Confirm whether Agere's production of documents responsive to Request for Production No. 43 is complete;

    b.   If so, identify by production number where those documents may be found in Agere's production; and

Ian L. Saffer
March 19, 2008
Page 12

    c.  If not, provide a date certain by which all documents responsive to Request for
        Production No. 43 will be produced.

We have also identified several categories of documents which appear to have been omitted from
production and which were requested in GE's First and Second Sets of Requests for Production.
These include:

17. *Agere Products*: All documents related to the Agere Products listed in No. 1 above.

18. *Custodian documents*:  Although it appears that Agere has produced certain custodians'
    documents, Agere's production appears to omit documents from a number of highly relevant
    categories of custodians, including the following.

    a.  Email databases.  Our review thus far indicates that Agere's document production
        includes documents from Messrs. Flynn, Rai, Rauchwerk, Russo, Schulz, Skinker and
        Vernekar.  However, it appears that at least e-mails from Messrs. Vernekar,
        Rauchwerk, and Russo have not been produced.

        Due to Agere's failure to produce these documents and records, which renders
        Agere's document production substantially incomplete, GE Licensing requests that
        Agere produce these databases immediately.

    b.  Persons of Knowledge.  GE Licensing has not received electronic or paper production
        from several of the persons named by Agere in its interrogatory responses as persons
        of knowledge, including:

        i.  Larry Bays (GE Licensing Interrogatory No. 4),

        ii.  Robert Radaker (GE Licensing Interrogatory No. 5),

        iii.  Roger Sellers (GE Licensing Interrogatory No. 5),

        iv.  Bryan Stahley (GE Licensing Interrogatory No. 5), and

        v.  Sanjay Sharma (GE Licensing Interrogatory No. 6).

        Due to Agere's failure to produce these documents and records, which renders
        Agere's document production substantially incomplete, GE Licensing requests that
        Agere produce physical and electronic documents (including e-mail) from these
        individuals immediately.

    c.  Key Individuals.  In addition, the electronic and other documents of the following
        people should be produced, all of whom are listed as "Key Individuals" in Agere
        documents in the categories set forth in parentheses:

Ian L. Saffer
March 19, 2008
Page 13

    i. Sawyer (partnerships),

    ii. Herman (platform manager),

    iii. Shaw (systems engineer),

    iv. Barazesh (systems engineer),

    v. Petryna (IC designer),

    vi. Cheung (IC Designer),

    vii. Siewara (IC Designer),

    viii. Vomero (IC Designer),

    ix. Pant (IC Designer),

    x. Pasznik (IC/System Validation),

    xi. Grande (IC/System Validation),

    xii. Wolfe (Product Engineering),

    xiii. Sellers (Product Engineering) (to the extent different from Roger Sellers above),

    xiv. Hixson(Product Engineering),

    xv. Campbell (Test Engineering),

    xvi. Nguyen (Test Engineering),

    xvii. Schrader (Test Engineering),

    xviii. Lubas (Test Engineering),

    xix. Patel (Marketing),

    xx. Chen (Apps) (to the extent different from Ben Chen above),

    xxi. Lantz (Apps),

    xxii. Ho (Apps),

Ian L. Saffer
March 19, 2008
Page 14

    xxiii.  Tarumi (Apps),

    xxiv.  Gomez (Apps), and

    xxv.  Day (Apps).

Due to Agere's failure to produce these documents and records, which renders Agere's document production substantially incomplete, GE Licensing requests that Agere produce physical and electronic documents (including e-mail) from these individuals immediately.

d.  It further appears that there are a number of highly relevant individuals from whom documents (both electronic and other) have not been collected. These include the software designers responsible for programming the Agere Products and the person (or persons) responsible for marketing the Agere Products.

Due to Agere's failure to produce these documents and records, which renders Agere's document production substantially incomplete, GE Licensing requests that Agere immediately produce electronic and other documents from all software designers responsible for programming the Agere Products, as well as all persons responsible for marketing the Agere Products. Based on our review of Agere's discovery responses, this should include, without limitation, at least the following individuals:

    i.  Herbert Cohen,

    ii.  Ashok Vernekar (as noted above),

    iii.  Mark Hargrove,

    iv.  Ray Staab,

    v.  Sam Hoke,

    vi.  John Guarini,

    vii.  Anthony Cheng,

    viii.  Michael Chen,

    ix.  Chao-Pin (Ben) Chen,

    x.  Shawn Antol, and

    xi.  Mr. Balaji (G, Balaji (Balaji) <balaji@agere.com>).

Ian L. Saffer
March 19, 2008
Page 15

> Given the method of production (native), producing the electronic documents from these individuals should be a simple matter.

19. *Physical document collection.* Agere's document production thus far appears to consist entirely of native, electronic documents and, therefore, does not appear to include any physical (*i.e.*, hardcopy) documents.

Has Agere collected (or made any efforts to collect) any physical documents from its custodians? If so, where in the production can these documents be found?

