# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CIF LICENSING, LLC, d/b/a  )
GE LICENSING,  )
  )    C.A. No. 07-170 (JJF)
          Plaintiff,  )
  )    **PUBLIC VERSION**
      v.  )
  )
AGERE SYSTEMS INC.,  )
  )
         Defendant.  )

## PLAINTIFF CIF LICENSING, LLC, d/b/a GE LICENSING'S
## RESPONSE TO AGERE SYSTEMS INC.'S
## SECOND MOTION TO COMPEL DISCOVERY

OF COUNSEL:

Joel M. Freed
Brian E. Ferguson
Michael W. Connelly
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005-3096
(202) 756-8327

Edwin H. Wheeler
McDermott Will & Emery LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
(650) 813-5000

Dated: May 1, 2008
Public Version: May 8, 2008

Richard L. Horwitz (#2246)
Philip A. Rovner (#3215)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P. O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
rhorwitz@potteranderson.com
provner@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Plaintiff*
*CIF Licensing, LLC, d/b/a*
*GE Licensing*

# TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

SUMMARY OF ARGUMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 2

ARGUMENT ................................................................................................................ 5

I.    Agere Has Not Made Reasonable Efforts to Reach Agreement With GE
      Licensing.......................................................................................................... 5

II.   Agere's Motion to Compel Is Moot.......................................................................... 6

III.  Requiring GE Licensing to Provide Further Information
      Without the Requested Agere Discovery Would Be Unduly
      Burdensome and Wasteful ........................................................................................ 6

      A.    Infringement Contentions ................................................................................ 6

      B.    Willfulness ...................................................................................................... 7

      C.    Damages Analysis............................................................................................ 7

      D.    Agere's License Defense ................................................................................. 8

CONCLUSION.............................................................................................................. 9

## NATURE AND STAGE OF PROCEEDINGS

GE Licensing commenced this action on March 23, 2007, asserting infringement by several of Agere's modem products of U.S. Patent Nos. 5,048,054, 5,428,641, 5,446,758, and 6,198,776 (the "Asserted Patents").

## SUMMARY OF ARGUMENT

1. GE Licensing disputes Agere's certification, under Local Rule 7.1.1, that Agere's counsel "made a reasonable effort to reach agreement with counsel for [GE Licensing] on the matters set forth in Agere's Second Motion to Compel Discovery...." Agere Rule 7.1.1 Statement, April 14, 2008 (D.I. 74). One day after a cursory discussion of the matter during an unrelated meet-and-confer, GE Licensing responded to Agere's concerns by letter and invited Agere to schedule a call to discuss the issues further. Less than one week later, with no further discussion of the matter, Agere filed its second motion to compel.

2. The present discovery dispute is moot. GE Licensing has provided Agere with supplemental responses to Agere Interrogatory Nos. 1-3, 12, and 17 (Exhibit A) based on all available documents and information. Requiring GE Licensing to provide infringement charts and damages calculations based on admittedly incomplete information would be unduly burdensome to GE Licensing and wholly useless to the parties and the Court. Requiring GE Licensing to provide an exhaustive opposition to Agere's licensing defense—where Agere carries the burden of proof—would be similarly fruitless, especially when Agere itself proffers no more than the barest factual allegations and conclusory legal analysis in its interrogatory responses (Exhibit B) to which its own 30(b)(6) designee on the subject can add nothing (Exhibit C). GE Licensing invited Agere to withdraw its motion or to schedule a meet and confer if further issues existed. Agere has never responded.

1

## STATEMENT OF FACTS

<u>Communications Between the Parties</u>

1.  On Friday evening, April 4, 2008, Agere wrote to GE Licensing, requesting that GE Licensing supplement its responses to Agere Interrogatory Nos. 1-3, 12, and 17.  Exhibit D.

2.  On the next business day, Monday, April 7, 2008, the parties held a meet-and-confer initiated by GE Licensing to discuss Agere's provision of discovery and witnesses for depositions.  Exhibit E.  During the call, counsel for GE Licensing informed Agere counsel that it would review Agere's April 4th letter, and promised a written response to the letter the next day.

3.  On April 8, 2008, counsel for GE Licensing responded to Agere's April 4th letter. Exhibit F.  GE Licensing's letter ended by inviting Agere to contact them with any remaining issues.  *Id.*  ("If you would like to further discuss these issues, we are happy to schedule a call at any time.")

4.  On April 14, 2008, Agere filed its Second Motion to Compel Discovery.  (D.I. 74-76.)

5.  On April 23, 2008, GE Licensing served its Second Supplemental Responses to Agere's Interrogatory Nos. 1-3, 12 and 17 along with a letter requesting that Agere withdraw its motion or schedule a meet and confer prior to April 28, 2008.  Exhibits A and G.  Agere has never responded to that letter.

<u>GE Licensing's Efforts to Obtain Discovery Needed To Provide Supplemental Responses</u>

6.  Many of the facts surrounding GE Licensing's ongoing efforts to obtain discovery from Agere—including product-related data and sales data—are set forth in GE Licensing's briefs in

support of its three motions to compel.[1]  This includes GE Licensing's now five month long, failed attempt to engage Agere in any discussion regarding the formulation of a final list of accused products.  Therefore, GE Licensing will confine its statement of facts to recent facts and those most relevant to the present motion.

*Infringement Evidence/Source Code*

7.  On March 17, 2008, GE Licensing disclosed to Agere technology experts Gene Buterbaugh and Bob Lopes.  Exhibit H.

8.  On March 21, 2008, GE Licensing wrote to Agere to suggest that the parties engage Iron Mountain as their third party technology escrow service.  Exhibit I.  GE Licensing also provided Agere with contact information for Iron Mountain sales representatives it had already contacted. *Id.*

9.  On March 27, 2008, Agere stated that Agere may object to GE Licensing's designation of Messrs. Buterbaugh and Lopes pending further investigation.  Exhibit J.

10. The parties discussed Agere's objections to GE Licensing's designation of Messrs. Buterbaugh and Lopes on March 28, 2008.  Agere counsel stated that they were still investigating the basis for their objections and had not yet determined whether or not to file a motion with the Court.  When GE Licensing counsel asked when they could expect a response, Agere counsel responded that they had ten days under the Protective Order to decide.

11. In the spirit of compromise, GE Licensing offered to withdraw its designation of Messrs. Buterbaugh and Lopes, and substitute Messrs. Bims and Lee.  Exhibit K.  The parties agreed on April 10, 2008, and GE Licensing asked that Agere's source code be provided in or around Menlo Park, CA at Iron Mountain's facility.  Exhibit L.

---

[1] 1st Motion to Compel: December 19, 2007 (D.I. 44-45); January 14, 2008 (D.I. 47); 2nd Motion to Compel: March 12, 2008 (D.I. 65); April 4, 2008 (D.I. 68); and Third Motion to Compel: April 8, 2008 (D.I. 71).

3

12. On April 14, 2008, GE Licensing identified the Iron Mountain facility in Union City, CA as a potential location for the Agere source code and, again, provided its Iron Mountain contact's information. Exhibit M.

13. Since then, GE Licensing has done everything in its power to facilitate production of Agere's source code, including presenting alternative options (storing the code at Agere's counsel's office) to offering to pay Iron Mountain's initial costs and send Agere a bill for its portion. Exhibits N. Now, two weeks later, Agere has raised Protective Order amendments (to which GE Licensing has agreed), still has not signed a contract with Iron Mountain, and refuses to provide GE Licensing with an estimated date for delivery of the Agere source code. Exhibits O. Moreover, despite repeated assurances from Agere that it is working speedily to produce its source code, evidence suggests that its efforts have been less than diligent. *See* Exhibit P (email from Iron Mountain representative contradicting communications from Agere counsel that Agere was waiting for a response from Iron Mountain.)

14. Agere itself admits in its brief that it was not until April 10, 2008, just 2 business days prior to Agere filing its motion, that Agere found any of GE's proposed locations for viewing source code "suitable to Agere." (Agere Br. at 5 n.1.)

*Sales Information (Damages)*

15. *See* GE Licensing briefs in support of its second motion to compel, dated March 12, 2008 (D.I. 65) and April 4, 2008 (D.I. 68).

16. Agere's 30(b)(6) witness on Agere's sales, revenues, and profits, Mr. Surinder Rai, has testified that

4

███████████████████████

*Agere's License Defense*

17. In its response to GE Licensing Interrogatory No. 31, which seeks all facts and information supporting Agere's license defense, Agere has merely stated that it is a "customer" of AltoCom, Inc. and that AltoCom has a license from Motorola, Inc. under a January 31, 2001 Patent Cross-License Agreement between Motorola and AltoCom. Exhibit Q.

18. Agere's 30(b)(6) witness on Agere's license defense (Mr. Rai) was unable to definitively answer many questions relating to Agere's licensing defense. Exhibit C (Rai Dep. Tr. 267-318, April 21, 2008). In fact, Mr. Rai testified that ████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

Mr. Rai's deposition was ended early at the request of Agere counsel. It is tentatively scheduled to continue on May 14th or 15th.

## ARGUMENT

### I.    Agere Has Not Made Reasonable Efforts to Reach Agreement With GE Licensing

Local Rule 7.1.1 requires that nondispositive motions be accompanied by "an averment of counsel for the moving party that a reasonable effort has been made to reach agreement with the opposing party on the matters set forth in the motion." L.R. 7.1.1. As set forth in the Statement of Facts, numbered paragraphs 1-4, Agere failed to comply with that directive by filing its motion to compel before the parties even conducted any meaningful meet-and-confer on the matter. As evidenced by its April 8th letter, GE Licensing reasonably believed that the parties were working towards a mutually satisfactory solution and that Agere would make contact with any further concerns. *See* Exhibit F ("We think that this should satisfy Agere's

5

concerns…. If you would like to further discuss these issues, we are happy to schedule a call at any time.")

## II.      Agere's Motion to Compel Is Moot

GE Licensing has provided Agere with supplemental responses to Agere Interrogatory Nos. 1-3, 12, and 17. *See* Exhibit A. These responses are based on available information to date.

## III.     Requiring GE Licensing to Provide Further Information Without the Requested Agere Discovery Would Be Unduly Burdensome and Wasteful

### A.      *Infringement Contentions*

Agere Interrogatory No. 3 seeks GE Licensing's detailed infringement contentions. GE Licensing's first detailed infringement contentions were provided on November 27, 2007, totaling almost 400 pages. (D.I. 43.) Agere now wants further detail while withholding the one piece of evidence from which this detail could be obtained, the Agere source code.

At the outset, Agere's statement in its motion that it has not received a list of all accused products is ludicrous. The record reflects GE Licensing's continued efforts to engage Agere in a discussion as to the proper identification of Agere products, and Agere's efforts to stymie the process. *See* GE Licensing Motion to Compel, (D.I. 45) at 4-5, Dec. 19, 2007, and GE Licensing Motion to Compel, (D.I. 71) at 1-3, April 8, 2008.

With respect to infringement charts, the products at issue are modems, which consist of both physical components and software. Although the physical components are important, a truly accurate and complete infringement analysis calls for review of the accompanying source code. As set forth in the Statement of Facts, numbered paragraphs 6-12, GE Licensing has been working to obtain Agere's source code and its experts are standing by, waiting for its arrival. As noted above, Agere satates in its brief that it was not until April 10, 2008, just 2 business days prior to Agere filing its motion, that Agere found any of GE's proposed locations for viewing

6

source code "suitable to Agere." (Agere Br. at 5 n.1.) This is Agere's modus operandi—refuse to respond or correspond with GE Licensing until the eve of a Court-related deadline. To date, GE Licensing still does not have access to the source code, with Agere counsel blaming, on any given day, its client, Iron Mountain or GE Licensing for the delay. Any infringement charts composed without access to Agere's source code would be at best incomplete, of little use to the parties, and a waste of time and resources.

B.    *Willfulness*

Agere Interrogatory No. 2 seeks GE Licensing's detailed contentions on willfulness. Depositions have only just begun, and Agere's electronic data production remains seriously deficient. That being said, GE Licensing has supplemented its response to Agere Interrogatory No. 2 using the best available information. *See*, Exhibit A.

C.    *Damages Analysis*

Agere's complaints with respect to damages is similarly convoluted. Agere Interrogatory No. 12 seeks GE Licensing's detailed contentions on damages. Agere wants GE Licensing's complete damages theories before producing any financial information. To date, Agere's only production of sales information in any complete form was a series of Excel spreadsheets attached as Exhibit 2 to Agere's February 8, 2008 Supplemental Interrogatory Responses. On April 21, 2008, Agere's own 30(b)(6) witness for sales, revenue, and profits testified that

. Thus, Agere has essentially provided no information yet is asking this Court to order GE Licensing to provide detailed damages-related contentions. This would be impossible. Further, GE Licensing has filed motions to compel seeking production of

Agere financial documents and information, which Agere admits is incomplete. *See* Agere's Response to GE Licensing's Motion to Compel Production and Responses (D.I 67) ¶ 10. However, GE Licensing still supplemented its response to Agere Interrogatory No. 12 using the best available information. *See*, Exhibit A.

      D.    *Agere's License Defense*

      Again, Agere is seeking to obtain GE Licensing's contentions on a subject for which Agere has produced little to no information. Agere Interrogatory No. 17 seeks GE Licensing's contentions on why Agere's license defense is baseless. Agere bears the burden of proving its own license defense. Thus far, Agere has proffered only bare facts and allegations in support of its defense, yet Agere wants GE Licensing to provide a detailed response. It is like being asked to fight spider webs with a chain saw.

      Despite the fact that Agere was obligated to provide all fact discovery supporting its license defense by October 1, 2007, GE Licensing is left with little information to go on. Despite its continued statements that its production is complete, Agere apparently has yet to obtain permission from third parties to disclose information about its licenses, revenues, and royalties with third parties. Agere's own 30(b)(6) witness on its license defense

      If GE Licensing is able to obtain other facts or information that further undermine Agere's defense, it will of course supplement its interrogatory responses. Until then, however, the crux of GE Licensing's position is this: Agere has not met its burden of proof on its license

defense. However, GE Licensing still supplemented its response to Agere Interrogatory No. 17

using the best available information. *See*, Exhibit A.

## CONCLUSION

Agere's motion to compel is untimely and moot. For the foregoing reasons, GE

Licensing respectfully requests that the Court deny Agere's Second Motion to Compel

Discovery.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Joel M. Freed
Brian E. Ferguson
Michael W. Connelly
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005-3096
(202) 756-8000

Edwin H. Wheeler
McDermott Will & Emery LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
(650) 813-5000

Dated: May 1, 2008
862750

By: /s/ Philip A. Rovner
    Richard L. Horwitz (#2246)
    Philip A. Rovner (#3215)
    David E. Moore (#3983)
    Hercules Plaza
    P. O. Box 951
    Wilmington, Delaware 19899
    (302) 984-6000
    rhorwitz@potteranderson.com
    provner@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Plaintiff*
*CIF Licensing, LLC, d/b/a*
*GE Licensing*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on May 8, 2008, the within document was

filed with the Clerk of the Court using CM/ECF; that the document was served on the following

party as indicated; and that the document is available for viewing and downloading from

CM/ECF.

### BY HAND DELIVERY AND E-MAIL

Josy W. Ingersoll, Esq.
John W. Shaw, Esq.
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

I hereby certify that on May 8, 2008 I have sent by E-mail the foregoing

document to the following non-registered participants:

David E. Sipiora, Esq.
Ian L. Saffer, Esq.
Chad E. King, Esq.
Ryan D. Phillips, Esq.
Townsend and Townsend and Crew LLP
1200 17th Street, Suite 2700
Denver, CO 80202
desipiora@townsend.com
ilsaffer@townsend.com
ceking@townsend.com
rdphillips@townsend.com


/s/ Philip A. Rovner
Philip A. Rovner  (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CIF LICENSING, LLC, d/b/a GE LICENSING, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 07-170 JJF |
| AGERE SYSTEMS INC., | ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) | |

**PLAINTIFF CIF LICENSING, LLC, d/b/a GE LICENSING'S
SECOND SUPPLEMENTAL RESPONSES TO DEFENDANT AGERE SYSTEMS INC.'S
FIRST AND SECOND SETS OF INTERROGATORIES TO
PLAINTIFF NOS. 1-3, 12 and 17**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff CIF

Licensing, LLC ("GE Licensing") hereby serves the following supplemental responses and

objections to Defendant Agere Systems Inc.'s ("Agere's") First and Second Sets of

Interrogatories Nos. 1-3, 12 and 17.

GE Licensing has not completed its discovery, investigation, research, and trial

preparation. The following responses are based solely on the information that is presently

available and specifically known to GE Licensing. The following responses are provided

without prejudice to GE Licensing's right to produce evidence of any subsequently-discovered

facts. GE Licensing reserves the right to supplement the following responses and to change any

and all responses therein as additional facts are ascertained, analyses are made, legal research is

completed, and contentions are made, including the list of accused products, identification of

asserted claims and any claim charts. Finally, GE Licensing's objections as set forth herein are

made without prejudice to GE Licensing's right to assert any additional or supplemental

objections should GE Licensing discover additional grounds for such objections.

## GENERAL OBJECTIONS

GE Licensing hereby incorporates by reference its General Objections from Plaintiff's

Responses to Defendant Agere Systems Inc.'s First Set of Interrogatories to Plaintiff Nos. 1-16

and all amendments thereto.

## INTERROGATORIES

INTERROGATORY NO. 1

State the complete factual and legal basis for your contentions that Agere has infringed or
currently infringes the Patents-in-Suit (both literally and/or under the doctrine of equivalents)
including but not limited to an identification of each claim of the Patents-in-Suit that you
contend Agere has infringed or currently infringes, each Accused Device of Defendant that
Plaintiff contends has infringed or currently infringes the identified claim, a statement of the
source and date on which you obtained any samples or models of the Accused Devices, a
description of any analysis of the samples or models and the chain of custody thereof, an
identification of all documents that relate to, support or contradict your contentions, and of all
persons knowledgeable of your contentions.

RESPONSE TO INTERROGATORY NO. 1

In addition to the General Objections, GE Licensing objects to this interrogatory as

premature to the extent it calls for GE Licensing's contentions at this early stage of the litigation.

GE Licensing also objects to this interrogatory as vague, ambiguous, overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible information. In

addition, GE Licensing objects to this interrogatory as seeking information protected from

discovery by the attorney-client privilege, the work product doctrine, or other privilege. GE

Licensing's investigation of Agere's infringement is continuing. Without waiving the stated

objections, GE Licensing will respond on a mutually agreed-upon date for all contention

interrogatories. Without waiving the stated objections, GE Licensing responds as follows:

SV92P, APL43, DP2V34DX, DP2V90DX, DSP1648C, CSP 1037, DSP1673, DSP1675,

DSP1670 and Agere Generic Modem Drivers for LTWinmodem and PCI based modems.

### FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:

Subject to all and without waiving any previously stated objections and reservations, GE

Licensing further responds as follows:

GE Licensing identifies additional Agere products that, alone or in combination,

infringed or currently infringe the Patents-in-Suit (both literally and/or under the doctrine of

equivalents) as follows:  any analog modem compliant with ITU-T recommendation V.34, V.90,

V.92 (including any hardware modem, soft-modem or modem chip set product, component

thereof, or product containing same), made or sold by Agere, including, but not limited to,

SV92A2, SV92A3/MDC1.5 Soft Modem, SV92A35, Montblanc Family, SV92P, SV92PL,

SV92P2, SV92PP/PCI Soft Modem, Olympia Family, SV92U2/USB 2.0 Soft Modem, SV92EX,

CVxx family (including but not limited to CV92, CV92L, CV90L, CV34 and CV34L), OCM-34,

OCM-90, OCM-92, OCM-92E, Apollo Family, Mars Family, Luna Family, L56DAS, L56DASI,

L56LAS, L56LASI, L56xAFI, L56xL, L56xAF, L56xVS, L56RV, L56xMF, L56XT, Venus

Family, DSP1641B, DSP1641C, DSP1642C, DSP1643, DSP1644, DSP1645, DSP1646,

DSP1647, DSP1648, DSP1673/1673, DSP1675/1675, DSP1670/1670, DP2L34D, DP2S, DP3,

DP2LV34D, DP2Vxx family (including but not limited to DP2V34DX and DP2V90DX),

APL43, PCI Controllerless Modem Family, DSP1648, DSP1648C, LU97, Scorpio, CSP1037,

CSP1037B, CSP1034x family (including but not limited to CSP1034C, CSP1034AH and

CSP1034S), CSP1035A, CSP1038, CSP1040, DAA1040 and Agere Generic Modem Drivers for

LTWinmodem and PCI based modems and components.

As set forth in the attached Exhibit A, GE Licensing identifies certain of the above stated

Accused Devices of Agere, alone or in combination, as infringing (both literally and/or under the

doctrine of equivalents) at least claims 1, 12, and 46 of United States Patent No. 5,048,054;

claims 1, 3, 5, and 7 of United States Patent No. 5,428,641; and claims 1, 26, and 36 of United

States Patent No. 5,446,758; and claims 1, 9, and 30 of United States Patent No. 6,198,776.

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, GE Licensing has

provided or will provide non-privileged documents from which the information sought in this

interrogatory may be derived, including the following, referring to documents which have

already been produced by GE Licensing to Defendants in this action:

GE001126 - GE001671

GE Licensing reserves the right to amend its response and identify additional bates

numbers of the documents produced under Rule 33(d) in its response to this interrogatory.

## SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:

Subject to all and without waiving any previously stated objections and reservations, GE

Licensing further responds as follows:

### Agere Products

GE Licensing identifies Agere products that, alone or in combination, infringed or

currently infringe the Patents-in-Suit (both literally and/or under the doctrine of equivalents) as

follows: any analog modem compliant with ITU-T recommendation V.34, V.90, V.92 (including

any hardware modem, soft-modem or modem chip set product, component thereof, or product

containing same), made or sold by Agere, including, but not limited to, SV92A1, SV92A2,

SV92A3/MDC1.5 Soft Modem, SV92A4, SV92A5, SV92A35, SV92A36, Montblanc Family,

4

SV92P, SV92PL, SV92P2, SV92PP/PCI Soft Modem, Olympia Family, SV92U2/USB 2.0 Soft

Modem, SV92U3, SV92U4, SV92U5, SV92U6, SV92EX, CVxx family (including but not

limited to CV92, CV92L, CV90L, CV34 and CV34L), HV92, OCM-34, OCM-90, OCM-92,

OCM-92E, Apollo Family, Mars Family, Luna Family, L56DMS, L56DAS, L56DASI, L56LAS,

L56LASI, L56xAFI, L56xL, L56xAF, L56xVS, L56RV, L56xMF, L56XT, LU97, CFAX34,

CV92, CV92L, CV90L, CV34, CV34L, CFAX34, Venus Family, DSP1641, DSP1641B,

DSP1641C, DSP1642C, DSP1643, DSP1644, DSP1645, DSP1646, DSP1647, DSP1648,

DSP1673/1673, DSP1675/1675, DSP1670/1670, DP2L34D, DP2S, DP3, DP2L34D, DP2L34X,

DP2SKGTV, DP2LV34D, DP2Vxx family (including but not limited to DP2V34DX and

DP2V90DX), DP3V34X, DPV34X, DPV34DX, DPV90DX, APL43, PCI Controllerless Modem

Family, 1648, DSP1648, DSP1648C, LU97, Scorpio, CSP1037, CSP1037B, CSP1034x family

(including but not limited to CSP1034C, CSP1034AH, CSP1034S and CSP1034S-V11),

CSP1035A, CSP1038, CSP1040, CSP1040A3, CSP1040A2, DAA1040 and Agere Generic

Modem Drivers for LTWinmodem and PCI based modems and components.

