## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CIF LICENSING, LLC, d/b/a | ) | |
| GE LICENSING | ) | |
| | ) | C.A. No. 07-170 (JJF) |
| Plaintiff, | ) | |
| | ) | **PUBLIC VERSION** |
| v. | ) | |
| | ) | |
| AGERE SYSTEMS INC., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF CIF LICENSING, LLC, d/b/a GE LICENSING'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION AND RESPONSES

OF COUNSEL:

Joel M. Freed
Brian E. Ferguson
Michael W. Connelly
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005-3096
(202) 756-8327

Edwin H. Wheeler
McDermott Will & Emery LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
(650) 813-5000

Dated: May 2, 2008
Public Version: May 9, 2008

Richard L. Horwitz (#2246)
Philip A. Rovner (#3215)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P. O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
rhorwitz@potteranderson.com
provner@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Plaintiff*
*CIF Licensing, LLC, d/b/a*
*GE Licensing*

## TABLE OF CONTENTS

SUMMARY OF ARGUMENT ........................................................................................ 1

STATEMENT OF FACTS ............................................................................................. 1

ARGUMENT ................................................................................................................... 2

CONCLUSION ............................................................................................................. 10

## SUMMARY OF ARGUMENT

GE Licensing's April 8, 2008 motion to compel is not moot. The majority of the issues raised in GE Licensing's March 19th and 20th letters remain unresolved. Agere's claim that it has provided GE Licensing with complete and substantive responses to its discovery requests rings hollow and is belied by the record.

## STATEMENT OF FACTS

Third Party License Agreements

During the 30(b)(6) deposition of Mr. Surinder Rai on April 21, 2008, Agere first informed GE Licensing that it was still working to resolve confidentiality obligations with third parties and had not produced licenses with those third parties. This newly-disclosed information contradicts Agere's claims that its production is complete.

Agere's April 20, 2008 Letter

While Agere's April 20, 2008 letter resolves some of the gaps in its discovery responses, the majority remain. *See* Exhibits A and B. Specifically, the following issues, as outlined in Appendix A to GE Licensing's April 8, 2008 motion to compel (D.I. 71), are still outstanding and unresolved.

1.    Specific responsive documents remain missing from production, including:

Custodian documents

a) Email databases

c) Key Individuals

Agere Products

a) Financial Documents

c) CV92/CFAX Software Developer's Guide.

1

Marketing Materials

Organizational Charts

Sales of Individual Components

2.  Incomplete responses to interrogatories, including Interrogatory Nos. 1, 3, 7, 8, 9, 25, 30, and 38;

3.  Incomplete responses to document requests, including Request for Production Nos. 11, 40, and 43; and

4.  Failure to satisfy its earlier promise to identify the location of documents within its document production.

GE Licensing responded to Agere's April 20, 2008 letter (Exhibit C) on April 30, 2008 (Exhibit A). In doing so, GE Licensing invited Agere to conduct a further meet and confer on the remaining issues on the chance that, despite all reasonable efforts thus far to no avail, the parties could reach some mutually satisfactory resolution. As of the time of this filing, Agere has not responded to GE Licensing's April 30, 2008 letter.

## ARGUMENT

The following chart identifies still-outstanding discovery issues raised in GE Licensing's April 8, 2008 motion to compel and the related discovery letter designations.

| Discovery Letter Designations | Appendix A Designations (from GE Licensing's opening brief) | |
|---|---|---|
| | *1.* | *Specific Responsive Documents That Are Missing From Production* |
| | | *Custodian documents.* |
| 3/19/08[1], 4/20/08, and 4/30/08 letters, ¶ 18(a) | a) | Email databases. Agere states that it has produced e-mail collections from twenty-two (22) persons. Exhibit C, 10-11 at ¶ 18. However, GE Licensing has identified e-mails collected from only seven (7) |

[1] Exhibit D.

| Discovery Letter Designations | Appendix A Designations (from GE Licensing's opening brief) | |
|---|---|---|
| | individuals, some of which appear to be incomplete. *See also*, Exhibits A, C, and D at ¶ 18. | |
| 3/19/08, 4/20/08, and 4/30/08 letters ¶ 18(c)-(d) | c) | Key Individuals.  Agere states that many of the individuals identified by GE Licensing either do not exist, do not work in the specific capacity identified, have left Agere, or do not possess relevant documents.  Exhibit C, 10-11 at ¶ 18.  Agere's responses side-step the issue and smack of gamesmanship.  As just one example, Agere responded that Mr. Balaji does not possess responsive documents yet Mr. Balaji's name appears on almost 3,000 documents produced by Agere. *See also*, Exhibits A, C, and D at ¶ 18(c)-(d). |
| | *Agere Products.* | |
| 3/19/08, 4/20/08, and 4/30/08 letters, ¶ 1, 3, and 17 | a) | Financial Documents. *See ¶ GE Interrogatory No. 3*, below.  *See also*, Exhibits A, C, and D at ¶¶ 1 and 3. |
| 3/19/08, 4/20/08, and 4/30/08 letters, ¶ 23 | c) | CV92/CFAX Software Developer's Guide.  Despite Agere's promise to assist with identifying documents within its production—much of which does not bear individual production numbering—Agere has yet to identify the location of this document within its production. Much of Agere's document production is in native form and few of the documents—much less pages—are identified with individual production numbers, rendering review unduly burdensome.  As the |

| Discovery Letter Designations | Appendix A Designations (from GE Licensing's opening brief) |
|---|---|
| | originator of the confusing production, the burden of identifying the location of various documents should rest on Agere. *See also*, Exhibits A, C, and D at ¶ 23. |
| 3/19/08, 4/20/08, and 4/30/08 letters, ¶ 21 | Marketing Materials.  Despite Agere's promise to assist with identifying documents within its production—much of which does not bear individual production numbering—Agere has yet to identify documents related to marketing within its production. Much of Agere's document production is in native form and few of the documents—much less pages—are identified with individual production numbers, rendering review unduly burdensome.  As the originator of the confusing production, the burden of identifying the location of various documents should rest on Agere. *See also*, Exhibits A, C, and D at ¶ 21. |
| 3/19/08, 4/20/08, and 4/30/08 letters, ¶ 22 | Organizational Charts.  Despite Agere's promise to assist with identifying documents within its production—much of which does not bear individual production numbering—Agere has yet to identify organizational charts within its production. Much of Agere's document production is in native form and few of the documents—much less pages—are identified with individual production numbers, rendering review unduly burdensome.  As the originator of the confusing production, the burden of identifying the location of various documents should rest on Agere. *See also*, Exhibits A, C, and D at ¶ 22. |

| Discovery Letter Designations | Appendix A Designations (from GE Licensing's opening brief) | |
|---|---|---|
| 3/19/08, 4/20/08, and 4/30/08 letters, ¶ 24 | Sales of Individual Components.  During his deposition, Mr. Rai ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Thus, Agere's protestations to the contrary (and notwithstanding GE Licensing's pending motion to compel), Agere's production of sales-related Agere Product information is deficient. *See also*, Exhibits A, C, and D at ¶ 24. | |
| | 2. | Interrogatory Responses |
| 3/19/08, 4/20/08, and 4/30/08 letters, ¶ 1 | *GE Licensing Interrogatory No. 1.*  Agere attempts to dodge its discovery obligations by fixating on the word "documents" in the Court's January 22, 2008 stipulated order.  (D.I. 49.)  However, the Federal Rules of Civil Procedure do not limit discovery to a narrow definition of tangible "documents."  Instead, "Rule 34 applies to information that is fixed in a tangible form and to information that is stored in a medium from which it can be retrieved and examined."  Fed. R. Civ. P. Committee Notes (2006).  Agere also categorizes certain of the listed Agere Products as modems, boards, combo boards, or carrier cards, rather than "modems."  Exhibit C ¶¶ 2-7, 1.  Regardless of whether these ill-defined distinctions matter, Agere's document production indicates that at least some of these products are indeed described and/or identified as "modems" and, therefore, are | |

| Discovery Letter Designations | Appendix A Designations (from GE Licensing's opening brief) |
|---|---|
| | relevant to this case. *See also*, Exhibits A, C, and D at ¶ 1. |
| 3/19/08, 4/20/08, and 4/30/08 letters, ¶ 3 | *GE Licensing Interrogatory No. 3.*  GE Licensing maintains the position that Agere's response to Interrogatory No. 3 is substantially incomplete and/or non-responsive.  During his deposition, Agere's 30(b)(6) designee, Mr. Rai, ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ██████████████████ *See also*, Exhibits A, C, and D at ¶ 3. |
| 3/19/08, 4/20/08, and 4/30/08 letters, ¶ 4 | *GE Licensing Interrogatory No. 7.*  GE Licensing maintains the position that Agere's response to Interrogatory No. 7 is substantially incomplete and/or non-responsive due to the deficiencies identified with respect to Agere's responses to GE Licensing Interrogatory No. 3, incorporated therein. *See also*, Exhibits A, C, and D at ¶ 4. |
| 3/19/08, 4/20/08, and 4/30/08 letters, ¶ 5 | *GE Licensing Interrogatory No. 8.*  GE Licensing maintains the position that Agere's response to Interrogatory No. 8 is substantially incomplete and/or non-responsive. For example, as to Mr. Rai's personal files, Mr. Rai's production appears seriously incomplete.  The folder labeled "Rai" covers portions of only 2001, 2002, 2003, 2006 and 2007.  Further, Mr. Rai's emails are limited to a "customer" folder which contains very few emails.  Mr. Rai's e-mail |

