IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CIF LICENSING, LLC, d/b/a )
GE LICENSING, )
 )
       Plaintiff, )
 )   C.A. No. 07-170-JJF
 )
 )   **REDACTED -**
AGERE SYSTEMS INC., )   **PUBLIC VERSION**
 )
       Defendant. )

## DEFENDANT AGERE SYSTEMS INC.'S ANSWERING BRIEF IN RESPONSE TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION AND RESPONSES

YOUNG CONAWAY STARGATT &TAYLOR, LLP
John W. Shaw (No. 3362)
Jeffrey T. Castellano (No. 4837)
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
(302) 571-6600

-and-

TOWNSEND AND TOWNSEND AND CREW LLP
David E. Sipiora
Ian L. Saffer
Chad E. King
1200 Seventeenth Street, Suite 2700
Denver, Colorado 80202-5827
(303) 571-4000

*Attorneys for Defendant Agere Systems Inc.*

Dated: July 7, 2008

# TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ............................................................... 1

SUMMARY OF ARGUMENT ................................................................................ 2

STATEMENT OF FACTS ................................................................................... 3

ARGUMENT ................................................................................................. 6

    I.    GE's Discovery Requests are Untimely and Improper. ......................................... 6

        A.    GE's Discovery Requests are Untimely. .................................................... 7

        B.    GE's Has No Valid Justification for its Untimeliness. ................................... 8

        C.    The Substance of GE's Discovery Requests is Improper. ........................... 10

            i.    The Discovery Request Would Impose an Undue Burden on Agere. ............ 10

            ii.    The Requested Discovery Shifts the Burden of Proving Infringement. ......... 12

            iii.    Any Answer Generated by Agere Will Constitute Attorney Work Product. ..... 13

    II.    GE is Not Entitled to an Additional 30(b)(6) Witness. ....................................... 14

CONCLUSION .............................................................................................. 16

# TABLE OF AUTHORITIES

**Federal Cases**

*Lucent Technologies, Inc. v. Gateway, Inc.,*
    525 F.3d 1200, 1206 (Fed. Cir. 2008) ................................................................... 13

*Miller v. Pruneda,*
    236 F.R.D. 277, 282 (N.D.W.Va. 2004) ............................................................... 10

*Novartis Pharm. Corp. v. Abbott Labs.,*
    203 F.R.D. 159, 163 (D.Del. 2001) ...................................................................... 14

*Pfizer Inc. v. Ranbaxy Labs. Ltd., No. 03-209,*
    2004 WL 2323135, *2 (D.Del. Oct. 7, 2004) ...................................................... 13

**Federal Rules**

Fed. R. Civ. P. 36(a) .................................................................................................. 15

**Other Authorities**

U.S. Patent Nos. 5,048,054, 5,428,641, 5,446,758 ...................................................... 1

## NATURE AND STAGE OF PROCEEDINGS

This is an action for patent infringement brought by CIF Licensing LLC, d/b/a GE

Licensing, ("GE") against Agere Systems Inc. ("Agere") for alleged infringement of U.S. Patent

Nos. 5,048,054, 5,428,641, 5,446,758, and 6,198,776. Written discovery closed on February 8,

2008,[1] and remaining fact discovery closed on June 1, 2008.[2]

Without leave of the Court, GE served its Fourth Set of Interrogatories and First Set of

Requests for Admissions (the "Discovery Requests") on April 30, 2008.[3] GE conducted its

deposition of Agere's designated Rule 30(b)(6) witness on technical matters on May 8, 2008. GE

served its Motion to Compel Production and Responses (the "Motion") on Agere on June 19,

2008, seeking an order that Agere produce another Rule 30(b)(6) witness with respect to Agere's

source code (the "Source Code"), or in the alternative seeking responses to GE's Discovery

Requests.[4] Agere now opposes the Motion.

---

[1] D.I. 53.

[2] D.I. 32.

[3] D.I. 94.

[4] D.I. 136. By the Court's docketing remark entered 6/26/2008, Agere's Answering Brief is due July 7, 2008. Consequently, the briefing for the Motion can not be completed by noon on July 4, 2008, in accordance with Court's February 1, 2008 Standing Order regarding non-dispositive motions in patent cases. Moreover, GE has not waived its right to a reply brief. Accordingly, GE failed to file the Motion in time to allow the Motion to be heard on July 11, 2008.

