IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CIF LICENSING, LLC, d/b/a GE LICENSING, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 07-170 (JJF) |
| v. | ) ) | **REDACTED –** |
| AGERE SYSTEMS INC., | ) ) | **PUBLIC VERSION** |
| Defendant. | ) ) | |

**DEFENDANT AGERE SYSTEMS INC.'S OPENING BRIEF
IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY FROM PLAINTIFF CIF
LICENSING, LLC AND THIRD PARTY MOTOROLA, INC.**

YOUNG CONAWAY STARGATT &TAYLOR, LLP
Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Jeffrey T. Castellano (No. 4837)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

-and-

TOWNSEND AND TOWNSEND AND CREW LLP
David E. Sipiora
Ian L. Saffer
Chad E. King
1200 Seventeenth Street, Suite 2700
Denver, Colorado 80202-5827
(303) 571-4000

*Attorneys for Defendant Agere Systems, Inc.*

August 15, 2008

**TABLE OF CONTENTS**

NATURE AND STAGE OF PROCEEDINGS ........................................................................ 1

SUMMARY OF ARGUMENT ............................................................................................... 2

STATEMENT OF FACTS ..................................................................................................... 3

    A.    Background Facts ............................................................................................. 3

    B.    GE Has Withheld On The Grounds Of Privilege Documents That
It Has Disclosed To Third Parties. ................................................................. 4

    C.    GE And Motorola Witnesses Have Refused To Answer
Deposition Questions Regarding Meetings Held And Documents
Shared Between The Two Companies. ............................................................. 5

ARGUMENT .......................................................................................................................... 8

    A.    Legal Standard ................................................................................................ 8

    B.    GE Waived Any Privilege When It Disclosed Documents and
Other Information to Third-Parties. ............................................................... 10

        1.    GE Waived Privilege in the Due Diligence and Portfolio
Assessment Documents When It Disclosed Documents to,
and Received Documents from,
................................................................................................... 10

        2.    GE Waived Privilege in the Assertion Documents When It
Shared These Documents with Third-Party Motorola. ......................... 11

    C.    Any Privileged Information Disclosed By GE to Motorola (or
Vice Versa) is Not Protected Under the Common Interest
Doctrine. ....................................................................................................... 12

        1.    The                  Establishes GE and
Motorola Share Only a Commercial Interest. ..................................... 12

        2.    The
, Does Not Establish a
Common Legal Interest. ..................................................................... 13

CONCLUSION ..................................................................................................................... 14

i

# TABLE OF AUTHORITIES

Federal Cases

*Corning Inc. v. SRU Biosystems, LLC,*
    223 F.R.D. 189 (D. Del. 2004)......................................................................... 9, 13

*Intellectual Prop. Development, Inc. v. TCI Cablevision of California, Inc.,*
    248 F.3d 1333 (Fed. Cir. 2001)...................................................................... 12, 13

*Katz v. AT&T Corp.,*
    191 F.R.D. 433 (E.D. Pa. 2000) ....................................................................... 9, 14

*Pfizer Inc. v. Ranbaxy Labs. Ltd.,*
    No. 03-209, 2004 WL 2323135 (D. Del. Oct. 7, 2004) ........................................ 8, 10

*Teleglobe Commun. Corp. v. BCE Inc. (In re Teleglobe Commun. Corp),*
    493 F.3d 345 (3rd Cir. 2007) ................................................................... 9, 10, 12

## NATURE AND STAGE OF PROCEEDINGS

This is an action for patent infringement brought by CIF Licensing LLC, d/b/a GE

Licensing, ("GE") against Agere Systems Inc. ("Agere") for alleged infringement of U.S. Patent

Nos. 5,048,054, 5,428,641, 5,446,758, and 6,198,776 (the "Patents-in-Suit").  Written discovery

closed on February 8, 2008, and remaining fact discovery closed on June 1, 2008.  (D.I. 53; D.I.

32.)  The parties exchanged initial expert reports on August 4, 2008.

## SUMMARY OF ARGUMENT

1.      Agere seeks an order from the Court compelling production of relevant, responsive documents and testimony improperly withheld based on the assertion of attorney-client privilege by GE.  The assertion by GE of attorney-client privilege with respect to the documents and testimony in question is improper because GE disclosed all of this information to various third parties, including Motorola, Inc. ("Motorola"),

years before filing the present litigation.  Under well-settled law, the disclosure of this information to third parties results in a waiver by GE of any claim of attorney-client privilege.

2.      In June 2004, GE purchased a patent portfolio (the "Patent Portfolio"), including the Patents-in-Suit, from Motorola.  As part of the :

REDACTED

to the Patents-in-Suit.  Now, nearly four years later, GE refuses to produce a number of these documents on the grounds of privilege.

and thus attorney-client privilege does not apply.  These documents are relevant to the damages issues in this case and should be produced.

3.      In addition, both GE and Motorola have withheld documents and testimony relating to communications between the two companies relating to the Patents-in-Suit.  After the

Both companies now refuse to produce information relating to these communications on the basis of an alleged

2

"common interest" privilege.

REDACTED
                                                                    . GE and Motorola's

relationship is purely commercial in nature, and thus under this Court's precedent the common

interest doctrine does not apply.  GE and Motorola both waived any potentially-applicable

privilege by sharing information with each other.  Agere respectfully requests that the Court

order GE and Motorola to produce all documents and testimony shared between them relating to

the Patents-In-Suit.

## STATEMENT OF FACTS

### A.     Background Facts

Motorola transferred the Patent Portfolio to GE.[1]  *See* Exhibit A.