20. *Intranet documents.* Please confirm that the documents originally stored in the following directories have been produced:

   a. http://clas.web.lucent.com/applications/sv92p-pak/;

   b. http://clas.agere.com/applications/fieldtest/;

   c. http://clas.agere.com/applications/soft-release/;

   d. http://web.agere.com/~leb/modem_ic_info/chipinfo.htm; and

   e. http://clas.agere.com/applications/modem.htm

21. *Marketing materials.* Agere's production of marketing materials appears to be incomplete. For example, we cannot find the Client Solutions line cards found in various forms on the Internet (*e.g.*, http://www.lsi.com/documentation/networking/line_cards/NSPG_LineCard_082907.pdf).

Please confirm whether Agere has produced its marketing materials for the Agere Products. If so, please identify where these documents are located within Agere's production.

Along with the failure to include at least Mr. Patel as a custodian, this would appear to be an indication that Agere has not yet produced all of its marketing and sales related documents.

22. *Organizational charts.* While some organizational charts may be found in production (*e.g.*, for sales), there does not appear to be any current organizational charts related to product development.

Please confirm whether Agere has produced all organizational charts and, in particular, organizational charts related to product development. If so, please identify where these documents are located within Agere's production.

23. *CV92/CFAX Software Developer's Guide.* Although we have found references to the CV92/CFAX Software Developer's Guide, we are unable to locate the document itself (*see*

Ian L. Saffer
March 19, 2008
Page 16

October 2006 Skinker presentation).

Please confirm whether Agere has produced the CV92/CFAX Software Developer's Guide. If so, please identify where these documents are located within Agere's production.

24. *Sales of individual components.*  It is our understanding that Agere sells its products as individual components.  However, Exh. 2 to Agere's responses to GE Licensing's Interrogatory Requests does not appear to include these sales.

Please confirm whether Agere has produced information on such sales and, if not, please produce such information and related documents immediately.

25. *Document production errors.*  In reviewing Agere's document production, we have discovered a few areas where there appear to have been errors in Agere's document production. The document beginning at production number Agere/GE 000642 is missing pages internally labeled as 118-22 (Agere/GE 000760 corresponds with page 117 and Agere/GE 000761 corresponds with internal page 123).  Moreover, Agere/GE 000760 and Agere/GE 000763 appear to have been improperly copied, thus rendering much of those pages illegible.

Please reproduce documents bearing production numbers Agere/GE 000760 and Agere/GE 000763, and supplement Agere's document production to include pages 118-22 of the document beginning at production number Agere/GE 000642.

Ian L. Saffer
March 19, 2008
Page 17

Please supplement the identified interrogatories and produce the requested document production
by March 28, 2008. The requested information should have been produced no later than
February 8, 2008 and, further, is within the scope of the January 22, 2008 stipulated order of the
Court. If Agere does not intend to supplement and produce as requested or if Agere would like
to discuss these matters further, then we would ask that you notify us or request a meet and
confer prior to March 28, 2008. If you have any questions or concerns, please do not hesitate to
contact us.

Sincerely,

Amanda E. Koenig

cc:    Counsel of Record for Agere

WDC99 1541385-4.037743.0051

# EXHIBIT C

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf Houston London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Amanda E. Koenig
Associate
akoenig@mwe.com
202.756.8075

March 20, 2008

VIA E-MAIL

Ian L. Saffer
Townsend and Townsend and Crew LLP
1200 Seventeenth Street
Suite 2700
Denver, CO 80202

Re:    *CIF Licensing, LLC, d/b/a GE Licensing v. Agere Systems Inc.,* C.A. No. 07-170

Dear Mr. Saffer:

We write with respect to ongoing issues with Agere's document production. These items are in addition to our letter of March 19, 2008, and are not exclusive to documents subject to GE Licensing's pending motion to compel.

In reviewing Agere's document production, the following relevant documents and information appear not to have been produced by Agere:

1. *00-modules.txt*: Agere's documents state that this file exists and is a listing of all modules used in certain Agere Products, including without limitation the OCM (as shown in the Design Guidelines For OCM V.3);

2. *DP2L Programmer's Reference Manual*: Agere's documents state that this document exists and is relevant to implementation of V.34 compliance in the DP2L and DPV devices;

3. *Documents from "Ralph," which may be Ralph S. (Spike) Moyer*: Ralph authored Arm_Rom_Budget.Doc. As this Ralph appears to have direct knowledge of where compliance with V.34 and V.92 is handled within Agere code, he and his documents are highly relevant;

4. *Programmer's reference manual for the DP2S*: MRI4129 states that Sam Hoke authored a programmer's reference manual for the DP2S;

5. *DP3S Programmer's Reference Manual*: Agere's documents indicate that this document was being prepared in May of 2007; and

Ian L. Saffer
March 20, 2008
Page 2

6. *Linked files*: File 05d08_05delphiAM3A3V2S510=70ati11.xls contains a number of links for which we do not appear to have the corresponding documents.