<u>Infringement</u>

As set forth in Exhibit A to GE Licensing's Supplemental Response to Interrogatory No.

1, served Nov. 29, 2007, GE Licensing identifies certain of the above stated Accused Devices of

Agere, alone or in combination, as infringing (both literally and/or under the doctrine of

equivalents) at least claims 1, 12, and 46 of United States Patent No. 5,048,054; claims 1, 3, 5,

and 7 of United States Patent No. 5,428,641; and claims 1, 26, and 36 of United States Patent

No. 5,446,758; and claims 1, 9, and 30 of United States Patent No. 6,198,776.

GE Licensing will supplement and amend Exhibit A following review of Agere's source

code.

5

<u>Supporting Documents</u>

GE Licensing states that discovery is ongoing and there are documents and information

relevant to this interrogatory which appear not to have been produced by Agere. *See* GE

Licensing's March 12, 2008 and April 4, 2008 motions to compel. Moreover, Agere's source

code has not yet been produced or reviewed.

Nevertheless, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, GE

Licensing has received, provided or will provide non-privileged documents from which

information sought in this interrogatory may be derived. GE Licensing states that Agere's

document production was primarily produced in native format on CDs or DVDs bearing a single

production number, thereby making the identification of specific documents unduly burdensome

and/or impossible. Subject to later amendment, GE Licensing identifies the following

documents from which information sought in this interrogatory may be derived:

GE001126 - GE001671<br>
Agere GE 001912: v2184-pci-x86.zip<br>
Agere GE 001913: "Archived Training Presentations" folder<br>
Agere GE 001913: "Assorted Modem Designs" folder<br>
Agere GE 001913: "Code Release Histories" folder<br>
Agere GE 001913: "Embedded Modem Design PAKs" folder<br>
Agere GE 001913: "Misc" folder<br>
Agere GE 001913: "Modem Application Notes" folder<br>
Agere GE 001913: "Out of Date Design" folder<br>
Agere GE 001913: "PC Design PAKs" folder<br>
Agere GE 001913: "WHQL Info" folder<br>
Agere GE 003132: "MRI Records" folder<br>
Agere GE 003132: "projectView.asp_files" folder<br>
Agere GE 003133<br>
Agere GE 003134<br>
Agere GE 003135: "CV22A" folder<br>
Agere GE 003135: "OCMP" folder<br>
Agere GE 003135: "SV92A3" folder<br>
Agere GE 003135: "SV92A35" folder<br>
Agere GE 003135: "SVEX92EX" folder<br>
Agere GE 003135: "SVx" folder<br>

6

Agere GE 003136-16465
Agere GE 015308-19777
Agere GE 016056
Agere GE 016466
Agere GE 01956-58
Agere GE 019778
BRC-A 1-249
The files that have yet to be provided which are listed in Standalone Computer Directory
Structure - Confidential - Outside AEO Only - Version 2.txt
Agere GE 000070-000092.pdf

CCD-PCOEM-MODEM-102002.ppt

NA_Training_Presentation_Modems_rev6.ppt

Modem-Basics-101.ppt

testplan_results-withxp.pdf

SoftMarsv2.1.41_4customers.xls

MN01065-1.pdf

DPV2R030701.doc

DPV2R082801.pdf

DPV2R103001.pdf

Argentina2 22J1799R.pdf

China 22J1804R.pdf

V92Homoligation_011002.pdf

sv92p-pak.htm

_PCISoft (SV92P) Modem Design PAK.pdf

dnet_ref.pdf

_Mars Design PAK.pdf

atdfcom_ATcommands.pdf

7

Dephi_Scorpio_Intl_USA_Field_Test110305.pdf

_NGD Modem Chip Set Design PAK.pdf

MRIreportDetail.asp (2855).html

MRIreportDetail.asp (56441).html

MRIreportDetail.asp (31057).html

MRIreportDetail.asp (48387).html

DP2S_Doc_Flow_Plan_072402.xls

ATCMDS_controller08272007.pdf

v90_56k_modem_ug_20021031.pdf

v_92_manual_20020815.pdf

VAR_GAIN_txgains.CAP

ATI11-observations.doc

05d08_05delphiAM3A3V2S510=70ati11.xls

ICT_Ph1_Final_012506.doc

ocmv3.9-1.7_multitech.xls

OCMREL6.729i.zip?OCMREL6.729i\dpdloads\dp3sl\out2h\DP3Main_1_21_1_10.lab

pisa+_tweekie_multitech.xls

ATCMDS_controller08272007.doc

Pinball2.1.75_v34ncresults.zip?06fl1_09.log

v34ScorpiotoDelphi2.1.75.zip?06e_11_11.log

delphi2.1.75v.34results.zip?06e_11_09.log

v34Olympia2.1.75results?06w11_10.log

7_hours_transfer_ati11.xls

soft-mdc-pak.htm

Agere GE 013552-13564.pdf

SVX-update-20070118a HP.ppt

IBM-IntelScorpio.ppt

CAC-May02_big_presentation.ppt

Modem_Computex_srai_5-23b.ppt

MN00088.pdf

at cmd 2.0.PDF

cpq-at-cmds.PDF

MN04094.zip?MN04094.htm

Soft Modem AT Command without V92 commands.pdf

AFLAC.txt

IBM-roadmap.zip?IBM\General_OEM.ppt

IBM-roadmap.zip?IBM\V92.ppt

Host-Based-commands.pdf

Perseus Test Jim Loebach.txt

Scorpio-2.1.20.xls

Mars812unit-test.xls

Perf_master.xls

Soft-Cmd-MN01-064DMOD-3.pdf

Agere GE 016531-16540.pdf

Agere GE 016541-16549.pdf

Agere GE 016550-16557.pdf

9

Agere GE 016558-16564.pdf

Agere GE 016565-16569.pdf

MRIreport%%MRIreportDetail.asp_074.html

RE: MRI item 41594 -- Pinball bad connection rate with parallel CID/panel

phone.msg

SoftModem_ATCommand.pdf

Softmodem MRs attached.msg

venus-dp.pdf

ModemHelp Tech Doc.doc

apollo3.pdf

Knowledgeable Persons

GE Licensing objects that the request for the "identification…of all persons knowledgeable of [GE Licensing's] contentions" is vague and confusing. GE Licensing has agreed to provide a witness on related topic(s) under Agere's 30(b)(6) deposition notice to GE Licensing and will further make its expert(s) available for deposition during the expert discovery period set forth in the Scheduling Order.

GE Licensing reserves the right to amend its response and identify additional Bates numbers of the documents produced under Rule 33(d) in its response to this interrogatory.

INTERROGATORY NO. 2

For each claim identified in the answer to Interrogatory No. 1, state the complete factual and legal basis for your contentions that Agere's infringement of those claims was willful including but not limited to identification of all documents that relate to, support, or contradict your contentions and identification of all persons knowledgeable of your contentions.

RESPONSE TO INTERROGATORY NO. 2:

In addition to the General Objections, GE Licensing objects to this interrogatory as premature to the extent it calls for GE Licensing's contentions at this early stage of the litigation. GE Licensing also objects to this interrogatory as vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information. In addition, GE Licensing objects to this interrogatory as seeking information protected from discovery by the attorney-client privilege, the work product doctrine, or other privilege. GE Licensing's investigation of Agere's infringement is continuing. Without waiving the stated objections, GE Licensing will respond on a mutually agreed-upon date for all contention interrogatories.

FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:

Subject to all and without waiving any previously stated objections and reservations, GE Licensing further responds as follows:

Agere was knowledgeable of the Patents-in-Suit and their potential application to the products of Agere and/or Agere's customers as of at least August 2003. Agere Response to Interrogatory No. 15, served Feb. 8, 2008. Further, on information and belief, Agere was knowledgeable of the Patents-in-Suit and their potential application to the products of Agere and/or Agere's customers as of at least March, 2001. Despite this knowledge, Agere knowingly and recklessly made, used, sold, or offered for sale products practicing one or more of the claims of the Patents-in-Suit or induced others to do the same.

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, GE Licensing has received, provided or will provide non-privileged documents from which the information sought

11

in this interrogatory may be derived, including the following, referring to documents which have already been received or produced by GE Licensing in this action:

GE001126 - GE001671
Agere GE 015268-307
Agere GE 016531-569

GE Licensing states that discovery is ongoing. GE Licensing reserves the right to amend its response and identify additional bates numbers of the documents produced under Rule 33(d) in its response to this interrogatory.

<u>INTERROGATORY NO. 3</u>

For each Accused Device identified in the answer to Interrogatory No. 1, provide a claim chart (or its equivalent) showing a comparison of each claim limitation from each of the Patents-in-Suit with each aspect of the Accused Device you contend infringes that limitation, including whether such alleged infringement is direct, contributory, by inducement, or under the doctrine of equivalents.

<u>RESPONSE TO INTERROGATORY NO. 3</u>

In addition to the General Objections, GE Licensing objects to this interrogatory as premature to the extent it calls for GE Licensing's contentions at this early stage of the litigation. GE Licensing also objects to this interrogatory as vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information. In addition, GE Licensing objects to this interrogatory as seeking information protected from discovery by the attorney-client privilege, the work product doctrine, or other privilege. GE Licensing's investigation of Agere's infringement is continuing. Without waiving the stated objections, GE Licensing will respond on a mutually agreed-upon date for all contention interrogatories.

## FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:

Subject to all and without waiving any previously stated objects and reservations, GE Licensing further responds as follows: attached hereto as Exhibit A are claim charts asserting infringement (both literally and/or under the doctrine of equivalents).

GE Licensing states that discovery is ongoing and there are documents and information relevant to this interrogatory which appear not to have been produced by Agere. *See*, GE Licensing's March 12, 2008 and April 4, 2008 motions to compel. Moreover, Agere's source code has not yet been produced or reviewed.

GE Licensing reserves the right to supplement and modify these charts and to assert infringement by equivalents as to appropriate limitations should the Court's claim construction preclude a claim of literal infringement but permit a claim of infringement under the Doctrine of Equivalents.

## SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:

Subject to all and without waiving any previously stated objections and reservations, GE Licensing further responds as follows: *see* Exhibit A to GE Licensing's Supplemental Response to Interrogatory No. 1, served Nov. 29, 2007 (claim charts asserting infringement, both literally and/or under the doctrine of equivalents). GE Licensing will supplement and amend Exhibit A following review of Agere's source code.

As Agere has yet to produce certain product-related information, GE Licensing reserves the right to amend and supplement these charts and to assert infringement by equivalents as to appropriate limitations should the Court's claim construction preclude a claim of literal infringement but permit a claim of infringement under the Doctrine of Equivalents.

13

INTERROGATORY NO. 12

     State all facts concerning your contention that you have been damaged by Defendant's alleged infringement of the Patents-in-Suit, including without limitation, a computation of each category of such damages and the basis and methodology therefore, and the factual allegation of any claimed lost profits by Plaintiff. To the extent your response to this interrogatory includes a reasonable royalty, state your contentions as to what would be a reasonable royalty, if any, under 35 U.S.C. § 284 for the use of the alleged invention in the Patents-in-Suit.

RESPONSE TO INTERROGATORY NO. 12:

     In addition to the General Objections, GE Licensing objects to this interrogatory as premature to the extent it calls for GE Licensing's contentions or information related to its contentions at this early stage of the litigation. GE Licensing also objects to this interrogatory as vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information. In addition, GE Licensing objects to this interrogatory as seeking information protected from discovery by the attorney-client privilege, the work product doctrine, or other privilege. GE Licensing's investigation of Agere's infringement is continuing. Without waiving the stated objections, GE Licensing will respond on a mutually agreed date for all contention interrogatories.

FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:

     In addition to the General Objections, GE Licensing objects to this interrogatory as premature to the extent that it calls for contentions or information that will be the subject of expert discovery. Further, during the April 21, 2008 30(b)(6) deposition of Agere witness Surinder Rai, it was determined that Agere's primary production of sales information, Exhibit 2 to Agere's February 8 supplemental interrogatory responses, was incorrect, should not be used, and would be replaced by Agere. This has not yet occurred. Moreover, Agere has yet to produce certain product-related information—which is the subject of various motions before the

Court—required to respond to this interrogatory. GE Licensing states that it will supplement its response upon receipt and review of documents and information from which it can perform the proper analysis and in the course of expert discovery.

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, GE Licensing has received, provided or will provide non-privileged documents from which the information sought in this interrogatory may be derived, including the following, referring to documents which have already been received or produced by GE Licensing in this action:

> Agere's "Exhibit 2" (to be delivered by Agere)
> Agere GE 015268-307
> Agere GE 016531-569

INTERROGATORY NO. 17

State the factual and legal basis for GE's contention that Agere is not licensed to practice the inventions claimed in the Patents-in-Suit pursuant to the terms of the January 30, 2001 Patent Cross License Agreement between Motorola, inc. and AltoCom, Inc.

### RESPONSE TO INTERROGATORY NO. 17:

In addition to the General Objections, GE Licensing objects to this interrogatory as premature to the extent it calls for GE Licensing's contentions at this early stage of the litigation. GE Licensing also objects to this interrogatory as vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information. In addition, GE Licensing objects to this interrogatory as seeking information protected from discovery by the attorney-client privilege, the work product doctrine, or other privilege. Without waiving the stated objections, GE Licensing responds as follows:

Agere's response to GE Licensing's Interrogatory No. 31 states that Agere contends that it is licensed under "one or more" of four different agreements. Agere has not yet produced the

copies of these agreements in their possession. Agere has also failed to answer GE Licensing's

interrogatory nos. 32-42. GE Licensing will be supplement this response under the schedule

agreed to by the parties for supplemental of all responses.

### FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 17:

Agere's February 8, 2008 response to GE Licensing's Interrogatory No. 31 (which

replaces all prior responses) states that Agere contends it is licensed to the Patents-in-Suit

"pursuant to the Patent Cross License Agreement between Motorola, Inc. and AltoCom, Inc.

dated January 30, 2001, including but not limited to § 4.2 of that Agreement." Agere has failed

to provide any specificity or particularity with regard to this alleged defense. GE Licensing's

response is, therefore, limited by the brevity and incomplete nature of Agere's contention as set

forth in its February 8, 2008 response to GE Licensing's Interrogatory No. 31. Subject to this,

GE Licensing states that Agere is not a customer and/or licensee of Altcom. Agere is not a party

to the referenced January 31, 2001 agreement and Agere has not contended that any contractual

relationship between Agere and AltoCom, Inc. exists. Further, if Agere is a "customer and/or

licensee" of Altocom, it is a "new" "customer or licensee" under § 4.2 of the referenced January

30, 2001 agreement. Further, Agere has not presented any evidence that it purchased

"standalone ALTOCOM software MODEMS" from Altocom. Agere has also not contended that

the accused Agere Products incorporate any "standalone ALTOCOM software MODEMS"

delivered under the January 30, 2001 Motorola/AltoCom agreement.

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, GE Licensing has

identified documents from which the information sought in this interrogatory may be derived,

including the following:

      Agere/GE 00483-84
      Agere/GE 000493-95

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Joel M. Freed
Brian E. Ferguson
Michael W. Connelly
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005-3096
(202) 756-8000

Edwin H. Wheeler
McDermott Will & Emery LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
(650) 813-5000

Dated: April 23, 2008
861518

By: _____
    Richard L. Horwitz (#2246)
    Philip A. Rovner (#3215)
    David E. Moore (#3983)
    Hercules Plaza
    P. O. Box 951
    Wilmington, Delaware 19899
    (302) 984-6000
    rhorwitz@potteranderson.com
    provner@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Plaintiff*
*CIF Licensing, LLC, d/b/a*
*GE Licensing*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on April 23, 2008, true and correct

copies of the within document were served on the following counsel of record at the addresses

and in the manner indicated:

**BY HAND DELIVERY AND E-MAIL**

Josy W. Ingersoll, Esq.
John W. Shaw, Esq.
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
jingersoll@ycst.com
jshaw@ycst.com

**BY E-MAIL**

David E. Sipiora, Esq.
Ian L. Saffer, Esq.
Chad E. King, Esq.
Ryan D. Phillips, Esq.
Townsend and Townsend and Crew LLP
1200 17th Street, Suite 2700
Denver, CO 80202
desipiora@townsend.com
ilsaffer@townsend.com
ceking@townsend.com
rdphillips@townsend.com

Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CIF LICENSING, LLC, d/b/a<br>GE LICENSING, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 07-170-JJF |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| AGERE SYSTEMS INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT AGERE SYSTEMS INC.'S SECOND SUPPLEMENTAL ANSWERS TO PLAINTIFF CIF LICENSING, LLC'S INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Agere

Systems Inc. ("Defendant") hereby supplements its answers to CIF Licensing, LLC, d/b/a GE

Licensing's ("Plaintiff") Interrogatory Nos. 1-43 ("Plaintiff's Interrogatories"), stating as follows:

## GENERAL STATEMENTS AND OBJECTIONS

1.      The following responses are made solely for the purpose of this action and are subject to

all objections to competence, authenticity, relevance, materiality, propriety, admissibility, and

any and all other objections and grounds which would or could require or permit the exclusion of

any statement or response from evidence, all of which objections and grounds are reserved and

may be interposed at the time of trial.

2.      Subject to the specific and general objections listed herein, Defendant will answer each

interrogatory with responsive, non-privileged information within the current actual knowledge of

Defendant or through cross-references to produced documents according to F.R.Civ.P. 33(d).

3.      Defendant will answer interrogatories calling for confidential information or trade secrets

outside the time period for the applicable statute of limitations, and information and documents concerning those products therefore is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

## ANSWERS TO INTERROGATORIES

### INTERROGATORY NO. 1

Identify each and every Agere Product ever manufactured, used, distributed, sold, or offered for sale by or on behalf of Agere by model name, trade name, marketing name, internal name, type, description, design number, catalog number, and all other names and/or designations used by Agere, and the date it was first sold, offered for sale, or marketed.

**ANSWER:**

Defendant objects to this interrogatory on the grounds that it is compound, vague, overly broad, unduly burdensome, seeks information that is not relevant and/or that occurred before the applicable limitations period, and not reasonably calculated to lead to the discovery of admissible evidence. Defendant also incorporates by reference its General Objections, including, in particular, General Objection No. 7 set forth above.

Subject to and without waiving the foregoing objections and its General Objections, Defendant answers as follows: Defendant incorporates by reference Exhibit 1 hereto, which identifies Defendant's products by chipset name, device packaging code, device IC code and/or common name. Defendant believes that Exhibit 1 identifies each type of modem sold or offered for sale after March 23, 2001. Defendant's investigation is ongoing, however, and Defendant reserves the right to supplement this list as additional information becomes available.

4

## INTERROGATORY NO. 2

Identify each entity that is or has been involved in any way in the design, development, manufacturing, assembly, marketing, sales and/or distribution of each Agere Product identified in response to Interrogatory No. 1, including the name and location of such entity, its relationship with Agere, identification of any licenses or other agreements with such entity, as well as a narrative description of each such involvement (including the location of any such involvement) of each such entity.

## ANSWER:

Defendant objects to this interrogatory on the grounds that it is compound, vague, overly broad, unduly burdensome, seeks information that is not relevant and/or that occurred before the applicable limitations period, and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to Plaintiff's request for "a narrative description of each such involvement" because the wide range of information potentially responsive to this request is more properly sought through less burdensome forms of discovery, including a request for documents and/or a Fed. R. Civ. Pro. 30(b)(6) deposition. Defendant also incorporates by reference its General Objections, including, in particular, General Objection No. 7 set forth above.

Subject to and without waiving the foregoing objections and its General Objections, Defendant answers as follows: Entities involved with the products identified in Defendant's answer to Interrogatory No. 1 include the following:

5

Silicon Laboratories Inc. has provided chipsets for use in some of Defendant's products. Defendant is a customer of Silicon Laboratories Inc. Upon information and belief, Silicon Laboratories Inc. is located at 400 West Cesar Chavez, Austin, TX 78701. Exhibit 1 hereto identifies products employing chipsets provided by Silicon Laboratories Inc.

Broadcom Corp. f/k/a AltoCom, Inc. has provided source code for Defendant's soft modem products. Upon information and belief, Broadcom Corp. is located at 5300 California Avenue, Irvine, CA 92617. Exhibit 1 hereto identifies soft modem products (under the headings PCAC97/HDA Soft Modems," PC U.S.B Soft Modems" and "PC PCI/PIC_Express Soft Modems"), all of which use software derived from source code provided by Broadcom Corp. or its predecessor in interest.

Defendant has produced or will produce all known licenses and agreements with Silicon Laboratories Inc., Broadcom Corp., and AltoCom, Inc. Defendant is an express or implied licensee of Broadcom Corp and/or AltoCom, Inc. and of Silicon Laboratories.

Additionally, Exhibit 7 hereto identifies additional entities involved in various activities pertaining to the production of Defendant's modems. Other than the specific entities mentioned above, Defendant is not aware of licenses to Defendant from any of these entities.

## INTERROGATORY NO. 3

State precisely when Agere commenced any activities, projects or programs, whether formal or informal, directed to the design and development of each Agere Product identified in response to Interrogatory No. 1, including a description of the activities, projects and/or programs (including their objectives and results), and, for each such activity, identify the

6

person(s) knowledgeable about such activities, the person(s) involved in such activities, and state precisely where such activities were undertaken.

**ANSWER:**

Defendant objects to this interrogatory on the grounds that it is compound, vague, overly broad, unduly burdensome, seeks information that is not relevant and/or that occurred before the applicable limitations period, and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to Plaintiff's request for a "description of the activities, projects and/or programs" because of the wide range of information potentially responsive to this request is more properly sought through less burdensome forms of discovery, including a request for documents and/or a Fed. R. Civ. Pro. 30(b)(6) deposition. Defendant also incorporates by reference its General Objections, including, in particular, General Objection No. 7 set forth above.

Subject to and without waiving the foregoing objections and its General Objections, Defendant answers as follows: Defendant commenced activities related to the design or development of the products identified in response to Interrogatory No. 1 in approximately 1992, and thereafter. Dates of specific milestones with regard to each of the products identified in response to Interrogatory No. 1, where available, may be found in Exhibit 1 hereto, which is incorporated by reference herein. Activities related to the products identified in response to Interrogatory No. 1 include development of product requirements, product design, product development, product prototyping, product testing (including homologation testing), general marketing activities, customer presentations, manufacturing activities and sales activities. Additional information about specific projects, programs or activities undertaken by Defendant

7

directed to the design or development of the products identified in response to Interrogatory No. 1 may be found in documents produced from Defendant's MRI system. Further, to the extent that any of the products identified in response to Interrogatory No. 1 were first sold or offered for sale after March 23, 2001, information about such sales can be found in Exhibit 2 hereto, which is incorporated by reference.

### INTERROGATORY NO. 4

Identify the three persons most knowledgeable about the structure, design, development, function, and operation of each Agere Product identified in response to Interrogatory No. 1.