6

| Discovery Letter Designations | Appendix A Designations (from GE Licensing's opening brief) |
|---|---|
| | database provided by Agere contains only 323 emails, ostensibly covering the 9 year period, January of 1999 (the earliest e-mail we have) through January, 2008.   Mr. Rai is identified as one of Agere's two 30(b)(6) witnesses and as one of the "most knowledgeable" about sales, marketing and distribution (Agere's Resp. to GE Licensing Interrog. No. 6).  On that basis, one would expect Mr. Rai's personal production to be far more extensive.  Clearly, Mr. Rai has received more than 35 e-mails per year that reference the accused Agere Products.  Moreover, there is no indication that Mr. Rai has produced any physical documents. |
| 3/19/08, 4/20/08, and 4/30/08 letters, ¶ 6 | *GE Licensing Interrogatory No. 9.*  GE Licensing maintains the position that Agere's response to Interrogatory No. 9 is substantially incomplete and/or non-responsive.  *See* ¶ *GE Interrogatory No. 3*, above.  *See also,* Exhibits A, C, and D at ¶¶ 1 and 3. |
| 3/19/08, 4/20/08, and 4/30/08 letters, ¶ 9 | *GE Licensing Interrogatory No. 25.*  Agere's claim that Agere/GE 000141-44 and 001036 "were not responsive to any of GE's discovery requests" is nonsensical.  GE Licensing Request for Production No. 1 calls for the production of "[a]ll documents, the identification of which was requested in Plaintiff CIF Licensing LLC's First Set of Interrogatories to Defendant Agere Systems Inc.".  GE Licensing Interrogatory No. 25 states: "Identify in detail all facts that support Agere's fourth affirmative defense of 'Laches/Waiver/Estoppel' *and identify any documents that Agere claims* |

| Discovery Letter Designations | Appendix A Designations (from GE Licensing's opening brief) |
|---|---|
|  | *support that defense*." (emphasis supplied). In response to GE Licensing Interrogatory No. 25, Agere identified, *inter alia*, Agere/GE 000141-44 and 001036. Having identified Agere/GE 000141-44 and 001036 as documents supporting Agere's "Laches/Waiver/Estoppel" defense, GE Licensing's discovery requests, logic, and equity demand that Agere produce them. *See also*, Exhibits A, C, and D at ¶ 9. |
| 3/19/08, 4/20/08, and 4/30/08 letters, ¶ 10 | *GE Licensing Interrogatory No. 30.* GE Licensing maintains the position that Agere's response to Interrogatory No. 30 is substantially incomplete and/or non-responsive. The documents identified by Agere in its response include over 100,000 pages, the majority of which appear totally unrelated to Interrogatory No. 30, including documents from legal actions that Agere does not even appear to be a party to and documents totally unrelated to legal actions at all. Moreover, GE Licensing has been unable to locate much in the way of documents—or *any* depositions for that matter—from many of the legal actions to which Agere has been a party. *See also*, Exhibits A, C, and D at ¶ 10. |
| 3/19/08, 4/20/08, and 4/30/08 letters, ¶ 11 | *GE Licensing Interrogatory No. 38.* To the extent that Agere continues to communicate with third parties and intends to identify further documents responsive to this request, GE Licensing maintains the position that Agere's response to Interrogatory No. 38 is substantially incomplete and/or |

| Discovery Letter Designations | | Appendix A Designations (from GE Licensing's opening brief) |
|---|---|---|
| | | non-responsive.  GE Licensing has requested that Agere provide further information as to the relevant third parties so that GE Licensing may conduct any necessary discovery efforts of its own.  *See also*, Exhibits A, C, and D at ¶ 11. |
| | 3. | Document Requests |
| 3/19/08, 4/20/08, and 4/30/08 letters, ¶ 14 | | *GE Licensing Request for Production No. 11.*  GE Licensing maintains the position that Agere's response to Request for Production No. 11 is substantially incomplete and/or non-responsive.  During Mr. Rai's deposition, for example, Agere alerted GE Licensing—for the first time—that it was still working to obtain permission to produce and/or disclose information responsive to Request for Production No. 11 from third parties.  *See* Exhibit E (Rai Dep. Tr. 178-97, April 21, 2008).  *See also*, Exhibits A, C, and D at ¶ 14. |
| | | *GE Licensing Request for Production No. 40.  See, ¶ GE Licensing Request for Production No. 11,* above.  See also, Exhibit B at ¶ 1. |
| 3/19/08, 4/20/08, and 4/30/08 letters, ¶ 16 | | *GE Licensing Request for Production No. 43.  See, ¶ GE Licensing Interrogatory No. 30*, above.  *See also*, Exhibits A, C, and D at ¶¶ 10 and 16. |
| 3/20 Letter[2] | | Despite Agere's promise to assist with identifying documents within its production, Agere has yet to identify various requested documents within |

---

[2] Exhibit F.

| Discovery Letter Designations | Appendix A Designations (from GE Licensing's opening brief) |
|---|---|
| | its production. |
| | Much of Agere's document production is in native form and few of the documents—much less pages—are identified with individual production numbers, rendering review unduly burdensome. As the originator of the confusing production, the burden of identifying the location of various documents should rest on Agere. |
| | *See also*, Exhibits A, C, and F at ¶¶ 2-4. |

Agere's document production and other discovery responses are far from complete. Many of Agere's responses, though lengthy, lack substance. Most serve as little more than generic placeholders or the legalese version of telling GE Licensing to "Go Fish!" Agere's games only hold the discovery process hostage and must end.

## CONCLUSION

For the foregoing reasons, and the reasons stated in GE Licensing's April 8, 2008 motion, GE Licensing respectfully requests that the Court order Agere to provide full and complete discovery responses for the remaining outstanding items, as outlined above.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By: /s/ Philip A. Rovner

Joel M. Freed
Brian E. Ferguson
Michael W. Connelly
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005-3096
(202) 756-8000

Edwin H. Wheeler
McDermott Will & Emery LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
(650) 813-5000

Richard L. Horwitz (#2246)
Philip A. Rovner (#3215)
David E. Moore (#3983)
Hercules Plaza
P. O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
rhorwitz@potteranderson.com
provner@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Plaintiff*
*CIF Licensing, LLC, d/b/a*
*GE Licensing*

Dated: May 2, 2008
862827

11

# EXHIBIT A

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf Houston London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Amanda E. Koenig
Associate
akoenig@mwe.com
202.756.8075

April 30, 2008

VIA E-MAIL

Ryan D. Phillips
Townsend and Townsend and Crew LLP
1200 Seventeenth Street
Suite 2700
Denver, CO 80202

Re:    *CIF Licensing, LLC, d/b/a GE Licensing v. Agere Systems Inc.,* C.A. No. 07-170

Dear Mr. Phillips:

We write in response to your letter received on April 21, 2008 (dated April 20, 2008). For clarity, I have maintained the paragraph numbering system used thus far.

### March 19, 2008 Letter

1.    *GE Licensing Interrogatory No. 1*: Please confirm that Agere's production of "documents for all products, whether or not enumerated, within GE Licensing's revised definition of 'Agere Products' set out in the Motion to Compel that were sold or offered for sale after March 23, 2001" includes all "documents" as described and delineated in Federal Rule of Civil Procedure 34 and the accompanying Committee notes thereto.[1] Specifically, it is apparent that not all electronic documents have been produced. Further, Agere has yet to produce the requested source code.

Your letter distinguishes between modems, boards, combo boards, and carrier cards. Please clarify how Agere defines each category.

    a.    You state in your letter that the "MDC1.5 is a board, not a modem. Agere does not manufacture, make or sell "boards.""

This is contradicted by Agere's documents. According to at least this document, Flynn\customer slides\Dell\ Modem Proposal 0601.ppt, a presentation which appears to have been made to Dell, Agere is or was "Shipping to multiple PC OEM

---

[1] In particular, we direct your attention to the Committee notes accompanying the 2006 Amendment, which state, in part: "Rule 34 applies to information that is fixed in a tangible form and to information that is stored in a medium from which it can be retrieved and examined."