### SUMMARY OF ARGUMENT

GE's Discovery Requests are untimely and unjustified. The requests were served nearly three months after the close of written discovery in this case. GE has provided no credible justification for its failure timely to serve the requests. Moreover, in the relief sought in the Motion, GE would have the Court shift the burden of proof of infringement in this case and compel Agere to undertake attorney work product activity on behalf of GE. In essence, as a result of its own lack of diligence, GE now asks the Court to compel Agere to perform the job of GE's counsel and experts. Specifically, GE's Discovery Requests call upon Agere to analyze its own Source Code and identify the purported presence of the elements of each claim of GE's asserted patents. As discovery has shown in this case, this is not information within the current knowledge of anyone in the employ of Agere.

GE's demand for two additional days of depositions from Agere is equally improper and inexplicable. GE comes nowhere close to demonstrating that Agere's Rule 30(b)(6) witness -- who spent some ten hours preparing for his deposition -- was unprepared for his deposition. Essentially, GE asserts that, had he been properly prepared, Agere's witness should have been able to analyze both the Source Code and the claims of GE's patents, so that he could prove GE's infringement case during the deposition. On its face, GE's assertion is unreasonable and unfounded. As explained below, Agere's employees do not possess this knowledge and Agere had no obligation to educate its employees in matters of law and claim construction in an attempt to develop such knowledge.

For at least these reasons, and as is more fully set forth below, Agere requests that the Court deny GE's motion to compel.

## STATEMENT OF FACTS

### GE's Failure to Pursue the Source Code

The failure of GE diligently to pursue or analyze the Source Code lies at the heart of this dispute. Agere previously detailed GE's failures in Agere's Opening Brief in Support of Its Second Motion to Compel Discovery,[5] and the subsequent Reply Brief in Support of Its Second Motion to Compel Discovery.[6] Because GE again has made an issue of its unexcused delay in pursuing discovery of the Source Code, Agere will summarize the previously briefed facts here.

- Anticipating that Source Code would be critical to this case, in early December 2007 (and on several occasions thereafter), Agere requested that GE provide a location for Agere to deposit into escrow the Source Code.[7]

- Despite Agere's repeated requests, GE elected to wait until the end of February 2008 (nearly a month after the close of written discovery) to notify Agere of two possible locations for the escrow; even at this late date, however, GE failed to settle on a single location for the escrow, so Agere agreed to provide the Source Code at two locations as an accommodation to GE.

- GE failed to follow up on this agreement; instead, on March 19, 2008, GE switched tack, requesting that Agere place the code in escrow in Bridgewater, New Jersey (a different location than either of the two locations GE had requested earlier), presumably for the convenience of two possible experts GE had disclosed (both of whom were ex-employees

---

[5] D.I. 75.

[6] D.I. 97.

[7] Pursuant to the terms of the Protective Order in this case, which GE negotiated and agreed to, source code produced by a party is to be deposited into escrow at a location selected by the viewing party. D.I. 40.

of Agere or its predecessor-in-interest).

- Agere objected to the experts, and GE withdrew these experts and proposed a different expert, to whom Agere consented. Finally, on April 9, 2008, GE identified Menlo Park, California, as the location for the escrow, and specified a vendor GE would like to use to handle the escrow.

- Unfortunately, GE's preferred vendor refused to be bound by the terms of Stipulated Protective Order. Considering the requirements of GE's vendor, Agere negotiated with GE to amend the Stipulated Protective Order, and simultaneously negotiated an escrow contract with the vendor.

- GE filed the amended Stipulated Protective Order on May 14, 2008.[8] Agere executed the escrow contract the following day, and the Source Code was placed in escrow on May 19, 2008, four months after Agere's initial inquiry into where the Source Code should be escrowed.[9]

**GE's Untimely Discovery**

Despite GE's unexcused delay in seeking the Source Code, GE elected to serve the Discovery Requests on April 30, 2008, nearly three months after the close of written discovery. Agere had resisted a previous motion to compel discovery related to requests served February 7, 2008 on the grounds that the February 7th discovery was untimely.[10] Consistent with Agere's position on the earlier requests, Agere informed GE on May 7, 2008 that the Discovery Requests

---

[8] D.I. 106.

[9] Agere has subsequently placed in escrow all prior iterations of the Source Code.