In exchange, Motorola assigned the patents to GE and ·

                                              , (attached as Exhibit B). ·

                                                              *See* Exhibit A,

---

3

GE and Motorola acknowledged and agreed that Motorola's

REDACTED

Exhibit B,

                                                                                    ,. *See*

*Id.*,

**B.    GE Has Withheld On The Grounds Of Privilege Documents That It Has Disclosed To Third Parties.**

The documents Agere seeks in this Motion fall into three categories.  First:

(the "Due Diligence Documents").[2]  On information and belief, these documents contain

information regarding reasonable royalty rates for the Patents-In-Suit, a topic relevant to

damages.  Agere requested these documents in discovery but GE has only produced redacted

copies of the documents.  *See* Agere's First Set of Requests for Production Nos. 31, 46 and 67

(attached as Exhibit E); *see also* Exhibit C.

---

2

                                                                *See* Exhibit C.  (GE initially produced
some of the documents sought by this Motion, and then later recalled them under the Protective
Order (D.I. 38) as "inadvertently produced."  After recalling the documents, GE agreed to
provide Agere with information sufficient to identify the recalled documents for the Court.
Exhibit C is the list provided by GE.)

Second:

It appears that GE shared documents (the "Portfolio Assessment Documents") with these consultants and received documents back from these consultants.[3] On information and belief, these documents contain information topics relevant to damages. Agere requested these documents in discovery but GE has produced only redacted copies. *See* Exhibit E; *see also* Exhibit C.

Third: GE has engaged the services of Motorola under the

REDACTED

– as well as documents shared between the two companies regarding the patents (the "Assertion Documents").[4] On information and belief, these documents and meetings are relevant to non-infringement, invalidity, and other defenses Agere has asserted in this case. Agere requested these documents in discovery but both GE and Motorola have produced only redacted copies of the documents. *See* Exhibit E; *see also* Exhibit C.

**C.    GE And Motorola Witnesses Have Refused To Answer Deposition Questions Regarding Meetings Held And Documents Shared Between The Two Companies.**

In addition to the categories of documents described above, Agere seeks additional deposition testimony from four witnesses who were instructed by counsel not to answer

---

[3] The Portfolio Assessment Documents include
*See* Exhibit C.

[4] The Assertion Documents include                                                    *See Id.*

5

questions on the grounds of privilege.  First:  On April 25, 2008, Agere deposed Gerry Haskett,

REDACTED

(attached as Exhibit **F**).

On information

and belief, Mr. Haskett

Second:  On June 17, 2008, Agere deposed Patrick Maurer, a second Motorola employee

Like Mr. Haskett, Mr. Maurer testified that he

.  Also like Mr. Haskett, Mr.

Maurer was

Exhibit G).

Third:  On May 29, 2008, Agere deposed Richard Misiag, the GE employee who

Mr. Misiag

Nevertheless, during his deposition, Mr.

Misiag

6

(attached as Exhibit H). On information and belief, Mr. Misiag

REDACTED

Fourth: On June 18, 2008, Agere deposed Michael Stolarski,

Mr. Stolarski was and is a lawyer for Motorola, and his communications with his client are privileged if kept confidential. However, Mr. Stolarski

attached as Exhibit I). On information and belief, Mr. Stolarski

which is relevant to disputed issues in this case.[5]

On June 11, 2008, counsel for Motorola, GE and Agere met and conferred by telephone regarding the basis for Motorola and GE's assertion of the common interest doctrine. On August 6, 2008, the parties, again including Motorola, met and conferred regarding this motion. Despite Agere's reasonable efforts to reach agreement with GE and Motorola on these issues, counsel for

<hr>

[5]

GE and counsel for Motorola stated that their clients oppose this motion.

`                                                              .  *See* Exhibit J.

REDACTED                          **ARGUMENT**

GE and Motorola have improperly withheld documents and testimony from discovery. As to documents and conversations disclosed to                                    any possible claim of privilege has been waived.  As to documents and conversations disclosed to Motorola, any possible claim of privilege has been waived and the common interest exception to the waiver rule is inapplicable because GE and Motorola do not share a common legal interest, only a common commercial interest.

A.    **Legal Standard**

When information otherwise entitled to protection under the attorney-client privilege or work product doctrine is shared with a third-party, the privilege is waived.  As this Court has previously stated, the party asserting the attorney-client privilege must prove:

> "(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with the communication is acting as a lawyer; (3) the communication related to a fact of which the attorney was informed (a) by his client, (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client."

*Pfizer Inc. v. Ranbaxy Labs. Ltd.*, No. 03-209-JJF, 2004 WL 2323135, at *1 (D.Del. Oct. 7, 2004) (J. Farnan).  Further, only communications made for the purpose of obtaining or giving legal advice are protected and the privilege does not attach simply because the communication was uttered by or to an attorney or an attorney's agent.  *See Id.* at *2.  Finally, materials are attorney work product if they prepared by counsel or at counsel's direction in anticipation of litigation.  *See Id.*

8

When a party discloses what is otherwise a privileged communication to a third-party, the communication is no longer confidential and the privilege ceases to protect it. *See Teleglobe Commun. Corp. v. BCE Inc. (In re Teleglobe Commun. Corp)*, 493 F.3d 345, 361 (3rd Cir. 2007). The invocation of privilege is carefully policed by the courts to prevent abuse. *See Id.*

The common interest doctrine is an exception to this general rule that the attorney client privilege is waived following the disclosure of the privileged materials to a third-party. *See Corning Inc. v. SRU Biosystems, LLC*, 223 F.R.D. 189, 190 (D.Del. 2004) (J. Farnan). To extend the protection of privilege to the communication shared with a third-party, the interests of the two parties must be "identical, not similar, and be legal, not solely commercial." *Id.* "[T]he common interest doctrine does not create an independent privilege, but depends upon a proper showing of the other elements of the attorney-client privilege." *Katz v. AT&T Corp.*, 191 F.R.D. 433, 437 (E.D.Pa. 2000). GE, as the party withholding information as privileged, has the burden in establishing (1) that the material is privileged, and (2) that the common interest doctrine applies. *See Id.*

To be eligible for protection under the common interest doctrine, GE must establish that a common legal interest exists. To establish a common interest, GE may not solely rely on the fact that a contractual relationship exists between the parties; instead, the inquiry as to whether a common legal interest exists is a case specific determination to be made under the facts of the case. *See Id.*, at 438, n. 4. Therefore, GE cannot rely simply on the existence of a written "common interest" contract; instead, GE must prove specific facts establishing a true common legal interest between GE and Motorola.