Please produce the requested documents and information by March 28, 2008. The requested information should have been produced no later than February 8, 2008 and, further, is within the scope of the January 22, 2008 stipulated order of the Court. If Agere does not intend to produce as requested or if Agere would like to discuss these matters further, then we would ask that you notify us or request a meet and confer prior to March 28, 2008. If you have any questions or concerns, please do not hesitate to contact us.

Sincerely,

Amanda E. Koenig

AEK/AEK

cc:    Counsel of Record for Agere

WDC99 1544798-1.037743.0051

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CIF LICENSING, LLC, d/b/a<br>GE LICENSING, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-170 (JJF) |
| | ) | |
| AGERE SYSTEMS INC., | ) | |
| | ) | |
| Defendant. | ) | |

## STIPULATION AND [PROPOSED] ORDER

WHEREAS, Plaintiff CIF Licensing, LLC ("GE Licensing") seeks to have

Defendant Agere Systems, Inc. ("Agere") respond to certain discovery requests.

WHEREAS Agere has objected to certain of GE Licensing's discovery requests

and its definition of "Agere Products" as overbroad and not likely to lead to the discovery of

admissible evidence, and despite a continuing objection to GE Licensing's definition of "Agere

Products," has agreed to production of documents and the supplementation of its interrogatory

answers according to the stipulation set forth below.

WHEREAS, Agere seeks to have GE Licensing withdraw its Motion To Compel

Discovery From Defendant Agere Systems, Inc. ("Motion To Compel") submitted to this Court

on December 19, 2007 (D.I. 44, 45).

NOW, THEREFORE, the parties hereby stipulate and agree, subject to the

approval of the Court, as follows:

1.    GE Licensing's Motion to Compel is withdrawn, but may be renewed in

- 1 -

as provided below.

    2.    By January 31, 2008, Agere will produce the financial records related to modem sales for each and every product specifically enumerated in GE Licensing's revised definition of "Agere Products" set out in the Motion To Compel. If GE Licensing requests financial records for additional, specifically enumerated products, Agere will make good faith efforts to reach agreement on such production and its timing.

    3.    Apart from financial records related to modem sales, by January 31, 2008, Agere will, subject to good cause shown, complete production of documents for all products, whether or not enumerated, within GE Licensing's revised definition of "Agere Products" set out in the Motion To Compel that were sold or offered for sale after March 23, 2001. If GE Licensing requests production for additionally enumerated products offered for sale prior to March 23, 2001, Agere will make good faith efforts to reach agreement on such production.

    4.    By January 31, 2008, Agere will produce a final hierarchical schematic and original design documents for each product specifically enumerated in GE Licensing's revised definition of "Agere Products" set out in the Motion To Compel.

    5.    Up until March 15, 2008, Agere will not oppose renewal of the Motion to Compel on the ground of untimeliness should GE Licensing seek production of documents regarding products sold or offered for sale prior to March 23, 2001 or should GE Licensing otherwise find the production to be unsatisfactory, provided that GE Licensing and Agere will first work in good faith until March 1, 2008, to reach agreement on production.

    6.    Agere will supplement its answers to interrogatories by January 31, 2008, and in the meantime will work with GE Licensing toward identifying where in the production any such answers can be found, provided that neither party waives its position on whose burden

it is to glean such answers from the production.

       7.     Up until March 15, 2008, Agere will not oppose on the ground of untimeliness renewal by GE Licensing of the Motion to Compel should GE Licensing find Agere's supplemental responses to GE Licensing's interrogatories to be unsatisfactory, provided that GE Licensing and Agere will work in good faith until March 1, 2008, to reach agreement on those supplemental responses.

POTTER ANDERSON & CORROON LLP          YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Philip A. Rovner                              /s/ Chad S. C. Stover
Richard L. Horwitz (No. 2246)                     Josy W. Ingersoll (No. 1088)
rhorwitz@potteranderson.com                       jingersoll@ycst.com
Philip A. Rovner (No. 3215)                       John W. Shaw (No. 3362)
provner@potteranderson.com                        jshaw@ycst.com
David E. Moore (No. 3983)                         Chad S.C. Stover (No. 4919)
dmoore@potteranderson.com                         cstover@ycst.com
Hercules Plaza                                    The Brandywine Building
1313 N. Market Street                             1000 West Street, 17th Floor
Wilmington, DE 19801                              Wilmington, Delaware  19801
(302) 984-6000                                    (302) 571-6600

- and -                                           - and -

Joel E. Freed                                     David E. Sipiora
Brian E. Ferguson                                 Ian L. Saffer
Mark A. Davis                                     Chad E. King
McDermott Will & Emery LLP                        Townsend and Townsend and Crew, LLP
600 13th Street, N.W.                             1200 Seventeenth Street, Suite 2700
Washington, DC  20005                             Denver, Colorado 80202-5827
                                                  303-571-4000
Edwin H. Wheeler
McDermott Will & Emery LLP                        *Attorneys for Agere Systems Inc.*
3150 Porter Drive
Palo Alto, CA  94304

*Attorneys for CIF Licensing, LLC*

SO ORDERED this *22* day of January, 2008.

/s/ _____
United States District Judge

843339

- 4 -