### ANSWER:

Defendant incorporates by reference its General Objections, including, in particular, General Objection No. 7 set forth above.

Subject to and without waiving the foregoing objections and its General Objections, Defendant answers as follows: The three persons most knowledgeable about the structure, design, development, function, and operation of Defendant's modem products are Ashok Vernekar, Herb Cohen, and Larry Bays. All can be reached via counsel for Defendant.

### INTERROGATORY NO. 5

Identify the three persons most knowledgeable about the manufacture and/or assembly of each Agere Product identified in response to Interrogatory No. 1.

8

Subject to and without waiving the foregoing objections and its General Objections, Defendant answers as follows:  Defendant is not aware of any such plans or attempts, nor any documents regarding the same, concerning any plans or attempts to redesign any of the products identified in response to Interrogatory No. 1.

## INTERROGATORY NO. 12

State whether Agere contends that it does not infringe, either literally or under the doctrine of equivalents, any claim of the GE Patents and, if so, for each such claim identify all legal and factual bases for each such contention, and how the identified documents, things, facts or knowledge support this assertion, and identify all people with knowledge thereof and all documents that support or refute Your contention.

## ANSWER:

Defendant objects to this interrogatory on the grounds that it is compound, vague, overly broad, and unduly burdensome, and seeks information that is not relevant, and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this request because it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege.  Defendant incorporates herein its General Objections, including, in particular, General Objection No. 8.

Subject to and without waiving the foregoing objections and its General Objections, Defendant answers as follows:  Defendant incorporates by reference Defendant's response to Interrogatory No. 23.

14

product doctrine, and/or any other applicable privilege. Defendant incorporates herein its General Objections, including, in particular, General Objection No. 8.

Subject to and without waiving the foregoing objections and its General Objections, Defendant answers as follows: Other than positions taken in conjunction with negotiations with Plaintiff, Defendant has not taken any taken regarding the validity, enforceability, or infringement by Defendant of any of the GE Patents. All other information responsive to this interrogatory is subject to the attorney-client privilege and/or the attorney work product doctrine.

**INTERROGATORY NO. 17**

State whether Agere has ever been informed or concluded that any of the GE Patents is invalid, unenforceable, or not infringed by Agere, and, if so, identify the person(s) and/or entity that so informed Agere, or so concluded, the information communicated to Agere and the circumstances under which Agere was so informed, or so concluded, identify all documents or prior art relating to what Agere was informed, or so concluded, and explain the relationship of those documents and such prior art to the information Agere was provided or considered.

**ANSWER:**

Defendant objects to this interrogatory on the grounds that it is compound, vague, overly broad, and unduly burdensome, and seeks information that is not relevant, and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request because it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege. Defendant incorporates herein its

18

General Objections, including, in particular, General Objection No. 8. Plaintiff has not identified any claims allegedly infringed by Defendant's products.

Subject to and without waiving the foregoing objections and its General Objections, Defendant answers as follows: All information responsive to this interrogatory is subject to the attorney-client privilege and/or the attorney work product doctrine.

**INTERROGATORY NO. 18**

Identify all opinions, advice, analyses or communications, whether written or oral, relating to the enforceability, validity or infringement of any of the GE Patents, and identify the person(s) who provided the opinion, advice, analysis or communication, the person(s) to whom the opinion, advice, analysis or communication was provided, the date such opinion, advice, analysis or communication was provided and describe the substance of the opinion, advice, analysis or communication which was provided and identify all documents relating to the opinion, advice, analysis or communication provided.

**ANSWER:**

Defendant objects to this interrogatory on the grounds that it is compound, vague, overly broad, and unduly burdensome, and seeks information that is not relevant, and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request because it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege. Defendant incorporates herein its General Objections, including, in particular, General Objection No. 8. Plaintiff has not identified any claims allegedly infringed by Defendant's products.

19

Dated: February 8, 2008

TOWNSEND AND TOWNSEND AND CREW LLP

_____

David E. Sipiora
Ian L. Saffer
Chad E. King
1200 17th Street, Suite 2700
Denver, Colorado 80202
Telephone: (303) 571-4000
Facsimile: (303) 571-4321
Email: desipiora@townsend.com
Email: ilsaffer@townsend.com
Email: ceking@townsend.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Josy W. Ingersoll
John Shaw
Chad Stover
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391
Telephone: 302-571-6600
Facsimile: 302-571-1253
Email: jingersoll@ycst.com
Email: jshaw@ycst.com
Email: cstover@ycst.com
**ATTORNEYS FOR AGERE SYSTEMS INC.**

61

# EXHIBIT C

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT D

TOWNSEND
*and*
TOWNSEND
*and*
CREW
LLP

**Denver**

1200 Seventeenth Street
Suite 2700
Denver, Colorado 80202
Tel  303.571.4000
Fax 303.571.4321

Ryan D. Phillips

April 4, 2008

*VIA E-MAIL AND U.S. MAIL*

Michael W. Connelly
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005-3096
Email: mconnelly@mwe.com

Re:    *CIF Licensing, LLC d/b/a GE Licensing ("GE") v. Agere Systems, Inc.*
Civ. Action No. 07-170 (JJF)(D. Del.)

Dear Mike:

We write to resolve certain remaining issues with respect to GE's answers to Agere's First Set of Interrogatories, GE's supplemental answers to Agere's First Set of Interrogatories Nos. 1 and 3, and GE's answers to Agere's Second Set of Interrogatories.

GE has not provided any substantive responses to Agere's Interrogatory Nos. 2 and 12. With respect to Interrogatory 2, please supplement GE's answer to state all law and facts, including identification of all documents, supporting GE's position that Agere's alleged infringement was willful. With respect to Interrogatory 12, please supplement GE's answer to state all facts concerning GE's contention that it has been damaged by Agere's alleged infringement, including without limitation a computation of each category of such damages and the basis and methodology therefore, as well the factual allegation for any claimed lost profits by GE. To the extent that your answer to Interrogatory 12 includes a reasonable royalty, please state GE's contentions as to the amount and calculation of that reasonable royalty.

In its letter dated February 5, 2008, GE stated that it would further supplement its answers to Agere's Interrogatory Nos. 1 and 3 after GE received all the relevant product related information from Agere. While Agere does not believe its production is tied to GE's duty to supplement its answers to interrogatories, Agere has produced all responsive, non-privileged material, subject to its objection. Thus, GE immediately should supplement its answers to Interrogatories Nos. 1 and 3 to identify all accused products and to provide claim charts comparing the allegedly infringed claims to the accused products.

TOWNSEND
*and*
TOWNSEND
*and*
CREW
ᴸᴸᴾ

Finally, its letter dated February 5, 2008, GE stated that it would provide a supplemental answers to Agere Interrogatory No. 17 once Agere completed production of documents and responded to GE's Interrogatories No. 31-42. Again, we do not accept that GE's discovery obligations are tied to Agere's production, but we do note that Agere has produced all responsive, non-privileged materials, subject to its objections, and provided supplemental answers to GE's interrogatories. With that excuse removed, we expect that GE will supplement its answer to Agere Interrogatory No. 17 to state all law and facts supporting GE's position that Agere is not licensed to practice the patents.

Please confirm that GE will provide this long-outstanding information within seven calendar days of the date of this letter. If you have any questions, we will look forwarding to discussing them during our meet and confer on Monday, April 7, 2008.

Sincerely,

Ryan D. Phillips

RDP/kmb

61329693 v1

# EXHIBIT E

**Koenig, Amanda**

| | |
|---|---|
| **From:** | Connelly, Michael |
| **Sent:** | Monday, April 07, 2008 3:26 PM |
| **To:** | gevagere@townsend.com |
| **Cc:** | Wheeler, Edwin; Freed, Joel |
| **Subject:** | Todays meet and confer |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Green |

Ryan - we will call in shortly.  We expect the agenda will be:

1. AGere's 30(b)(6) objections

2. Agere's 30(b)(6) witness identification

3. Whether Agere will accept service for the identified Agere employees

4. Your April 4 email regarding production

Mike

---

Michael W. Connelly
McDermott Will & Emery LLP | 600 13th Street, N.W., Washington, D.C. 20005
Main: 202-756-8000 | Direct: 202-756-8037 | Fax: 202-756-8087 | www.mwe.com | mconnelly@mwe.com

---

# EXHIBIT F

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Michael W. Connelly
Attorney at Law
mconnelly@mwe.com
202.756.8037

April 8, 2008

**VIA E-MAIL**

Ryan D. Phillips
Townsend and Townsend and Crew LLP
1200 Seventeenth Street
Suite 2700
Denver, CO 80202

Re:    *CIF Licensing, LLC, d/b/a GE Licensing v. Agere Systems Inc., C.A. No. 07-170*

Dear Ryan:

This is in response to your letter of April 4 regarding certain issues related to GE Licensing's responses to Agere Interrogatory Nos. 1, 2, 3, 12 and 17.

With respect to Agere Interrogatory No. 2, this is the first time that Agere has raised any substantive problems with GE Licensing's response or objections. While Agere has not provided us with sufficient information for us to formulate a complete response, Agere will supplement its response to this Interrogatory using the available information. As to Agere Interrogatory No. 12, Agere's only prior mention of this Interrogatory was in its January 28 letter in which GE Licensing was asked to list specific documents in the response. As Agere knows, there is a pending motion to compel that covers a broad array of unproduced financial information. This motion is scheduled to be heard before the Court this Friday, April 11. Again, while Agere has not provided us with sufficient information for us to formulate a complete response, Agere will supplement its response to this Interrogatory using the available information.

As to Interrogatory Nos. 1 and 3, GE Licensing stated in its letter of February 5, 2008 that "GE Licensing will be supplementing its interrogatory responses (including nos. 1 and 3) once it has received production of all the relevant product related information from Agere." As Agere is aware from our recent correspondence and the motion to compel filed today, Agere has failed to provide even the most basic information about certain accused products. Agere has also objected (without any specific reason and using the maximum days allowed) to GE Licensing's proposed experts who were engaged to read Agere's software code. Further, Agere still has not

Ryan Phillips
April 8, 2008
Page 2

responded to any of our inquiries regarding third party code. As it appears that we have now reached a solution to the expert issue, Agere can move ahead with placing at least its own software in escrow. This and the upcoming scheduled depositions will allow GE Licensing to provide supplementation to Agere Interrogatory nos. 1 and 3.

You request a supplemental response to Agere Interrogatory No. 17. In our February 5, 2008 letter, we requested that Agere "please confirm that Agere has produced all documents related to its alleged licensing defense and does not intend to further supplement its responses to GE Licensing's interrogatories and requests for production related to the alleged licensing defense (including without limitation GE Licensing's Interrogatory Nos. 31-42 and Request for Production Nos. 36-44)." To our knowledge, no such confirmation was received. However, we will supplement our response to this Interrogatory No. 17 with the understanding that depositions on this topic have yet to be held.

We think that this should satisfy Agere's concerns. In the future, we would ask that Agere please notify GE Licensing of continuing issues as they arise, rather than waiting another two-plus months.

In addition, it would help if Agere could confirm whether Agere's February 8 supplemental responses to GE Licensing's First and Second Interrogatories and Production Requests are intended to supplement or to replace Agere's earlier responses. They appear to be a replacement, supeseding the prior responses.

If you would like to further discuss these issues, we are happy to schedule a call at any time.

Sincerely,

Michael W. Connelly

cc:    Counsel of Record for Agere

WDC99 1552865-1.037743.0051

# EXHIBIT G

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Michael W. Connelly
Attorney at Law
mconnelly@mwe.com
202.756.8037

April 23, 2008

**VIA E-MAIL**

David Sipiora
Townsend and Townsend and Crew LLP
1200 Seventeenth Street
Suite 2700
Denver, CO 80202

Re:    *CIF Licensing, LLC, d/b/a GE Licensing v. Agere Systems Inc., C.A. No. 07-170*

Dear David:

As promised in our April 8 letter (to which we have yet to receive a response), attached please find GE Licensing's second supplemental responses to Agere Interrogatory Nos. 1-3, 12 and 17. These responses fully address Agere's concerns set forth in its letter of April 4 and its pending motion to compel.    Please immediately withdraw Agere's motion to compel.

If you have any further concerns, please schedule a meet and confer for this week.

Sincerely,

Michael W. Connelly

cc:    Counsel of Record for Agere

WDC99 1558807-1.037743.0051

U.S. practice conducted through McDermott Will & Emery LLP.
600 Thirteenth Street, N.W. Washington, D.C. 20005-3096 Telephone: 202.756.8000 Facsimile: 202.756.8087 www.mwe.com

# EXHIBIT H

# McDermott
# Will & Emery

Boston Brussels Chicago Düsseldorf Houston London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Amanda E. Koenig
Associate
akoenig@mwe.com
202.756.8075

March 17, 2008

VIA E-MAIL

Ian L. Saffer
Townsend and Townsend and Crew LLP
1200 Seventeenth Street
Suite 2700
Denver, CO 80202

Re:   *CIF Licensing, LLC, d/b/a GE Licensing v. Agere Systems Inc.*, C.A. No. 07-170

Dear Mr. Saffer:

Pursuant to Paragraph 2(c) of the Protective Order, enclosed please find the signed undertakings and *curricula vitae* of Messrs. Buterbaugh, Lopes, and Jackson. We would appreciate it if you would let us know of any issues as soon as possible.

Sincerely,

Amanda E. Koenig

AEK/AEK

**Enclosures**

cc:    Counsel of Record for Agere

WDC99 1543089-1.037743.0051

U.S. practice conducted through McDermott Will & Emery LLP.

600 Thirteenth Street, N.W. Washington D.C. 20005-3096  Telephone: 202.756.8000  Facsimile: 202.756.8087  www.mwe.com

**Gene C. Buterbaugh**
**Datatek Applications Incorporated**
**379 Campus Drive**
**Somerset, New Jersey**
**732-580-8005**

**Datatek Applications/US Victory Group**
**January 2001 to Present**
- **VP Intellectual Property Business Development.** Determine project requirements, deliverables and technical support for customers. Function as main customer contact, assign workload to engineering staff as required, organize information and present work product to customers along with overseeing the entire project from start to finish.
- **Subject Matter Expert (SME);** evaluate customer patent portfolios in a variety of technologies. Generate technical review charts based on the claim elements. Design test systems and testing procedures to support the claim elements.
- Technical liaison between patent attorneys and technical resources during the patent creation process.
- **Non Testifying Expert;** aid in the analysis of technical testimony and participate in the preparation of expert witnesses.
- Designed numerous Datatek migration products for the DT4000, DT6000, and DT7000 family of products.
- Designed replacement modules for the Lucent/AT&T Datakit and BNS series of nodes.
- Design Services; designed custom products and prototypes in response to a variety of customer based requirements. Designs included a number of processor based protocol engines, utilizing the following processor types: Motorola 860, 8260, 8051 type and PIC microprocessors.
- Designed numerous standard interface modules for both fiber and wire, including T1,E1, E2, D3 and OC3.
- Designed custom FGPA to support microprocessor interfaces and data packet transport.

**Lucent Technologies/AT&T/Bell Laboratories**
- **Lucent Intellectual Property 1997 – 2000;** Technical Analyst for Lucent Technologies Intellectual Property Business Unit.  Areas of expertise; data communication, ATM and IP networking, personal computers, MPEG audio encoding, modems, and PDAs.
- **Bell Laboratories Design Experience 1980 to December 2001;** Hardware Design Engineer, MTS. Designed numerous products used in data networking industry. Examples include, but not limited to, system control computers, data processing engines, and the line interface card. These products were used in a variety of products ranging from computer based publishing systems, to transmission test equipment and data communication equipment for products for AT&T's Datakit VCS. Some specific interface designs include T1/E1, ISDN, 10/100 Base-T, ADSL, and OC-3.

**FPGA experience:** Architected and implemented a number of designs for custom FPGA, based on Xilinx and Altera devices.

**VLSI experience:** Member of a VLSI Design Team, for an ATM chip set, used Synopsys and custom tools.

**Microprocessors Design Experience**
- Design experience ranges form 8 bit processors to 64 bit processors. Experience with Motorola 68000 to the 68060, 68360, Motorola Power QuiCC 860 (32 and 62 bit family), MIPS R3000, R4000, and R5000, Intel 8051, TI DSP, OMAP and PIC controllers.

**RCA Laboratories:**
- RCA Laboratories, Princeton New Jersey 1979 to 1980
Worked as a STA who designed test instrumentation for the Semiconductor Power Device group. This work required a background in analog, digital and microprocessors design skills.

**Teaching Experience:**
- New Jersey Institute of Technologies,1983 to 2004 - Adjunct professor for both the EE (ECE) and EET (ECET) departments. Taught both lecture and lab courses. The courses ranged from Undergraduate to graduate level programs coverer a broad range of material including microprocessor based system design, general digital design, analog design, operational amplifier design and applications, and semiconductor device design and analysis.
- From (1998 to 2004) taught EE686 Instrumentation Systems and Microprocessors and EE688 Microprocessors in instrumentation for NJIT's ECE graduate department.

**Education**
- 1976 to 1979 BSEE New Jersey Institute of Technologies (NJIT)
- 1980-1982 MSEE New Jersey Institute of Technologies (NJIT)

Robert J. Lopes

15 Harvest Drive
Neshanic Station, N.J. 08853
(908) 229-3090 cell

---

### EXPERIENCE

- 8/11/02 – Present: ThinkFire Services USA, Ltd., Chief Technology Officer
  Duties: Engineering Mangement, Patent/portfolio analysis, Reverse Engineering, Microprocessor Subject matter expert.

- 09/15/96 – 8/10/02: Lucent Technologies Liberty Corner, NJ; Division Manager - Intellectual Property Division
  *Duties*: Manage patent portfolios and establish business plans for Wireless and Data Networking segments. Manage reverse engineering projects and assist attorneys as technical expert at Data Networking negotiations.

- 04/01/83 - 9/15/96: Bell Laboratories; Member of Technical Staff - Adaptive Design Engineering
  *Duties:* Design, development and product management of customized communications products.

- 01/20/83 - Present: NJIT, Newark, N.J. ; Adjunct  faculty - Electrical & Computer Engineering department
  *Duties:* Teaching Graduate level courses in microprocessor system design and architectures.

- 07/02/79 - 04/01/83: AT&T, Newark, N.J. ; Planning Engineer - Lightwave Engineering
  *Duties:* Plan, design, and support AT&T lightwave communications systems.

### ACHIEVEMENTS

- Organized and implemented ThinkFire's technical center of excellence; developed proprietary patent analysis scoring system.

- Managed Lucent's IP assets in the Data Networking and Wireless segments to enable sustained revenue growth in excess of 25% from 1999 to 2001.

- Holder of three U.S. Patents in the areas of computer security, timing systems and wireless location. [US6169494, US6189105, US6215862]

- Designed/developed several types of atomic resonator based Primary Reference Clocks. Provided in-country project management and consultation for many international Telephone ministries (in Europe, Middle East and Asia).

- Designed/developed microprocessor based products for switching and transmission systems that required real time data collection, I/O processing and system simulation for telecommunications systems.

### EDUCATION

- New Jersey Institute of Technology (NJIT), Newark, N.J. ; M.S.E.E. - May 1983
- New Jersey Institute of Technology (NJIT), Newark, N.J. ;  B.S.E.E. - May 1979
- Corporate training in switching & transmission systems, project  management, global business and advanced negotiations.

### SKILLS

- Over 15 years experience as technical manager.
- Good oral presentation and sales capabilities. Proficiency in technical marketing. Excellent negotiation skills.
- Expertise with most current DSP, microprocessor and microcontroller architectures. Unix/Linux proficiency and C, C++ programming background. Additional programming experience in microprocessor assembly languages.

### SOCIETIES

- Member of the IEEE. Member of ACM. Member of LES

### REFERENCES

  References will be furnished upon request.

# Charles L. Jackson

5210 Edgemoor Lane
Bethesda, Maryland 20814
+1 301 656 8716 (voice)
+1 301 656 8717 (fax)
clj@jacksons.net (email)

Dr. Jackson received a B.A. degree from Harvard College in Applied Mathematics and the degrees of M.S., E.E., and Ph.D. in Electrical Engineering from the Massachusetts Institute of Technology. At MIT, he specialized in operations research, computer science, and communications. While a graduate student at MIT, he held the faculty rank of Instructor, was a teaching assistant in graduate operations research courses, and codeveloped an undergraduate course in telecommunications.

Dr. Jackson began his career as a computer programmer and worked as both a systems programmer and digital designer. At the Federal Communications Commission, he was special assistant to the Chief of the Common Carrier Bureau and engineering assistant to Commissioner Robinson. Dr. Jackson was staff engineer for the Communications Subcommittee of the U.S. House of Representatives. Since leaving government, he has worked as a consultant and a professor. Currently, Dr. Jackson provides consulting services as JTC, LLC, and is an adjunct professor at George Washington University.

Dr. Jackson has written extensively on radio spectrum management and policy, and has consulted on radio spectrum management for the governments of New Zealand, Germany and Panama.

Dr. Jackson has authored or coauthored numerous studies on public policy issues in telecommunications and has testified before Congress on technology and telecommunications policy. Over the last several years, he has also directed or participated in projects on acquisition analysis, market planning, and product pricing. He has written for professional journals and the general press, with articles appearing in publications ranging from *The IEEE Transactions on Computers* to *Scientific American* to *The St. Petersburg Times*. He holds two U.S. patents. Dr. Jackson was appointed by the Secretary of Commerce to the Commerce Department's Spectrum Planning and Policy Advisory Committee and by the Chairman of the FCC to three terms on the FCC's Technological Advisory Council (TAC), where he chaired the spectrum working group during the TAC's first term. He has served on both the board of directors and program committee of the annual Telecommunications Policy Research Conference (TPRC), including one term as chairman of the board.

Dr. Jackson is a member of the IEEE, the American Mathematical Society, and Sigma Xi. He is an adjunct professor of electrical engineering and computer science at George Washington University, where he has taught graduate courses on mobile communications, wireless networks, computer security, and the Internet and an undergraduate course on programming. From 1982 to 1988, he was an adjunct professor at Duke University.

## EDUCATION

**Massachusetts Institute of Technology**
Ph.D., Electrical Engineering, 1977
M.S. and E.E., Electrical Engineering, 1974

**Harvard College**
B.A., Honors in Applied Mathematics, 1966

## EMPLOYMENT

| | |
|---|---|
| 1997–now | **Consultant.** Provide consulting services in communications and information technologies and public policy. Also an adjunct professor at George Washington University. |
| 1992–1997 | **Strategic Policy Research, Inc**. (SPR), Bethesda, MD<br>**Principal.** Provided telecommunications and public policy consulting services for a variety of clients in the telecommunications industry. |
| 1989–1992 | **National Economic Research Associates, Inc**. (NERA), Washington, DC<br>**Vice President.** Provided telecommunications and public policy consulting services for a variety of clients in the telecommunications industry. |
| 1980–1989 | **Shooshan & Jackson Inc.**, Washington, DC<br>**Principal.** Provided telecommunications and public policy consulting services for a variety of clients in the telecommunications industry. |
| 1977–1980 | **Communications Subcommittee, U.S. House of Representatives**, Washington, DC<br>**Staff Engineer**. Was responsible for common carrier legislation and spectrum-related issues. |
| 1976–1977 | **Common Carrier Bureau, Federal Communications Commission**, Washington, DC<br>**Special Assistant to Chief**. Was responsible for technological issues and land mobile policy. |
| 1975–1976 | **Federal Communications Commission,** Washington, DC<br>**Engineering Assistant to Commissioner Robinson.** |
| 1973–1976 | **CNR, INC.,** Boston, MA<br>**Consultant.** Worked on the implementation of digital communication systems over dispersive channels. |

**Massachusetts Institute of Technology**, Cambridge, MA
1973–1976   **Instructor.**
1971–1973   **Research and Teaching Assistant.**

**Signatron,** Lexington, MA
1968–1971   **Research Engineer**.

**Stanford Research Institute,** Menlo Park, CA
1966–1968   **Programmer.**

## PROFESSIONAL ACTIVITIES

Member, Sigma XI, Institute of Electrical and Electronics Engineers (IEEE), IEEE Computer Society, IEEE Communications Society, IEEE Information Theory Society, American Association for the Advancement of Science, and the American Mathematical Society.