Ryan D. Phillips
April 30, 2008
Page 2

customers" the MDC1.5/Delphi board.  Please clarify this contradiction.

b.  Contrary to the statements in your letter, Agere internally refers to the "Montblanc modem."  See Flynn\Older Documents\Perseus\homolreport\ Australia94451-01.pdf.  Further, more recent emails (found in Personal Folders(7)_05.pst) show call logs in which the following line item appears:
09-14-2005 02:21:56.062 - Modem inf section: MONTBLANC_Modem
Please clarify this contradiction.

v.  DP3FX.  Please see the following documents:

Agere/GE 01913 (Documents from Modem Applications Engineering Web Site\Embedded Modem Design PAKs\CFAX34-CFAX17 Design PAK\MIDAS_PN_20060426.pdf);

Agere/GE 003132 (HTML List of Attachments to MRI Records\projectView.asp.htm);

Agere/GE 003132 (List of Attachments to MRI Records\MRI Records\Mdm-DP3\MRIreportDetail.asp (40312).html);

Agere/GE 003132 (List of Attachments to MRI Records\projectView.asp_files\fpblank_002.htm); and

Agere/GE 003133 (MRI Attachments - Disc 1\MDM-Applications(oldversion)\43041\MIDAS_AM1_031406.BOM).

ww.  We look forward to receiving further information regarding Eagle.

xx.  Please confirm that Agere has produced all licenses or other agreements with the entities identified in Agere's Feb. 8, 2008 supplemental answer (including the entities identified in Exhibit 7) to GE Licensing Interrogatory No. 2.

2.  *GE Licensing Interrogatory No. 2*: We look forward to receiving a copy of the foundry agreement between Agere and Chartered Semiconductor Manufacturing.

3.  *GE Licensing Interrogatory No. 3*: GE Licensing maintains the position that Agere's response to Interrogatory No. 3 is substantially incomplete and/or non-responsive.  During his deposition, Mr. Rai identified a number of inaccuracies and/or deficiencies with respect to the files and data identified as Exhibit 2 to Agere's Feb. 8, 2008 supplemental answers to GE Licensing's interrogatories.  *See, e.g.*, Rough Rai Dep. Tr. 128-39, April 21, 2008.  Please provide corrected versions of Exhibit 2 by Friday, May 2, 2008.

4.  *GE Licensing Interrogatory No. 7*: GE Licensing maintains the position that Agere's response to Interrogatory No. 7 is substantially incomplete and/or non-responsive.

Ryan D. Phillips
April 30, 2008
Page 3

5. *GE Licensing Interrogatory No. 8*: GE Licensing maintains the position that Agere's response to Interrogatory No. 8 is substantially incomplete and/or non-responsive.

For example, as to Mr. Rai's personal files, Mr. Rai's production appears seriously incomplete. The folder labeled "Rai" covers portions of only 2001, 2002, 2003, 2006 and 2007. Further, Mr. Rai's emails are limited to a "customer" folder which contains very few emails. Mr. Rai's e-mail database provided by Agere contains only 323 emails, ostensibly covering the 9 year period, January of 1999 (the earliest e-mail we have) through January, 2008.   Mr. Rai is identified as one of Agere's two 30(b)(6) witnesses and as one of the "most knowledgeable" about sales, marketing and distribution (Agere's Resp. to GE Licensing Interrog. No. 6).  On that basis, we would have expected Mr. Rai's personal production to be far more extensive.  Clearly, Mr. Rai has received more than 35 e-mails per year that reference the accused Agere Products.  We also do not see any indication that Mr. Rai has produced any physical documents.  Please confirm that Agere's production of Mr. Rai's materials is complete or provide that complete production by Friday, May 2, 2008.

6. *GE Licensing Interrogatory No. 9*: GE Licensing maintains the position that Agere's response to Interrogatory No. 9 is substantially incomplete and/or non-responsive.  Please also see numbered paragraph 1 above with respect to Exhibit 2 to Agere's Feb. 8, 2008 supplemental answers to GE Licensing's interrogatories.

9. *GE Licensing Interrogatory No. 25*: Your statement that Agere/GE 000141-44 and 001036 "were not responsive to any of GE's discovery requests" is inaccurate.  GE Licensing Request for Production No. 1 calls for the production of "[a]ll documents, the identification of which was requested in Plaintiff CIF Licensing LLC's First Set of Interrogatories to Defendant Agere Systems Inc.".  GE Licensing Interrogatory No. 25 states: "Identify in detail all facts that support Agere's fourth affirmative defense of 'Laches/Waiver/Estoppel' *and identify any documents that Agere claims support that defense.*" (emphasis supplied). In response to GE Licensing Interrogatory No. 25, Agere identified, *inter alia,* Agere/GE 000141-44 and 001036.  Having identified Agere/GE 000141-44 and 001036 as documents supporting Agere's "Laches/Waiver/Estoppel" defense, GE Licensing's discovery requests, logic, and equity demand that Agere produce them.

10. *GE Licensing Interrogatory No. 30*: GE Licensing maintains the position that Agere's response to Interrogatory No. 30 is substantially incomplete and/or non-responsive.

The documents identified by Agere in its response include over 100,000 pages, the majority of which appear totally unrelated to Interrogatory No. 30, including documents from legal actions that Agere does not even appear to be a party to and documents totally unrelated to legal actions at all.

Moreover, we have been unable to locate much in the way of documents—or any

Ryan D. Phillips
April 30, 2008
Page 4

depositions for that matter—from many of the legal actions to which Agere has been a party, including, but not limited to, the following. Please provide complete production of these materials by Friday, May 2, 2008.

a.  Townshend Intellectual Property, LLC v. Agere Systems, Inc., 5:02cv4836

b.  Agere System Inc. v. East Texas Technology Partners LP, 2:04cv108

c.  Agere Systems Inc. v. Broadcom Corporation, 2:03cv3138

d.  Broadcom Corp. v. Agere Systems, Inc. 3:03cv2197

e.  Atmel Corporation v. Agere Systems, Inc., 5:03cv4632

f.  Plasma Physics Corp. v. Agere Systems Inc., 2:02cv3458

g.  Agere Systems Inc. v. Multiplex Inc., 1:01cv517

h.  Agere Systems Inc. v. Sony Corp., 2:06cv79

i.  Agere Systems Inc. v. Atmel Corp., 2:02cv864

j.  Pc-Tel, Inc. v. Agere Systems, Inc., 3:03cv2474

k.  Agere Systems v. Proxim Inc., 1:01cv339

l.  Townshend Intellectual Property, LLC v. Agere Systems, Inc., 4:02cv4836

m.  Atmel Corporation v. Agere Systems, Inc., 3:03cv4632

n.  Agere Systems Inc. v. Intersil Corporation, 1:03cv737

o.  Pctel, Inc v. Agere Systems, Inc., 4:03cv2474

p.  Broadcom Corporation v. Agere Systems, Inc., 2:04cv2416

q.  Broadcom Corporation v. Agere Systems, Inc., 1:04cv66

r.  Agere Systems Inc v. Intersil Corporation, 1:02cv1544

s.  In re Townshend Patent Litigation, 5:02cv4833

t.  Townshend Intellectual Property, Llc v. Agere Systems, Inc., 3:02cv4836

u.  Atmel Corporation v. Agere Systems, Inc., 2:04cv5118

Ryan D. Phillips
April 30, 2008
Page 5

11.   *GE Licensing Interrogatory No. 38*: GE Licensing maintains the position that Agere's
response to Interrogatory No. 38 is substantially incomplete and/or non-responsive.

Please let us know by Friday, May 2, 2008 which third parties Agere continues to
communicate with, when those communications first occurred, the contact person for each
third party, the location of any documents identified by each third party, and a date certain
by which Agere will supplement its response.

14.   *GE Licensing Request for Production No. 11*: GE Licensing maintains the position that
Agere's response to Request for Production No. 11 is substantially incomplete and/or non-
responsive. During Mr. Rai's deposition, for example, Agere appeared to take the position
that it was still working to obtain permission to produce and/or disclose information
responsive to Request for Production No. 11 from third parties. *See* Rough Rai Dep. Tr.
177-8, 181-90, 194, April 21, 2008. Please let us know by Friday, May 2, 2008 which
third parties Agere continues to communicate with, when those communications started,
the contact person for each third party, and the location of any documents identified by
each third party so that GE Licensing can pursue alternate channels for obtaining this
discovery, if necessary.

16.   *GE Licensing Request for Production No. 43*:  Please see paragraph 10, above.

17.   *Agere Products*: Please see paragraphs 1-3, above.

18.   *Custodian Documents*:

a.    Email databases.  Your letter states that Agere has produced e-mails from 22 persons.
However, GE Licensing has received only 15 .pst databases.  Of these 15, we have
single databases from Flynn, Ho, Rai and Schulz, 4 databases from Bays, 3 databases
from Skinker and 4 databases labeled "Personal Folders" which all appear to belong
to Chao-Pin (Ben) Chen.  First, as detailed for Mr. Rai above, it is apparent that not
all relevant and responsive e-mails from even these 7 persons was produced.  Second,
where in the production should we look to find the other e-mail databases for the
other 15 persons you claim have been produced?  Please let us know by Friday, May
2, 2008 where the e-mails for the other 15 people can be found.

In addition, please identify when Mr. Rauchwerk left Agere.  Please also confirm that
Mr. Rauchwerk's email documents have been destroyed and identify when such
destruction took place.

With respect to Mr. Rai's documents, see numbered paragraph 14, above.

c.    Key Individuals.