[10] D.I. 67.

were untimely. On May 8, 2008, GE sent Agere a letter disputing Agere's interpretation of the
Scheduling Order, claiming that the discovery was in fact timely. *See* Exhibit A. On May 9,
2008, the Court issued its Memorandum Order, in which the Court confirmed Agere's
interpretation of the Scheduling Order, declaring the February 7, 2008 discovery requests
untimely.[11]

On May 8, 2008, GE deposed Agere's designated Rule 30(b)(6) witness, Richard
Flanagan. On May 15, 2008, GE sent Agere a letter, attempting to justify the untimely nature of
the Discovery Requests by tying the requests to Mr. Flanagan's alleged lack of preparation for
his deposition, despite the fact that these Discovery Requests were served a week before Mr.
Flanagan's deposition. On May 19, 2008, the parties held a meet-and-confer as ordered by the
Court's May 9th Memorandum Order. During this meet-and-confer, GE raised the issue of
Agere's timeliness objection to the Discovery Requests. Agere stood by its objection, and in a
subsequent letter dated May 22, 2008, informed GE that Agere's objection to the Discovery
Requests fell outside the scope of the Court's May 9th Memorandum Order and that Agere would
defend its objection at the appropriate time. Agere reiterated this position in the Joint Letter to
the Court, filed May 28, 2008.[12]

**GE's Deposition of Richard Flanagan**

On May 8, 2008, GE deposed Mr. Flanagan, a modem engineer employed by Agere or its
predecessors since the early-1980's. Mr. Flanagan was designated as Agere's Rule 30(b)(6)
witness due to his knowledge on a number of deposition topics provided by GE. Mr. Flanagan

---

[11] D.I. 104. Agere acknowledges that the Court further found that discovery relevant,
presumably based on GE's briefing, and ordered Agere to respond to the discovery requests
despite their untimeliness. (D.I. 104.)

[12] D.I. 118, §§ IV, V.

spent approximately ten hours to prepare himself to testify on behalf of Agere.[13]  During the

deposition, GE chose to direct most of its Source Code questions at one set of Agere's Source

Code, the softmodem code obtained from AltoCom.  It is noteworthy that, of the two sets of

Source Code at issue here, one set was developed by a different company, AltoCom, and

purchased by Agere.  The other set was developed by Agere (or its predecessors), but most of the

personnel involved in that development have left Agere.

       In the Motion, GE fails to inform the Court that, in addition to Mr. Flanagan's testimony,

GE has already deposed eight Agere engineers with respect to the Source Code, including the

three engineers most knowledgeable about Agere's products.[14]  As detailed below, Agere's

engineers lack the specific information required to answer GE's questions about the Source

Code, particularly the softmodem code developed by AltoCom, and Mr. Flanagan's testimony,

on behalf of Agere, reflected this level of knowledge.  Far from being "unprepared," Mr.

Flanagan's testimony reflected Agere's institutional knowledge as to the Source Code and

Agere's products.

**ARGUMENT**

**I.    GE's Discovery Requests are Untimely and Improper.**

       The Court should deny the Motion and find the requests untimely and improper because

the Discovery Requests are grossly tardy without any valid justification.  Moreover, the

substance of the Discovery Requests is improper, in that the requests seek protected information

and attempt to shift GE's burden of proof.  Finally, forcing Agere to answer GE's Discovery

---

[13] GE implies that ten hours of deposition preparation was insufficient.  For its part, neither of its own Rule 30(b)(6) witness designees, nor the three separate Rule 30(b)(6) witnesses designated by Motorola, engaged in any such preparations.

[14] *See* GE's Motion, Exhibit K, Interrogatory No. 4.

Requests would impose an undue hardship on Agere.

### A.    GE's Discovery Requests are Untimely.

GE admits that it did not serve the Discovery Requests in a timely manner, explaining that "the timing of [GE's] written discovery requests was a direct result of Agere's surreptitious gamesmanship."[15]   This explanation is flat wrong.  Agere has engaged in no such gamesmanship, and Agere bears no responsibility for GE's tardiness.

The Scheduling Order states that "document production...shall be commenced so as to be completed by January 31, 2008."[16]   This date was extended to February 8, 2008 by stipulation between the parties.[17]   GE served the Discovery Requests on April 30, 2008, nearly three months after the close of written discovery.  At the time, based on its mistaken interpretation of the Scheduling Order, GE believed that the Discovery Requests were timely.[18]   However, as the Court has reiterated, the Scheduling Order does not permit written discovery requests to be served after January, 2008.[19]   GE, now serving late discovery requests for the second time, clearly has no regard for the deadlines imposed by the Court.  Because GE's Discovery Requests were indisputably served several months past the deadline for written discovery, the Court should deny the Motion.