In addition, to be protected by the common interest doctrine, the communication must be shared with the attorney of the party sharing the common interest. *See In re Teleglobe Commun.*

9

*Corp*, 493 F.3d at 364 (citing Delaware state law). "Because the common-interest privilege is an exception to the [waiver of privilege] rule, which exists to prevent abuse, the privilege should not he used as a *post hoc* justification for a client's impermissible disclosures. The attorney-sharing requirement helps prevent abuse by ensuring that the common interest privilege only supplants the [waiver] rule when attorneys, not clients, decide to share information in order to coordinate legal strategies." *Id.* at 365.

    **B.**    **GE Waived Any Privilege When It Disclosed Documents and Other Information to Third-Parties.**

To the extent that the documents described in Section B of the Statement of Facts above are in fact privileged,[6] the privilege as to these documents was waived when GE disclosed the contents with third-parties, including Motorola. In an attempt to preserve privilege as to documents shared with Motorola, GE has invoked the common interest doctrine; however, GE cannot meet its burden to establish that GE and Motorola have a sufficiently common legal interest to be entitled to such protection. Any privilege otherwise associated with the materials shared by GE with any third-party, including Motorola, has been waived.

    **1.**    **GE Waived Privilege in the Due Diligence and Portfolio Assessment Documents When It Disclosed Documents to, and Received Documents from,**

As to the Due Diligence Documents and Portfolio Assessment Documents, the undisputed evidence,          establishes that these documents were disclosed to third-parties, including                  and thus any

---

[6] For a number of documents listed by GE in Exhibit C,          and thus has failed to establish that "the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate." *Pfizer Inc.*, 2004 WL 2323135, at *1. If GE cannot establish this foundation fact, then the Court need not even consider the applicability of the waiver and common interest rules.

privileged was waived.  *See* Exhibit C.

REDACTED

Thus, the attorney-client privilege and work product doctrines are inapplicable.  And even if some privilege did apply, GE waived it by providing information and documents                                        Agere respectfully requests that the Court order GE to produce complete, non-redacted copies of all relevant, responsive documents provided to or received from these consultants, and any similar consultants.

2.      **GE Waived Privilege in the Assertion Documents When It Shared These Documents with Third-Party Motorola.**

As explained in Section B of the Statement of Facts above, Motorola .

At the same time, GE and Motorola also entered in a '

Exhibit B,.

. Numerous oral and written communications between GE and Motorola have occurred pursuant to this Agreement, in which the parties discussed various aspects of the Patents-In-Suit and the related technology.  Communications between two business partners such as GE and

11

Motorola are not privileged, as they do not involve the communication of any legal advice.

Moreover, even if either GE or Motorola communicated to the other legal advice either party had

received from its own legal counsel, doing so resulted in a waiver of any privilege under well-

settled law. *Teleglobe*, 493 F.3d at 361. Thus, the Assertion Documents should be produced by

both GE and Motorola.

> **C.     Any Privileged Information Disclosed By GE to Motorola (or Vice Versa) is
> Not Protected Under the Common Interest Doctrine.**

The common interest exception to the waiver rule does not apply in this case. GE and

Motorola may not invoke the common interest doctrine because they share only a common

commercial interest, not a common legal interest.

> **1.     The                                  Establishes GE and Motorola Share
> Only a Commercial Interest.**

The                                  between GE and Motorola, and the

between the parties, establish that these two companies share a

purely commercial relationship.

REDACTED

in GE's efforts to license the Patent

Portfolio, whether through negotiations or litigation, is purely economic, not legal.

12

REDACTED

Second, Motorola is not a party to this litigation and no legal claims have been made against it. Rather, it has shared information with GE solely

As such, this present case falls squarely within the facts and holding of *Corning*, 223 F.R.D. 189. There, this Court held that documents disclosed by a litigant to a potential investor were not shielded from production by the common interest doctrine. The Court ruled that the litigant and its investor must "share identical legal interests" in order for the doctrine to apply. *Id.* at 190. Because "[the litigant's] disclosures to [its investor] were made not in an effort to formulate a joint defense but rather to persuade [the investor] to invest in [the litigant]," the Court declined to apply the common interest doctrine. *Id.* Here, GE's and Motorola's disclosures to each other were not made to formulate a joint defense – since Motorola is not a party to any litigation involving these patents –

Motorola and GE do not have "identical legal interests" and therefore the common interest doctrine is inapplicable.

**2.**                    **Does Not Establish a Common Legal Interest.**

Finally, the

13

stated above, the mere existence of a written agreement between GE and Motorola is insufficient to establish a common interest between the parties; instead the Court must look to the facts surrounding the relationship between GE and Motorola. *See Katz v. AT&T Corp.*, 191 F.R.D. 433, 438, n.4 (E.D.Pa. 2000). For the reasons explained above, the interest between GE and Motorola is purely economic. GE and Motorola's

REDACTED

GE and Motorola should not be permitted to withhold otherwise discoverable information

The common interest doctrine does not apply.