From 1987–1988, served on the Board of Directors of the Telecommunications Policy and Research Conference. Chairman of the Board, 1988.

Chairman, IS/WP1 (Policy and Regulation) of the FCC's Advisory Committee on Advanced Television. (1989–1992)

Executive Committee Member, University of Florida's Public Utility Research Center (PURC). (1991–2007)

Member, U.S. Department of Commerce Spectrum Planning and Policy Advisory Committee. (1995–2002)

Member, Federal Communications Commission Technological Advisory Committee. (1998–2004). Chair, spectrum working group. (1998–2000)

Guest Editor of special issue on spectrum resource optimization, *Journal of Communications Networks* (JCN), 2006

**PUBLICATIONS and REPORTS**

*Equipment operator personalization device,* U.S. Patent 7,096,619. Describes a means for securing a piece of hand-held equipment so that it is easily activated by an authorized user while, at the same time, individuals without proper authorization cannot easily active the equipment.

With Michael M Marcus, Fredrick Matos, William Webb, and K.J. Wee. *Spectrum Resource Optimization in Context,* Journal of Communications and Networks, Vol. 8, No. 2, 1 June 2006 (guest editorial).

*Wireless Handsets Are Part of the Network,* International Telecommunications Society, 16th Biennial Conference, June 2006, Beijing, China.

With Raymond Pickholtz and Dale Hatfield. *Spread Spectrum Is Good—But It Doesn't Obsolete NBC v. US!,* Federal Communications Law Journal, April 2006, Volume 58, Number 2.

*Dynamic Sharing of Radio Spectrum: A Brief History,* IEEE International Symposium on New Frontiers in Dynamic Spectrum Access Networks, November 9, 2005. Baltimore, MD.

*Limits to Decentralization: The Example of AM Radio Broadcasting or Was a Common Law Solution to Chaos in the Radio Waves Reasonable in 1927?,* Telecommunications Policy Research Conference, September 24, 2005, Arlington, VA.

With Tarek Saadawi et al. *Telecommunications Liberalization Policy in Egypt,* prepared for the Egypt Ministry of Communications and Information Technology, August 2005.

*Quantifying the Cost of Radio Interference,* 2004 WNCG Wireless Networking Symposium, October 20–22, 2004, Austin, TX.

*Limits to the Interference Temperature Concept,* prepared for Verizon, April 4, 2004.

*An Overview of VoIP,* prepared for TELUS Communications Inc., June 18, 2004.

*A Quick Introduction to Voice over Internet Protocol,* University of Florida Pubic Utilities Research Center, February 2004.

With Robert W. Crandall. "The $500 Billion Opportunity: The Potential Economic Benefit of Widespread Diffusion of Broadband Internet Access," in *Down to the Wire: Studies in the Diffusion and Regulation of Telecommunications Technologies,* Allan L. Shampine, Ed., Nova Science Press, 2003.

"Wired High-Speed Access," Chapter 5 of *Broadband Should We Regulate High-Speed Internet Access?* Robert W. Crandall and James H. Alleman, editors, AEI-Brookings Joint Center for Regulatory Studies, 2002, ISBN 0-8157-1591-9.

"CLECs' Choices for Local Switching," Prepared for Bell South, July 2002.

With Christopher Weaver. "Boss Hogg and the Out-of-Town Geek," ZDNet, August 23, 2001.

"The Likely Evolution of Local Communications," Prepared for TELUS, July 15, 2001.

With William E. Taylor. "Reciprocal Compensation For CMRS Providers," June 13, 2000, submitted in FCC CC Dockets Nos. 95–185, 96–98, and 97–207.

With Raymond L. Pickholtz. *A Review of Four Studies of FM Receiver Adjacent-Channel Immunity,* submitted in FCC MM Docket No. 9–25, November 15, 1999.

With Robert W. Crandall. *Eliminating Barriers to DSL Service.* Prepared for Keep America Connected! July 1998.

With John Haring *et al.* "Public Harms Unique to Satellite Spectrum Auctions," in *A Communications Cornucopia: Markle Foundation Essays on Information Policy,* Roger G. Noll and Monroe E. Price, Eds., Brookings, 1998.

With John Haring and Ross Richardson. *An Evaluation of the Access Board's Accessibility Guidelines.* Prepared for the Telecommunications Industry Association. June 1998.

With Robert W. Crandall. *The Internet, Economic Growth, and Telecommunications Policy: Charles H. Ferguson's Critique of U.S. Local Telephone Companies.* Prepared for Bell Atlantic for filing at the Federal Communications Commission, July 1997.

With John Haring *et al.* *Evaluation of the Efficiency of BT's Network Operations.* Prepared for The Office of Telecommunications, UK. June 1997.

With John Haring. *Economic Disabilities of License Eligibility and Use Restrictions.* Prepared for Bell Atlantic. September 10, 1996.

With Calvin S. Monson and Ross M. Richardson. *Making California's Transition Work: The Need for Affordable and Reliable Electric Metering.* Prepared on behalf of Itron, Inc., for submission before the Public Utilities Commission of the State of California, Comments of Itron, Inc., upon "Design and Implementation of Direct

Access Programs," a Report of the Direct Access Working Group, dated August 30, 1996, and issued in response to CPUC Decision 96–03–022 of March 13, 1996, in the *Order Instituting Rulemaking on the Commission's Proposed Policies Governing Restructuring California's Electric Services Industry and Reforming Regulation* (R.94–04–031) and *Order Instituting Investigation on the Commission's Proposed Policies Governing Restructuring California's Electric Services Industry and Reforming Regulation.* (I.94–04–032) Filed September 1996.

With John Haring, Jeffrey H. Rohlfs, and Harry M. Shooshan III. *The Benefits of Choosing: FCC Specification of an ATV Standard.* Prepared on behalf of Capital Cities/ABC, Inc., CBS, Inc., Fox Television Stations, Inc., the Association for Maximum Service Television, the National Association of Broadcasters and National Broadcasting Company, Inc., for submission before the Federal Communications Commission, *In the Matter of Advanced Television Systems and their Impact upon the Existing Television Broadcast Service.* MM Docket No. 87–268. *Reply Comments of Strategic Policy Research on the Commission's Fifth Further Notice of Proposed Rulemaking.* Filed August 13, 1996.

With John Haring. *Critique of Hatfield Cost Analysis.* Prepared on behalf of BellSouth for submission before the Federal Communications Commission, *In the Matter of Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996.* CC Docket No. 96–128. *Reply Comments.* Filed July 15, 1996.

With John Haring and Calvin S. Monson. *Economic Report on FCC Resolution of Payphone Regulatory Issues.* Prepared on behalf of BellSouth for submission before the Federal Communications Commission, *In the Matter of Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996.* CC Docket No. 96–128. *Comments.* Filed July 1, 1996.

With John Haring, Harry M. Shooshan III, Jeffrey H. Rohlfs, and Kirsten M. Pehrsson. *Public Harms Unique to Satellite Spectrum Auctions.* A study prepared for the Satellite Industry Association. March 18, 1996.

*A Need to Be Heard: Will Project 25 Meet Public Safety Communications Needs in 1995 and Beyond?* Prepared for Ericsson Radio. July 21, 1995.

With John Haring. *Pitfalls in the Economic Valuation of the Electromagnetic Spectrum.* Prepared for the National Association of Broadcasters. July 19, 1995.

With Jeffrey H. Rohlfs. *Quantifying the Costs of Billed Party Preference.* Report filed before the Federal Communications Commission on behalf of American Public Communications Counsel, *In the Matter of Billed Party Preference for 0+ InterLATA Calls,* CC Docket No. 92–77. September 14, 1994.

With Jeffrey H. Rohlfs. *The Many Costs and Few Benefits of Billed Party Preference.* Report filed before the Federal Communications Commission on behalf of American Public Communications Counsel, *In the Matter of Billed Party Preference for 0+ InterLATA Calls,* CC Docket No. 92–77. August 1, 1994.

With John Haring, Calvin S. Monson, Jeffrey H. Rohlfs, and Morrison & Foerster. *A Proposal for Introducing Competition into the Mexican Telecommunications Market.* Prepared for the Government of Mexico, Secretaria de Comunicaciones y Transportes. June 10, 1994.

With John Haring. *Errors in Hazlett's Analysis of Cellular Rents: An Elaboration.* Prepared for Bell Atlantic Personal Communications, Inc. for submission to the Federal Communications Commission in General Docket No. 90–314, *Bandwidth Required for PCS Licenses.* April 1994.

With John Haring. *Errors in Hazlett's Analysis of Cellular Rents.* Prepared for Bell Atlantic Personal Communications, Inc., for submission to the Federal Communications Commission in General Docket No. 90–314, *Bandwidth Required for PCS Licenses.* September 10, 1993.

*Sharing Spectrum Between PCS and Microwave Systems.* White paper filed before the Federal Communications Commission on behalf of Bell Atlantic Personal Communications, Inc., in connection with General Docket No. 90–314; Bandwidth Required for PCS Licenses. August 1993.

*Study of the Application of Open Network Provision to Network Management.* Prepared for the CEC DGXIII jointly by NERA and Mondiale Information Technology Associates. January 1992. Final report, March 1992.

*Study of Open Network Provision Applied to Network Management.* Prepared for the CEC DGXIII jointly by NERA and Mondiale Information Technology Associates. January 1992.

"LEC Gateways: Provision of Audio, Video, and Text Services in the U.S." *The Economics of Information Networks,* Cristiano Antonelli, Ed., North-Holland/Elsevier Science Publishers B.V., Amsterdam, London, New York, Tokyo. 1992.

With Harry M. Shooshan III, Kirsten Pehrsson *et al. Electronic Highways: Providing the Telecommunications Infrastructure for Pennsylvania's Economic Future.* Prepared for the Pennsylvania Chamber of Business and Industry jointly by NERA and Price Waterhouse. December 19, 1991.

*Competition in the Provision of Air-to-Ground Telephone Service.* Prepared for In-Flight Phone Corporation. NERA. November 14, 1991.

With Jeffrey Rohlfs and Tracey Kelly. *Estimate of the Loss to the United States Caused by the FCC's Delay in Licensing Cellular Telecommunications.* A study commissioned by AT&T. November 8, 1991 (revised).

With others, *The Technology and Economics of Providing Video Services by Fiber Optic Networks: A Response to Johnson and Reed.* A study prepared for the United States Telephone Association. NERA. July 20, 1990.

With Robin Foster. *The New Zealand Spectrum Project: Description and Observations.* Presented to the Seventeenth Annual Telecommunications Policy Research Conference, Airlie, VA. October 1–3, 1989.

"Use and Management of the Spectrum Resource." *New Directions in Telecommunications Policy, Vol. 1: Regulatory Policy*, Paula R. Newberg, Ed., Duke Press Policy Studies, Duke University Press, Durham and London. 1989.

With Robin Foster *et al. Management of the Radio Frequency Spectrum in New Zealand.* Prepared for New Zealand's Ministry of Commerce. November 1988.

With Harry M. Shooshan III, Jeffrey H. Rohlfs, and Louise Arnheim. *Home Video Programming: How Secure from Piracy? A Comparison of VCRs, C-Band Satellite Service, Wireless Cable, Cable, and MDS.* Prepared for MetroTEN Cablevision. July 1988.

With Harry M. Shooshan III, Jeffrey H. Rohlfs, and Susan W. Leisner. *ONA: Keeping the Promise.* A study commissioned by Bell Atlantic. May 1988.

With Louise A. Arnheim. *A High-Fiber Diet for Television? Impact of Future Telephone, Fiber and Regulatory Changes for Broadcasters.* Prepared for the National Association of Broadcasters. April 1988.

With Harry M. Shooshan III, Jeffrey H. Rohlfs, and Louise A. Arnheim, *Opening the Broadband Gateway: The Need for Telephone Company Entry into the Video Services Marketplace.* Prepared for the United States Telephone Association. November 1987.

With Harry M. Shooshan III and Louise A. Arnheim. *Tough Calls, Close Calls, Protocols.* Prepared for BellSouth Corporation. August 1987.

With Catherine R. Sloan. *Federal Communications Regulation and Services to Handicapped Persons.* Prepared for the Gallaudet/Annenberg Forum on Policy Issues, Washington, DC. February 20–21, 1986.

"Cable and Public Utility Regulation." *Unnatural Monopolies*, Robert W. Poole, Jr., Ed., D. C. Heath & Company, Lexington, MA. 1985.

With Jeffrey H. Rohlfs. *Access Charging and Bypass Adoption*. Shooshan & Jackson. 1985.

"Technological Overview and Framework." *Telecommunications Access and Public Policy*, Alan Baughcum and Gerald R. Faulhaber, Eds., Proceedings of the Workshop on Local Access, St. Louis, MO. September 1982. Ablex Publishing Corporation, Norwood, NJ. 1984.

"Technology: The Anchor of the Bell System." *Disconnecting Bell: The Impact of the AT&T Divestiture*, Harry M. Shooshan III, Ed. (Institute for Information Policy), Pergamon Press, Elmsford, NY. 1984.

With Harry M. Shooshan III. *The Financial Interest and Syndication Rules: Public Harm and Consumer Loss*. Shooshan & Jackson. 1983.

With Harry M. Shooshan III. *Radio Subcarrier Services: How to Make Dollars and Sense out of New Business Opportunities*. COM/TECH Report. Vol. 2, No. 1. National Association of Broadcasters. May 1983.

With Jane Wilson and Harry M. Shooshan III. *Alternative Methods of Extending Public Radio Service*. Prepared for the Corporation for Public Broadcasting. March 1982.

With Harry M. Shooshan III. *Cable Television: The Monopoly Myth and Competitive Reality*. Prepared for the National Cable Television Association. 1982.

With Harry M. Shooshan III, Stanley M. Besen, and Jane Wilson. *Cable Copyright and Consumer Welfare: The Hidden Cost of the Compulsory License*. Shooshan & Jackson. 1981.

With Harry M. Shooshan III and Jane Wilson. *Newspapers and Videotex: How Free a Press?* Poynter Institute for Media Studies, St. Petersburg, FL. 1981.

"Telecommunications Issues in Transition." *Telecommunications and Productivity*, Mitchell L. Moss, Ed., Addison-Wesley Publishing, Reading, MA. 1981.

With Daniel S. Allen *et al. A Nationwide Communications System for the Hearing Impaired: Strategies toward Commercial Implementation*. Final Report. SRI International, Menlo Park, CA. October 1981.

With Harry M. Shooshan III. "The Battle to Control What You Will Get from Your Computer." *The Washington Post* (Outlook). Washington, DC. August 24, 1980. Adapted from "Home Improvement Center: Newspaper on Television." *St. Petersburg Times* (Perspective), St. Petersburg, FL. June 22, 1980.

"What Will New Technology Bring?" in *Perspectives on Postal Service Issues*, Roger Sherman, Ed. American Enterprise Institute, 1980.

"The Allocation of the Radio Spectrum." *Scientific American*. Vol. 242, No. 2. February 1980.

*EMI/EMC Legislation in the 95th and 96th Congress.* Proceedings of the 1978 Electromagnetic Interference Workshop. NBS Special Publication 551. U.S. Department of Commerce. U.S. Government Printing Office, Washington, DC. July 1979.

"A Market Alternative for the Orbit-Spectrum Resource." *Proceedings of the Sixth Annual Telecommunications Policy Research Conference,* Herbert S. Dordick, Ed., Lexington Books, Lexington, MA. 1979.

"Reactions to the Spectrum Options Paper." *Proceedings of the Sixth Annual Telecommunications Policy Research Conference*, Herbert S. Dordick, Ed., Lexington Books. Lexington, MA. 1979.

"A View of the Future of Television." Prepared for the Sloan Foundation Conference on Television and Society, Chatham, MA. June 24–30, 1979.

"The Orbit Spectrum Resource—Market Allocation of International Property." *Telecommunications Policy;* Vol. 2, No. 4. September 1978.

"New Technology and the Old Regulation." Prepared for Midcon Professional Program. *Future Alternatives for Communicating with Automobiles.* Dallas, TX. December 12–14, 1977.

"Towards Deafnet—Policy Problems of Personal Communications for the Deaf." *Eascon Proceedings.* September 1977.

*Improving Use of the Spectrum.* Options Papers. House Interstate and Foreign Commerce Committee. Print 95–13. April 1977.

*Technology for Spectrum Markets.* Ph.D. thesis. MIT, Department of Electrical Engineering and Computer Science. November 1976.

"Electronic Mail." MIT, Center for Space Research. CSR TR–73–2. 1973. Reprinted in Japanese in *Overseas Telecommunications Journal*. Tokyo, Japan. 1976.

*Spectrum Management in Land Mobile Radio.* M.S. thesis. MIT, Department of Electrical Engineering. 1974.

With T. H. Crystal. *Extracting and Processing Vocal Pitch for Laryngeal Disorder Detection.* Proceedings of the 79th Meeting of the Acoustical Society of America, Atlantic City, NJ. April 1970.

With H. S. Stone. "Structures of the Affine Families of Switching Functions." *IEEE Transactions on Computers.* Vol. C–18, No. 3. March 1969.

*Alarm System Using Coded Signaling.* U.S. Patent 3,701,019. Describes method for transmitting low-data-rate digital messages with security and message verification.

Review 68–50 of "Multi-Programming System Performance Measurement and Analysis" by H. N. Cantrell and A. L. Ellison. *IEEE Transactions on Computers,* Vol. C–17, No. 11. November 1968.

B. Elspas *et al.* "Properties of Cellular Arrays for Logic and Storage." Stanford Research Institute. Sci. Rept. 3. AFCRL–67–0463. Menlo Park, CA. July 1967.

With R. A. Ankerlin. "A Rapid Method for the Identification of the Type of a Four Variable Boolean Function." *IEEE Transactions on Computers,* Vol. EC–16. December 1967.

## SPEECHES/PRESENTATIONS

*Encouraging Broadband Internet Access in the TV White Space: The Licensed Option,* with Dorothy Robyn, Telecommunications Policy Research Conference (TPRC), Arlington, VA, September 30, 2007.

*Licensed Access: The Smarter Policy for TV White Space and Broadband Internet Access,* with Dorothy Robyn, Conference on Smart Radio: Smart Markets and Policies, Arlington, VA, April 6, 2007. Also presented at IEEE CrownCom, Orlando, FL, August 2, 2007.

*The Cost of Interference,* Working Level Group (WLG) E of the President's Spectrum Policy Initiative, Washington DC, April 12, 2005.

*Status of Telecom Reform and the Telecom Industry in the United States,* National Telecommunications Regulatory Authority, Ministry of Communications and Information, Cairo, Egypt, April 4, 2005.

*The Cost of Interference,* Interdepartmental Radio Advisory Committee (IRAC), Washington, DC, February 23, 2005.

*Observations on Interference Temperature and Underlay Operation,* Telecommunications Policy Research Conference, Arlington, VA, October 3, 2004.

*Quantifying the Cost of Interference,* FCC Technological Advisory Council, July 28, 2004.

*Observations on VoIP,* ICT Seminar, Johns Hopkins University, June 22, 2004.

*A Quick Introduction to Voice over Internet Protocol,* PURC 2004 Annual Meeting, February 12, 2004, Gainesville, FL.

*Spectrum Management in Telecommunications,* PURC/World Bank Ninth International Training Program on Utility Regulation & Strategy, Gainesville, FL, January 15–26, 2001.

*Emerging Radio Systems,* ITT/Washington Office, December 15, 2000.

*Advanced Wireless Technologies,* Keynote Talk, International Telemetry Conference, San Diego, CA, October 24, 2000.

*The FCC's Technological Advisory Committee Spectrum Management Working Group,* IEEE EMC Challenges–2000, Washington, DC, August 2000.

*Overview of Software Defined Radio,* Invited talk, Public Safety National Coordination Committee, June 2, 2000.

*Receiver Regulation,* FCC Technology Advisory Council, Washington, DC, June 28, 2000.

*Proper Testing of FM Receivers,* Federal Communications Bar Association, December 15, 1999.

*Analysis of the Disparity Among the FCC's Various Limits on Emitted Power on Frequencies above 960 MHz,* FCC Technology Advisory Council, Washington, DC, December 13, 1999.

*Technology Drivers of the Telecom Market,* Brookings Institution Seminar, October, 1998.

*Data Communications on the Telephone Network,* Federal Communications Commission, Office of Engineering and Technology, Brownbag seminar, September 29, 1998.

*Dynamic Sharing of Spectrum,* Presented at Rutgers WINLab Focus '98. June 1998.

*Wireless Networks Opportunities — Challenges Ahead.* Presented at the 1998 IEEE Workshop on Multiaccess, Mobility and Teletraffic (MMT'98) for Wireless Communications, Washington, DC. October 22, 1998

*International Approaches to Telecommunications Restructuring.* Presented at the Cross-Industry Working Team Plenary Meeting, Washington, DC. November 4–5, 1997.

*Expected Patterns of Product Evolution.* Presented to the Twenty-Third Annual Rate Symposium, St. Louis, MO. April 28, 1997.

*De-Nationalizing the Airwaves.* First Annual Conference of the Federalist Society's Telecommunications Practice Group: Toward a Free and Competitive Communications Industry, Washington, DC. October 18, 1996.

*Improving the Regulation of Public Safety Communications.* Presented to the 62nd Association of Public-Safety Communications Officials (APCO) International Conference and Exposition, San Antonio, TX. August 1996.

*Telecommunications Deregulation.* Presented at the Maryland–District of Columbia Utilities Association's Annual Spring Conference, Ellicott City, MD. April 26, 1995.

Participant in the 11th annual Practicing Law Institute/Federal Communications Bar Association Conference on "Telecommunications Policy and Regulation," Washington, DC. December 10, 1993.

*How Auctions Will Work.* Presented to the TeleStrategies Spectrum Auctions Conference, Washington, DC. November 1, 1993.

*Ensuring Efficient Competitive Outcomes.* Presented to the "PCS Summit," Washington, DC. October 13–15, 1993

*Carrier Perspectives on Government Investment in Public Telecommunications Infrastructure.* Presented to the Computer Science and Telecommunications Board workshop on the Changing Nature of Telecommunications Infrastructure, Washington, DC. October 12–13, 1993.

*The Impact and Implications of Changing Technology: Competition in LEC Markets.* Presented at the United States Telephone Association Congressional Staff Seminar, Williamsburg, VA. June 3–4, 1993.