Ryan D. Phillips
April 30, 2008
Page 6

    i.    Bob Sawyer – Please identify when Bob Sawyer left Agere. Please also confirm that all of Mr. Sawyer's documents have been destroyed and identify when such destruction took place.

    ii.    Herman – Are there any current employees within Agere with the last name Herman? If so, what is their position?

    v.    Bryan Petryna – We look forward to receiving documents from Bryan Petryna. Please produce these materials by Friday, May 2, 2008.

    vi.    Cheung – Are there any current employees within Agere with the last name Cheung? If so, what is their position?

    vii.    Siewara – Are there any past Agere employees with the last name Siewara? If so, what was their position and when did they leave Agere?

    xii.    Wolfe – Are there any past Agere employees with the last name Wolfe? If so, what was their position and when did they leave Agere?

    xiv.    Hixon – Are there any past Agere employees with the last name Hixon? If so, what was their position and when did they leave Agere?

    xv.    Campbell – Are there any current employees within Agere with the last name Campbell? If so, what is their position?

    xvi.    Nguyen – Are there any current employees within Agere with the last name Nguyen? If so, what is their position?

    xviii.    Lubas – Are there any past Agere employees with the last name Lubas? If so, what was their position and when did they leave Agere?

    xx.    Patel – Are there any current employees within Agere with the last name Patel? If so, what is their position?

    xxi.    Lantz, Michael Chen, G. Balaji – We would ask that you verify your statement that these individuals do not possess responsive documents. Among many other things, Mr. Balaji is, for example, the author of OCMP_PRD_0.8.doc (and later versions), the product requirements document for Agere's OCM product. Mr. Balaji is also the author of at least a portion of the SV92EX PRD (see SV92EX_Schedule_061109.pdf). Mr. Balaji's name appears on almost 3,000 documents that Agere has determined to be responsive and produced in this case. In addition, Ximing (Michael) Chen is on over 700 documents and Lantz's name on over 700. It is unlikely that these individuals do not possess at least electronic files that are responsive.

Ryan D. Phillips
April 30, 2008
Page 7

> We again request that Agere produce this material immediately, no later than Friday, May 2, 2008.

    d.    Documents from relevant individuals.

        iii.    Mark Hargrove – Please identify when Mark Hargrove left Agere. Please also confirm that all of Mr. Hargrove's documents have been destroyed and identify when such destruction took place.

        iv.    Staab – Are there any past Agere employees with the last name Staab? If so, what was their position and when did they leave Agere?

21.   *Marketing materials.* Per Agere's earlier promise to assist with production, please identify where the marketing materials for the Agere Products are located within Agere's production.

22.   *Organizational charts.* Per Agere's earlier promise to assist with production, please identify where organizational charts are located within Agere's production.

23.   *CV92/CFAX Software Developer's Guide.* Per Agere's earlier promise to assist with production, please identify where this document is located within Agere's production.

24.   *Sales of individual components.* During his deposition, Mr. Rai identified a number of inaccuracies and/or deficiencies with respect to the files and data identified as Exhibit 2 to Agere's Feb. 8, 2008 supplemental answers to GE Licensing's interrogatories. *See, e.g.*, Rough Rai Dep. Tr. 128-39, April 21, 2008. As stated above, please provide corrected versions of Exhibit 2 by Friday, May 2, 2008.

25.   *Document production errors.* We look forward to receiving legible or complete versions of the document beginning at production number Agere/GE 000642 and pages Agere/GE 000760 and Agere/GE 000763. Please provide these by Friday, May 2, 2008.

**March 20, 2008 Letter**

2.   *DP2L.* Per Agere's earlier promise to assist with production, please identify where this document is located in Agere's MRI production.

3.   *Documents from "Ralph," which may be Ralph S. (Spike) Moyer.* Please identify when Ralph Moyer left Agere. Please also confirm that all of Mr. Moyer's documents have been destroyed and identify when such destruction took place.

Ryan D. Phillips
April 30, 2008
Page 8

4.   *DP2S.*  Per Agere's earlier promise to assist with production, please identify where this
     document is located within Agere's production.

Of course, given the unresolved nature and incomplete status of Agere's discovery, it is GE
Licensing's position that its pending motions to compel—including the April 8th motion to
compel—are not moot and remain viable.  If you would like to discuss any of these issues or
Agere's still-deficient response to GE Licensing Request for Production No. $40^2$ prior to May 2,
2008 (the deadline for GE Licensing's responsive brief) please let us know immediately.

Please do not hesitate to contact us if you have any questions.

Sincerely,

Amanda E. Koenig

cc:   Counsel of Record for Agere (via e-mail: gevagere@townsend.com)

WDC99 1559780-1.037743.0051

---

[2] *See also,* my accompanying letter regarding Mr. Rai's deposition.

# EXHIBIT B

# McDermott
# Will & Emery

Boston Brussels Chicago Düsseldorf Houston London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Amanda E. Koenig
Associate
akoenig@mwe.com
202.756.8075

April 30, 2008

VIA E-MAIL

Ryan D. Phillips
Townsend and Townsend and Crew LLP
1200 Seventeenth Street
Suite 2700
Denver, CO 80202

Re:     *CIF Licensing, LLC, d/b/a GE Licensing v. Agere Systems Inc.*, C.A. No. 07-170

Dear Mr. Phillips:

We write to follow-up on the 30(b)(6) deposition of Mr. Surinder Rai. As you know, Mr. Rai's 30(b)(6) deposition on April 21, 2008 ended before it could be completed. We propose, therefore, continuation of Mr. Rai's deposition (both 30(b)(6) and personal) start on May 14, 2008 and continue, if necessary, into May 15, 2008. This is contingent, however, upon Agere producing the remainder of the relevant documents outlined below by Wednesday, May 7, 2008.

Mr. Rai's April 21, 2008 30(b)(6) deposition also raised a number of other issues, set forth in the following numbered paragraphs.

1.  *Third Party Licenses.* We refer you to GE Licensing's outstanding Motion to Compel filed on April 8, 2008. Significantly (and not to the exclusion of the other missing items), we are unable to find any patent licenses between Agere and the following third parties:

    a.  Conexant,

    b.  PCTel,

    c.  Townshend,

    d.  Multitech,

    e.  Hayes,

    f.  Rockwell,

    g.  BT/British Telecom,

Ryan D. Phillips
April 30, 2008
Page 2

    h. US Robotics, and

    i. 3 Com.

Such licenses are highly relevant to a damages calculation and were requested on August 17, 2007. (Request for Production No. 40 clearly seeks "All documents… relating to any license of patent rights or transfer of license rights related to any Agere Product.") During his deposition, Mr. Rai—and Agere—appeared to take the position that many of these licenses remain unproduced because Agere has yet to obtain permission from the appropriate third parties. This is contrary to Agere's earlier promises that its production is complete. If, as Agere has indicated, Agere's production is indeed complete with respect to third party licenses, please identify these licenses within Agere's production immediately (by production number and, if necessary, subfolder(s)). Please also confirm that Agere's production of these materials is complete or provide that complete production by Friday, May 2, 2008.

2. *Sales Data*. Mr. Rai's deposition raised a number of questions about the accuracy and completeness of Agere's sales data production.

    a. Rai Deposition Exhibit 5 ("Rai Ex. 5") consisted of selected pages from Exhibit 2 to Agere's February 8, 2008 supplemental responses to GE Licensing's interrogatories. Rough Rai Dep. Tr. 112, April 21, 2008.

        i. In reviewing and testifying about Rai Ex. 5, Mr. Rai was unable to determine whether identified products were chips, chip sets, or both. Rough Rai Dep. Tr. 120-7, April 21, 2008.

        ii. Mr. Rai also indicated that Rai Ex. 5 is incorrect and inaccurate. Rough Rai Dep. Tr. 128-132, April 21, 2008; *see also id.* at 128:13-21 ("…I think—I think this sheet may have some errors in the revenue versus quantities and that is my guess.… And as I look at the numbers particular data if you are looking for that is for 2007 these numbers don't add up."), 131:6-11 ("Once I look at this there is I am seeing something wrong here. But the total is still not – there are items some are missing also because I am going to have to add up all of these numbers if you like to."), and 132:10-12 ("But as I look at it, the numbers are not precise. Somewhere something has crept in.").

        iii. Mr. Rai also testified that he would need additional information from Agere's sales data to provide answers to questions related to Rai Ex. 5 (Topics 30-32, generally). Rough Rai Dep. Tr. 117-131, April 21, 2008.

Please provide at least a corrected and complete version of the relevant sales data— separated by chip, chip set, or other relevant product designation—by Friday, May 2, 2008.

Ryan D. Phillips
April 30, 2008
Page 3

3.  *Topic 6.* Mr. Rai was unprepared to testify as to Topic 6.[1] He clearly had not made any investigations into the matter to prepare to testify, instead relying on his memory, which he described as "not very specific to that item." Rough Rai Dep. Tr. 104:3-4, April 21, 2008; *see also, id.* at 102-106. We expect that Mr. Rai will be prepared to discuss this information during his follow-up deposition(s). Not doing so would be considered a failure of Agere to properly prepare its designee.