---

[15] GE's Motion at 2.

[16] D.I. 32.

[17] D.I. 53.

[18] *See* Exhibit A (May 8, 2008 Letter from GE's counsel Michael Connelly to Agere's counsel Ryan Phillips, stating, "[T]here is nothing in Para. 3 of the Scheduling Order which provides a basis for Agere's refusal to respond to these discovery requests.  The requests were served with more than 30 days remaining before the June 1, 2008 close of fact discovery.")

[19] D.I. 104, p. 3 ("Plaintiff's February requests were not timely. . . .").

**B.    GE's Has No Valid Justification for its Untimeliness.**

Attempting to justify its untimely discovery requests, GE inappropriately ties the Discovery Requests to the entirely unrelated event of Mr. Flanagan's deposition. As noted above, GE initially believed its requests were timely. When proven incorrect in the Court's May 9, 2008 Memorandum Order, GE abandoned this position in favor of its new position that the Discovery Requests were served in anticipation of Agere "providing a designee that had no knowledge regarding the Source Code that runs on the accused products." GE's Motion at 1. GE's May 8, 2008 letter, however, reveals the *post hoc* nature of this purported justification. The fact is that GE would like the Court to believe that, a week before the scheduled Rule 30(b)(b) deposition of Agere, GE knew that Agere's witness would be unable to answer questions about the Source Code, and for that reason decided to serve the Discovery Requests, which were over two months late. The inescapable conclusion is that, at the time GE served the Discovery Requests, GE simply—and mistakenly—believed the requests were timely under the Scheduling Order.

GE's Motion fails to show, in any way, how Mr. Flanagan's testimony might justify the lateness of the Discovery Requests. For example, GE argues that "Agere's technical 30(b)(6) witness, Mr. Flanagan, testified that Agere possesses the requested information and indicated that information about how Agere's modems operate—vis-à-vis its Source Code—is most easily provided in written form."[20] This argument badly misconstrues Mr. Flanagan's testimony. Rather than justifying the Discovery Requests, Mr. Flanagan's testimony indicates that the best way for GE to obtain the information it seeks is by reading the Source Code:

---

[20] GE's Motion at 6.

REDACTED

Mr. Flanagan, rather than providing testimony that would justify the Discovery Requests, merely confirmed that a study of the Source Code would show                REDACTED

Given GE's full access to the Source Code itself, it is difficult to see how Mr. Flanagan's testimony indicates anything other than that GE should be able to find, on its own, the answers to its questions, without imposing any undue burden on Agere.

Exacerbating its failure to serve the Discovery Requests in a timely manner, GE unreasonably and inexcusably delayed in seeking access to the Source Code, despite Agere's repeated offers to make the code available under the terms of the Protective Order. Agere first approached GE in early December 2007, seeking GE's instructions on a location for the Source Code escrow. GE, however, was uninterested in discussing the Source Code. Without excuse, GE waited until the end of March 2008 to engage in any serious attempt to even discuss the escrow with Agere. Ultimately, GE waited until April 9, 2008, to provide Agere with the information necessary to allow Agere to produce the Source Code. This delay was entirely the responsibility of GE. Now, nearly eight months after Agere first offered to make the Source

---

21.    REDACTED

Code available, GE seeks to compel Agere to answer Discovery Requests about the nature and functionality of the Source Code, all of which GE can ascertain for itself. Any discovery dispute as to the production of the Source Code could have, and should have, been resolved at least six months ago. The Court should not remedy GE's unreasonable and unexcused delay in seeking the Source Code by compelling responses to GE's late Discovery Requests.

### C.     The Substance of GE's Discovery Requests is Improper.

The Discovery Requests are improper because they would impose an undue burden on Agere and effectively would shift the burden of proving infringement from GE to Agere. Further, as Agere would be unable to answer the Discovery Requests without analyzing the requests under the guidance of counsel, for the sole purpose of this litigation, any answers would be protected by the attorney work product doctrine.