## CONCLUSION

GE has waived any otherwise applicable privilege covering the Due Diligence and Portfolio Assessment Documents when it disclosed these documents to, and received these documents from,                                                  Similarly, any potentially-applicable privilege covering the Assertion Documents was waived when GE and Motorola shared these documents with each other. The common interest document does not apply to oral and written communications between GE and Motorola because they do not share "identical legal interests."

Consequently, Agere respectfully requests that the Court order GE and third-party Motorola to:

1.  Produce complete and unredacted copies of those documents listed in Exhibit C to Agere's Opening Brief in Support of its Third Motion to Compel Discovery;

2.  Produce copies of all relevant, responsive documents that have been disclosed by GE

14

3. Produce copies of all relevant, responsive documents that have been disclosed by

   Motorola to GE that previously been withheld as privileged; and

4. Make available Gerry Haskett, Patrick Maurer, Richard Misiag, and Michael

   Stolarski to answer those deposition questions that these witnesses refused to answer

   on the basis of the common interest doctrine.

| Dated: August 15, 2008 | TOWNSEND AND TOWNSEND AND CREW LLP<br>David E. Sipiora<br>Ian L. Saffer<br>Chad E. King<br>1200 17th Street, Suite 2700<br>Denver, Colorado 80202<br>Telephone: (303) 571-4000<br>Facsimile: (303) 571-4321<br>Email: desipiora@townsend.com<br>Email: ilsaffer@townsend.com<br>Email: ceking@townsend.com |
|---|---|
| | YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>/s/ Jeffrey T. Castellano<br>Jeffrey T. Castellano (No. 4837)<br>jcastellano@ycst.com<br>Josy W. Ingersoll<br>John Shaw<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>Wilmington, DE 19899-0391<br>Telephone: 302-571-6600<br>Facsimile: 302-571-1253<br>Email: jingersoll@ycst.com<br>Email: jshaw@ycst.com |
| | **ATTORNEYS FOR AGERE SYSTEMS INC.** |

61396907 v4

# EXHIBIT A

**REDACTED**

# EXHIBIT B

**REDACTED**

# **EXHIBIT C**

**REDACTED**

# **<u>EXHIBIT D</u>**

**REDACTED**

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CIF LICENSING, LLC, d/b/a<br>GE LICENSING, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 07-170 |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| AGERE SYSTEMS INC., | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT AGERE'S FIRST SET OF REQUESTS
### FOR DOCUMENTS AND THINGS TO PLAINTIFF
### CIF LICENSING, LLC, D/B/A GE LICENSING (NOS. 1-69)

Agere Systems Inc. ("Agere"), pursuant to Rule 34 of the Federal Rules of Civil

Procedure, hereby requests that Plaintiff CIF Licensing, LLC, d/b/a GE Licensing ("GE")

respond in writing to these requests for production and produce the documents and things

identified below for inspection and copying by Defendant's attorneys at the offices of Townsend

and Townsend and Crew, LLP, 1200 17th Street, Suite 2700, Denver, CO 80202 within thirty

days of the date of receipt of these requests, or at such other time as may be agreed upon by

counsel.

Each request for production is addressed to Plaintiff CIF Licensing, LLC, d/b/a GE

Licensing, as defined in the accompanying discovery requests, and calls for production of

documents and things in the possession, custody or control of Plaintiff's attorneys, accountants,

agents, and other representatives.

### DEFINITIONS

Agere incorporates, to the extent applicable, the definitions set forth in its First Set of

Interrogatories to GE served herewith. The following additional definitions apply with respect to

each of these requests for production, and each of the terms defined below, when used in any request, shall have the meaning given herein unless otherwise indicated

(1)    The phrase "contact or communication" includes all instances in which information has been transmitted from one person or entity to another in the form of facts, ideas , inquiries, and otherwise, including but not limited to, telephone conversations, meetings, conferences, correspondence, other mailings, telexes, cables, telecopied transmissions, e-mails or other data transmissions of any type or nature, whether oral, electronic or written.

(2)    The term "document" is used in its customary broadest sense pursuant to Federal Rules of Civil Procedure 26 and 34 and includes, without limitation, the following items, whether handwritten, printed, recorded, filmed or produced by any other mechanical or electronic process, including computer tapes, disks, ROM, CD-ROM or any other data storage media (whether or not it is in machine-readable form), whether or not asserted to be privileged or immune from discovery and whether master or original or copy: agreements; communications, including intracompany communications and communications between individual corporate respondents; correspondence; cablegrams, radiograms, telegrams, telexes, and telecopies; notes and memoranda, summaries and minutes of conferences; summaries and records of personal conversations or interviews; books, manuals, publications, brochures and diaries; time logs, daily planners, and log books; laboratory and engineering reports and notebooks; specifications or bills of materials; charts; plans; sketches; diagrams and drawings; blueprints and other engineering drawings; foils, slides, negatives; promotional proposals; photographs; reports and/or summaries of investigations; opinions and reports of consultants; patents, design registrations, and applications for any of them; patent appraisals and patentability or validity searches and studies;

2

opinions of counsel; sales records, including purchase orders and invoices; reports and summaries of negotiations; pamphlets; catalogs and catalog sheets; advertisements; circulars; trade letters; press, publicity, trade and product releases; drafts of, or original, preliminary notes or marginal notations appearing on any document; other reports and records; computer tapes or cards, electronic mail and any other information-containing paper or other medium. A draft of a non-identical copy is a separate document within the meaning of this term

(3)    As used herein, the terms "Plaintiff", "GE", "you" or "your" shall mean and refer to CIF Licensing, LLC, d/b/a GE Licensing, as identified in the complaint in this action, its subsidiaries and affiliated companies, any predecessors or successors in interest thereof, any persons who are, or at any time to which these requests for productions of documents and things relate were, controlled by or otherwise acting on behalf of the foregoing, and the present or former officers, directors, partners, employees, agents, and representatives of any of the foregoing.