*Regulation of the Spectrum.* Presented to the Industrial Liaison Program Symposium of the Massachusetts Institute of Technology on Universal Personal Communications: Technologies and Policies for Seamless, Digital, Wireless Communications, Cambridge, MA. March 30–31, 1993.

*Cost Structure of Competitors.* Presented to the Pricing and Costing Strategies for a Competitive Environment. A TeleStrategies Conference, Washington, DC. March 9–10, 1993.

*Spectrum Allocation for Personal Communications.* Presented to the MIT Communications Forum, Cambridge, MA. February 25, 1993.

*Ensuring Efficient Competitive Outcomes.* Presented to the Personal Communications Services Conference, Dallas, TX. February 2–3, 1993.

*Comments on PCS licenses.* Presented to the Wireless Datacomm '92 conference, Boston, MA. December 8–9, 1992.

*ISDN.* Presented to the Information Gatekeepers, Reston, VA. November 19, 1992.

*What Can You Do with a Cordless Telephone?* Presented to the Nineteenth Annual Telecommunications Policy Research Conference, Solomons Island, MD. September 28–30, 1991.

Participated in the Congressional Budget Office's (CBO) round-table on the budgetary implications of auctioning new radio frequency licenses, Washington, DC. November 20, 1991.

Moderator. *Personal Communications Services in the '90s.* Annual public relations seminar of the United States Telephone Association—"Public Relations Imperatives For the '90s," Washington, DC. September 13, 1991.

*LEC Gateways: Provision of Audio, Video and Text Services in the U.S.* Presented to the National Economic Research Associates, Inc., Telecommunications in a Competitive Environment Seminar, Scottsdale, AZ. April 15, 1989. Also presented to the 8th Annual ITS International Conference, Venice, Italy. March 1990.

*The Evolution of Access.* Presented to the Seventeenth Annual Telecommunications Policy Research Conference, Airlie, VA. October 1–3, 1989.

*Open Network Architecture: Definition, Benefits and Costs, Impact on Industry Structure and Performance.* Speech presented to the Nineteenth Annual Williamsburg Conference, Williamsburg, VA. December 7–9, 1987.

With Harry M. Shooshan III, Jeffrey H. Rohlfs, and Susan W. Leisner. *The Negative Effects of Tax Reform on the Telephone Industry: Making Up the $15 Billion Difference.* Presented to the Fifteenth Annual Telecommunications Policy Research Conference, Airlie, VA. September 27–30, 1987.

*Is Bypass Still a Threat Today?* Speech presented to the Telecommunications Policy in a Competitive Environment Seminar, Scottsdale, AZ. March 4–7, 1987.

With Jeffrey H. Rohlfs. *Improving the Economic Efficiency of NTS Cost Recovery.* Presented to the Fifth Biennial Regulatory Information Conference, Columbus, OH. September 3–5, 1986.

With Jeffrey H. Rohlfs. *Improving the Economic Efficiency of Interstate Access Charges.* Presented to the Fourteenth Annual Telecommunications Policy Research Conference, Airlie, VA. April 27–30, 1986.

Remarks presented to The Council of State Planning Agencies, Lincoln, NE. October 20–21, 1985.

*Cable and Public Utility Regulation.* Speech prepared for the Reason Foundation Conference on Public Utilities, Washington, DC. September 9, 1983.

*New Technology: Some Observations on "Bypass."* Presented to the Federal Communications Bar Association: PLI Program, Washington, DC. December 10, 1982.

*Technological and Market Alternatives to Direct Regulation of Telephone Solicitation.* Presented to the IEEE International Conference on Communications, Philadelphia, PA. June 13–17, 1982.

"Technology Options in Enhanced Services: Twisted Pair to Videodiscs." Comments on *Enhanced Services.* NCTA Executive Seminar Series, National Cable Television Association, Washington, DC. 1981.

"The New Information Technology and the Handicapped: A Guide for Project Selection." Presented to the Joint Seminar of the Foundation Center and the Aspen Institute, Wye Plantation, Queenstown, MD. November 16–17, 1981.

*The Political Climate for Communications: Gusty Winds from All Directions.* Presented to the Energy Bureau, Inc., Washington, DC. December 10–11, 1981.

"What Will New Technology Bring?" *Perspectives on Postal Service Issues.* Presented to the Conference on Postal Service Issues. October 13, 1978. American Enterprise Institute. 1980.

*Electronic Mail: What Is It? What Might It Be?* Presented to the 1976 Telecommunications Policy Research Conference, Airlie, VA. 1976.

*Electronic Mail: How Can It Come To Pass?* Presented to the 1975 Telecommunications Policy Research Conference, Airlie, VA. 1975.

## TESTIMONIES

*Wireless Handsets are Part of the Network,* Report attached to CTIA's Opposition to Petition for Rulemaking titled "Petition to Confirm A Consumer's Right Use Internet Communications Software and Attach Devices to Wireless Networks," FCC RM-11361. April 30, 2007.

Comments of Charles L. Jackson and Dorothy Robyn *In The Matter of Unlicensed Operation in the TV Broadcast Bands*, FCC-ET Docket No. 04-186, January 31, 2007.

Testimony of Dr. Charles L. Jackson in Inline Connection Corporation v. Earthlink et al., C.A. No. 02-477-MPT, C.A. No. 02-272-MPT, United States District for the District Of Delaware, February 2007.

Reply Comments of Charles L. Jackson and Dorothy Robyn *In The Matter of Unlicensed Operation in the TV Broadcast Bands*, FCC-ET Docket No. 04-186, March 2, 2007.

Statement of Charles L. Jackson in Support of ACS's Ex Parte Submission Filed November 30, 2006, FCC WC Docket No. 05-281, November 30, 2006.

Statement of Charles L. Jackson In Support Of Petition of ACS of Anchorage, Inc. For Forbearance from Sections 251(C)(3) And 252(D)(1), FCC WC Docket No. 05-281, September 8, 2006.

Deposition of Dr. Charles L. Jackson in Inline Connection Corporation v. Earthlink et al., C.A. No. 02-477-MPT, C.A. No. 02-272-MPT, United States District for the District Of Delaware, July 20–21, 2006.

Deposition of Dr. Charles L. Jackson In the matter of Certain Baseband Processor Chips and Chipsets, Transmitter and Receiver (Radio) Chips, Power Control Chips, and Products Containing Same, including Cellular Telephone Handsets Inv. No. 337-TA-542, U.S. International Trade Commission, May 24, 2006

Report of Dr. Charles L. Jackson In the matter of Certain Baseband Processor Chips and Chipsets, Transmitter and Receiver (Radio) Chips, Power Control Chips, and Products Containing Same, including Cellular Telephone Handsets Inv. No. 337-TA-542, U.S. International Trade Commission, May 19, 2006

Declaration of Dr. Charles L. Jackson Regarding Infringement of the '596, '446, and '585 Patents, Inline Connection Corporation v. Earthlink et al., C.A. No. 02-477-MPT, C.A. No. 02-272-MPT, United States District for the District Of Delaware, April 18, 2006

Testimony of Dr. Charles L. Jackson in Inline Connection Corporation v. Earthlink et al., C.A. No. 02-477-MPT, C.A. No. 02-272-MPT, United States District for the District Of Delaware, March 7, 2006. (Hearing re application of confidentiality order)

Statement of Charles L. Jackson In Support Of Petition of ACS of Anchorage, Inc. for Forbearance from Sections 251(C)(3) and 252(D)(1), FCC WC Docket No. 05-281, February 23, 2006.

Answers of Dr. Charles L. Jackson incorporated in the submission of TELUS to the Telecommunications Policy Review Panel (Canada), August 15, 2005.

*Observations on Bidding Rules,* Reply Comments in FCC WT Docket No. 04-356, May 24, 2005.

Deposition of Dr. Charles L. Jackson, Wireless Telephone Services Antitrust Litigation, 02 Civ. 2637(DLC), Southern District of New York, December 20, 2004.

Report of Dr. Charles L. Jackson, Wireless Telephone Services Antitrust Litigation, 02 Civ. 2637(DLC), Southern District of New York, December 20, 2004.

Declaration of Dr. Charles L. Jackson, *PCS Handset Vulnerability to H-Block Transmissions Interpreting the Test Results.* Filed by CTIA in FCC Dockets WT 04-356 and WT 02-353, December 8, 2004.

Testimony in Gerald E. Frugoli, v. Douglas V. Fougnies; et al., CIV 02-957-PHX-RC, United States District Court District of Arizona, June 27, 2004.

Declaration of Dr. Charles L. Jackson Regarding Infringement of the '596, '446, and '585 Patents, in Inline Connection Corporation v. Earthlink et al., C.A. No. 02-477-MPT, C.A. No. 02-272-MPT, United States District for the District Of Delaware, April 16, 2004. (Confidential)

Declaration of Dr. Charles L. Jackson, in Inline Connection Corporation v. Earthlink et al., C.A. No. 02-477-MPT, C.A. No. 02-272-MPT, United States District for the District Of Delaware, April 5, 2004.

Affidavit of Dr. Charles L. Jackson, in Proceedings related to the Public Utility Commission's February 16, 2004 Section 34(3) Notice to Cable Bahamas Limited.

Declaration of Dr. Charles L. Jackson, in Inline Connection Corporation v. Earthlink et al., C.A. No. 02-477-MPT, C.A. No. 02-272-MPT, United States District for the District Of Delaware, February 9, 2004.

Declaration of Dr. Charles L. Jackson , in Cellco Partnership (d/b/a Verizon Wireless) v. Nextel Communications, Inc., Civil Action No.: 03 CV 839-A, United States District Court for the Eastern District of Virginia, January 12, 2003

Rebuttal Report of Dr. Charles L. Jackson, in Cellco Partnership (d/b/a Verizon Wireless Firm) v. Nextel Communications, Inc., Civil Action No.: 03 CV 839-A, United States District Court for the Eastern District of Virginia, December 22, 2003.

Deposition testimony in Freedom Wireless Inc. vs. Boston Communications Group Inc. et al., 00-12234-EFH , United States District Court, District of Massachusetts, December 19, 2003

Report of Dr. Charles L. Jackson in Response to the Expert Reports of Dr. Richard C. Levine and Mr. Charles Gholz in Freedom Wireless Inc. vs. Boston Communications Group Inc. et al., 00-12234-EFH , United States District Court, District of Massachusetts, August 29, 2003

Report of Dr. Charles L. Jackson Regarding Processing of Incoming Calls as Described in U.S. Patent 6,157,823 in Freedom Wireless Inc. vs. Boston Communications Group Inc. et al., 00-12234-EFH, United States District Court, District of Massachusetts, June 23, 2003

Deposition testimony in Gerald E. Frugoli, v. Douglas V. Fougnies; et al., CIV 02-957-PHX-RC, United States District Court District of Arizona, June 17, 2003

Second Report of Dr. Charles L. Jackson in Gerald E. Frugoli, v. Douglas V. Fougnies; et al., CIV 02-957-PHX-RC, United States District Court District of Arizona, June 2, 2003

Testimony in GE-Harris Railway Electronics, L.L.C., and GE-Harris Railway Electronics Services, L.L.C., v. Westinghouse Air Brake Company, Civil Action No. 99-070 GMS, U.S. District Court for the District of Delaware, May 13, 2003.

Deposition testimony in GE-Harris Railway Electronics, L.L.C., and GE-Harris Railway Electronics Services, L.L.C., v. Westinghouse Air Brake Company, Civil Action No. 99-070 GMS, U.S. District Court for the District of Delaware, April 24, 2003.

Testimony of Dr. Charles L. Jackson in CBS Broadcasting et al. v. EchoStar Communications et al., Case No. 98-2651-CIV-Dimitrouleas/Seltzer, U.S. District Court For the Southern District of Florida, April 21, 2003.

Report on Inventorship in Gerald E. Frugoli, v. Douglas V. Fougnies; et al., CIV 02-957-PHX-RC, United States District Court District of Arizona, April 1, 2003.

Report of Dr. Charles L. Jackson, GE-Harris Railway Electronics, L.L.C., and GE-Harris Railway Electronics Services, L.L.C., v. Westinghouse Air Brake Company, Civil Action No. 99-070 GMS, U.S. District Court for the District of Delaware, March 21, 2003.

Deposition testimony of Dr. Charles L. Jackson in CBS Broadcasting et al. v. EchoStar Communications et al., Case No. 98-2651-CIV-Dimitrouleas/Seltzer, U.S. District Court For the Southern District of Florida, March 19, 2003.

Testimony in BSC de Panamá, S.A. contra Tricom Panamá S.A., March 7, 2003, Panamá. March 13, 2003.

With Ramón Mouynés, Informe Pericial, BSC de Panamá, S.A. contra Tricom Panamá S.A., March 7, 2003, Panamá. (In Spanish)

Testimony of Dr. Charles L. Jackson Regarding Xentex's Flip-Pad Voyager Computer in Xen Investors, LLC v. Xentex Technologies, In the Court of Chancery for the State of Delaware in and for New Castle County, C.A. No. 19713 NC., March 5, 2003.

Deposition of Dr. Charles L. Jackson Regarding Xentex's Flip-Pad Voyager Computer in Xen Investors, LLC v. Xentex Technologies, In the Court of Chancery for the State of Delaware in and for New Castle County, C.A. No. 19713 NC., February 26th, 2003.

Testimony in Nassgil Financial vs. Hughes Electronics (an arbitration), February 19, 2003, Los Angeles.

Report of Dr. Charles L. Jackson Regarding Xentex's Flip-Pad Voyager Computer in Xen Investors, LLC v. Xentex Technologies, In the Court of Chancery for the State of Delaware in and for New Castle County, C.A. No. 19713 NC.,  February 7, 2003.

Summary of Opinions of Dr. Charles L. Jackson in CBS Broadcasting et al. v. EchoStar Communications et al., Case No. 98-2651-CIV-Dimitrouleas/Seltzer, U.S. District Court For the Southern District of Florida, February 7, 2003.

Deposition testimony of Dr. Charles L. Jackson In re: IN-SYNC INTERACTIVE/MONTEREY, INC., Debtor-in-Possession. IN-SYNC INTERACTIVE/AKRON, INC., et al., v. FEDERAL COMMUNICATIONS COMMISSION, Defendants Case No. LA 01-42617-ES Chapter 11, Adversary No. AD 01-02529-ES, January 30, 2003.

Deposition testimony of Charles L. Jackson in Isp.Net Llc D/B/A IQuest Internet V. Qwest Communications International, case No. IP01-0480-C B/S United States

District Court, Southern District Of Indiana, Indianapolis Division, January 24, 2003.

Expert Report of Dr. Charles L. Jackson In re: IN-SYNC INTERACTIVE/MONTEREY, INC., Debtor-in-Possession. IN-SYNC INTERACTIVE/AKRON, INC., et al., v. FEDERAL COMMUNICATIONS COMMISSION, Defendants Case No. LA 01-42617-ES Chapter 11, Adversary No. AD 01-02529-ES, December 19, 2002.

Summary of Opinions of Dr. Charles L. Jackson in CBS Broadcasting et al. v. EchoStar Communications et al., Case No. 98-2651-CIV-Dimitrouleas/Seltzer, US District Court For the Southern District of Florida, November 12, 2002.

Deposition testimony in Siesta v. Qwest, Case NO. 8:01-cv-673-T-30MSS, US District Court, Middle District of Florida, October 3, 2002.

Declaration of Dr. Charles L. Jackson in Support of Motion for Order to Show Cause, GE-Harris Railway Electronics, L.L.C., and GE-Harris Railway Electronics Services, L.L.C., v. Westinghouse Air Brake Company, Civil Action No. 99-070 GMS, US District Court for the District of Delaware, September 20, 2002.

Deposition testimony in Mueller v. Thomas et al., September 3, 2002.

Supplementary Expert Report of Dr. Charles L. Jackson Regarding Technical Issues in Siesta v. Qwest, Case NO. 8:01-cv-673-T-30MSS, U.S. District Court, Middle District of Florida, August 30, 2002.

Declaration of Charles L. Jackson in Isp.Net Llc D/B/A IQuest Internet V. Qwest Communications International, case No. IP01-0480-C B/S United States District Court, Southern District of Indiana, Indianapolis Division, August 22, 2002.

Expert Report of Dr. Charles L. Jackson Regarding Technical Issues in Siesta v. Qwest, Case NO. 8:01-cv-673-T-30MSS, US District Court, Middle District of Florida, August 16, 2002.

Expert Report of Dr. Charles L. Jackson Regarding Technical Issues in Mueller v. Thomas et al., August 15, 2002, Revised August 22, 2002.
Rebuttal Testimony of Dr. Charles L. Jackson on behalf of BellSouth, before the Public Service Commission of Georgia, Docket No. 14361-U, July 10, 2002.

Testimony in Claim of Meliton Aguilar, before the Supreme Court of Panama, July 2, 2002.

Deposition in Nassgil Financial vs. Hughes Electronics, January 7, 2002, Los Angeles.

Affidavit of Dr. Charles L. Jackson in Pacific Communications, L.L.C. v. American Wireless, L.L.C., February 23, 2001.

Expert Report of Dr. Charles L. Jackson on Issues on Which WABCO Bears the Burden of Proof, GE-Harris Railway Electronics, L.L.C., and GE-Harris Railway Electronics Services, L.L.C., v. Westinghouse Air Brake Company, October 6, 2000.

Expert Report of Dr. Charles L. Jackson on Infringement, GE-Harris Railway Electronics, L.L.C. and GE-Harris Railway Electronics Services, L.L.C., v. Westinghouse Air Brake Company, September 6, 2000.

Expert Report of Dr. Charles L. Jackson on Claim Construction in GE-Harris Railway Electronics, L.L.C., and GE-Harris Railway Electronics Services, L.L.C., v. Westinghouse Air Brake Company, August 11, 2000.

Oral testimony in the arbitration between QUALCOMM Incorporated and Electronics and Telecommunications Research Institute (ETRI), July 2000.

Declaration of Dr. Charles L. Jackson, July 20, 2000. Filed by Telecommunications Industry Firm in FCC CC Docket No. 96–98 and CC Docket 99–68, July 21, 2000.

Second Report of Dr. Charles L. Jackson in the Arbitration between QUALCOMM Incorporated and Electronics and Telecommunications Research Institute, June 9, 2000.

Report of Dr. Charles L. Jackson in the Arbitration between QUALCOMM Incorporated and Electronics and Telecommunications Research Institute, May 19, 2000.

Oral testimony before the CRTC in CRTC 99-06 – #: 8695–C12–06/99 – Review of Contribution Collection Mechanism and Related Issues on behalf of TELUS, July 4, 2000.

Testimony on The FCC's Low-Power FM Rulemaking before the Subcommittee on Telecommunications, Trade and Consumer Protection, Committee on Commerce, U.S. House of Representatives, February 17, 2000.

Statement of Dr. Charles L. Jackson , November 22, 1999, Rebuttal statement of Dr. Charles L. Jackson, December 21, 1999, Supplemental Rebuttal Statement of Dr. Charles L. Jackson, January 28, 2000, Declaration Of Charles L. Jackson In Support Of Bell Atlantic's Opposition To Defendants' Motion For Summary Judgment Of Noninfringement On Claims 1, 5, 7 , 8, 9 And 21, February 2, 2000, all In Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc., Covad Communications Company, Inc., and Dieca Communications, Inc., d/b/a Covad Communications Company.

Page 21 of 27

*Advances in Local Communications*, November 1999, filed by TELUS before the Canadian Radio-television and Telecommunications Commission (CRTC).

Testimony before the Michigan Public Service Commission, Re Petition for Arbitration, Parties, Ameritech, CenturyTel Wireless and Thumb Cellular. Case No. U–11989, July 8, 1999.

Testimony before the Michigan Public Service Commission, Re Petition for Arbitration, Parties, Ameritech, AirTouch. Case No. U–11973, June 18, 1999.

Statement In the Matter of Deployment of Wireline Services Offering Advanced Telecommunications Capability, FCC CC Docket No. 98–147, June 15, 1999.

Statement in the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, FCC CC Docket No. 96–98, May 26, 1999.

Deposition in US v. Motorola, Inc. and Nextel Communications, Inc., Case No. 1:94CV02333l(TFH), May 28, 1999.

Deposition in Hyperion Software Operations Inc. v. Hyperion Telecommunications, Inc., Trademark Trail and Appeal Board, Opposition No. 109,736, March 26, 1999.

Statement of Dr. Charles L. Jackson before the Federal Communications Commission en banc hearing on spectrum management, April 6, 1999.

Declaration of Dr. Charles L. Jackson before the FCC in *1998 Biennial Regulatory Review—Spectrum Aggregation Limits for Wireless Telecommunications Carriers, WT Docket No. 98-205*, Prepared for Bell Atlantic. January 25, 1999.

Testimony of Charles L. Jackson, in re: *GWI PCS1, Inc., at al., Debtors and GWI PCS1, Inc., et al., Plaintiffs vs. Federal Communications Commission, Defendant,* in United States Bankruptcy Court for the northern District of Texas, Dallas Division, April 16, 1998.

Preliminary Statement of Dr. Charles Jackson, in *Amarillo CellTelCo v. Southwestern Bell Wireless, Inc. et al.* in United States District Court, Northern District of Texas, Amarillo Division, March 27, 1998.

Deposition of Charles L. Jackson, in re: *GWI PCS1, Inc., at al., Debtors and GWI PCS1, Inc., et al., Plaintiffs vs. Federal Communications Commission, Defendant,* in United States Bankruptcy Court for the northern District of Texas, Dallas Division, March 19, 1998.

Declaration of Charles L. Jackson, Prepared in the United States Court for Federal Claims for Plaintiff CellularOne in *Washington Baltimore Cellular Limited*

Partnership (d/b/a CellularOne Washington/Baltimore) Plaintiff, and Bell Atlantic
Mobile, Inc. Intervenor-Plaintiff, v. United States, Defendant, Case No. 98–50C
(Judge Hodges), March 4, 1998.

Declaration of Charles L. Jackson, Prepared in the United States Court for Federal
Claims for Plaintiff CellularOne in Washington Baltimore Cellular Limited
Partnership (d/b/a CellularOne Washington/Baltimore) Plaintiff, and Bell Atlantic
Mobile, Inc. Intervenor-Plaintiff, v. United States, Defendant, Case No. 98–50C
(Judge Hodges), February 25, 1998.

Joint Rebuttal Statement of Charles L. Jackson and Jonathan L. Kramer, Expert
report prepared for the defendants in Playboy Entertainment Group, Inc. v. United
States of America et al., Civil Action No. 96–94/96–107–JJF, January 1998.

Joint Statement of Charles L. Jackson and Jonathan L. Kramer, Expert report
prepared for the defendants in Playboy Entertainment Group, Inc. v. United States .
of America et al., Civil Action No. 96–94/96–107–JJF, December 3, 1997.

Testimony filed before the Public Service Commission of Nevada on behalf of
Nevada Bell, In the Matter of The Petition of AT&T Communications of Nevada,
Inc., for Arbitration Pursuant to Section 252(b) of the Federal Telecommunications
Act of 1996 to Establish an Interconnection Agreement with Nevada Bell, Docket
97–5014. June 12, 1997.

Testimony before the U.S. Senate Committee on Commerce, Science, and
Transportation. Hearings on S.255, the Public Safety Telecommunications Act.
May 15, 1997.