4.  *Rai Deposition Exhibit 7 ("Rai Ex. 7").* Mr. Rai was unable to answer certain questions with respect to Rai Ex. 7 for which we request answers from Agere. Specifically, Mr. Rai did not know:

    a.  How sales numbers were converted from fiscal to calendar year for 2006 and 2007, and

    b.  Whether standard margin numbers were the product of use of a standard cost.

    This information falls under at least Topics 30-32, for which Mr. Rai was designated as Agere's 30(b)(6) witness. We expect that Mr. Rai will prepare to discuss this information during his follow-up deposition(s). Not doing so would be considered a failure of Agere to properly prepare its designee.

5.  *Personal Files.* As for Mr. Rai's personal files, Mr. Rai's production appears seriously incomplete. The folder labeled "Rai" covers portions of only 2001, 2002, 2003, 2006 and 2007. Further, Mr. Rai's emails are limited to a "customer" folder which contains very few emails. Mr. Rai's e-mail database provided by Agere contains only 323 emails, ostensibly covering the 9 year period, January 1999 (the earliest e-mail we have) through January 2008. Mr. Rai is identified as one of Agere's two 30(b)(6) witnesses and as one of the "most knowledgeable" about sales, marketing and distribution (Agere's Resp. to GE Licensing Interrog. No. 6). On that basis, we would have expected Mr. Rai's personal production to be far more extensive. Clearly, Mr. Rai has received more than 35 e-mails per year that reference the accused Agere Products. We also do not see any indication that Mr. Rai has produced any physical documents. Please confirm that Agere's production of Mr. Rai's materials is complete or provide that complete production by Friday, May 2, 2008.

---

[1] Topic 6: "The identity, title, and role of each employee or employees primarily responsible for design, programming and testing of the software (including without limitation source code, drivers, firmware, ROM code or other code) used with or to operate the Agere Products."

Ryan D. Phillips
April 30, 2008
Page 4

Please do not hesitate to contact us if you have any questions.

Sincerely,

Amanda E. Koenig

cc:    Counsel of Record for Agere (via e-mail: gevagere@townsend.com)

WDC99 1558360-1.037743.0051

# EXHIBIT C

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT D

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf Houston London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Amanda E. Koenig
Associate
akoenig@mwe.com
202.756.8075

March 19, 2008

VIA E-MAIL

Ian L. Saffer
Townsend and Townsend and Crew LLP
1200 Seventeenth Street
Suite 2700
Denver, CO 80202

Re:     *CIF Licensing, LLC, d/b/a GE Licensing v. Agere Systems Inc.*, C.A. No. 07-170

Dear Mr. Saffer:

I write with respect to various deficiencies in Agere's responses to GE Licensing's discovery requests, which are not exclusive to documents subject to GE Licensing's pending motion to compel. For clarity, GE Licensing's concerns are set forth in numbered paragraphs as follows:

1. *GE Licensing Interrogatory No. 1*:  Interrogatory No. 1 seeks, *inter alia*, the date each Agere Product "was first sold, offered for sale, or marketed." In its latest supplemental response to GE Licensing's interrogatories, dated February 8, 2008, Agere responded to Interrogatory No. 1 primarily by incorporating Exhibit 1 by reference.

   Exhibit 1 does not include all "Agere Products" as required under the Court's January 22, 2008 stipulated order. In that order, Agere was to, at least "complete production of documents for all products, whether or not enumerated, within GE Licensing's revised definition of 'Agere Products' set out in the Motion To Compel that were sold or offered for sale after March 23, 2001."[1]  The order further required Agere to supplement its interrogatory answers. However, Agere did not include several products in Exhibit 1 that are or were, according to Agere's own documents, sold or offered for sale after March 23, 2001 and which are compliant with at least the V.34 recommendation. These products include (given the form of Agere's production, references to documents below use their names or titles where possible):

   a.  MDC1.5 Soft Modem. If the MDC1.5 Soft Modem is the same product as the SV92A3, please confirm.

---

[1]  The definition for "Agere Products" in that motion was "any analog modem compliant with ITU-T recommendation V.34, V.90, V.92 . . . ."

Ian L. Saffer
March 19, 2008
Page 2

    b.  Montblanc Family. Publicly available documents indicate that the Montblanc family of modems includes the SV92P, SV92PL and SV92P2 modems. However, Exhibit 1 states that the "Common Name" of these products are "Soft Mars" and "Scorpio2." We have also seen documents in Agere's production which state that the Montblanc design is a "Mars3/Perseus" design. We have also seen a "Marketing Requirements Documents" which describes the Montblanc design as the "Mars/Perseus Reference Design." Please confirm if Exhibit 1 is correct and which products constitute the Montblanc family.

    c.  Olympia Family. We have seen documents which disclose an "Olympia USB Modem." Other documents refer to this as the "SV92U2 USB 2.0 Soft Modem Olympia AM1 Reference Design." However, we note that the "common name" for the SV92U2 on Exhibit 1 is listed as "U2." We also note that Agere's documents show the "Olympia SV92U2+1040" as shipping prior to January 1, 2007. Please confirm whether Exhibit 1 is correct and to which products the Olympia and U2 names apply.

    d.  Maui. Agere's presentations to customers in 2001 indicate that the "Maui" modem product was to be available in 4Q01. The Maui product is described as "Maui+APL43+CSP1035" or "Maui+SV9xM+CSP1035."

    e.  Mars5. Agere's presentations to customers in 2001 indicate that the "Mars5" modem product was to be available in 4Q01 and was described as "Mars5/CSP1035."

    f.  Pinball/Dorado. We have seen documents which disclose a "Pinball/Dorado PCI Modem." We have also seen documents which show that this product was offered for sale to at least one customer. We also note that Agere's documents show the "Pinball SV92PP+1040" as shipping prior to January 1, 2007.

    g.  Dorado. We have seen documents which disclose a "Dorado" modem. We have also seen documents which show that this product was offered for sale to at least one customer.

    h.  Hidalgo. We have seen documents which disclose a "Hidalgo" described as an "Audio Modem Combo" and shipping prior to January 1, 2007.

    i.  Concorde. We have seen documents which disclose a "Concorde PCIe Modem" which is also described as a "V.92 PCI-E Modem."

    j.  SVx. We have seen documents which disclose a "SVx" modem which is described as a "soft embedded interface device."

    k.  Sparta. We have seen documents which disclose a "Sparta" modem described as a "V.92 MoM Design."

Ian L. Saffer
March 19, 2008
Page 3

l.   PC-ROMA.  We have seen documents which disclose a "PC-ROMA" modem described as a "Complete MCM."

m.  CV-ROMA.  We have seen documents which disclose a "CV-ROMA" modem described as a "Complete MCM" and a "Complete Modem MCM (Embedded)."

n.   Delphi.  We have seen documents which disclose a "Delphi MDC Modem."  We have also seen documents which show that this product was offered for sale to at least one customer.

o.   Athens.  We have seen documents which disclose an "Athens MDC Modem."

p.   Cricket.  We have seen documents which disclose a "Cricket" design described as "Venus/Levana International Compact Flash Reference Design."

q.   Haleakala.  We have seen documents which disclose a "Haleakala" design described as "Modem Expansion Card Dragnet2+Perseus."

r.   Parkway.  We have seen documents which disclose a "Parkway" design described as "APL43/Levana International PCMCIA Reference Design."

s.   Midas.  We have seen documents which disclose a "Midas" or "Midas_AM1" design described as "DP3 or OCFP/CSP1040 (Polaris) Fax/Modem Reference Design."

t.   Condor.  We have seen documents which disclose a "Condor" or "Condor AM1.0" design described as "SV92P/Levana International SoftModem Reference Design."

u.   Mt. McKinley.  We have seen documents which disclose a "Mt. McKinley" or "Mt. McKinley AM1.0" design described as "SV92P/Perseus International Reference Design."

v.   DP3FX.  We have seen documents which disclose a "DP3FX" design described as "DP3 or OCFP/CSP1040 (Polaris) Fax/Modem Reference Design."

w.  Fiji.  We have seen documents which disclose a "Fiji" or "Fiji AM1" or "Fiji Flex AM1" design described as "Dragnet2/CSP1043 (Mercury) Fax/Modem Reference Design."

x.   Peregrine.  We have seen documents which disclose a "Peregrine" design described as "International Softmodem PCI Reference Design."

y.   Bacchus.  We have seen documents which disclose a "Bacchus" design described as "Dragnet2/CSP1043 (Mercury) Fax/Modem Reference Design."