#### i.     The Discovery Request Would Impose an Undue Burden on Agere.

Answering the Discovery Requests would impose a tremendous and undue burden on Agere. GE has provided no justification for imposing this burden. Neither Mr. Flanagan nor any of Agere's current employees, including the eight engineers who have been deposed as fact witnesses by GE, possess the knowledge to answer GE's discovery requests. *See, e.g.,* Exhibit B, REDACTED . The imposition of this task would represent a significant burden on Agere's engineers in terms of time and lost productivity, and it falls far outside of Agere's obligations under the Federal Rules.[22]

GE incorrectly believes that Agere currently knows all of the answers to GE's Discovery Requests but merely refuses to provide them. Agere's employees have not spent time analyzing

---

[22] *See Miller v. Pruneda,* 236 F.R.D. 277, 282 (N.D.W.Va. 2004) ("Interrogatories cannot require the responding party to make extensive investigations or conduct complex research.").

the Source Code against GE's patents. The eight technical witnesses deposed by GE consistently established this fact.[23] Hence, to answer the Discovery Requests, Agere's employees would be required to spend a significant amount of time, first to familiarize themselves with the terms of the patents-in-suit[24] and, second, to analyze the Source Code for the sole purpose of answering the Discovery Requests. Such a burden is unjustifiable.

GE has provided no legitimate basis to impose this burden on Agere. GE first claims that the Source Code is within Agere's possession, custody and control. That is true; nonetheless, every one of the Source Code files that are the subject of the Discovery Requests have been made available to GE's counsel and experts through the escrow provisions of the Stipulated Protective Order. Correspondence with the escrow vendor reveals that GE in fact has taken advantage of this availability, by examining the Source Code pursuant to the escrow agreement. Simply put, GE has access to the Source Code and has retained experts to analyze the Source Code. Thus, the information GE seeks to compel Agere to develop is equally available to GE as it is to Agere, and Agere should not be forced to do the work of GE's experts.

GE complains that it has difficulty working under the conditions imposed through the escrow provision of the Stipulated Protective Order and claims that this difficulty justifies forcing Agere to perform, merely for the purpose of answering the Discovery Requests, GE's infringement analysis.[25] Specifically, GE complains that it "is restricted to viewing the code

---

[23] *See* GE's Motion at 6.

[24] Familiarizing themselves with terms of the patents-in-suit will inherently require the guidance of counsel. *See* Section I(B)(iii) below.

[25] *See* GE's Motion at 8.

during business hours," in a "single office located in Northern California."[26] GE further complains that it will have to spend "approximately $500/day" (beyond the first ten viewing days; those costs were split with Agere).[27] This position is inexplicable. Agere has far exceeded its obligations in attempting to facilitate GE's review of the Source Code, but GE still complains that Agere has not done enough. GE argues that because it can "only" access the code for nine hours per day, at a location of GE's choosing, and because GE must spend $500/day (an amount that surely pales in comparison to what GE pays its experts), Agere should be forced to analyze the code on GE's behalf.

GE specifically agreed to each of the escrow provisions of the Stipulated Protective Order. In fact, GE itself reaffirmed its assent to the source code escrow provisions of the Stipulated Protective Order when it filed the amended Stipulated Protective Order on May 14, 2008. (D.I. 106.) If GE found these provisions onerous, it should have negotiated different escrow provisions before agreeing to the Stipulated Protective Order, something it did not even attempt to do, either originally or when the parties agreed to the amended order. Instead, GE now attempts to use the terms of the stipulated order to force Agere to perform analyses that GE is equally capable of performing.

### ii. The Requested Discovery Shifts the Burden of Proving Infringement.

Through the Discovery Requests, GE impermissibly attempts to shift the burden of proving infringement of Agere's accused products onto Agere. By their nature, the Discovery Requests demand that Agere construe nearly every element of each asserted claim of the patents-

---

[26] *Id.* Furthermore, GE fails to mention that under the Stipulated Protective Order it may print portions of the Source Code for transport and review outside of the escrow facility.