(4)    As used herein, the terms "Agere" or "Defendant" shall mean and refer to Agere Systems Inc., its subsidiaries and affiliated companies, any predecessors or successors in interest thereof, any persons who are, or at any time to which these requests for productions of documents and things relate were, controlled by or otherwise acting on behalf of the foregoing, and the present or former officers, directors, partners, employees, agents, and representatives of any of the foregoing.

(5)    "Business entity" means corporations, companies, businesses, partnerships, or proprietorships.

3

(6)     As used herein, the term "concerning" shall mean "referring to," "relating to," "containing," "embodying," "mentioning," "evidencing," "constituting" or "describing."

(7)     The term "Patents-in-Suit" refers to U.S. Patent Nos. 5,048,054; 5,446,758; 6,198,776; 5,428,641; and any continuations, continuations-in-part, divisionals, foreign counterparts, and/or other related patents or patent applications.

(8)     The term "Person" refers to both natural persons, living or deceased, to corporate or other business entities, whether or not in the employ of Plaintiff, and to legal and governmental entities or associations, and the acts and knowledge of a person are defined to include the acts and knowledge of a corporate or other business entity's, directors, officers, members, employees, representatives, agents, and attorneys.

1.     Wherever there is a request in these requests for production to "identify" or to state the identity of a natural person, please state, as to such person, the following information:

    a.     name;

    b.     current or last known residence address and telephone number;

    c.     present or last know business title and business address and telephone number;

    d.     business title and business address during the time period to which the interrogatory relates; and

    e.     whether there is or has ever been an employer/employee relationship, principal/agent relationship, or licensor/licensee or other relationship between such person and you and, it so, the nature of the relationship and the dates during which it existed.

4

2.    Wherever there is a request in these requests for production to "identify" or to state the identity of a person other than a natural person, please state the following concerning each such entity:

    a.    its full name;

    b.    its form of organization, to the extent known;

    c.    its address and principal place of business; and

    d.    whether there is or has ever been an employer/employee relationship, a principal/agent relationship or a licensor/licensee or other relationship between such person and you and, if so, the nature of the relationship and the dates during which it existed.

3.    Wherever there is a request in these requests for production to "identify" or to state the identity of a document, please state, as to each such document, the following information:

    a.    its date;

    b.    its title and/or all identifying numbers or other identifying or categorizing designations and, if not apparent in the title, a brief description of the general nature and subject matter;

    c.    the name, title, and address of each author, signatory or preparer;

    d.    the name, title, and address of each addressee and each other person receiving a copy thereof;

    e.    the date and manner of distribution and publication, if any;

    f.    the present location of each copy of the document and the name and address of its present custodian;

    g.    if the document is not an original, the name and address of the custodian of the original;

    h.    any other designation necessary to sufficiently identify the document so that a copy thereof may be ordered or obtained from the custodian thereof;

    i.    the contents of the document verbatim (or, in lieu thereof, a copy of the document); and

    j.    if privilege is claimed, the specific basis for the claim.

4.      Wherever there is a request in these requests for production to "identify" or to state the identity of a communication, please provide all the information requested in subparagraphs (a) through (j) of the preceding paragraph of these instructions and definitions if the communication was written.  In the alternative, the communication in written form may be produced.  If said communication was oral, please provide the following information with respect to said each such communication:

    a.    its date;

    b.    the name, title and address of each party to the communication;

    c.    the name, title, and address of each person hearing said communication or having personal knowledge thereof; and

    d.    where said communication took place.

If any document or communication that would have been responsive has been destroyed or is otherwise no longer in your possession, custody or control, please provide the following information:

    a.    describe the content of the document or communication, and state the location of all copies of it; and

    b.    state the date of, and identify the person responsible for its destruction, loss, transfer, or other action by which the document left your possession, custody or control.

5.      Wherever there is a request in these requests for production to "identify" of to state the identity of an act or event, please state, as to each such act or event, the following information:

    a)    a description of the act or event;

    b)    when it occurred;

    c)    where it occurred;

    d)    the identity of the person or persons performing said act (or, in case of an omission, the identity of the person or persons failing to act) or involved in said event;

    e)      the identity of all persons who have knowledge, information or belief about the act;

    f)      when the act, event or omission first became known; and

    g)      the circumstances and manner in which such knowledge was first obtained.

(10)    The term "Prior Art" means any apparatus, product, process, method, system, invention, publication, writing, disclosure, or thing that existed prior to the filing date of the Patents-in-Suit, or which describes any of the foregoing that existed prior to the filing date of the Patents-in-Suit, and which plausibly could be argued anticipates or renders obvious any invention claimed in the Patents-in-Suit pursuant to 35 U.S.C. §§ 102 or 103.

(11)    "Accused Device" means any activity, product, process, method, system, apparatus, or thing of Defendant that is accused of infringing the Patents-in-Suit.

(12)    The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request more inclusive.

(13)    The term "relate to" shall be construed as to include indicating, referring to, mentioning, reflecting, pertaining to, evidencing, involving, describing, discussing, supporting, or contradicting.

## CLAIMS OF PRIVILEGE

If you contend that you are entitled on the basis of any claim of privilege to withhold production of any documents requested herein, provide the following information with respect to each such document:

    (a)      the type of document, *i.e.,* whether a letter, memorandum, report etc., or the nature of the information;

    (b)      the title or other identifying designation, if any, of the document;

    (c)      the date of the document;

(d)    the subject matter of the document or information;

(e)    the identities of all persons who created, sent, received, or have ever had possession of the information or of either the original or any copy of the document;

(f)    the basis of or grounds for the claim of privilege;

(g)    the person on whose behalf the claim of privilege is being asserted; and

(h)    the requests for production to which the document or information is responsive.