With Jeffrey H. Rohlfs and Ross M. Richardson. The Depreciation Shortfall.
Prepared for submission before the Federal Communications Commission, CC
Docket No. 96–262: USTA Comments, Attachment 15, filed January 29, 1997.
Reply Comments filed February 13, 1997.

Reply Comments filed before the Federal Communications Commission on behalf
of Ericsson Inc., In the Matter of the Development of Operational, Technical, and
Spectrum Requirements for Meeting Federal, State, and Local Public Safety Agency
Communication Requirements Through the Year 2010, WT Docket No. 96–86.
December 19, 1996.

Testimony filed before the Public Utilities Commission of the State of California on
behalf of Pacific Bell. In the Matter of Application of MCI Telecommunications
Corporation for Arbitration Pursuant to Section 252 of the Federal
Telecommunications Act of 1996 to Establish an Interconnection Agreement with
Pacific Bell, Application No. 96–08–068. September 24, 1996.

Reply testimony filed before the Public Utilities Commission of the State of California on behalf of Pacific Bell, *Rulemaking on the Commission's Own Motion to Govern Open Access to Bottleneck Services and Establish a Framework for Network Architecture Development of Dominant Carrier Networks.* R.93–04–003. *Investigation on the Commission's Own Motion into Open Access and Network Architecture Development of Dominant Carrier Networks*, I.93–04–002. July 10, 1996.

Declaration filed before the Federal Communications Commission on behalf of the United States Telephone Association, *In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996*, CC Docket No. 96–98. May 16, 1996.

Declaration filed before the Federal Communications Commission on behalf of Bell Atlantic Network Services, Inc., *In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996*, CC Docket No. 96–98. May 15, 1996.

Testimonial declaration filed before the United States District Court for the District of Delaware on behalf of the United States Department of Justice, *Playboy Entertainment Group, Inc., and Graff Pay-Per-View, Inc., v. United States of America, et al.*, Civil Action No. 96–94/96–107–JJF, Consolidated Action. May 13, 1996.

Remarks on spectrum policy before the Federal Communications Commission en banc hearing. March 5, 1996.

Affidavit filed before the Federal Communications Commission on behalf of The Wireless Communications Council, *In the Matter of Omnipoint Communications, Inc. New York MTA Frequency Block A*, File No. 15002–CW–L–94. January 16, 1996.

Testimony filed before the Public Service Commission of South Carolina on behalf of Southern Bell Telephone and Telegraph Company, *BellSouth Telecommunications, Inc. d/b/a Southern Bell Telephone and Telegraph Company Request for Approval of the Consumer Price Protection Plan in South Carolina*, Docket No. 95–720–C. September 1995.

Testimony before the Subcommittee on Telecommunications and Finance of the Committee on Commerce, U.S. House of Representatives. Hearings on Federal Management of the Radio Spectrum. September 7, 1995.

With Dale N. Hatfield. Testimony before the U.S. Senate Committee on Commerce, Science and Transportation. Hearings on radio spectrum issues. July 27, 1995.

Testimony in *Turner Broadcasting System, Inc., et al., Plaintiffs, v. Federal Communications Commission, et al., Defendants.* United States District Court for the District of Columbia. Docket No. C.A. No. 92–2247 (and related cases C.A. Nos. 92–2292, 92–2494, 92–2495, 92–2558) (TPJ). Expert's Report filed April 21, 1995; Expert Declaration filed May 25, 1995.

Testimony filed before the Public Service Commission of the District of Columbia on behalf of Bell Atlantic–Washington, D.C., Inc., Formal Case No. 814, Phase IV. January 31, 1995. Rebuttal testimony filed before the Public Service Commission of the District of Columbia. September 15, 1995.

Testimony filed before the State of North Carolina Utilities Commission on behalf of Sprint Mid-Atlantic Telecom, *In the Matter of Investigation to Consider Implementation of a Plan for Intrastate Access Charges for all Telephone Companies Under the Jurisdiction of the North Carolina Utilities Commission and Investigation into Defined Radius Discount Calling Plans,* Docket No. P–100, Sub. 65 and Docket No. P–100, Sub 126. April 1994.

Testimony filed before the Commonwealth of Kentucky before the Public Service Commission on behalf of South Central Bell Telephone Company, *In the Matter of Application of BellSouth Telecommunications, Inc. d/b/a South Central Bell Telephone Company to Modify its Method of Regulation,* Case No. 94–121. April 1994.

Testimony filed before the Federal Communications Commission on behalf of Bell Atlantic, *In the Matter of The Bell Atlantic Telephone Companies Tariff FCC No. 10–Video Dialtone Service*. March 6, 1995. Supplemental testimony filed before the Federal Communications Commission. December 20, 1995.

Expert statement on behalf of Bell Atlantic before the Court of Common Pleas, Philadelphia County, PA, September Term 1990, No. 775 re: *Shared Communications Services of 1800–80 JFK Boulevard, Inc. v. Bell Atlantic Properties, Inc. et al.* February 1995.

Testimony filed before the Georgia Public Service Commission on behalf of BellSouth Telecommunications, Inc., *In Re: Petition of BellSouth Telecommunications, Inc., d/b/a Southern Bell Telephone and Telegraph Company for Consideration and Approval of Georgians First.* June 22, 1994.

With Jeffrey H. Rohlfs. *Report on Capital Needs of a Telephone Company.* Direct and rebuttal testimony before the United States Tax Court, Dockets 7970–91 and 7971–91. June 1994. [Confidential]

Statement filed before the Public Service Commission of Maryland on behalf of Bell Atlantic–Maryland, Inc., in connection with Case No. 8587. June 10, 1994.

Surrebuttal testimony filed before the State Corporation Commission of Virginia on behalf of Bell Atlantic–Virginia, Inc., in connection with Case No. PUC930036. April 20, 1994.

Statement on personal communications service (PCS) before the Federal Communications Commission Personal Communications Services Task Force Meeting, Docket 90–314. April 12, 1994.

Testimony filed before the Federal Communications Commission on behalf of Bell Atlantic Personal Communications, Inc., *In the Matter of the Amendment of the Commission's Rules to Establish New Personal Communications Services*, "Technical Considerations Regarding the 'Size' of PCS Licenses." November 1992.

Rebuttal testimony filed before the Public Service Commission of the District of Columbia on behalf of the Chesapeake and Potomac Telephone Company, Formal Case No. 814, Phase III. November 1992.

Testimony filed before the Public Service Commission of Maryland on behalf of the Chesapeake and Potomac Telephone Company of Maryland, *In the Matter of the Application of the Chesapeake and Potomac Telephone Company of Maryland to Continue and Revise the Alternative Regulation Plan and to Revise and Restructure its Rates and Charges*, Case No. 8462. May 1992.

Statement on Personal Communications Systems (PCS) before the Federal Communications Commission en banc hearings. December 5, 1991.

Testimony on Depreciation before the State of Connecticut Department of Public Utility Control on behalf of the Southern New England Telephone Company. September 1990.

Testimony on Private Line Alternatives before the Public Utilities Commission of the State of Colorado on behalf of the Mountain States Telephone and Telegraph Company. September 1987.

Testimony on *Open Network Architecture and Comparably Efficient Interconnection Policies* before the House Subcommittee on Telecommunications and Finance. U.S. House of Representatives. July 30, 1987.

Testimony on proposed Federal Communications Commission Auction Authority before the Telecommunications, Consumer Protection, and Finance Subcommittee. U.S. House of Representatives. October 28, 1986.

Testimony on the *Application of Southwestern Bell Telephone Company for a Rate Increase before the Public Service Commission of the State of Missouri* on behalf of Southwestern Bell Telephone Company. February 1986.

Rebuttal testimony on the *Application of Southwestern Bell Telephone Company for a Rate Increase before the Public Utility Commission of Texas* on behalf of Southwestern Bell Telephone Company. October 1985.

Testimony on S. 880 before the Committee on Commerce, Science and Transportation, U.S. Senate. April 4, 1984. ["Daytime Broadcasters"]

Testimony on S. 66 before the Subcommittee on Communications, Committee on Commerce, Science and Transportation, U.S. Senate. February 16, 1983. ["Bypassing Cable"]

Testimony on Freedom of Expression and the Electronic Media: Technology Issues before the Committee on Commerce, Science and Transportation, U.S. Senate. September 28, 1982.

Testimony on S. 2355 before the Subcommittee on Communications, Committee on Commerce, Science and Transportation, U.S. Senate. May 6, 1982.

Testimony on Electronic Mail before the Postal Operations and Service Subcommittee, U.S. House of Representatives. May 5, 1977.

February 20, 2008

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CIF LICENSING, LLC, d/b/a
GE LICENSING,

        Plaintiff,

    v.

AGERE SYSTEMS INC.,

        Defendant.

)
)
)
)
)
)
)
)
)
)

C.A. No. 07-170 (JJF)

JURY TRIAL DEMANDED

## UNDERTAKING CONCERNING DESIGNATED
### MATERIAL COVERED BY STIPULATED PROTECTIVE ORDER

UNDERTAKING OF _Charles L Jackson_

I, _Charles L. Jackson_ certify that:

1.    My address is: _5210 Edgemoor Radline, Bethesda MD 20814_

2.    My employer is: _Jackson Telecom Consulting, LLC_

3.    My present occupation or job description is: _Consultant_

4.    My litigation-related consulting relationships in which I am currently engaged or have been engaged in the past four years are as follows: (attach sheet if necessary)

_See Attached List_

5.    I certify that I have read the Stipulated Protective Order dated _2 November 2007_, entered in the United States District Court for the District of Delaware, in the action entitled CIF LICENSING, LLC, d/b/a GE LICENSING v. AGERE SYSTEMS INC.

C.A. No. 07-170, and that I understand the terms, conditions, and restrictions it imposes on any person given access to "CONFIDENTIAL" and/or "CONFIDENTIAL–OUTSIDE ATTORNEYS' EYES ONLY" materials. I recognize that I am bound by the terms of the Stipulated Protective Order, and I agree to comply with its terms.

6.    I agree to use material produced in this litigation solely for purposes of this litigation. I will not disclose "CONFIDENTIAL" and/or "CONFIDENTIAL–OUTSIDE ATTORNEYS' EYES ONLY" materials to anyone other than persons specifically authorized by the Stipulated Protective Order and agree to return all such Designated Material that comes into my possession to counsel from whom I received such materials.

7.    I hereby consent to be subject to the personal jurisdiction of the United States District Court for the District of Delaware with respect to any proceedings relating to the performance under, compliance with, or violation of the Stipulated Protective Order.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this Undertaking is executed this _17th_ day of _March_, 2008, at _Bethesda_
_Montgomery County_
_Maryland_

Signed: _[signature]_

_Charles L. Jackson_

058626.1006

Litigation-Related Consulting Relationships of Dr. Charles L. Jackson from 1 January 2004 to 17 March 2008

**Client**
Razorsight
Stanton (FinalScratch)
AT&T/Verizon Wireless/Sprint/T-Mobile
Bell South Panama
ClearLinx
Cable Bahamas
U.S. Department of Justice (Bankruptcy proceeding for Insync)
Inline Connection Corporation
Motorola (proceeding regarding the confidentiality of bid documents for a land-mobile contract awarded by the state of Mississippi)
Los Angeles County Metropolitan Transportation Authority (MTA)
QUALCOMM
Qwest

Regulatory-Related Consulting Relationships of Dr. Charles L. Jackson from 1 January 2004 to 17 March 2009

**Client**
Intel
QUALCOMM
XM/Sirius
Verizon Wireless
Alaska Communications Systems (ACS)
Cincinnati Bell Telephone Company
CTIA—the Wireless Association
Remington
Intellifit
M/A-COM
TELUS

# EXHIBIT I

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf Houston London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Amanda E. Koenig
Associate
akoenig@mwe.com
202.756.8075

March 21, 2008

VIA E-MAIL

Chad E. King
Townsend and Townsend and Crew LLP
1200 Seventeenth Street
Suite 2700
Denver, CO 80202

Re:    *CIF Licensing, LLC, d/b/a GE Licensing v. Agere Systems Inc.*, C.A. No. 07-170

Dear Mr. King:

I write to follow up on my letter dated March 19, 2008. We understand that the company Iron Mountain has a facility in Somerset, NJ which we believe complies with the requirements of Paragraph 12 of the Protective Order, and we suggest that the parties move forward with engaging Iron Mountain's technology escrow services. Frank Garrido and David Strouse have been particularly helpful in responding to our preliminary inquiries. Frank's contact information is as follows:

Frank Garrido
Software & Technology Escrow Advisor
Iron Mountain Intellectual Property Management, Inc
20110 Ashbrook Place, Suite 100
Ashburn, VA 20147
(T) 571-292-2221
(F) 703-738-7392
(M) 571-233-7288
frank.garrido@ironmountain.com

Furthermore, please let us know whether Agere is facilitating the collection and production of source code from third parties (including Silicon Laboratories Inc., Broadcom Corp., and AltoCom, Inc.) or whether we should make separate arrangements with their counsel.

Finally, please let us know whether Agere objects to GE Licensing's identification of Messrs. Buterbaugh, Jackson, and Lopes as soon as possible.

Chad E. King
March 21, 2008
Page 2

If you have any questions or concerns, please do not hesitate to contact us.

Sincerely,

Amanda E. Koenig

AEK/AEK

cc:    Counsel of Record for Agere

WDC99 1545362-1.037743.0051

# EXHIBIT J

TOWNSEND
*and*
TOWNSEND
*and*
CREW
LLP

Denver

1200 Seventeenth Street
Suite 2700
Denver, Colorado 80202
Tel 303.571.4000
Fax 303.571.4321

David Siplora
dssiplora@townsend.com

March 27, 2008

*VIA E-MAIL AND FACSIMILE*

Amanda E. Koenig
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, D.C. 20005-3096
Email: akoenig@mwe.com

Re:  *CIF Licensing, LLC, d/b/a GE Licensing v. Agere Systems Inc., C.A. No. 07-170*

Dear Ms. Koenig:

Pursuant to section 2(c) of the Protective Order, this letter shall serve as notice that Agere Systems Inc. ("Agere") objects to the use of Messrs. Buterbaugh and Lopes as Outside Consultants in this litigation. The resumes of Messrs. Buterbaugh and Lopes both state they were employed by Agere's predecessors-in-interest, AT&T Corporation ("AT&T") and Lucent Technologies, Inc. ("Lucent"), in a capacity relevant to the present dispute. Both individuals will possess confidential information of AT&T and Lucent, and may be placed in a position such that the confidential information they possess could be used in a manner contrary to the interests of Agere. For example, while employed at AT&T and Lucent, Mr. Buterbaugh worked on relevant subject matter as an analyst handling "data communication," "modem," and "ADSL" technology. In addition, and while similarly employed, Mr. Lopes designed and developed "communications products."

In addition, Mr. Lopes is presently employed by ThinkFire Services USA, Ltd. ("ThinkFire"). ThinkFire is currently engaged in work for Agere. We believe that Mr. Lopes has had some role in one or more engagements, including at least one ongoing engagement. In connection with these projects, Mr. Lopes will have received and had access to confidential information of Agere. As such, employment by your firm on behalf of GE would place Mr. Lopes in a conflicted position.

Given the employment history of Messrs. Buterbaugh and Lopes, we object to their service as Outside Consultants in this matter. Accordingly, we ask that you withdraw your request to have Messrs. Buterbaugh and Lopes serve as Outside Consultants in this litigation.

We would like to schedule a time to discuss this issue. Please contact me at your earliest convenience to arrange a mutually agreeable time. Your prompt response is appreciated.

MAR. 27. 2008  12:21PM    TOWNSEND & TOWNSEND              NO. 4094    P.  3

TOWNSEND
_and_
TOWNSEND
_and_
CREW
ʟʟᴾ

Amanda E. Koenig
March 27, 2008
Page 2

          With respect to the issue of escrow of source code, we understand that you wish to
arrange for deposit of source code in a location in New Jersey.  In light of our objection, do you
continue to wish to proceed with such a deposit in New Jersey.  Please advise.

                                        Very truly yours,

                                        David Sipiora

61319507 v1



CompuLaw Vision - [Event List for CIF Licensing LLC, d/b/a GE Licensing]

Data Entry   Reports   Setup   Utilities   View   Window   Help

**Event Entry**

Added by 04332 on 3/27/2008                          Changed by 04332 on 3/27/2008

Client name: General Electric Company.037743

Matter name: CIF Licensing, LLC, d/b/a GE Licensing v. Agere Systems Inc.

File number: 037743        0051.0000

Court Case No: C.A. No. 07-0170-JJF

Rule sets: DE USDC-DE   FRCP                                    Edit

Key code:                 Date: 4/11/2008   Friday    Time:       to:

Time Zone:                                                        Clear

Deadline for Agere to file motion to bar Buterbaugh & Lopes for disclosure of confidential information is [10 days from objections rec'd via fax 3/27/08)

TimeKeeper: X0208                                          Names

Manager: Freed, Joel M.:08928              Document #:

Category: SUSPENSE                          Priority: DC IP Litigation

Court: DE US DIST

**Name List**

Reminders:                                 Andersen, Timothy:03338

Matter Office: 03                          Connelly, Michael W.:07780

Matter Dept: Intellectual Property         Ferguson, Brian:03327

Disposition:                               Freed, Joel M.:08928

                                           Greenfeld, Robert:08848

            Save     Help    Cancel        Koenig, Amanda Ew:07986

                                           Wheeler, Edwin H.:07050

Thursday, March 27, 2...   3:08 PM

Start   |  Inbox - M...  |  Washingt...  |  2 Citrix   |                      3:08 PM



FAX



# EXHIBIT K

**Koenig, Amanda**

| | |
|---|---|
| From: | Connelly, Michael |
| Sent: | Thursday, April 10, 2008 1:07 AM |
| To: | Sipiora, David E.; Phillips, Ryan D; Koenig, Amanda |
| Cc: | GE; GEvAgere |
| Subject: | RE: CIF Licensing, LLC, d/b/a GE Licensing v. Agere Systems Inc., C.A. No. 07-170 |

Attachments:      Resume_BinLee_Discover.doc



Resume_BinLee_Dis
cover.doc (40...

David - we can agree to that if Agere will agree to Dr. Bims and Dr. Lee (resume attached). To expedite things, Dr. Lee will be assisting with software review. We would also like to place the software in escrow in/around Menlo Park - we should be able to send locations in the AM. When could the software be delivered?

Thanks

mike

---

From: Sipiora, David E. [desipiora@townsend.com]
Sent: Wednesday, April 09, 2008 11:32 PM
To: Phillips, Ryan D; Koenig, Amanda; Connelly, Michael
Cc: GE; GEvAgere
Subject: RE: CIF Licensing, LLC, d/b/a GE Licensing v. Agere Systems Inc., C.A. No. 07-170

Mike: We are putting together our motion re the two former Lucent employees for filing Thursday, 4/10. Would prefer not to file. We are prepared to accept Bims if you explicitly withdraw the proffer of the two Lucent employees under the protective order. Please let us know. Thanks. David
-----Original Message-----
From: Phillips, Ryan D
Sent: Tuesday, April 08, 2008 9:09 AM
To: 'Koenig, Amanda'; 'Connelly, Michael'
Cc: GE; GEvAgere
Subject: RE: CIF Licensing, LLC, d/b/a GE Licensing v. Agere Systems Inc., C.A. No. 07-170

Amanda and Mike,

We have forwarded Dr. Bims's CV to our client for review and are hoping for an expedient response.

Yesterday in our meet and confer you stated that by proffering a new expert, it may alleviate the need to further discuss Messrs. Lopes and Buterbaugh. We understand your statement to mean that if we approve Dr. Bims, you will withdraw Messrs. Lopes and Buterbaugh as consultants under the Protective Order. As you know, under the Protective Order, we have until April 10 to move the Court regarding Messrs. Lopes and Buterbaugh. Agere intends to make such a motion unless GE unequivocally withdraws Lopes and Buterbaugh. Please confirm that if we are able to approve Dr. Bims, you will withdraw Messrs. Lopes and Buterbaugh as consultants under the protective order.

1

Regards,

Ryan

-----Original Message-----
From: Koenig, Amanda [mailto:AKoenig@mwe.com]
Sent: Monday, April 07, 2008 7:39 PM
To: Phillips, Ryan D
Cc: GE; GEvAgere
Subject: CIF Licensing, LLC, d/b/a GE Licensing v. Agere Systems Inc., C.A. No. 07-170

Dear Counsel:

Please see the attached document.

Sincerely,
Amanda Koenig

Amanda E. Koenig | Associate / Intellectual Property, Media & Technology
McDermott Will & Emery LLP| 600 13th Street, NW Washington, DC 20005
phone: 202.756.8075 | fax: 202.756.8087 | akoenig@mwe.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
IRS Circular 230 Disclosure: To comply with requirements imposed by the IRS, we inform you that
any U.S. federal tax advice contained herein (including any attachments), unless specifically stated
otherwise, is not intended or written to be used, and cannot be used, for the purposes of (i) avoiding
penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another
party any transaction or matter herein.

_____
_____

This message is a PRIVILEGED AND CONFIDENTIAL communication. This message and all
attachments are a private communication sent by a law firm and may be confidential or protected by
privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying,
distribution or use of the information contained in or attached to this message is strictly prohibited.
Please notify the sender of the delivery error by replying to this message, and then delete it from your
system. Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Please visit http://www.mwe.com/ for more information about our Firm.

# EXHIBIT L

**Koenig, Amanda**

| | |
|---|---|
| From: | Connelly, Michael |
| Sent: | Thursday, April 10, 2008 10:25 AM |
| To: | Sipiora, David E.; Phillips, Ryan D; Koenig, Amanda |
| Cc: | GE; GEvAgere |
| Subject: | RE: CIF Licensing, LLC, d/b/a GE Licensing v. Agere Systems Inc., C.A. No. 07-170 |

| | |
|---|---|
| Follow Up Flag: | Follow up |
| Due By: | Friday, April 11, 2008 4:30 AM |
| Flag Status: | Purple |

That is fine, there is no need to file the motion, but we would appreciate if you could act quickly on Lee and also please let me know when the source code could be delivered. Amanda will send the details of an Iron Mountain escrow location to Ryan.

Mike

_____

Michael W. Connelly

McDermott Will & Emery LLP | 600 13th Street, N.W., Washington, D.C. 20005

Main: 202-756-8000 | Direct: 202-756-8037 | Fax: 202-756-8087 | www.mwe.com | mconnelly@mwe.com

_____

-----Original Message-----
From: Sipiora, David E. [mailto:desipiora@townsend.com]
Sent: Thursday, April 10, 2008 9:46 AM
To: Connelly, Michael; Phillips, Ryan D; Koenig, Amanda
Cc: GE; GEvAgere
Subject: RE: CIF Licensing, LLC, d/b/a GE Licensing v. Agere Systems Inc., C.A. No. 07-170

Mike, that is not going to work. The deal was Bims. This is our last
day to file the motion. We cleared the deal you offered -- Bims in, 2
ex-Lucent guys out -- with the client. The Bims resume was circulated,
input received, and approval provided. Now you are changing the deal at
the last minute. We are accepting the original deal. Please let us
know if we have agreement as originally proposed by you. We need to
know ASAP.
As for Lee, that is a separate matter. We will look at his materials,
get them to client, and provide a response as soon as possible. But,
based on experience, it is not going to happen today.
Please let us know. Thank you. Regards, David

-----Original Message-----
From: Connelly, Michael [mailto:mconnelly@mwe.com]

1

Sent: Wednesday, April 09, 2008 11:07 PM
To: Sipiora, David E.; Phillips, Ryan D; Koenig, Amanda
Cc: GE; GEvAgere
Subject: RE: CIF Licensing, LLC, d/b/a GE Licensing v. Agere Systems
Inc., C.A. No. 07-170


David - we can agree to that if Agere will agree to Dr. Bims and Dr. Lee
(resume attached).  To expedite things, Dr. Lee will be assisting with
software review.  We would also like to place the software in escrow
in/around Menlo Park - we should be able to send locations in the AM.
When could the software be delivered?