Ian L. Saffer
March 19, 2008
Page 4

z.  Yogi.  We have seen documents which disclose a "Yogi" design described as "Yogi (Mercury International) – ASP Product."

aa. Matterhorn.  We have seen documents which disclose a "Matterhorn" design described as a "reference design" for the "PCISoft (SV92P) Design Pack."

bb. Samurai.  We have seen documents which disclose a "Samurai" design described as an available product based on the "Apollo 3" or APL43 and CSP1034.

cc. Apollo 3.  While Exhibit 1 includes Apollo 1, 2 and 4, Apollo 3 is absent from this list.  "Apollo 3" or "Apollo3" is referenced in numerous Agere documents.  This includes public documents which refer to the "Apollo 3 (APL43) design."  We note, however, that Exhibit 1 lists the common name for the APL43 as "Dragnet2."  We have also seen a May 25, 2001 Marketing Account Review which shows planned sales of "Apollo3" to IBM for use in Thinkpad laptops starting September, 2001.  Please confirm whether Exhibit 1 is correct and to which products the "Apollo 3" name applies.

dd. Cobalt.  We have seen documents which disclose a "Cobalt" design described as "Modem Expansion Card Apollo3+Mercury."

ee. Siena/Nomad.  We have seen documents which disclose a "Sienna/Nomad" reference design.

ff.  Siena+.  We have seen documents which disclose a "Sienna+" reference design.

gg. USB 2.0 Soft Modem.  Certain Agere public documents offer for sale a product known as "USB 2.0 Soft Modem."

hh. L56xAF.  According to public documents, the L56xAF modem was offered for sale after March 23, 2001.

ii.  DSP1642C, DSP1643, DSP1644, DSP1645, DSP1646.  It is our understanding from public documents that these products were sold after March 23, 2001 and, therefore, should be included in the production and in response to GE Licensing's interrogatories.  For example, the DSP1643 is a component of the L56xAF, which is included in Exhibit 1.

jj.  DP2LV34D.  This product is included in Agere's July 2006 Client Solutions Line Card.

kk. DP2LV34X.  This product is included in Agere's July 2006 Client Solutions Line Card.

Ian L. Saffer
March 19, 2008
Page 5

    ll.  DP2S. The "Soft DP2 Test Chip" is referred to as the "DP2S" in Exhibit 1 and listed as an unreleased product. However, the DP2S is listed as an available product in at least Agere's June 2004 Client Solutions Line Card.

    mm.  DP3S. Agere's product roadmaps indicate that the DP3S and DP3 are different products and were both shipping by at least January 1, 2007. The DP3S is described as "synthesizable IP cores for SOC integration."

    nn.  We note that there is only one "Test Chip" listed in Exhibit 1. Please confirm if that is the only such "Test Chip" made by Agere.

    oo.  DSP1648C. The DSP1648C is listed as an available product in at least LSI's September 2007 Network and Standard Storage Products document.

    pp.  SV92S. Agere's documents indicate that the SV92S is an "I2S Soft Modem using 1040" and was to be released for sale in "3Q05."

    qq.  SV92A4. Agere's documents indicate that the SV92A4 is an "HAD Audio/Soft Modem Combo using 1040" and was to be released for sale in "4Q05."

    rr.  DP2P. Agere's documents indicate that the DP2P is a "FAX data pump using 1040" and was to be released for sale in "4Q05."

    ss.  OCFP. Agere's documents indicate that the OCFP was to be released for sale in "1Q06."

    tt.  OCMP. Agere's documents indicate that the OCMP is a "Complete Modem using 1040" and was to be released for sale in "1Q06."

    uu.  CV92A. Agere's documents indicate that the CV92A is in development.

    vv.  HV1040. Agere's documents indicate the HV1040 was shipping as of 4Q07.

    ww.  Tiger, Sparrow, Panther, Eagle. We have seen reference in product roadmaps to four different V.90 devices named Tiger, Sparrow, Panther and Eagle.

Further, Exhibit 1 does not contain the requested information for the Agere Products which were included. Although the chart in Exhibit 1 appears to contain a column listing the "Release Date" for the Agere Products' manufacture ("Mfg"), there is no discernable connection between the "Mfg" column and the date of first sale, offer for sale, or marketing of Agere's Products. Moreover, Exhibit 1 lists "Mfg" dates for only eight (8) of the eighty-

Ian L. Saffer
March 19, 2008
Page 6

six (86) entries. (Another eight (8) entries simply state "none" in the "Mfg" column.)[2]

Exhibit 2 proves similarly unsatisfactory. In Chad King's February 8, 2008 letter to Michael Connelly Mr. King stated: "To the extent that a date of first sale of a particular product occurred after March 23, 2001, that information is available in Exhibit 2 to Agere's supplemental responses to GE's interrogatories." Even notwithstanding the fact that Exhibit 2 was not incorporated by reference into Agere's response to Interrogatory No. 1, Exhibit 2 only discloses shipping information about the various Agere Products listed. Shipping—while part of the product cycle—is functionally distinct from marketing, offers for sale, and the sale of products. Moreover, Exhibit 2 contains no description or definition for the column headings and entries, many of which are uninformative and confusing. Thus, the information in Exhibit 2 does little, if anything, to satisfy Agere's obligations to provide the requested information.

Due to the deficiencies identified above, which render Agere's response to Interrogatory No. 1 substantially incomplete and/or non-responsive, GE Licensing requests that Agere supplement its response to Interrogatory No. 1 with:

 xx. Information responsive to Interrogatory No. 2 with respect to *all* Agere Products;

 yy. The date on which each Agere Product "was first sold, offered for sale, or marketed";

 zz. Definitions for the terms "Spec", "Mask", and "Mfg" as they are used in Exhibit 1;

 aaa.  A definition for the term "none" as used in the "Mfg" column of Exhibit 1;

 bbb.  The missing information for the "Spec", "Mask", and "Mfg" columns of Exhibit 1, or an explanation as to why that information is not included in Agere's response;

 ccc.  Definitions for the column headings "MPL", "AWB", "SHIP_TO_PARTY", "ULTIMATE_CUSTOMER", and "NAME" as used in Exhibit 2; and

 ddd.  Definitions for the terms "STANDARD," SAMPLE", and "REPLACEMENT" as used in the "NAME" column of Exhibit 2.

2.  *GE Licensing Interrogatory No. 2*: Agere states that "Defendant is not aware of licenses to Defendant from" the entities named in its response. However, Interrogatory No. 2 also requests that Agere identify "any... other agreements" with the named entities. To the extent that Agere has not responded to Interrogatory No. 2 with respect to non-license agreements, its response is incomplete.

---

[2] Exhibit 1 also contains columns titled "Spec" and "Mask." Without a definition for these terms, however, the information contained in those columns is meaningless.

Ian L. Saffer
March 19, 2008
Page 7

Moreover, Exhibit 7 (incorporated by reference to Agere's response to Interrogatory No. 2), contains several flaws and/or omissions which undermine its usefulness. Exhibit 7 also uses a number of undefined terms, including "IC Design", "Software", "Fab", "Assy", and "Test" in the "Function" column.

Due to the deficiencies identified above, which render Agere's response to Interrogatory No. 2 substantially incomplete and/or non-responsive, GE Licensing requests that Agere supplement its response to Interrogatory No. 2 with:

    a.  Information responsive to Interrogatory No. 2 with respect to **all** Agere Products;

    b.  Definitions of the terms "IC Design", "Software", "Fab", "Assy", and "Test" in the "Function" column; and

    c.  The identity of all other (*i.e.*, non-license) agreements with the entities identified in response to Interrogatory No. 2.

3.  *GE Licensing Interrogatory No. 3*: Agere's response to Interrogatory No. 3 is incomplete to the extent that it (1) fails to identify the persons involved in and knowledgeable about "activities, projects or programs...directed to the design and development of each Agere Product..." and (2) fails to "state precisely where such activities were undertaken."

To the extent that Agere's response to Interrogatory No. 3 incorporates Exhibits 1 and 2 by reference, we also direct your attention to the concerns raised in numbered paragraphs 1 and 2 above.

Due to the deficiencies identified above, which render Agere's response to Interrogatory No. 3 substantially incomplete and/or non-responsive, GE Licensing requests that Agere supplement its response to Interrogatory No. 3 to:

    a.  Identify the persons involved in and knowledgeable about "activities, projects or programs...directed to the design and development of each Agere Product..." and

    b.  State precisely where any "activities, projects or programs...directed to the design and development of each Agere Product..." were undertaken.

4.  *GE Licensing Interrogatory No. 7*: Agere's response to Interrogatory No. 7 incorporates its response to Interrogatory No. 3 (and therefore Exhibits 1 and 2) by reference. Please see numbered paragraphs 1, 2, and 3 above and supplement Agere's response to Interrogatory No. 7 accordingly.

5.  *GE Licensing Interrogatory No. 8*: To the extent that Agere's response to Interrogatory No. 8 incorporates its response to Interrogatory No. 3 (and therefore Exhibits 1 and 2) by reference,

Ian L. Saffer
March 19, 2008
Page 8

please see numbered paragraphs 1, 2, and 3 above and supplement Agere's response to Interrogatory No. 8 accordingly.

6. *GE Licensing Interrogatory No. 9*: Agere's response to Interrogatory No. 9 is incomplete and/or non-responsive to the extent that it fails to identify the quantity produced and revenue data for each Agere Product, component, or product containing same. Moreover, Exhibit 2, incorporated by reference into Agere's response to Interrogatory No. 9, merely contains sales and shipping information. Please see numbered paragraph 1 above and supplement Agere's response to Interrogatory No. 9 to identify:

   a. The quantity of each "Agere Product, component thereof, or product containing same" produced, and

   b. The "revenues that Agere has received, expects to receive and/or has projected to receive from the sale, lease, license, sublicense or use of any Agere Product, component thereof, or product containing same."