[27] *Id.*

in-suit and analyze the Source Code to determine which (if any) specific lines of the Source Code perform each element of the patents' claims. In effect, GE, rather than proving its own case, seeks to have Agere either demonstrate or admit that Agere's Source Code infringes every asserted claim. Even if Agere had the knowledge to respond to these requests at the code level (which, as noted above, it does not), the requests represent an effort by GE to avoid having to prove infringement of its patent claims. GE can provide no authority or reason to justify this shift of the burden of proof, and for this additional reason, the motion should be denied.

       iii.     **Any Answer Generated by Agere Will Constitute Attorney Work Product.**

Because Agere employees lack specific knowledge to answer the Discovery Requests, any effort by Agere to analyze the Source Code to answer the Discovery Requests will be the work product of attorneys and/or persons working under the direction of attorneys. Because this analysis will have been produced for the sole purpose of this litigation, the analysis necessarily will be protected under the attorney work product doctrine.[28]

The Discovery Requests, in particular GE's Fourth Set of Interrogatories, require Agere to construe virtually every element in each asserted claim before identifying lines of code that correspond to each of those elements. The meaning of claim terms is a matter of law,[29] and GE's interrogatories necessarily require analysis of the Source Code against the claim terms to reach a legal conclusion. Such an analysis only could be performed under the direction and guidance of counsel, and solely for the purpose of this litigation. Any such analysis, and the answers to interrogatories or requests for admission that follow from the analysis, necessarily would

---

[28] *See Pfizer Inc. v. Ranbaxy Labs. Ltd.*, No. 03-209, 2004 WL 2323135, at *2 (D.Del. Oct. 7, 2004) (Farnan, J.).

[29] *See Lucent Technologies, Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1206 (Fed. Cir. 2008).

constitute attorney work product and would not be discoverable.[30]  Accordingly, even if GE's

Discovery Requests were timely and were otherwise proper, any answer that Agere might

develop through analysis of the Source Code would not be subject to discovery.  Thus, GE's

Motion should at least be denied as moot, for this additional reason.

    **II.**       **GE is Not Entitled to an Additional Rule 30(b)(6) Witness.**

        GE has failed to establish that Mr. Flanagan was unprepared to testify and failed to

provide any justification for its request for two additional days of depositions on Agere.  Indeed,

other than a conclusory prayer that the Court "Order Agere to provide a properly-prepared and

knowledgeable 30(b)(6) witness to testify . . . about the contents and functionality of its Source

Code," GE fails to provide one sentence of argument about why GE might be entitled to another

30(b)(6) witness, when it in fact has already taken nearly two full days of 30(b)(6) depositions of

Agere.

        In the Motion, GE merely reproduces, without context, snippets of Mr. Flanagan's

deposition testimony.  This approach, however, cannot obscure GE's utter failure to explain or

identify anything lacking in Mr. Flanagan's testimony.  Contrary to the implication of GE's

unsupported request for relief, Mr. Flanagan was well prepared to represent the institutional

knowledge of Agere with respect to its modem products.  As noted above, Agere, as a company,

lacks the knowledge required to answer the questions posed in the Discovery Requests.  Hence,

Mr. Flanagan's testimony as the company representative accurately reflects Agere's level of

knowledge on the topics for which he was designated.

        The testimony of the Agere employees GE has deposed regarding the Source Code

---

[30] *See Novartis Pharm. Corp. v. Abbot Labs.*, 203 F.R.D. 159, 163 (D.Del. 2001) (Farnan, J.).

further demonstrates that Agere simply lacks the information GE seeks.[31]  For more than six

months, GE has had virtually all documents that might identify Agere's technical personnel and

has had the opportunity to select any of those technical personnel still employed by Agere as

deposition witnesses.[32]  In fact, GE has deposed eight individual witnesses on technical topics

(including the Source Code) but GE cannot identify testimony of a single deponent suggesting

that Agere, or any of its current employees, possesses more knowledge than what Agere already

has provided through Mr. Flanagan's testimony.  Agere may have employees with the capability

to undertake a specific review and analysis of the Source Code to answer questions relating the

Source Code to the claims of GE's patents (the subject GE presumably believes Mr. Flanagan

was insufficiently prepared to address), but as established above, any such analysis imposes an

undue and unreasonable burden on Agere for which GE has failed to provide any justification.

   For all of the foregoing reasons, the Motion lacks merit, and the Court should deny GE's

request for two additional days of depositions from Agere.[33]

---

[31] *See, e.g.* Exhibit B, .    REDACTED

[32] Again, it is noteworthy that, of the two sets Source Code at issue here, one set was developed
by a different company, AltoCom, and purchased by Agere.  The other set was developed by
Agere (or its predecessors), but most of the personnel involved in that development have left
Agere.  Perhaps if GE had not waited so long to initiate this litigation, more of these personnel
would have been available to answer GE's questions.