## REQUESTS FOR PRODUCTION

**Request for Production No. 1:**

All documents and things the identification of which is sought in any Interrogatories of Agere served on GE.

**Request for Production No. 2:**

Corporate organizational charts and such other documents as are sufficient to identify the corporate relationship between GE and (a) the General Electric Company and (b) any other related corporate entity.

**Request for Production No. 3:**

All documents and things concerning any investigation or examination, or effort made by GE, or anyone acting on its behalf or at its direction, to investigate or examine any Accused Device made, used, sold, offered for sale and/or imported by Agere.

**Request for Production No. 4:**

All documents and things concerning any investigation or examination, or effort made by GE, or anyone acting on its behalf or at its direction, to investigate or examine any Accused Device made, used, sold, offered for sale and/or imported by any entity which GE alleges or believes may infringe the Patents-in-Suit.

8

**Request for Production No. 5:**

All documents and things concerning GE's contention that Agere has made, used, sold, offered for sale and/or imported any Accused Device that infringes the Patents-in-Suit, including but not limited to a sample of any of said Accused Device accused of infringement.

**Request for Production No. 6:**

All documents and things concerning GE's contention that any entity has made, used, sold, offered for sale and/or imported Accused Devices that infringe the Patents-in-Suit, including but not limited to a sample of any of said Accused Devices accused of infringement.

**Request for Production No. 7:**

All documents and things concerning the meaning of any limitation of each claim of the Patents-in-Suit that GE alleges Agere infringes.

**Request for Production No. 8:**

All documents and things concerning any publicity, marketing or distribution of any product or system made according to any of the claims of the Patents-in-Suit, including, but not limited to, all internal correspondence, advertising, press releases, product announcements, solicitations, articles, speech or lecture texts, sales presentations, product brochures and catalogs, whether or not adopted or used.

**Request for Production No. 9:**

All documents and things concerning any Prior Art searches concerning the Patents-in-Suit, or any invention related thereto, including the results thereof.

**Request for Production No. 10:**

All documents and things referring to, concerning or mentioning Agere.

9

**Request for Production No. 11:**

All documents and things concerning any sale, transfer, license or assignment of any ownership interest in the Patents-in-Suit.

**Request for Production No. 12:**

All documents and things concerning or relating to the prosecution of any United States or foreign patents or patent applications that disclose, describe or claim substantially the same invention as described in the Patents-in-Suit, including but not limited to all such patents and applications that claim or refer to a priority date based on any application that led to or served as a basis for a claim of priority to the Patents-in-Suit.

**Request for Production No. 13:**

All documents and things concerning the patent applications which eventually issued as the Patents-in-Suit, including all drafts of the patent applications and communications between any inventor, any employer of the inventors, and attorneys or any other persons regarding the applications and all documents and things considered or reviewed in the course of preparing and prosecuting the Patents-in-Suit.

**Request for Production No. 14:**

All foreign counterpart file histories of the Patents-in-Suit.

**Request for Production No. 15:**

All documents and things concerning the prosecution of foreign counterpart applications of the Patents-in-Suit, whether granted, pending, or abandoned, including search reports, examination reports, written opinions, examiner's reports, and official actions of all entities

10

which conduct Prior Art searches and all communications between the alleged inventors, their employer and/or their attorneys, including foreign associates, attorneys, or agents.

**Request for Production No. 16:**

All documents and things evidencing or concerning any alleged damages to which GE contends it is entitled for any alleged infringement of the Patents-in-Suit.

**Request for Production No. 17:**

All documents and things relating in any way to communications with any expert or consultant retained by GE in connection with this lawsuit.

**Request for Production No. 18:**

All documents and things relating in any way to the conception of the alleged inventions described or claimed in the Patents-in-Suit including but not limited to notes, notebooks, prototypes, models and blueprints regarding this subject.

**Request for Production No. 19:**

All documents and things concerning the development and/or reduction to practice of the alleged inventions described or claimed in the Patents-in-Suit, including documents and things concerning diligence from the time of conception until reduction to practice of the alleged inventions.

**Request for Production No. 20:**

All documents and things concerning any disclosure by the alleged inventors, assignees, employers of the inventors, or anyone else of the subject matter described or claimed in the Patents-in-Suit.

**Request for Production No. 21:**

All documents and things concerning the alleged inventions contained in the Patents-in-Suit, including but not limited to any documents obtained from Motorola, Inc.

**Request for Production No. 22:**

All documents and things that have ever been considered or evaluated with respect to the alleged novelty, patentability, validity, enforceability or scope of the subject matter described or claimed in the Patents-in-Suit.

**Request for Production No. 23:**

All Prior Art concerning the Patents-in-Suit whether or not the art was submitted to the United States Patent and Trademark Office during the prosecution of the Patents-in-Suit.

**Request for Production No. 24:**

All documents and things constituting or concerning opinions prepared for or received by GE or anyone else concerning the validity, invalidity, infringement, non-infringement, enforceability, or unenforceability of the Patents-in-Suit.

**Request for Production No. 25:**

All documents and things concerning the promotion, marketing or sale of products that embody all or part of the alleged inventions described in the Patents-in-Suit, including, but not limited to, all advertising, press releases, product announcements, solicitations, articles, speeches, sales presentations, product brochures, and catalogs, whether or not adopted or used.

**Request for Production No. 26:**

All documents and things that relate to any public use of products that embody any of the alleged inventions in the Patents-in-Suit.