Thanks

mike

_____
From: Sipiora, David E. [desipiora@townsend.com]
Sent: Wednesday, April 09, 2008 11:32 PM
To: Phillips, Ryan D; Koenig, Amanda; Connelly, Michael
Cc: GE; GEvAgere
Subject: RE: CIF Licensing, LLC, d/b/a GE Licensing v. Agere Systems
Inc., C.A. No. 07-170

Mike:  We are putting together our motion re the two former Lucent
employees for filing Thursday, 4/10.  Would prefer not to file.  We are
prepared to accept Bims if you explicitly withdraw the proffer of the
two Lucent employees under the protective order.  Please let us know.
Thanks.  David
-----Original Message-----
From: Phillips, Ryan D
Sent: Tuesday, April 08, 2008 9:09 AM
To: 'Koenig, Amanda'; 'Connelly, Michael'
Cc: GE; GEvAgere
Subject: RE: CIF Licensing, LLC, d/b/a GE Licensing v. Agere Systems
Inc., C.A. No. 07-170

Amanda and Mike,

We have forwarded Dr. Bims's CV to our client for review and are hoping
for an expedient response.

Yesterday in our meet and confer you stated that by proffering a new
expert, it may alleviate the need to further discuss Messrs. Lopes and
Buterbaugh.  We understand your statement to mean that if we approve Dr.
Bims, you will withdraw Messrs. Lopes and Buterbaugh as consultants
under the Protective Order.  As you know, under the Protective Order, we
have until April 10 to move the Court regarding Messrs. Lopes and
Buterbaugh.  Agere intends to make such a motion unless GE unequivocally
withdraws Lopes and Buterbaugh.  Please confirm that if we are able to
approve Dr. Bims, you will withdraw Messrs. Lopes and Buterbaugh as

consultants under the protective order.

Regards,

Ryan

-----Original Message-----
From: Koenig, Amanda [mailto:AKoenig@mwe.com]
Sent: Monday, April 07, 2008 7:39 PM
To: Phillips, Ryan D
Cc: GE; GEvAgere
Subject: CIF Licensing, LLC, d/b/a GE Licensing v. Agere Systems Inc.,
C.A. No. 07-170

Dear Counsel:

Please see the attached document.

Sincerely,
Amanda Koenig

Amanda E. Koenig | Associate / Intellectual Property, Media & Technology
McDermott Will & Emery LLP| 600 13th Street, NW Washington, DC 20005
phone: 202.756.8075 | fax: 202.756.8087 | akoenig@mwe.com

*************************************************************************
.*******************************************

IRS Circular 230 Disclosure: To comply with requirements imposed by the
IRS, we inform you that any U.S. federal tax advice contained herein
(including any attachments), unless specifically stated otherwise, is
not intended or written to be used, and cannot be used, for the purposes
of (i) avoiding penalties under the Internal Revenue Code or (ii)
promoting, marketing or recommending to another party any transaction or
matter herein.
_____

____
_____


This message is a PRIVILEGED AND CONFIDENTIAL communication. This
message and all attachments are a private communication sent by a law
firm and may be confidential or protected by privilege. If you are not
the intended recipient, you are hereby notified that any disclosure,
copying, distribution or use of the information contained in or attached
to this message is strictly prohibited. Please notify the sender of the
delivery error by replying to this message, and then delete it from your
system. Thank you.
*************************************************************************
*******************************************

Please visit http://www.mwe.com/ for more information about our Firm.

# EXHIBIT M

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf Houston London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Amanda E. Koenig
Associate
akoenig@mwe.com
202.756.8075

April 14, 2008

VIA E-MAIL

Ryan D. Phillips
Townsend and Townsend and Crew LLP
1200 Seventeenth Street
Suite 2700
Denver, CO 80202

Re:    *CIF Licensing, LLC, d/b/a GE Licensing v. Agere Systems Inc.*, C.A. No. 07-170

Dear Mr. Phillips:

We write to follow up on the status of Agere's source code production.  As Michael Connelly informed you last week—by email and on the phone—GE Licensing requests that the source code be provided in Union City, CA.  We understand that Iron Mountain has facilities there that should prove more than sufficient.  Again, Frank Garrido and David Strouse have been particularly helpful in responding to our preliminary inquires.  Frank's contact information is as follows:

> Frank Garrido
> Software & Technology Escrow Advisor
> Iron Mountain Intellectual Property Management, Inc.
> 20110 Ashbrook Place, Suite 100
> Ashburn, VA 20147
> (T) 571-292-2221
> (F) 703-738-7392
> (M) 571-233-7288
> frank.garrido@ironmountain.com

Again, please let us know by close of business (*i.e.*, 5 PM EST) today when Agere will make its source code available so our expert and his staff can prepare and make any necessary arrangements.  Given the late stage of discovery, upcoming 30(b)(6) depositions, and Agere's requests that GE Licensing update its infringement contentions, it is vital that we gain access to Agere's source code in the most prompt and efficient manner possible.

U.S. practice conducted through McDermott Will & Emery LLP.

**600 Thirteenth Street, N.W. Washington D.C. 20005-3096 Telephone: 202.756.8000 Facsimile: 202.756.8087 www.mwe.com**

Ryan D. Phillips
April1 14, 2008
Page 2


Please do not hesitate to contact us if you have any questions.

Sincerely,

Amanda E. Koenig

cc:    Counsel of Record for Agere (via e-mail: gevagere@townsend.com)

WDC99 1555167-1.037743.0051

# EXHIBIT N

## Koenig, Amanda

| | |
|---|---|
| **From:** | Koenig, Amanda |
| **Sent:** | Tuesday, April 15, 2008 11:48 AM |
| **To:** | Phillips, Ryan D |
| **Cc:** | Agere Counsel "gevagere@townsend.com"; GE |
| **Attachments:** | Discovery Escrow Agreement 1-16-08 06.doc |

Dear Ryan,

Thank you for your email regarding Agere's source code yesterday. We understand you've been in touch with Iron Mountain about setting up the appropriate facilities and appreciate your efforts. We also understand that Iron Mountain requires that one of the parties sign a Discovery Escrow Agreement, which I have attached for your convenience.

In an effort to expedite review of the source code, we would be happy to serve as the signatory to the Iron Mountain agreement, to pay the Iron Mountain fees directly, and to bill Agere for its portion. We would also be happy to provide the required standalone computer, so that Agere would merely have to send a hard drive containing its source code to the facility. Finally, at this time we do not anticipate needing to print out any copies of the source code. Thus, the PO provisions dealing with a standalone printer and watermarked paper would not come into play. If we were to find that printing capabilities were required, we would of course notify you so that we could work out any details. It bears repeating, however, that at this time we do not require printing capabilities for our experts' review of the source code.

On a related note, in light of the complexities the parties are confronting in reviewing the source code, we would also value the opportunity to discuss how the parties wish to proceed with depositions involving Agere source code. One option, for instance, would be to have an Agere attorney bring a hard drive containing the source code to depositions for which it is required. We would need to discuss an appropriate method for marking and identifying any such code used as an exhibit, but we're confident the parties could find a reasonable solution. This matter can certainly wait until after we finalize how the source code will be deposited and stored with Iron Mountain--which is our first priority--but we wanted to raise it for discussion purposes and in an effort to simplify discovery for the parties as much as possible.

Please let me know if you have any questions.

Sincerely,
Amanda

**Amanda E. Koenig | Associate / Intellectual Property, Media & Technology**

**McDermott Will & Emery LLP |** 600 13th Street, NW Washington, DC 20005

phone: 202.756.8075 | fax: 202.756.8087 | akoenig@mwe.com

**Koenig, Amanda**

| | |
|---|---|
| **From:** | Connelly, Michael |
| **Sent:** | Tuesday, April 15, 2008 1:38 PM |
| **To:** | GEvAgere |
| **Subject:** | Source code |
| **Categories:** | GE v. Agere |

Ryan - one thing we wanted to suggest. Would you consider placing the code in an office/room at Townsend's office in Palo Alto - its secure, lockable and may short circuit a lot of back and forth.  Let me know your thoughts.

Mike

Michael W. Connelly
McDermott Will & Emery LLP | 600 13th Street, N.W., Washington, D.C. 20005
Main: 202-756-8000 | Direct: 202-756-8037 | Fax: 202-756-8087 | www.mwe.com | mconnelly@mwe.com

5/1/2008

## Koenig, Amanda

| | |
|---|---|
| **From:** | Koenig, Amanda |
| **Sent:** | Wednesday, April 16, 2008 2:11 PM |
| **To:** | Phillips, Ryan D |
| **Cc:** | GE; Agere Counsel "gevagere@townsend.com" |
| **Subject:** | FW: Source code |
| **Categories:** | GE v. Agere |

Ryan,

Mike has been out of the office attending a funeral service this morning, but he asked me to let you know that I am available should any issues arise. I know that getting the source code produced is foremost on everyone's minds. Is there anything we can do to assist? Will the agreement with Iron Mountain be signed today?

Please let us know where things stand and what we can do to help.

Sincerely,
Amanda

**Amanda E. Koenig | Associate / Intellectual Property, Media & Technology**

phone: 202.756.8075 | fax: 202.756.8087 | akoenig@mwe.com

---

**From:** Connelly, Michael
**Sent:** Tuesday, April 15, 2008 1:38 PM
**To:** GEvAgere
**Subject:** Source code

Ryan - one thing we wanted to suggest. Would you consider placing the code in an office/room at Townsend's office in Palo Alto - its secure, lockable and may short circuit a lot of back and forth. Let me know your thoughts.

Mike

---

Michael W. Connelly
McDermott Will & Emery LLP | 600 13th Street, N.W., Washington, D.C. 20005
Main: 202-756-8000 | Direct: 202-756-8037 | Fax: 202-756-8087 | www.mwe.com | mconnelly@mwe.com

---

5/1/2008

**Koenig, Amanda**

| | |
|---|---|
| **From:** | Koenig, Amanda |
| **Sent:** | Thursday, April 17, 2008 12:06 PM |
| **To:** | Phillips, Ryan D |
| **Cc:** | GE; Agere Counsel "gevagere@townsend.com" |
| **Subject:** | GE v. Agere: Source Code |

Dear Ryan,

I thought I'd check in to see where we stand on the source code. Have any remaining issues with Iron Mountain been resolved? Were you able to identify the format(s) of Agere's source code and whether we would need specialized software to review it? Once we know the answers to those questions, we can look into getting any necessary software.

If we can be of any assistance, please do not hesitate to contact us. I will be in the office today, but will be traveling tomorrow and Monday. Mike Connelly, however, will be available on both days.

Sincerely,
Amanda

Amanda E. Koenig | **Associate / Intellectual Property, Media & Technology**

**McDermott Will & Emery LLP** | 600 13th Street, NW Washington, DC 20005

phone: 202.756.8075 | fax: 202.756.8087 | akoenig@mwe.com

## Koenig, Amanda

| | |
|---|---|
| **From:** | Koenig, Amanda |
| **Sent:** | Thursday, April 17, 2008 6:02 PM |
| **To:** | Phillips, Ryan D; Connelly, Michael |
| **Cc:** | GEvAgere; GE |
| **Subject:** | RE: GE v. Agere: Source Code |
| **Categories:** | GE v. Agere |

Ryan,

Thank you. We are working to get the appropriate software, monitor, keyboard, and mouse. At this time, we do not anticipate any difficulties in doing so but will let you know if anything comes up. Any update on the other source code issues? Do you have any ETA for its delivery to Iron Mountain? We are anxious to let our expert know so he can make any necessary adjustments to his schedule.

Sincerely,
Amanda

**Amanda E. Koenig | Associate / Intellectual Property, Media & Technology**

phone: 202.756.8075 | fax: 202.756.8087 | akoenig@mwe.com

---

**From:** Phillips, Ryan D [mailto:rdphillips@townsend.com]
**Sent:** Thursday, April 17, 2008 5:33 PM
**To:** Koenig, Amanda; Connelly, Michael
**Cc:** GEvAgere
**Subject:** RE: GE v. Agere: Source Code

Amanda,

The text document showing the directory structure and file names regarding the source code, which I transmitted with the email below, was incomplete because a few of the zip files had not yet been unzipped. Please replace that version with the attached version 2, which is also designated Confidential – Outside AEO Only. Sorry for the confusion.

Regards,

Ryan

> -----Original Message-----
> **From:** Phillips, Ryan D
> **Sent:** Thursday, April 17, 2008 11:51 AM
> **To:** 'Koenig, Amanda'; 'Connelly, Michael'
> **Cc:** GEvAgere
> **Subject:** RE: GE v. Agere: Source Code
>
> Amanda,
>
> Regarding the format of the source code, please see the attached .txt file, which we are hereby designating Confidential – Outside Attorney's Eyes Only under the Protective Order. This file lists the file names and types within the directory structure that will be on the hard drive of the Standalone Computer. Whenever you encounter a .zip file, we have unzipped the file into a directory of the same name. I believe most of the files may be viewed with a text editor, however, you will have the ability to install software on the Standalone Computer (using a CD-ROM drive) if necessary to view the code.

As I have mentioned, we will provide the standalone computer, however, either you or Iron Mountain will need to provide a monitor, mouse, and keyboard.  The USB ports on the computer are disabled, and so the mouse and keyboard should be PS2.

We are working to resolve the issues with Iron Mountain.

Regards,

Ryan


-----Original Message-----
**From:** Koenig, Amanda [mailto:AKoenig@mwe.com]
**Sent:** Thursday, April 17, 2008 10:06 AM
**To:** Phillips, Ryan D
**Cc:** GE; GEvAgere
**Subject:** GE v. Agere: Source Code

Dear Ryan,

I thought I'd check in to see where we stand on the source code.  Have any remaining issues with Iron Mountain been resolved?  Were you able to identify the format(s) of Agere's source code and whether we would need specialized software to review it?  Once we know the answers to those questions, we can look into getting any necessary software.

If we can be of any assistance, please do not hesitate to contact us.  I will be in the office today, but will be traveling tomorrow and Monday.  Mike Connelly, however, will be available on both days.

Sincerely,
Amanda

**Amanda E. Koenig | Associate / Intellectual Property, Media & Technology**

**McDermott Will & Emery LLP** | 600 13th Street, NW Washington, DC 20005

phone: 202.756.8075 | fax: 202.756.8087 | akoenig@mwe.com


*****************************************************************************************
IRS Circular 230 Disclosure: To comply with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained herein (including any attachments), unless specifically stated otherwise, is not intended or written to be used, and cannot be used, for the purposes of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter herein.

---

This message is a PRIVILEGED AND CONFIDENTIAL communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Thank you.
*****************************************************************************************

Please visit http://www.mwe.com/ for more information about our Firm.

**Koenig, Amanda**

| | |
|---|---|
| **From:** | Connelly, Michael |
| **Sent:** | Monday, April 21, 2008 12:24 PM |
| **To:** | gevagere@townsend.com |
| **Cc:** | Koenig, Amanda |
| **Subject:** | GEvAgere - Source Code |
| **Categories:** | GE v. Agere |

Ryan,

   Has there been any movement on getting the source code in place?  Please let us know the status as we are trying to schedule our experts' time.

Mike

_____

Michael W. Connelly
McDermott Will & Emery LLP | 600 13th Street, N.W., Washington, D.C. 20005
Main: 202-756-8000 | Direct: 202-756-8037 | Fax: 202-756-8087 | www.mwe.com | mconnelly@mwe.com
_____

**Koenig, Amanda**

| | |
|---|---|
| **From:** | Koenig, Amanda |
| **Sent:** | Thursday, April 24, 2008 1:54 PM |
| **To:** | Phillips, Ryan D |
| **Cc:** | Connelly, Michael; GEvAgere |
| **Subject:** | RE: GEvAgere - Source Code |
| **Categories:** | GE v. Agere |

Ryan,

Where do things stand with respect to finalization of the contract and production of Agere's source code? Do you have an ETA for its production? We would like to let our expert know when it will be available so he can plan accordingly.

As always, if we can do anything to facilitate the process, please let us know.

Sincerely,
Amanda

**Amanda E. Koenig | Associate / Intellectual Property, Media & Technology**

phone: 202.756.8075 | fax: 202.756.8087 | akoenig@mwe.com

---

**From:** Phillips, Ryan D [mailto:rdphillips@townsend.com]
**Sent:** Tuesday, April 22, 2008 6:06 PM
**To:** Connelly, Michael; GEvAgere
**Cc:** Koenig, Amanda
**Subject:** RE: GEvAgere - Source Code

Mike,

We have reviewed the contracts provided by Iron Mountain and made a few minor changes to be consistent with the Protective Order and resolve issues raised by Iron Mountain. We have circulated the revised versions to our client for approval and to Iron Mountain for their review, and we are waiting to hear back. If you have any further questions please call me.

Regards,

Ryan

> -----Original Message-----
> **From:** Connelly, Michael [mailto:mconnelly@mwe.com]
> **Sent:** Monday, April 21, 2008 10:24 AM
> **To:** GEvAgere
> **Cc:** Koenig, Amanda
> **Subject:** GEvAgere - Source Code
>
> Ryan,
>
>     Has there been any movement on getting the source code in place? Please let us know the status as we are trying to schedule our experts' time.
>
> Mike

5/1/2008

---

Michael W. Connelly

McDermott Will & Emery LLP | 600 13th Street, N.W., Washington, D.C. 20005

Main: 202-756-8000 | Direct: 202-756-8037 | Fax: 202-756-8087 | www.mwe.com | mconnelly@mwe.com

---

*********************************************************************************************************
IRS Circular 230 Disclosure: To comply with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained herein (including any attachments), unless specifically stated otherwise, is not intended or written to be used, and cannot be used, for the purposes of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter herein.

---

This message is a PRIVILEGED AND CONFIDENTIAL communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Thank you.
*********************************************************************************************************

Please visit http://www.mwe.com/ for more information about our Firm.

# EXHIBIT O

## Koenig, Amanda

| | |
|---|---|
| **From:** | Phillips, Ryan D [rdphillips@townsend.com] |
| **Sent:** | Thursday, April 24, 2008 3:04 PM |
| **To:** | Koenig, Amanda |
| **Cc:** | Connelly, Michael; GEvAgere |
| **Subject:** | RE: GEvAgere - Source Code |
| **Categories:** | GE v. Agere |

Amanda,

As I told Mike on Tuesday, we have forwarded our revised version of Iron Mountain's contract to our client and to Iron Mountain for review. We have not heard from either of them.

Ryan

> -----Original Message-----
> **From:** Koenig, Amanda [mailto:AKoenig@mwe.com]
> **Sent:** Thursday, April 24, 2008 11:54 AM
> **To:** Phillips, Ryan D
> **Cc:** Connelly, Michael; GEvAgere
> **Subject:** RE: GEvAgere - Source Code
>
> Ryan,
>
> Where do things stand with respect to finalization of the contract and production of Agere's source code? Do you have an ETA for its production? We would like to let our expert know when it will be available so he can plan accordingly.
>
> As always, if we can do anything to facilitate the process, please let us know.
>
> Sincerely,
> Amanda
>
> **Amanda E. Koenig | Associate / Intellectual Property, Media & Technology**
>
> phone: 202.756.8075 | fax: 202.756.8087 | <u>akoenig@mwe.com</u>

---

**From:** Phillips, Ryan D [mailto:rdphillips@townsend.com]
**Sent:** Tuesday, April 22, 2008 6:06 PM
**To:** Connelly, Michael; GEvAgere
**Cc:** Koenig, Amanda
**Subject:** RE: GEvAgere - Source Code

Mike,

We have reviewed the contracts provided by Iron Mountain and made a few minor changes to be consistent with the Protective Order and resolve issues raised by Iron Mountain. We have circulated the revised versions to our client for approval and to Iron Mountain for their review, and we are waiting to hear back. If you have any further questions please call me.

Regards,

Ryan

5/1/2008

-----Original Message-----
**From:** Connelly, Michael [mailto:mconnelly@mwe.com]
**Sent:** Monday, April 21, 2008 10:24 AM
**To:** GEvAgere
**Cc:** Koenig, Amanda
**Subject:** GEvAgere - Source Code

Ryan,

   Has there been any movement on getting the source code in place?  Please let us know the status as we are trying to schedule our experts' time.

Mike

_____

Michael W. Connelly

McDermott Will & Emery LLP | 600 13th Street, N.W., Washington, D.C. 20005

Main: 202-756-8000 | Direct: 202-756-8037 | Fax: 202-756-8087 | www.mwe.com | mconnelly@mwe.com

_____

*********************************************************************************************************
IRS Circular 230 Disclosure: To comply with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained herein (including any attachments), unless specifically stated otherwise, is not intended or written to be used, and cannot be used, for the purposes of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter herein.
_____

This message is a PRIVILEGED AND CONFIDENTIAL communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Thank you.
*********************************************************************************************************

Please visit http://www.mwe.com/ for more information about our Firm.

## Koenig, Amanda

| | |
|---|---|
| **From:** | Connelly, Michael |
| **Sent:** | Friday, April 25, 2008 7:25 PM |
| **To:** | 'rdphillips@townsend.com'; Koenig, Amanda |
| **Cc:** | 'GEvAgere@townsend.com' |
| **Subject:** | Re: Source Code Escrow |
| **Categories:** | GE v. Agere |

Are you asking if we are ok with the changes to the PO it would take to get the source in escrow? Yes.

If not, then I am at a loss - this is Iron Mountain. There could hardly be a more secure or time-proven solution for escrowing the code.

At this point we need a solution. I am having trouble understanding why it has taken this long to get no further. If we need to change the PO then let's do it. Please advise tonight.

Mike Connelly



Michael W. Connelly

McDermott Will & Emery LLP | 600 13th Street, N.W., Washington, D.C. 20005

Main: 202-756-8000 | Direct: 202-756-8037 | Fax: 202-756-8087 | www.mwe.com | mconnelly@mwe.com

---

**From:** Phillips, Ryan D
**To:** Connelly, Michael; Koenig, Amanda
**Cc:** GEvAgere
**Sent:** Fri Apr 25 17:36:05 2008
**Subject:** Source Code Escrow

Mike and Amanda,

I write to update you on the progress regarding the escrow of Agere's source code. We have tried to reach agreement with Iron Mountain on the escrow agreement, however, there are a few items that have resulted in an impasse.

First, the Protective Order requires that Agere, as the Producing Party, secure the escrow company's agreement to be bound by the Protective Order. See para. 12(c). Accordingly, we have added language to this effect in our revisions of our proposed escrow agreement with Iron Mountain. Iron Mountain will not agree to this, and we are not willing to ignore this explicit provision of the Protective Order.