7. *GE Licensing Interrogatory No. 14*: Agere's response to Interrogatory No. 14 is non-responsive. Although Agere acknowledges the existence of "statements... by Agere concerning or relating to" one or more GE Patents in its response, it fails to identify "all documents containing or evidencing such statements." The fact that all such statements purportedly took place during negotiations between Agere and GE Licensing provides Agere no refuge from its obligation to respond to this discovery request in full.

   Due to the deficiencies identified above, which render Agere's response to Interrogatory No. 14 substantially incomplete and/or non-responsive, GE Licensing requests that Agere supplement its response to Interrogatory No. 14 to:

   a. Identify all documents containing or evidencing any statements, oral or written, by Agere concerning or relating to any GE Patent.

8. *GE Licensing Interrogatory No. 16*: Agere's response to Interrogatory No. 16 is non-responsive. Although Agere acknowledges that it has taken positions with regard to the GE Patents "in conjunction with negotiations with Plaintiff," it fails to substantively respond in any detail. The fact that Agere's positions with respect to the GE Patents evolved in the context of negotiations with GE provides Agere no refuge from its obligation to respond to this discovery request in full.

   Due to the deficiencies identified above, which render Agere's response to Interrogatory No. 16 substantially incomplete and/or non-responsive, GE Licensing requests that Agere supplement its response to Interrogatory No. 16 to describe:

Ian L. Saffer
March 19, 2008
Page 9

    a. The position(s) Agere has taken regarding the validity, enforceability, or infringement by Agere of any of the GE Patents;

    b. The circumstances in which each such position was taken;

    c. The specific bases for each such position;

    d. The identity of all documents or prior art relating to those bases; and

    e. How those documents and that prior art support each such position.

9. GE Licensing Interrogatory No. 25: In its February 8, 2008 supplemental responses to GE Licensing's Interrogatories, Agere identifies and incorporates various documents that we have been unable to locate in Agere's document production. Specifically, Agere identifies, "Agere/GE 000113-001036". We have been unable to locate documents bearing production numbers Agere/GE 000141-44 or Agere/GE 1036.

GE Licensing requests that Agere produce documents bearing production numbers:

    a. Agere/GE 000141-44, and

    b. Agere/GE 1036.

10. *GE Licensing Interrogatory No. 30*: In its February 8, 2008 supplemental responses to GE Licensing's Interrogatories, Agere states that it is attempting to obtain additional documents responsive to Interrogatory No. 30.

GE Licensing requests that Agere supplement its response to Interrogatory No. 30 to:

    a. Confirm whether Agere's production of documents responsive to Interrogatory No. 30 is complete, and

    b. If so, identify by production number where those documents may be found in Agere's production.

11. *GE Licensing Interrogatory No. 38*: Despite the fact that Interrogatory No. 38 requested that Agere "*[d]escribe in detail* and *identify* any documents relating to communications between Agere and Motorola, Inc., Lucent Technologies Inc., Broadcom Corp. or AltoCom, Inc.," with respect to Motorola, Inc., Broadcom Corp. and AltoCom, Inc., Agere responded by merely stating that "Defendant has produced relevant and non-privileged documents, to the extent that any exist, that are responsive to this interrogatory...." (Emphasis supplied.)

Due to unspecific and generalized reference to non-enumerated documents, which render Agere's response to Interrogatory No. 38 substantially incomplete and/or non-responsive, GE

Ian L. Saffer
March 19, 2008
Page 10

Licensing requests that Agere supplement its response to Interrogatory No. 38 to, at the very least:

    a.  Pursuant to Fed. R. Civ. P. 33(d), identify by Bates number documents produced that are responsive to Interrogatory No. 38, and

    b.  State whether Agere's production of documents responsive to Interrogatory No. 38 is complete.

12.  *GE Licensing Interrogatory No. 40*: Despite the fact that Interrogatory No. 40 requested that Agere state whether each Agere Product complied with any of eighteen (18) identified standards or recommendations, Agere initially responded as to only the V.34 and V.92 recommendations. In a spirit of compromise, GE Licensing accepted Agere's proffered response on a trial basis. *See* Letter from M. Connelly to I. Saffer, Jan. 25, 2008. Without waiving any right to request further supplementation based on other standards or recommendations, GE Licensing now requests that Agere supplement its response to Interrogatory No. 40 to include the V.90 standard.

Furthermore, Exhibit 1 appears to contain two deficiencies with respect to Interrogatory No. 40: (1) compliance information with respect to the L56XT ChipSet is missing and (2) the term "NA" in the V.34 and V.92 Compliance columns is undefined.

GE Licensing requests, therefore, that Agere supplement its response to Interrogatory No. 40 to:

    a.  Indicate whether each Agere Product complies with the V.90 recommendation;

    b.  State whether the L56XT ChipSet is compliant with any standard or recommendation; and

    c.  Define the term "NA" as used in the V.34 and V.92 Compliance columns of Exhibit 1.

We look forward to receiving Agere's supplemental responses to the interrogatories and exhibits identified above.

Agere's responses to GE Licensing's Requests for Production of Documents also identify a number of incomplete production issues, as follows:

13.  *GE Licensing Request for Production No. 2*: In its February 8, 2008 supplemental response to Request for Production No. 2, Agere states that it "has produced currently-available samples of Agere's products and will produce additional samples as they become available." Thus far, we have been unable to locate samples of Agere Products within Agere's document production, nor do we appear to have received subsequent production of any additional

Ian L. Saffer
March 19, 2008
Page 11

samples.

GE Licensing requests, therefore, that Agere:

    a.   Identify the Agere Products for which Agere has produced samples;

    b.   Identify the location of said produced samples within Agere's document production; and

    c.   Provide a date certain on which Agere will produce additional samples of Agere Products.

14. *GE Licensing Request for Production Nos. 7, 8, 9, 11, and 23*: In its responses to Request for Production Nos. 7, 8, 9, 11, and 23, Agere states that it "has produced responsive, non-privileged documents." Agere's responses, however, are incomplete and/or non-responsive to the extent that Agere fails to confirm that it has produced the requested "[d]ocuments… sufficient to identify" the requested information.

GE Licensing requests, therefore, that Agere confirm that it has produced "[d]ocuments… sufficient to identify" the requested information.

15. *GE Licensing Request for Production Nos. 15, 16, 17, and 27*: In its responses to Request for Production Nos. 15, 16, 17, and 27Agere states that "no responsive, non-privileged documents exist." We remind Agere, that Request for Production No. 16 requests all documents "relating to *any* plan or attempt by Agere to redesign any Agere Product" and, therefore, is not limited to redesign plans or attempts initiated in an effort to design around patents. (Emphasis added.)

GE Licensing requests that Agere confirm that the lack of production responsive to GE Licensing Request for Production Nos. 15, 16, 17, and 27 is due to privilege rather than the nonexistence of responsive documents.

16. *GE Licensing Request for Production No. 43*: In its February 8, 2008 supplemental responses to Request for Production No. 43, Agere states that it is "still attempting to obtain additional documents from its prior counsel."

GE Licensing requests that Agere supplement its response to Request for Production No. 43 to:

    a.   Confirm whether Agere's production of documents responsive to Request for Production No. 43 is complete;

    b.   If so, identify by production number where those documents may be found in Agere's production; and

Ian L. Saffer
March 19, 2008
Page 12

     c. If not, provide a date certain by which all documents responsive to Request for Production No. 43 will be produced.

We have also identified several categories of documents which appear to have been omitted from production and which were requested in GE's First and Second Sets of Requests for Production. These include:

17. *Agere Products*: All documents related to the Agere Products listed in No. 1 above.

18. *Custodian documents*:  Although it appears that Agere has produced certain custodians' documents, Agere's production appears to omit documents from a number of highly relevant categories of custodians, including the following.

     a. Email databases.  Our review thus far indicates that Agere's document production includes documents from Messrs. Flynn, Rai, Rauchwerk, Russo, Schulz, Skinker and Vernekar.  However, it appears that at least e-mails from Messrs. Vernekar, Rauchwerk, and Russo have not been produced.

     Due to Agere's failure to produce these documents and records, which renders Agere's document production substantially incomplete, GE Licensing requests that Agere produce these databases immediately.

     b. Persons of Knowledge.  GE Licensing has not received electronic or paper production from several of the persons named by Agere in its interrogatory responses as persons of knowledge, including:

          i. Larry Bays (GE Licensing Interrogatory No. 4),

          ii. Robert Radaker (GE Licensing Interrogatory No. 5),

          iii. Roger Sellers (GE Licensing Interrogatory No. 5),

          iv. Bryan Stahley (GE Licensing Interrogatory No. 5), and

          v. Sanjay Sharma (GE Licensing Interrogatory No. 6).