[33] As to GE's third requested relief, which asks the Court to "deem GE Licensing's First Set of
Requests for Admissions admitted," GE has failed to provide any justification or authority
supporting imposing this discovery sanction under Fed. R. Civ. P. 36(a).  Agere on multiple
occasions, including in writing on May 7th, and May 28th, objected to the discovery requests as
untimely.  This objection was asserted seasonably and in good faith.  GE acknowledged Agere's
objection on in writing.  *See, e.g.* Exhibit A.  GE provides no basis for the imposition of the
discovery sanction and thus the Court should deny the requested relief.

**CONCLUSION**

For the reasons set forth above, Agere respectfully submits that GE's Motion to Compel

should be denied.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

John W. Shaw (No. 3362)
jshaw@ycst.com
Jeffrey T. Castellano (No. 4837)
jcastellano@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391
302-571-6600
*Attorneys for Defendant Agere Systems Inc.*

OF COUNSEL:

David E. Sipiora
Ian L. Saffer
Chad E. King
TOWNSEND AND TOWNSEND AND CREW, LLP
1200 17th Street, Suite 2700
Denver, CO 80202
303-571-4000

Dated: July 7, 2008

## CERTIFICATE OF SERVICE

I, Jeffrey T. Castellano, Esquire, hereby certify that on July 14, 2008, I caused to be electronically filed a copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> Philip A. Rovner, Esquire
> David E. Moore, Esquire
> Potter Anderson & Corroon LLP
> 1313 N. Market Street
> Wilmington, DE 19801

I further certify that on July 14, 2008, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following participants in the manner indicated:

### BY EMAIL

Richard L. Horowitz
Philip A. Rovner
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801
Tel: 302-984-6000
Fax: 302-658-1192
rhorowitz@potteranderson.com
provner@potteranderson.com
dmoore@potteranderson.com

Joel M. Freed
Brian E. Ferguson
D. Sean Trainor
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005-3096
jfreed@mwe.com
bferguson@mwe.com
dtrainor@mwe.com
Tel: 202-756-8327
Fax: 202-756-8087

Edwin H. Wheeler
McDermott Will & Emory LLP
3150 Porter Drive
Palo Alto, CA  94304-1212
Tel:  650-813-5000
Fax: 650-813-5100
mwheeler@mwe.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
jshaw@ycst.com
Jeffrey T. Castellano (No. 4837)
jcastellano@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware, 19801
302-571-6600
*Attorneys for Defendant Agere Systems Inc.*

2

# EXHIBIT A

# McDermott
# Will & Emery

Boston  Brussels  Chicago  Düsseldorf  London  Los Angeles  Miami  Munich
New York  Orange County  Rome  San Diego  Silicon Valley  Washington, D.C.

Michael W. Connelly
Attorney at Law
mconnelly@mwe.com
202.756.8037

May 8, 2008

**VIA E-MAIL**

Ryan Phillips
Townsend and Townsend and Crew LLP
1200 Seventeenth Street
Suite 2700
Denver, CO 80202

Re:     *CIF Licensing, LLC, d/b/a GE Licensing v. Agere Systems Inc., C.A. No. 07-170*

Dear Ryan:

This is in response to your letter of May 7 regarding GE Licensing's First Set of Requests for Admissions and Fourth Set of Interrogatories to Agere.  Contrary to your unsupported assertion, there is nothing in Para. 3 of the Scheduling Order which provides a basis for Agere's refusal to respond to these discovery requests.  The requests are were served with more than 30 days remaining before the June 1, 2008 close of fact discovery.

As of today, Agere has only just agreed to Protective Order changes which GE Licensing agreed to over a week ago, and we have still not been told when the source code will be deposited for our review.  Now Agere is refusing to answer questions about the source code.  It appears that this is nothing more than another obstructionist tactic to prevent any discovery on Agere's source

U.S. practice conducted through McDermott Will & Emery LLP.

600 Thirteenth Street, N.W.  Washington, D.C.  20005-3096   Telephone: 202.756.8000   Facsimile: 202.756.8087   www.mwe.com

Ryan Phillips
May 8, 2008
Page 2


code. If the opportunity arises, we will be raising this issue to the Court tomorrow, though we
are available today to discuss resolution of this matter.


Sincerely,

*Michael Connelly*

Michael W. Connelly


cc:    Counsel of Record for Agere


MWC/AEK


WDC99 1564888-1.037743.0051

# EXHIBIT B
# REDACTED