**Request for Production No. 27:**

All documents and things that relate to any sales, offers for sale, price lists, price announcements, gifts, or donations, whether for experimental use or otherwise regarding commercial embodiment of the alleged inventions in the Patents-in-Suit prior to one year before the filing date of each of the applications for the Patents-in-Suit.

**Request for Production No. 28:**

All documents and things concerning any discussion, consideration or decision regarding whether to file or prosecute any patent application relating to the Patents-in-Suit, including but not limited to, any foreign patent applications.

**Request for Production No. 29:**

All documents and things concerning any communication between the alleged inventors named in the Patents-in-Suits and any attorney or agent involved in prosecuting any application that led to the Patents-in-Suit.

**Request for Production No. 30:**

All alleged inventors' notebooks, tests, search reports, memorandum, technical articles, manuals, publications, patents, and related documents concerning any alleged inventions in the Patents-in-Suit or any alleged embodiment of any claimed invention.

**Request for Production No. 31:**

All documents and things concerning GE's business plan or analysis, performance, business opportunities, market share, competition or sales, whether actual or projected, regarding the subject matter of the alleged inventions in the Patents-in-Suit.

**Request for Production No. 32:**

All profit and loss statements and balance sheets for GE for fiscal years 2000 to the present.

**Request for Production No. 33:**

Documents sufficient to show the cost related to research, development, manufacture, packaging, sale, promotion, marketing, approval, distribution, and shipping of any product made according to the Patents-in-Suit, including all documents that support or contradict GE's contentions as to such costs.

**Request for Production No. 34:**

Documents sufficient to show the sales, including but not limited to units sold by GE, price per unit and total revenue, which can be attributed to sales of the products that are covered by the alleged inventions in the Patents-in-Suit, including all documents that support or contradict GE's contentions.

**Request for Production No. 35:**

All documents that constitute or relate to GE's document retention policy.

**Request for Production No. 36:**

All documents concerning or constituting any patent license or patent related agreement to which GE is a party.

**Request for Production No. 37:**

All documents constituting or reflecting any established policy of GE to license or not to license any portion of its patented technology.

14

**Request for Production No. 38:**

All documents and things concerning any prior U.S. or foreign proceedings, whether in front of a court, administrative body, or arbitral tribunal, regarding any patent or patent application relating to the Patents-in-Suit or the subject matter disclosed therein, including without limitation:

> (1) all transcripts of depositions (with exhibits);
>
> (2) all discovery, including without limitation, interrogatories, requests for admission, document demands, expert witness discovery (including expert reports) and witness lists;
>
> (3) all responses to the discovery listed in part (2) above, including without limitation, all documents produced in response to the discovery;
>
> (4) all transcripts of hearing or other court proceedings;
>
> (5) all documents prepared for or by experts, including work papers;
>
> (6) all settlement offers, responses and agreements;
>
> (7) all court orders or recommendations;
>
> (8) all affidavits and declarations; and
>
> (9) all pleadings, motions, briefs and supporting documents.

**Request for Production No. 39:**

All documents and things concerning any assertion or contentions by any person that any claim of any of the Patents-in-Suit is invalid for any reason.

**Request for Production No. 40:**

All documents and things concerning any assertion or contentions by any person that the Patents-in-Suit is infringed or not infringed.

**Request for Production No. 41:**

All documents and things concerning any assertion or contentions by any person that the Patents-in-Suit is unenforceable for any reason.

**Request for Production No. 42:**

All documents and things concerning any assertion or contentions by any person that the Patents-in-Suit is limited by the doctrines of laches or equitable estoppel.

**Request for Production No. 43:**

All documents and things concerning any assertions or allegations by any person of patent misuse directed to GE that involve any patent assigned or licensed to GE.

**Request for Production No. 44:**

All documents and things concerning any defense or rebuttal to a claim or allegation of infringement asserted by any person regarding the Patents-in-Suit, including any such claim or allegation asserted in formal legal proceedings, negotiations, or in any other context.

**Request for Production No. 45:**

All documents and things concerning any opinions, whether legal or otherwise and whether written or oral, of patent attorneys or others, concerning the patentability of the subject matter claimed in the Patents-in-Suit or its foreign counterparts.

**Request for Production No. 46:**

All documents and things concerning any correspondence or other communication concerning the Patents-in-Suit or this lawsuit received or otherwise communicated by or to GE to or from third parties, including, but not limited to, GE's suppliers, customers, distributors, shareholders, financial analysts, security analysts, alleged inventors, or accountants.

**Request for Production No. 47:**

A sample of each product made or used by GE or its licensees or other authorized entity that you contend is covered by the Patents-in-Suit.

**Request for Production No. 48:**

All documents and things concerning any cease and desist letter(s) or other notice letter(s) drafted by or on behalf of GE regarding the Patents-in-Suit.

**Request for Production No. 49:**

GE's annual Federal Tax Returns from 2000 to the Present.

**Request for Production No. 50:**

All documents and things concerning the Patents-in-Suit.

**Request for Production No. 51:**

All documents and things concerning GE's contention that Agere's alleged infringement was willful.

**Request for Production No. 52:**

All documents concerning the first drawings, sketches, charts, or prototypes of the alleged inventions of the Patents-in-Suit.

17

**Request for Production No. 53:**

All documents that any alleged inventor of the Patents-in-Suit created, worked on, or contributed to concerning the subject matter of the Patents-in-Suit.

**Request for Production No. 54:**

All documents concerning any communication by any alleged inventor of the Patents-in-Suit to any other person concerning the Patents-in-Suit or the invention claimed therein.

**Request for Production No. 55:**

All documents concerning the best mode contemplated by the inventors for practicing the alleged invention of the Patents-in-Suit.