Second, Iron Mountain will not agree to the printing procedures from the Protective Order, but would rather follow a different printing procedure that it feels limits its liability with respect to sending out printed copies of the source code. Again, we cannot unilaterally ignore the printing provisions of the Protective Order.

Any thoughts on how we should proceed? We can probably find a workable contractual solution between Agere and Iron Mountain (we would, of course, need client approval on the final contract), but we would need to address the problems stemming from the Protective Order before entering into such an agreement.

Regards,

Ryan

Ryan D. Phillips

5/1/2008

Source Code Escrow

Townsend and Townsend and Crew LLP
1200 Seventeenth Street, Suite 2700
Denver, CO 80202
Phone: 303.571.4000
Fax: 303.571.4321
rdphillips@townsend.com

www.townsend.com

Offices in:

San Francisco | Palo Alto | Walnut Creek | San Diego | Denver | Seattle | Washington, DC | Tokyo

This message may contain confidential information. If you are not the intended
recipient and received this message in error, any use or distribution of this
message is strictly prohibited. Please also notify us immediately by return
e-mail, and delete this message from your computer system. Thank you.

## Koenig, Amanda

| | |
|---|---|
| **From:** | Phillips, Ryan D [rdphillips@townsend.com] |
| **Sent:** | Tuesday, April 29, 2008 1:24 PM |
| **To:** | Connelly, Michael; Koenig, Amanda |
| **Cc:** | GEvAgere |
| **Subject:** | GE/Agere Source Code |
| **Categories:** | GE v. Agere |
| **Attachments:** | Townsend_61353920_1.DOC; Townsend_61353911_1.DOC |

Mike,

In order to accommodate Iron Mountain's concerns regarding being bound by the Protective Order, we revised paragraph 12 of the P.O., and I have attached a copy of a Proposed Stipulated Amendment to the P.O. for your review. We have not yet received approval from our client on this version.

I have also attached a draft of the contract with Iron Mountain for your reference. We have yet to get client approval on this as well.

If you agree with the stipulation please provide confirmation that we can sign for you (or your locals) and file this with the Court once we have client approval.

Regards,

Ryan


<<Townsend_61353920_1.DOC>> <<Townsend_61353911_1.DOC>>

Ryan D. Phillips
Townsend and Townsend and Crew LLP
1200 Seventeenth Street, Suite 2700
Denver, CO 80202
Phone: 303.571.4000
Fax: 303.571.4321
rdphillips@townsend.com

www.townsend.com

Offices in:

San Francisco | Palo Alto | Walnut Creek | San Diego | Denver | Seattle | Washington, DC | Tokyo

This message may contain confidential information. If you are not the intended recipient and received this message in error, any use or distribution of this message is strictly prohibited. Please also notify us immediately by return e-mail, and delete this message from your computer system. Thank you.

**Koenig, Amanda**

| | |
|---|---|
| **From:** | Connelly, Michael |
| **Sent:** | Tuesday, April 29, 2008 8:33 PM |
| **To:** | 'rdphillips@townsend.com'; Koenig, Amanda |
| **Cc:** | 'GEvAgere@townsend.com' |
| **Subject:** | Re: GE/Agere Source Code |
| **Categories:** | GE v. Agere |

In the interest of speeding this process along, these are fine, we agree to the changes and they can be filed.

When should we expect the source code?

Michael W. Connelly

McDermott Will & Emery LLP | 600 13th Street, N.W., Washington, D.C. 20005

Main: 202-756-8000 | Direct: 202-756-8037 | Fax: 202-756-8087 | www.mwe.com | mconnelly@mwe.com

---

**From:** Phillips, Ryan D
**To:** Connelly, Michael; Koenig, Amanda
**Cc:** GEvAgere
**Sent:** Tue Apr 29 12:24:09 2008
**Subject:** GE/Agere Source Code

Mike,

In order to accommodate Iron Mountain's concerns regarding being bound by the Protective Order, we revised paragraph 12 of the P.O., and I have attached a copy of a Proposed Stipulated Amendment to the P.O. for your review. We have not yet received approval from our client on this version.

I have also attached a draft of the contract with Iron Mountain for your reference. We have yet to get client approval on this as well.

If you agree with the stipulation please provide confirmation that we can sign for you (or your locals) and file this with the Court once we have client approval.

Regards,

Ryan


<<Townsend_61353920_1.DOC>> <<Townsend_61353911_1.DOC>>

Ryan D. Phillips
Townsend and Townsend and Crew LLP
1200 Seventeenth Street, Suite 2700
Denver, CO 80202
Phone: 303.571.4000
Fax: 303.571.4321
rdphillips@townsend.com

www.townsend.com

Offices in:

San Francisco | Palo Alto | Walnut Creek | San Diego | Denver | Seattle | Washington, DC | Tokyo


5/1/2008

GE/Agere Source Code

This message may contain confidential information. If you are not the intended recipient and received this message in error, any use or distribution of this message is strictly prohibited. Please also notify us immediately by return e-mail, and delete this message from your computer system. Thank you.

# EXHIBIT P

## Koenig, Amanda

| | |
|---|---|
| **From:** | Garrido, Frank [Frank.Garrido@ironmountain.com] |
| **Sent:** | Thursday, April 17, 2008 6:02 PM |
| **To:** | Koenig, Amanda |
| **Cc:** | GE; Strouse, David |
| **Subject:** | RE: Source code |
| **Categories:** | GE v. Agere |

Amanda,

As far as I know I do not think there are any outstanding issues. However, Ryan indicated earlier in the week that was going to deliver the agreement back to us by yesterday which we have not yet received. We just need the agreement back for review to make sure we can comply with what is asked of Iron Mountain.

Thanks,
Frank

---

**From:** Koenig, Amanda [mailto:AKoenig@mwe.com]
**Sent:** Wednesday, April 16, 2008 2:45 PM
**To:** Garrido, Frank
**Cc:** GE
**Subject:** FW: Source code

Frank,

Thank you for your voicemail yesterday. Given that it sounded like things were moving along and that our not needing printing capabilities resolved Iron Mountain's concerns, I was surprised to get this email from opposing counsel, saying that issues remain. What are the issues? What can I do to move things along?

Sincerely,
Amanda

### Amanda E. Koenig | Associate / Intellectual Property, Media & Technology

phone: 202.756.8075 | fax: 202.756.8087 | akoenig@mwe.com

---

**From:** Phillips, Ryan D [mailto:rdphillips@townsend.com]
**Sent:** Wednesday, April 16, 2008 2:29 PM
**To:** Koenig, Amanda
**Cc:** GE; GEvAgere
**Subject:** RE: Source code

Amanda,

Thank you for offering to sign the agreement with Iron Mountain, however this agreement is structured to be signed by the defendant, and would need significant revision if it were to be signed by GE. Furthermore, any revisions would require review by Iron Mountain's counsel and consequently more delay. Additionally, the signatory to the contract has control over who is allowed to view the code, and since Iron Mountain is reluctant to agree to be bound by the Protective Order (they said agreeing to this would require another week for their counsel to review the Protective Order), this power is particularly important for Agere to possess. We are, however, reviewing the contract and working out the details with Iron Mountain as quickly as possible. If you wish to discuss the issues between Iron Mountain and Agere surrounding the contract please feel free to call me.

With respect to a computer for viewing the code, we believe we will have a computer ready today. We plan on providing a

5/1/2008

computer with a CD-ROM drive so that software to view the code can be installed on the computer.  Please confirm that your technical person will provide the software he may need to view the code.

Mike asked in his email yesterday if we would alternatively keep the code in our office in Palo Alto.  We are not comfortable with this arrangement for several reasons and prefer to use the escrow company.

Regards,

Ryan

-----Original Message-----
**From:** Koenig, Amanda [mailto:AKoenig@mwe.com]
**Sent:** Wednesday, April 16, 2008 12:11 PM
**To:** Phillips, Ryan D
**Cc:** GE; GEvAgere
**Subject:** FW: Source code

Ryan,

Mike has been out of the office attending a funeral service this morning, but he asked me to let you know that I am available should any issues arise.  I know that getting the source code produced is foremost on everyone's minds.  Is there anything we can do to assist?  Will the agreement with Iron Mountain be signed today?

Please let us know where things stand and what we can do to help.

Sincerely,
Amanda

### Amanda E. Koenig | Associate / Intellectual Property, Media & Technology

phone: 202.756.8075 | fax: 202.756.8087 | akoenig@mwe.com

---

**From:** Connelly, Michael
**Sent:** Tuesday, April 15, 2008 1:38 PM
**To:** GEvAgere
**Subject:** Source code

Ryan - one thing we wanted to suggest. Would you consider placing the code in an office/room at Townsend's office in Palo Alto - its secure, lockable and may short circuit a lot of back and forth.  Let me know your thoughts.

Mike

---

Michael W. Connelly

McDermott Will & Emery LLP | 600 13th Street, N.W., Washington, D.C. 20005

Main: 202-756-8000 | Direct: 202-756-8037 | Fax: 202-756-8087 | www.mwe.com | mconnelly@mwe.com

---

5/1/2008

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
IRS Circular 230 Disclosure: To comply with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained herein (including any attachments), unless specifically stated otherwise, is not intended or written to be used, and cannot be used, for the purposes of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter herein.

This message is a PRIVILEGED AND CONFIDENTIAL communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Please visit http://www.mwe.com/ for more information about our Firm.

**The information contained in this email message and its attachments is intended only for the private and confidential use of the recipient(s) named above, unless the sender expressly agrees otherwise. Transmission of email over the Internet is not a secure communications medium. If you are requesting or have requested the transmittal of personal data, as defined in applicable privacy laws by means of email or in an attachment to email you must select a more secure alternate means of transmittal that supports your obligations to protect such personal data. If the reader of this message is not the intended recipient and/or you have received this email in error, you must take no action based on the information in this email and you are hereby notified that any dissemination, misuse, copying, or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by email and delete the original message.**

## Koenig, Amanda

| | |
|---|---|
| **From:** | Garrido, Frank [Frank.Garrido@ironmountain.com] |
| **Sent:** | Wednesday, April 23, 2008 12:03 PM |
| **To:** | Koenig, Amanda |
| **Subject:** | RE: Source code |
| **Categories:** | GE v. Agere |

Amanda,

I wanted to provide with a quick update.  Yesterday we received a redlined agreement from Ryan Phillips.  David Strouse and I will review with our legal team.

Thanks,
Frank

**Frank Garrido**
Software & Technology Escrow Advisor
Iron Mountain Intellectual Property Management, Inc
20110 Ashbrook Place, Suite 100
Ashburn, VA 20147
(T) 571-292-2221
(F) 703-738-7392
(M) 571-233-7288
frank.garrido@ironmountain.com
Visit us at: http://www.ironmountain.com/ipm/escrow/

---

**From:** Koenig, Amanda [mailto:AKoenig@mwe.com]
**Sent:** Wednesday, April 16, 2008 2:45 PM
**To:** Garrido, Frank
**Cc:** GE
**Subject:** FW: Source code

Frank,

Thank you for your voicemail yesterday.  Given that it sounded like things were moving along and that our not needing printing capabilities resolved Iron Mountain's concerns, I was surprised to get this email from opposing counsel, saying that issues remain.  What are the issues?  What can I do to move things along?

Sincerely,
Amanda

## Amanda E. Koenig | Associate / Intellectual Property, Media & Technology

phone: 202.756.8075 | fax: 202.756.8087 | akoenig@mwe.com

---

**From:** Phillips, Ryan D [mailto:rdphillips@townsend.com]
**Sent:** Wednesday, April 16, 2008 2:29 PM
**To:** Koenig, Amanda
**Cc:** GE; GEvAgere
**Subject:** RE: Source code

Amanda,

Thank you for offering to sign the agreement with Iron Mountain, however this agreement is structured to be signed by the defendant, and would need significant revision if it were to be signed by GE.  Furthermore, any revisions would require review by

5/1/2008

Iron Mountain's counsel and consequently more delay. Additionally, the signatory to the contract has control over who is allowed to view the code, and since Iron Mountain is reluctant to agree to be bound by the Protective Order (they said agreeing to this would require another week for their counsel to review the Protective Order), this power is particularly important for Agere to possess. We are, however, reviewing the contract and working out the details with Iron Mountain as quickly as possible. If you wish to discuss the issues between Iron Mountain and Agere surrounding the contract please feel free to call me.

With respect to a computer for viewing the code, we believe we will have a computer ready today. We plan on providing a computer with a CD-ROM drive so that software to view the code can be installed on the computer. Please confirm that your technical person will provide the software he may need to view the code.

Mike asked in his email yesterday if we would alternatively keep the code in our office in Palo Alto. We are not comfortable with this arrangement for several reasons and prefer to use the escrow company.

Regards,

Ryan


-----Original Message-----
**From:** Koenig, Amanda [mailto:AKoenig@mwe.com]
**Sent:** Wednesday, April 16, 2008 12:11 PM
**To:** Phillips, Ryan D
**Cc:** GE; GEvAgere
**Subject:** FW: Source code

Ryan,

Mike has been out of the office attending a funeral service this morning, but he asked me to let you know that I am available should any issues arise. I know that getting the source code produced is foremost on everyone's minds. Is there anything we can do to assist? Will the agreement with Iron Mountain be signed today?

Please let us know where things stand and what we can do to help.

Sincerely,
Amanda

### Amanda E. Koenig | Associate / Intellectual Property, Media & Technology

phone: 202.756.8075 | fax: 202.756.8087 | akoenig@mwe.com


**From:** Connelly, Michael
**Sent:** Tuesday, April 15, 2008 1:38 PM
**To:** GEvAgere
**Subject:** Source code

Ryan - one thing we wanted to suggest. Would you consider placing the code in an office/room at Townsend's office in Palo Alto - its secure, lockable and may short circuit a lot of back and forth. Let me know your thoughts.

Mike


Michael W. Connelly

McDermott Will & Emery LLP | 600 13th Street, N.W., Washington, D.C. 20005

5/1/2008

Main: 202-756-8000 | Direct: 202-756-8037 | Fax: 202-756-8087 | www.mwe.com | mconnelly@mwe.com

---

**********************************************************************************************

IRS Circular 230 Disclosure: To comply with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained herein (including any attachments), unless specifically stated otherwise, is not intended or written to be used, and cannot be used, for the purposes of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter herein.

---

This message is a PRIVILEGED AND CONFIDENTIAL communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Thank you.
**********************************************************************************************

Please visit http://www.mwe.com/ for more information about our Firm.

---

**The information contained in this email message and its attachments is intended only for the private and confidential use of the recipient(s) named above, unless the sender expressly agrees otherwise. Transmission of email over the Internet is not a secure communications medium. If you are requesting or have requested the transmittal of personal data, as defined in applicable privacy laws by means of email or in an attachment to email you must select a more secure alternate means of transmittal that supports your obligations to protect such personal data. If the reader of this message is not the intended recipient and/or you have received this email in error, you must take no action based on the information in this email and you are hereby notified that any dissemination, misuse, copying, or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by email and delete the original message.**

5/1/2008

# EXHIBIT Q

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CIF LICENSING, LLC, d/b/a<br>GE LICENSING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 07-170-JJF |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| AGERE SYSTEMS INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT AGERE SYSTEMS INC.'S SECOND SUPPLEMENTAL ANSWERS TO PLAINTIFF CIF LICENSING, LLC'S INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Agere

Systems Inc. ("Defendant") hereby supplements its answers to CIF Licensing, LLC, d/b/a GE

Licensing's ("Plaintiff") Interrogatory Nos. 1-43 ("Plaintiff's Interrogatories"), stating as follows:

### GENERAL STATEMENTS AND OBJECTIONS

1.      The following responses are made solely for the purpose of this action and are subject to

all objections to competence, authenticity, relevance, materiality, propriety, admissibility, and

any and all other objections and grounds which would or could require or permit the exclusion of

any statement or response from evidence, all of which objections and grounds are reserved and

may be interposed at the time of trial.

2.      Subject to the specific and general objections listed herein, Defendant will answer each

interrogatory with responsive, non-privileged information within the current actual knowledge of

Defendant or through cross-references to produced documents according to F.R.Civ.P. 33(d).

3.      Defendant will answer interrogatories calling for confidential information or trade secrets

**ANSWER:**

Defendant objects to this interrogatory on the grounds that it is vague, overly broad, and unduly burdensome, and seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant objects to this request because it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege. Furthermore, to the extent the information is not privileged, much of the requested information is readily available through more convenient, publicly-accessible sources such as PACER. Defendant also incorporates by reference its General Objections, including, in particular, General Objection No. 7, as set forth above.

Subject to and without waiving the foregoing objections and its General Objections, Defendant answers as follows: Defendant has produced or will produce, pursuant to Federal Rule of Civil Procedure 33(d), documents sufficient to respond to this interrogatory. Such documents include documents Bates-labeled ASI00001-084451, AL000001-027259, Agere/GE 018895-018902, and Agere/GE 018903-018929. Further, Defendant is attempting to obtain, from its former counsel, additional documents that are responsive to this interrogatory. When obtained, these documents will be produced to Plaintiff.

**INTERROGATORY NO. 31**

Identify in detail all facts and identify any documents that refer, relate to or support Agere's statement made in the July 30, 2007 proposed Scheduling Order and statements made by Agere's counsel during the Scheduling Hearing of August 1, 2007 that Agere purports to have a "license defense."

44

**ANSWER:**

Defendant objects to this interrogatory on the grounds that it is compound, overly broad and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege.

Subject to and without waiving the foregoing objections and its General Objections, Defendant answers as follows: Pursuant to Fed. R. Civ. Pro. 33(d), Defendant will produce relevant and non-privileged documents, to the extent that any exist, that are responsive to this interrogatory.

Defendant further responds as follows: Defendant is licensed to the patents-in-suit pursuant to the Patent Cross License Agreement between Motorola, Inc. and AltoCom, Inc. dated January 30, 2001, including but not limited to § 4.2 of that Agreement. First, Defendant is a customer and/or licensee of ALTOCOM for LICENSED MODEM PRODUCTS and, as such, is a licensee under the MOTOROLA MODEM PATENTS. Second, Defendant (a) purchased and/or licensed "standalone ALTOCOM software MODEMS" from "ALTOCOM;" (b) Defendant is an "existing" not a "new" "customer or licensee" of "ALTOCOM;" and (c) therefore the "license" granted by "MOTOROLA" to "ALTOCOM" "extends" to Defendant.

The following documents relate to Defendant's license defense and are incorporated herein by reference pursuant to Fed. R. Civ. P. 33(d). Agere/GE 000001-000022, Agere/GE 000023-000041, Agere/GE 000042-000069, Agere/GE 000113-001036, Agere/GE 001039-001174, Agere/GE 001356, Agere/GE 001357-001358, Agere/GE 001359-1363, Agere/GE

45

001371-001402, Agere/GE 001880-001911, Agere/GE 003129-003131, Agere/GE 003392-003453, Agere/GE 004927-4977, Agere/GE 005067-005179, Agere/GE 005180-013239, Agere/GE 015308-015376, Agere/GE 015453-015464, Agere/GE 015643-015671, Agere/GE 015673-015868, Agere/GE 015875-015880, Agere/GE 015944-015953, Agere/GE 015985-016054, Agere/GE 016741-017003, Agere/GE 017824, Agere/GE 018864-18867, Agere/GE 018980-19408, Agere/GE 019771-019772, Agere/GE 019773-019775, MOT 003068-3072, MOT 003074-3079, MOT 003080-3121, MOT 003189-3195, MOT 003203-3204, MOT 003402-3403, MOT 003404, MOT 003410-3417, MOT 003435-3443, MOT 003444-3484, MOT 003526-3529, MOT 003618-3634, MOT 003636-3648, MOT 003649-3717, MOT 003802, MOT 003820-3826, MOT 004026-4038, MOT 004063-4069, MOT 004070-4080, MOT 004081-4096, MOT 004140-4151, MOT 004155-4168, MOT 004329-4330, MOT 004445-4458, MOT 004674, MOT 005110-5113, MOT 005122-5123, MOT 005126-5127, MOT 005132-5147, MOT 005148, MOT 005159-5160, MOT 005204-5214, MOT 005215-5283, MOT 005357-5369, MOT 005409-5438, MOT 005439-5452, MOT 005479-5495, MOT 005578-5590, MOT 005618-5654, MOT 005804-5850, MOT 006131-6149, MOT 010357, MOT 010378-10379, MOT 010611-10613, MOT 010628, MOT 010675-10688, MOT 012660-12676, MOT 012716-12719, MOT 012746, MOT 013100, MOT 013149-13169, MOT 013194-13195, MOT 013234-13240, MOT 013382-13392, MOT 013548-13557, MOT 013856, MOT 013857, MOT 013858-13859, MOT 013896-13897, MOT 013919-13920, MOT 013921, MOT 013922-13924, MOT 013925-13926, MOT 013928-13929, MOT 013932-13934, MOT 013935-13949, MOT 013965-13966, MOT 013967-13981, MOT 013995-13996, MOT 013997-13998, MOT 013999-14013, MOT 014014-14029, MOT 014072, MOT 014647-14651, MOT 014671-14676, MOT 016386-16405, MOT

016657-16693, MOT 019038-19065, MOT 019093-19108, MOT 019109-19111, MOT 019258-19269, MOT 019270, MOT 027032-27040, MOT 027044-27046, MOT 027047-27049, MOT 027050-27053, MOT 027054-27073, MOT 027074, MOT 027075, MOT 027076-27077, MOT 027078-27081, MOT 027215-27217, MOT 027434-27437, MOT 027440, MOT 027449-27484, MOT 027486-27488, MOT 028015, MOT 028016-28019, MOT 028020-28041, MOT 037994-37999, MOT 039051-39065, and MOT 039067. Defendant incorporates herein by reference its responses to Plaintiff's Interrogatory Nos. 2 and 35. Defendant reserves the right to supplement this response with information that may be obtained from third parties, including but not limited to Motorola, Inc., Broadcom Corporation, and AltoCom, Inc., as third party discovery progresses.

## INTERROGATORY NO. 32

Describe and identify any license or other authorization that Agere purportedly has or had for any Agere Product (or for the design, manufacture or sale thereof) to practice any of the patents in suit, whether such license or authorization purportedly comes from or through GE Licensing, Motorola, Inc., Lucent Technologies Corp., Altocom, Inc., Broadcom, Inc., or any other entity, including the identification of the licensing entity, the product, process or property licensed (including without limitation any patents).

## ANSWER:

Defendant objects to this interrogatory on the grounds that it is compound, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request to the extent it seeks information that is

47

Dated: February 8, 2008

TOWNSEND AND TOWNSEND AND CREW LLP

David E. Sipiora
Ian L. Saffer
Chad E. King
1200 17th Street, Suite 2700
Denver, Colorado 80202
Telephone: (303) 571-4000
Facsimile: (303) 571-4321
Email: desipiora@townsend.com
Email: ilsaffer@townsend.com
Email: ceking@townsend.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Josy W. Ingersoll
John Shaw
Chad Stover
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391
Telephone: 302-571-6600
Facsimile: 302-571-1253
Email: jingersoll@ycst.com
Email: jshaw@ycst.com
Email: cstover@ycst.com
**ATTORNEYS FOR AGERE SYSTEMS INC.**

61