     Due to Agere's failure to produce these documents and records, which renders Agere's document production substantially incomplete, GE Licensing requests that Agere produce physical and electronic documents (including e-mail) from these individuals immediately.

     c. Key Individuals.  In addition, the electronic and other documents of the following people should be produced, all of whom are listed as "Key Individuals" in Agere documents in the categories set forth in parentheses:

Ian L. Saffer
March 19, 2008
Page 13

    i.   Sawyer (partnerships),

    ii.   Herman (platform manager),

    iii.   Shaw (systems engineer),

    iv.   Barazesh (systems engineer),

    v.   Petryna (IC designer),

    vi.   Cheung (IC Designer),

    vii.   Siewara (IC Designer),

    viii.   Vomero (IC Designer),

    ix.   Pant (IC Designer),

    x.   Pasznik (IC/System Validation),

    xi.   Grande (IC/System Validation),

    xii.   Wolfe (Product Engineering),

    xiii.   Sellers (Product Engineering) (to the extent different from Roger Sellers above),

    xiv.   Hixson(Product Engineering),

    xv.   Campbell (Test Engineering),

    xvi.   Nguyen (Test Engineering),

    xvii.   Schrader (Test Engineering),

    xviii.   Lubas (Test Engineering),

    xix.   Patel (Marketing),

    xx.   Chen (Apps) (to the extent different from Ben Chen above),

    xxi.   Lantz (Apps),

    xxii.   Ho (Apps),

Ian L. Saffer
March 19, 2008
Page 14

    xxiii.  Tarumi (Apps),

    xxiv.  Gomez (Apps), and

    xxv.  Day (Apps).

Due to Agere's failure to produce these documents and records, which renders Agere's document production substantially incomplete, GE Licensing requests that Agere produce physical and electronic documents (including e-mail) from these individuals immediately.

d.  It further appears that there are a number of highly relevant individuals from whom documents (both electronic and other) have not been collected. These include the software designers responsible for programming the Agere Products and the person (or persons) responsible for marketing the Agere Products.

Due to Agere's failure to produce these documents and records, which renders Agere's document production substantially incomplete, GE Licensing requests that Agere immediately produce electronic and other documents from all software designers responsible for programming the Agere Products, as well as all persons responsible for marketing the Agere Products. Based on our review of Agere's discovery responses, this should include, without limitation, at least the following individuals:

    i.  Herbert Cohen,

    ii.  Ashok Vernekar (as noted above),

    iii.  Mark Hargrove,

    iv.  Ray Staab,

    v.  Sam Hoke,

    vi.  John Guarini,

    vii.  Anthony Cheng,

    viii.  Michael Chen,

    ix.  Chao-Pin (Ben) Chen,

    x.  Shawn Antol, and

    xi.  Mr. Balaji (G, Balaji (Balaji) <balaji@agere.com>).

Ian L. Saffer
March 19, 2008
Page 15

> Given the method of production (native), producing the electronic documents from these individuals should be a simple matter.

19. *Physical document collection.* Agere's document production thus far appears to consist entirely of native, electronic documents and, therefore, does not appear to include any physical (*i.e.*, hardcopy) documents.

Has Agere collected (or made any efforts to collect) any physical documents from its custodians? If so, where in the production can these documents be found?

20. *Intranet documents.* Please confirm that the documents originally stored in the following directories have been produced:

    a.  http://clas.web.lucent.com/applications/sv92p-pak/;

    b.  http://clas.agere.com/applications/fieldtest/;

    c.  http://clas.agere.com/applications/soft-release/;

    d.  http://web.agere.com/~leb/modem_ic_info/chipinfo.htm; and

    e.  http://clas.agere.com/applications/modem.htm

21. *Marketing materials.* Agere's production of marketing materials appears to be incomplete. For example, we cannot find the Client Solutions line cards found in various forms on the Internet (*e.g.*, http://www.lsi.com/documentation/networking/line_cards/NSPG_LineCard_082907.pdf).

Please confirm whether Agere has produced its marketing materials for the Agere Products. If so, please identify where these documents are located within Agere's production.

Along with the failure to include at least Mr. Patel as a custodian, this would appear to be an indication that Agere has not yet produced all of its marketing and sales related documents.

22. *Organizational charts.* While some organizational charts may be found in production (*e.g.*, for sales), there does not appear to be any current organizational charts related to product development.

Please confirm whether Agere has produced all organizational charts and, in particular, organizational charts related to product development. If so, please identify where these documents are located within Agere's production.

23. *CV92/CFAX Software Developer's Guide.* Although we have found references to the CV92/CFAX Software Developer's Guide, we are unable to locate the document itself (*see*

Ian L. Saffer
March 19, 2008
Page 16

October 2006 Skinker presentation).

Please confirm whether Agere has produced the CV92/CFAX Software Developer's Guide. If so, please identify where these documents are located within Agere's production.

24. *Sales of individual components.* It is our understanding that Agere sells its products as individual components. However, Exh. 2 to Agere's responses to GE Licensing's Interrogatory Requests does not appear to include these sales.

Please confirm whether Agere has produced information on such sales and, if not, please produce such information and related documents immediately.

25. *Document production errors.* In reviewing Agere's document production, we have discovered a few areas where there appear to have been errors in Agere's document production. The document beginning at production number Agere/GE 000642 is missing pages internally labeled as 118-22 (Agere/GE 000760 corresponds with page 117 and Agere/GE 000761 corresponds with internal page 123). Moreover, Agere/GE 000760 and Agere/GE 000763 appear to have been improperly copied, thus rendering much of those pages illegible.

Please reproduce documents bearing production numbers Agere/GE 000760 and Agere/GE 000763, and supplement Agere's document production to include pages 118-22 of the document beginning at production number Agere/GE 000642.

Ian L. Saffer
March 19, 2008
Page 17

Please supplement the identified interrogatories and produce the requested document production by March 28, 2008. The requested information should have been produced no later than February 8, 2008 and, further, is within the scope of the January 22, 2008 stipulated order of the Court. If Agere does not intend to supplement and produce as requested or if Agere would like to discuss these matters further, then we would ask that you notify us or request a meet and confer prior to March 28, 2008. If you have any questions or concerns, please do not hesitate to contact us.

Sincerely,

Amanda E. Koenig

cc:     Counsel of Record for Agere

WDC99 1541385-4.037743.0051

# EXHIBIT E

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT F

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf Houston London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Amanda E. Koenig
Associate
akoenig@mwe.com
202.756.8075

March 20, 2008

VIA E-MAIL

Ian L. Saffer
Townsend and Townsend and Crew LLP
1200 Seventeenth Street
Suite 2700
Denver, CO 80202

Re:    *CIF Licensing, LLC, d/b/a GE Licensing v. Agere Systems Inc.,* C.A. No. 07-170

Dear Mr. Saffer:

We write with respect to ongoing issues with Agere's document production. These items are in addition to our letter of March 19, 2008, and are not exclusive to documents subject to GE Licensing's pending motion to compel.

In reviewing Agere's document production, the following relevant documents and information appear not to have been produced by Agere:

1.  *00-modules.txt*: Agere's documents state that this file exists and is a listing of all modules used in certain Agere Products, including without limitation the OCM (as shown in the Design Guidelines For OCM V.3);

2.  *DP2L Programmer's Reference Manual*: Agere's documents state that this document exists and is relevant to implementation of V.34 compliance in the DP2L and DPV devices;

3.  *Documents from "Ralph," which may be Ralph S. (Spike) Moyer*: Ralph authored Arm_Rom_Budget.Doc. As this Ralph appears to have direct knowledge of where compliance with V.34 and V.92 is handled within Agere code, he and his documents are highly relevant;

4.  *Programmer's reference manual for the DP2S*: MRI4129 states that Sam Hoke authored a programmer's reference manual for the DP2S;

5.  *DP3S Programmer's Reference Manual*: Agere's documents indicate that this document was being prepared in May of 2007; and

Ian L. Saffer
March 20, 2008
Page 2

6. *Linked files*: File 05d08_05delphiAM3A3V2S510=70ati11.xls contains a number of links for
   which we do not appear to have the corresponding documents.

Please produce the requested documents and information by March 28, 2008. The requested
information should have been produced no later than February 8, 2008 and, further, is within the
scope of the January 22, 2008 stipulated order of the Court. If Agere does not intend to produce
as requested or if Agere would like to discuss these matters further, then we would ask that you
notify us or request a meet and confer prior to March 28, 2008. If you have any questions or
concerns, please do not hesitate to contact us.

Sincerely,

Amanda E. Koenig

AEK/AEK

cc:    Counsel of Record for Agere

WDC99 1544798-1.037743.0051

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on May 9, 2008, the within document was

filed with the Clerk of the Court using CM/ECF; that the document was served on the following

party as indicated; and that the document is available for viewing and downloading from

CM/ECF.

### BY HAND DELIVERY AND E-MAIL

Josy W. Ingersoll, Esq.
John W. Shaw, Esq.
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

I hereby certify that on May 9, 2008 I have sent by E-mail the foregoing

document to the following non-registered participants:

David E. Sipiora, Esq.
Ian L. Saffer, Esq.
Chad E. King, Esq.
Ryan D. Phillips, Esq.
Townsend and Townsend and Crew LLP
1200 17th Street, Suite 2700
Denver, CO 80202
desipiora@townsend.com
ilsaffer@townsend.com
ceking@townsend.com
rdphillips@townsend.com

/s/ Philip A. Rovner
Philip A. Rovner  (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com