**Request for Production No. 56:**

All documents concerning the structure, function, and/or operation of the invention disclosed in the Patents-in-Suit.

**Request for Production No. 57:**

All documents concerning to validity or invalidity of the Patents-in-Suit.

**Request for Production No. 58:**

All documents concerning your contention that the Patents-in-Suit are valid and enforceable.

**Request for Production No. 59:**

All documents concerning GE's acquisition of the Patents-in-Suit, including but not limited to all documents evidencing the Patents-in-Suit's chain of title and the assignment of the Patents-in-Suit to GE.

18

**Request for Production No. 60:**

All documents concerning any actual or proposed license, assignment, sale or transfer of rights to the Patents-in-Suit, including but not limited to any documents referring or concerning:

(a)     GE's license, assignment, sale, or transfer of rights and nature and duration of the transferee's rights; and

(b)     any communications between GE and current or former transferees, including but not limited to communications addressing whether the claims of the Patents-in-Suit are valid and enforceable.

**Request for Production No. 61:**

All documents concerning (a) the first offer to sell and (b) the first sale of a commercial embodiment of the alleged invention of the Patents-in-Suit.

**Request for Production No. 62:**

All documents concerning any failed attempt or long-felt need to develop the alleged invention to the Patents-in-Suit.

**Request for Production No. 63:**

All documents concerning any commercial success of the alleged invention of the Patents-in-Suit, and all documents concerning the nexus (or lack of nexus) between any such commercial success and the merits of the alleged invention claimed in the Patents-in-Suit.

**Request for Production No. 64:**

All documents concerning any initial skepticism or subsequent disbelief or surprise regarding the alleged invention or the Patents-in-Suit.

19

**Request for Production No. 65:**

All documents identified in GE's Rule 26(a)(1) disclosures in this case.

**Request for Production No. 66:**

All documents that GE intends to offer into evidence, use for demonstrative purposes, or use for impeachment at any trial or hearing in this matter.

**Request for Production No. 67:**

All documents concerning any royalties received by GE for licensing the Patents-in-Suit, including documents bearing on the amount of any established royalty.

**Request for Production No. 68:**

All documents, not otherwise produced, that were relied upon or consulted in responding to Agere's first set of document requests and interrogatories.

**Request for Production No. 69:**

All documents concerning Motorola, Inc.

Dated:  July 27, 2006                    TOWNSEND AND TOWNSEND AND CREW, LLP


                                         _____
                                         David E. Sipiora
                                         Townsend and Townsend and Crew, LLP
                                         1200 17th Street, Suite 2700
                                         Denver, Colorado  80202
                                         Telephone:  (303) 571-4000
                                         Facsimile: (303) 571-4321
                                         Email:  desipiora@townsend.com

                                         Josy W. Ingersoll
                                         John Shaw
                                         Chad Stover
                                         The Brandywine Building
                                         1000 West Street, 17th Floor
                                         Wilmington, DE  19899-0391
                                         Telephone: 302-571-6600
                                         Facsimile: 302-571-1253
                                         Email: jingersoll@ycst.com
                                         Email: jshaw@ycst.com
                                         Email: cstover@ycst.com

                                         **ATTORNEYS FOR AGERE SYSTEMS INC.**

21

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of July 2007, a true and correct copy of the foregoing DEFENDANT AGERE'S FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS TO PLAINTIFF CIF LICENSING, LLC, D/B/A GE LICENSING (NOS. 1-69) was served by placing the same in the United States mail, postage prepaid and addressed to the following:

Richard L. Horowitz
Philip A. Rovner
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801
Tel: 302-984-6000
Fax: 302-658-1192
rhorowitz@potteranderson.com
provner@potteranderson.com
dmoore@potteranderson.com

Edwin H. Wheeler
McDermott Will & Emory LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Tel: 650-813-5000
Fax: 650-813-5100
mwheeler@mwe.com

Joel M. Freed
Brian E. Ferguson
D. Sean Trainor
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005-3096
jfreed@mwe.com
bferguson@mwe.com
dtrainor@mwe.com
Tel: 202-756-8327
Fax: 202-756-8087

61111104 v1

22

# EXHIBIT F

**REDACTED**

# **EXHIBIT G**

**REDACTED**

# EXHIBIT H

**REDACTED**

# EXHIBIT I

**REDACTED**

# EXHIBIT J

**REDACTED**

## CERTIFICATE OF SERVICE

I, Jeffrey T. Castellano, Esquire, hereby certify that on August 22, 2008, I caused to be electronically filed a copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> Philip A. Rovner, Esquire
> David E. Moore, Esquire
> Potter Anderson & Corroon LLP
> 1313 N. Market Street
> Wilmington, DE 19801

I further certify that on August 22, 2008, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following participants in the manner indicated:

### BY EMAIL

Richard L. Horowitz
Philip A. Rovner
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801
Tel: 302-984-6000
Fax: 302-658-1192
rhorowitz@potteranderson.com
provner@potteranderson.com
dmoore@potteranderson.com

Joel M. Freed
Brian E. Ferguson
D. Sean Trainor
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005-3096
jfreed@mwe.com
bferguson@mwe.com
dtrainor@mwe.com
Tel: 202-756-8327
Fax: 202-756-8087

Edwin H. Wheeler
McDermott Will & Emory LLP
3150 Porter Drive
Palo Alto, CA  94304-1212
Tel:  650-813-5000
Fax: 650-813-5100
mwheeler@mwe.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
jshaw@ycst.com
Jeffrey T. Castellano (No. 4837)
jcastellano@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware, 19801
302-571-6600
*Attorneys for Defendant Agere Systems Inc.*

DB02:5897644.1                                                    058626.1006