## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CIF LICENSING, LLC, d/b/a    )
GE LICENSING,               )
                            )
        Plaintiff,          )
                            )
                            )    C.A. No. 07-170 (JJF)
    v.                      )
                            )
                            )
AGERE SYSTEMS, INC.,        )
                            )
        Defendant           )

### MOTOROLA INC.'S RESPONSE TO AGERE'S MOTION TO COMPEL
### DISCOVERY FROM GE LICENSING AND MOTOROLA INC.

Motorola has reviewed a redacted version of CIF Licensing LLC's response to

Agere's Motion to Compel Discovery from GE Licensing and Motorola. A copy of CIF

Licensing LLC's redacted brief in response to Agere's Motion to Compel is attached as

Exhibit A hereto. Motorola agrees with and fully adopts the positions set forth in the

brief filed by CIF Licensing LLC as its response to Agere's Motion to Compel.

For the reasons set forth in CIF Licensing LLC's Response to Agere's Motion to



FILED

SEP - 3 2008
by fed Ex
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Compel, Motorola respectfully requests that this Court deny Agere's Motion to Compel

further discovery from GE Licensing and Motorola, Inc.

Dated: September 2, 2008

Respectfully submitted,

Michael Stolarski
Howrey LLP
321 North Clark Street
Chicago, Illinois 60610
(312) 846-5644
stolarskim@howrey.com

Counsel for Motorola Inc.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I, Michael Stolarski, hereby certify that on September 2, 2008, the within

document was filed with the Clerk of the Court using Federal Express; that the document

was served on the following parties as indicated:

**BY FEDERAL EXPRESS AND E-MAIL**

Jeffrey T. Castellano, Esq.
Josy W. Ingersoll, Esq.
John W. Shaw, Esq.
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
jcastellano@ycst.com
jingersoll@ycst.com
jshaw@ycst.com

Philip A. Rovner, Esq.
Richard L. Horwitz, Esq.
David E. Moore, Esq.
Potter Anderson & Corroon, LLP
1313 N. Market St., Hercules Plaza, 6th Flr.
Wilmington, DE 19899-0951
provner@potteranderson.com
rhorwitz@potteranderson.com
dmoore@potteranderson.com

David E. Sipiora, Esq.
Ian L. Saffer, Esq.
Chad E. King, Esq.
Ryan D. Phillips, Esq.
Townsend and Townsend and Crew LLP
1200 17th Street, Suite 2700
Denver,CO 80202
desipiora@townsend.com
ilsaffer@townsend.com
ceking@townsend.com
rdphillips@townsend.com

Joel M. Freed, Esq.
Brian E. Ferguson, Esq.
D. Sean Trainor, Esq.
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington,DC 20005-3096
jfreed@mwe.com
bferguson@mwe.com
dtrainor@mwe.com

Edwin H. Wheeler, Esq.
McDermott Will & Emory LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
mwheeler@mwe.com

/s/

Michael Stolarski
HOWREY LLP
321 North Clark Street
Chicago, IL 60054-2402
(312) 595-1239
stolarskim@howrey.com

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CIF LICENSING, LLC, d/b/a<br>GE LICENSING | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AGERE SYSTEMS INC., | ) |
| | ) |
| Defendant. | ) |

C.A. No. 07-170 (JJF)

**CONFIDENTIAL – FILED UNDER
SEAL PURSUANT TO PROTECTIVE
ORDER**

**CIF LICENSING LLC'S RESPONSE TO AGERE'S MOTION TO COMPEL
DISCOVERY FROM GE LICENSING AND MOTOROLA, INC.**

## TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................... 1

II.     STATEMENT OF FACTS ....................................................................................... 1

III.    ARGUMENT............................................................................................................ 2

   A.   Legal Standards.................................................................................................. 2

        1. Waiver of the Attorney-Client and Work-Product Privileges ......................... 3

        2. The Common Interest Doctrine ...................................................................... 5

   B.   GE Licensing Did Not Waive Privilege By Communicating With Hired Consultants...... 5

        1. Financial Consultants: Duff & Phelps and Standard & Poor's....................... 6

        2. Technical Consultant: Motorola .................................................................... 7

   C.   The Requested Information Falls Within The Common Interest Doctrine........................ 8

        1. GE Licensing and Motorola Share a Common Legal Interest....................... 8

        2. Agere Has Not Rebutted GE Licensing's and Motorola's Common Interest ............... 9

        3. The Communications at Issue Were Designed to Further GE Licensing and Motorola's
           Shared Legal Interest in the Validity, Enforceability, and Enforcement of the
           Asserted Patents.................................................................................................. 10

               a.      Documents .............................................................................................. 11

               b.      Other Communications........................................................................... 11

   D.   Agere Has Not Demonstrated The Relevance Of Or Need For The Requested Information
        .............................................................................................................................. 14

IV.   CONCLUSION........................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Baxter Int'l, Inc. v. Rhone-Poulenc Rorer, Inc.,*
  C.A. No. 19328, 2004 Del. Ch. LEXIS 134 (Sept. 2, 2004) ......................................... 6

*Constar Int'l, Inc. v. Continental Pet Techs, Inc.,*
  No. 99-234-JJF, 2003 U.S. Dist. LEXIS 21132 (D.Del. Nov. 19, 2003) ...................... 9

*Corning Inc. v. SRU Biosystems, LLC,*
  223 F.R.D. 189 (D.Del. 2004) .................................................................................... 10

*Duplan Corp.  v. Deering Milliken, Inc.,*
  397 F. Supp. 1146 (D.S.C. 1974)................................................................................... 5

*GAF Corp. v. Eastman Kodak Co.,*
  85 F.R.D. 46 (S.D.N.Y. 1979) ...................................................................................... 3

*Hewlett-Packard Co.  v. Bausch & Lomb, Inc.,*
  115 F.R.D. 308 (N.D. Cal. 1987).................................................................................. 10

*In re FTC,* Misc. No. M18-304 (RJW),
  2001 U.S. Dist. LEXIS 5059 (S.D.N.Y April 19, 2001) ................................................ 5

*In re Bieter Co.,*
  16 F.3d 929 (8th Cir. 1994) ....................................................................................... 4, 6

*In re Regents of Univ. of California,*
  101 F.3d 1386 (Fed. Cir. 1996) .................................................................................... 3

*In re Spalding Sports Worldwide, Inc.,*
  203 F.3d 800 (Fed Cir. 2000) ................................................................................... 2, 3

*In re Teleglobe Communs. Corp.,*
  493 F.3d 345 (3d Cir. 2007) ...................................................................................... 5, 8

*Interfaith Housing Delaware, Inc. v. The Town of Georgetown,*
  841 F. Supp. 1393 (D. Del. 1994)................................................................................. 3

*Katz  v. AT&T Corp.,*
  191 F.R.D. 433 (E.D. Pa. 2000)............................................................................... 8-10

*Lugosch v. Congel,*
  219 F.R.D. 220 (N.D.N.Y. 2003) .............................................................................. 3, 6

*Midwest Indus., Inv. v. Karavan Trailers, Inc.*
  175 F.3d 1356 (Fed. Cir. 1999) ................................................................................... 2

## I.    INTRODUCTION

Plaintiff CIF Licensing, LLC ("GE Licensing") has redacted information and withheld

deposition testimony in very limited circumstances, and only within the proper confines of

attorney-client privilege and the work product doctrine. Defendant Agere Systems, Inc.

("Agere") asks this Court to order GE Licensing and third party Motorola, Inc. ("Motorola") to

disclose GE Licensing's and/or Motorola's privileged attorney-client communications and work

product based on flawed and unsupportable theories of waiver and lack of common interest.

Neither the facts, nor the law, nor the policies underlying the attorney-client privilege and work

product doctrine support Agere's request. GE Licensing has in no way waived privilege by

discussing privileged information with third-party consultants hired to provide information

required to conduct legal analyses or with Motorola, with whom GE Licensing has both a

consultant relationship and a community of interest. Agere's motion is also untimely as

discovery has closed and Agere has long known of GE Licensing's assertion of a common

interest privilege with Motorola—since at least the April 25, 2008 deposition of Motorola

witness Gerry Haskett. Finally, Agere has not specifically identified how the requested

information and/or testimony is even relevant to the present dispute, much less made a case for

waiver or invasion of attorney-client privilege and work product.

## II.    STATEMENT OF FACTS

GE Licensing commenced this action on March 23, 2007, asserting infringement by

several of Agere's modem products of U.S. Patent Nos. 5,048,054, 5,428,641, 5,446,758, and

6,198,776 (the "Asserted Patents").

In 2003, General Electric ("GE") and Motorola entered into negotiations for a strategic

alliance related to, inter alia, certain of Motorola's patents. To that end, they executed a Non-

Disclosure Agreement on July 10, 2003. Exhibit A. Some months later, in a letter dated

- 1 -

February 6, 2004, GE set forth the circumstances under which it would purchase patents from Motorola. Exhibit B. On June 28, 2004, the parties executed a Patent Purchase Agreement and accompanying Service Agreement. Exhibits C and D, respectively. Under the former, GE purchased Motorola patents (including the patents-in-suit), but preexisting licenses to the patents-in-suit remained with Motorola. Motorola also received a license to the purchased patents and the parties agreed to share future licensing royalties. Under the ongoing Service Agreement, Motorola has provided and continues to provide GE Licensing with technical expertise related to the subject matter of the patents-in-suit for the purpose of asserting these patents against third parties.

Agere, GE Licensing, and Motorola first discussed the common interest privilege between Motorola and GE Licensing with more than two months left in discovery during the deposition of Gerry Haskett on April 25, 2008 (Motorola's 30(b)(6) witness). *See, e.g.*, Exhibit E, Haskett Dep. Tr., 32:4-8, April 25, 2008. Agere explored, in depth, the relationship between GE Licensing and Motorola as it relates to a common interest. *Id.* at 32-47. The privilege issue was again raised during the deposition of Richard Misiag (GE Licensing's 30(b)(6) witness) on May 29, 2008. Again, Agere engaged in a detailed discussion of the common interest. Agere's motion was filed on August 15, 2008, almost four months after Mr. Haskett's deposition, and more than two months after the scheduled end of discovery, June 1, 2008.

## III.    ARGUMENT

### A.    Legal Standards

Federal common law governs the immediate dispute. Fed. R. Evid. 501; *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803 (Fed. Cir. 2000) (quoting *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) (*en banc* in relevant part)) (finding that federal common law governs "whether the attorney-client privilege applies to an invention

- 2 -

record prepared and submitted to house counsel relating to a litigated patent"); *see also*

*Net2Phone, Inc. v. eBay, Inc.*, Civil Action 06-2469 (KSH), 2008 U.S. Dist. LEXIS 50451, at

\*17 (D.N.J. June 25, 2008) (applying federal common law). Regardless of whether federal

common law or Delaware state law applies, however, the outcome is the same: Agere's motion

fails.[1]

### 1.    Waiver of the Attorney-Client and Work-Product Privileges

The attorney-client privilege protects "the giving of information to the lawyer to enable

him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 396

(1981); *see also In re Spalding*, 203 F.3d at 805-806. Moreover, the communication need not

have occurred during ongoing litigation. *In re Regents of Univ. of California*, 101 F.3d 1386,

1390-91 (Fed. Cir. 1996).

It is also well-established that disclosing attorney-client communications and attorney

work product to hired consultants does not waive protection as to the disclosed information

where the disclosure occurs with the understanding that the information will remain confidential

and for the purpose of rendering legal advice.

> [A] disclosure to a third party does not waive the privilege unless such disclosure
> is inconsistent with the "maintenance of secrecy" and if the disclosure
> "substantially increases the possibility of an opposing party obtaining the
> information." For example, an exemption from the waiver accrues if such
> communications are shared with an agent of the attorney, which may include
> investigators and accountants retained to assist the attorney in rendering legal
> advice and instruction.

*Lugosch v. Congel*, 219 F.R.D. 220, 235 (N.D.N.Y. 2003) (quoting *GAF Corp. v. Eastman*

---

[1] The primary difference stems from Delaware Uniform Rule of Evidence 502(b), which "differs from the federal rule of attorney-client privilege" in that it "departs from efforts in other jurisdictions to narrow the scope of the privilege." *Interfaith Housing Delaware, Inc. v. The Town of Georgetown*, 841 F. Supp. 1393, 1397 (D. Del 1994) (Schwartz, J.) (citing *Ramada Inns, Inc. v. Dow Jones & Co.*, 523 A.2d 968, 971 (Del. Super. Ct. 1986)).

*Kodak Co.*, 85 F.R.D. 46, 51-52 (S.D.N.Y. 1979)) (internal citations omitted).  This applies

equally with respect to the work product immunity.  "'Where a party faces the choice of whether

to engage in a particular course of conduct virtually certain to result in litigation and prepares

documents analyzing whether to engage in the conduct based on its assessment of the likely

result of the anticipated litigation, [it should be] concluded that the preparatory documents

should receive production under Rule 26(b)(3).'"  *Id.* at 240 (quoting *United States v. Adlman*,

134 F.3d 1194, 1196 (2d Cir. 1998)) (internal citations omitted).  Furthermore, the immunity is

not erased simply because the document at issue assists in making a business decision.  *Id.*

> This maxim makes sound sense considering how complex litigation can be and
> the undeniable need for others to assist in developing all that is necessary to
> prosecute or defend a lawsuit.  Obviously, impressions and strategies are not
> always created in a vacuum, but, rather are generated in cogent discourse with
> others, including the clients and agents.  Further, *the exchange of such documents*
> *and ideas with those whose expertise and knowledge of certain facts can help the*
> *attorney in the assessment of any aspect of the litigation does not invoke a waiver*
> *of the doctrine.*

*Id.* (emphasis added).  This accords with the policy underlying the privilege, as explained by the

court in *In re Bieter Co.*, 16 F.3d 929 (8th Cir. 1994):

> "The privilege recognizes that sound legal advice or advocacy serves public ends
> and that such advice or advocacy depends upon the lawyer being fully informed
> by the client. . . .  [T]here undoubtedly are situations . . . in which too narrow a
> definition of "representative of the client" will lead to attorneys not being able to
> confer confidentially with nonemployees who, due to their relationship to the
> client, possess the very sort of information that the privilege envisions flowing
> most freely.  "It is only natural that," just as "middle-level -- and indeed lower-
> level -- employees . . . would have the relevant information needed by corporate
> counsel if he is adequately to advise the client with respect to . . . actual or
> potential difficulties," so too would nonemployees who possess a "significant
> relationship to the [client] and the [client]'s involvement in the transaction that is
> the subject of legal advice."

*Id.* at 937-38 (quoting *Upjohn*, 449 U.S. at 389, 391 and John Sexton, *A Post*-Upjohn

*Consideration of the Corporate Attorney-Client Privilege*, 57 N.Y.U. L. Rev. 443, 487 (1982))

(internal citations omitted).

### 2.    The Common Interest Doctrine

The common interest doctrine is an extension of the attorney-client privilege and work product doctrine. To assert the common interest doctrine with respect to otherwise privileged material disclosed to a third party, a party must show:

1. the parties to the communication shared a common legal—not solely commercial—interest, and
2. the communication at issue "was designed to further the shared legal interest."

*Net2Phone*, 2008 U.S. Dist. LEXIS 50451, *23-*25. "***The fact that there may be an overlap of a commercial and a legal interest for a third party does not negate the effect of the legal interest in establishing a community of interest.***" *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1172 (D.S.C. 1974) (emphasis added); *see also In re FTC*, Misc. No. M18-304 (RJW), 2001 U.S. Dist. LEXIS 5059, at *9 (S.D.N.Y. April 19, 2001) (it is enough that the parties "demonstrate actual cooperation toward a common legal goal").[2] Furthermore, litigation need not be ongoing for the common interest doctrine to apply. *In re FTC*, 2001 U.S. Dist. LEXIS 5059, at *9.[3]

### B.    GE Licensing Did Not Waive Privilege By Communicating With Hired Consultants

"A communication made in furtherance of the rendition of professional legal services to the client is a confidential communication unless the client *intends* the information to be disclosed to non-confidential persons." *Baxter Int'l, Inc. v. Rhone-Poulenc Rorer, Inc.*, C.A. No.

---

[2] "The Delaware courts seem not to have taken a position on whether the common legal interest must be identical. . . . [I]t is sufficient to recognize that members of the community of interest must share at least a substantially similar legal interest." *In re Teleglobe Communs. Corp.*, 493 F.3d 345, 365 (3d Cir. 2007) (comparing Restatement (Third) Of The Law Governing Lawyers § 76 cmt. e to *Duplan*).

[3] The comments to D.R.E. 502(b) also note that the common interest doctrine (D.R.E. 502(b)(3)) "applies even if no litigation is actually pending."

19328, 2004 Del. Ch. LEXIS 134, at *11 (Sept. 2, 2004). This is particularly true "when disclosure to a third party is necessary for the client to obtain informed legal advice." *Id.* at *12.

### 1.    Financial Consultants: Duff & Phelps and Standard & Poor's

Agere alleges that disclosures to Duff & Phelps and Standard & Poor's waived GE Licensing's attorney-client privilege and work product protection because Duff & Phelps and Standard & Poor's were third parties who did not directly provide legal advice to GE Licensing. Agere Br. at 10-11. No such waiver occurred. The disclosures fall squarely within the case law cited in Section III.A.1 *supra*, including *Lugosch*, *Bieter*, and *Upjohn.*

Duff & Phelps and Standard & Poor's were hired by GE to provide due diligence analysis with respect to the purchased patents (including the patents-in-suit), the then-pending Patent Purchase Agreement and, subsequently, asserting the purchased patents. Exhibit F at

GE0037317 ███████████████████████████). Standard and Poor's

services included: ████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████ Agere questioned GE

Licensing's 30(b)(6) witness, Richard Misiag, on this very document and asked numerous questions about these very clauses. Exhibit G, Misiag Dep. Tr., 213:5-221:14, May 29, 2008. At no time before filing this motion (and certainly not before discovery closed) did Agere seek additional information or ever claim that Mr. Misiag was insufficient as a witness.

Furthermore, each consultant was under a strict obligation to maintain GE's information confidential. *See, e.g.*, Exhibit F at GE0037323-24. At no time does Agere allege that Duff & Phelps or Standard & Poor's failed to maintain GE's privileged information confidential. There is simply no basis for waiver as to these consultants.

### 2.    Technical Consultant: Motorola

Agere also alleges that disclosures to Motorola waived privilege and work product protection because Motorola is a third party who has not and does not directly provide legal advice to GE Licensing. Agere Br. at 11. Again, Agere oversimplifies the matter and comes out on the wrong side of the analysis.

As part of the consideration in the Patent Purchase Agreement, Motorola was hired to provide ongoing technical information necessary for asserting the patents purchased from Motorola. *See, e.g.*, Exhibit E, Haskett Dep. Tr., 11:4-21 ("The – the patents in question that were sold to G.E., you know in the patent licensing arena, you need people with knowledge of the technical domain that the patents are in. And Motorola has such technical experts and G.E. doesn't."). GE Licensing could just have easily consulted technicians totally unaffiliated with the purchased patents without harming their privilege (assuming appropriate measures were taken to preserve confidentiality). Such an arrangement would have been similar to a party hiring a non-testifying technical expert. Regardless, Motorola's connection to the purchased patents in no way alters the dynamic of its consulting role vis-à-vis GE Licensing.

GE Licensing and Motorola have also taken the appropriate steps to ensure that privileged and confidential information was protected. Throughout their developing relationship, GE and Motorola executed numerous agreements which protected and maintained the confidentiality of each entity's information. These agreements included a Non-Disclosure Agreement dated July 10, 2003, a letter dated February 6, 2004, the Patent Purchase Agreement

dated June 28, 2004, and the Common Interest Agreement dated April 18, 2008. Exhibits A-D.
In each, the parties indicated their intention that the information shared between them remain
confidential. *Id.*

## C.   The Requested Information Falls Within The Common Interest Doctrine

### 1.   GE Licensing and Motorola Share a Common Legal Interest

Agere correctly notes that "the inquiry as to whether a common legal interest exists is a
case specific determination to be made on the facts of the case." Agere Br. at 9 (citing *Katz v.
AT&T Corp.*, 191 F.R.D. 433, 438 n.4 (E.D. Pa. 2000)). Contrary to Agere's arguments,
however, the facts at issue in this particular dispute show that GE Licensing and Motorola have
shared a common legal interest in the maintenance and assertion of the purchased patents since at
least June of 2004.[4]

From the outset of negotiations, the Motorola and GE anticipated an ongoing, mutually-
beneficial, and cooperative relationship focused, in part, on maximizing Motorola's intellectual
property assets and GE's licensing expertise. *See, e.g.*, Exhibit H (MOT005132-47). The patent
sales agreement and the relationship forged between Motorola and GE were intended, in part, to
address Motorola's responsibility in this regard with its existing licensees under the modem
patents.

The Patent Purchase Agreement (Exhibit C) between GE Capital Corp. (GECC) and
Motorola does not merely transfer ownership of patents. Rather, it establishes the shared legal
goal of maintaining and asserting the purchased patents, and sets forth specific, mutual

---

[4]  Agere's reliance on *In re Teleglobe* is misguided.  The portions relied on by Agere are dicta;
the questions at issue involved clients with the same attorneys (the co-client privilege). *See In re
Teleglobe*, 493 F.3d 345, 363 n.18 (3rd Cir. 2007) ("Because the issues in our case involve
clients of the same attorneys, not clients with separate counsel, which would call for a
community-of-interest analysis, the rest of this section may seem surplusage.").

obligations for accomplishing this shared legal goal. Exhibit C. For example, under Section 6,

titled "Patent Exploitation," Motorola is obligated to "support GECC in its efforts to exploit the

Patents," including by providing services to GECC. Exhibit C, § 6. Motorola is also obligated

to "cooperate with GECC and its representatives in connection with GECC's activities related to

the enforcement of the Patents." Exhibit C, § 6.4(d). Moreover, as established in section 6.5,

Motorola maintains an ongoing potential ownership interest in the purchased patents should

GECC decline to maintain them or to pursue enforcement actions. Exhibit C, §§ 6.4(b), 6.5.

GECC's obligations also reflect Motorola's ongoing legal interest in the validity and

enforcement of the purchased patents. Under section 6.4(d):

> GECC agrees to consult with Motorola, including consulting with Motorola with
> respect to potential targets and target classes, prior to commencing any
> enforcement action involving any Patents and agrees (unless GECC's rights
> reasonably would be prejudiced) to provide Motorola with reasonable notice prior
> to the commencement of any formal legal action or proceeding, including the
> filing of the complaint.

Exhibit C, § 6.4(d).

### 2. Agere Has Not Rebutted GE Licensing's and Motorola's Common Interest

Agere's contention that GE Licensing and Motorola cannot share a common legal interest

because Motorola is merely a nonexclusive licensee of the purchased patents is incorrect. Agere

Br. at 3, and 12-13 (citing the Patent Purchase Agreement, § 6.4(d)). There is nothing inherent

about the owner-licensee relationship that precludes a common interest. *Katz*, 191 F.R.D. at 438

n.4 ("a licensee and a patentee may have the requisite identity of interests"); *see also Constar

Int'l, Inc. v. Continental Pet Techs, Inc.*, No. 99-234-JJF, 2003 U.S. Dist. LEXIS 21132, at *4

(D. Del. Nov. 19, 2003) (acknowledging the parties' "common legal interest in developing the

patents to obtain the greatest protection and in exploiting the patents").

Agere also argues that there is no common interest because Motorola is not a party to this litigation. Agere Br. at 13. The only support Agere offers for its proposition, however, is that the parties must share a common legal interest, rather than a mere business interest. *Id.* (citing *Corning Inc. v. SRU Biosystems, LLC*, 223 F.R.D. 189 (D. Del. 2004)).[5] The requisite legal interest, not merely a business interest exists here, as explained above. In any event, Agere's citation does not change the fact that the common interest doctrine is not limited to parties engaged in ongoing litigation. "[T]he common interest doctrine protects privileged and work-product materials even if . . . the parties do not ultimately unite in a common enterprise." *Katz*, 191 F.R.D. at 437 (citing *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 310 (N.D. Cal. 1987)).

### 3.    The Communications at Issue Were Designed to Further GE Licensing and Motorola's Shared Legal Interest in the Validity, Enforceability, and Enforcement of the Asserted Patents

The communications between GE Licensing and Motorola at issue were designed to advance the shared legal goal of maintaining and enforcing the Asserted Patents, and were exchanged with the understanding that they would remain privileged and confidential. Furthermore, the documents cited by Agere all fall directly within the consultant relationship described above.

---

[5] *Corning* is also distinguishable from the present debate. In *Corning*, the Court held that a common legal interest did not exist between the defendant (SRU) and its past potential third-party acquirers (BD). Finding that the parties' relationship had been limited to investment negotiations, the Court concluded that "SRU's disclosures to BD were made not in an effort to formulate a joint defense, but rather to persuade BD to invest in SRU." *Corning*, 223 F.R.D. at 189. In contrast, the communications at issue between GE Licensing and Motorola arose after the Patent Purchase Agreement was executed, thereby formally aligning the parties' legal interests, vis-à-vis the purchased patents, and showing the communications at issue to be in furtherance of those shared legal interests.

### a.    Documents

The "Assertion Documents" identified by Agere were shared with Motorola after the

Patent Purchase Agreement had been executed (June 28, 2004):[6]

| Document | Date of Creation |
|---|---|
| GE0039062-64 | 03/04/2005 |
| GE0060839-87 | 09/30/2004 |
| GE0062380 | 09/08/2006 |

Each of the redacted portions at issue address the validity, enforceability, and/or enforcement

strategy of the Asserted Patents and was communicated to Motorola in furtherance of those

common goals.  GE Licensing would be happy to provide these documents in unredacted form

for *in camera* review.

### b.    Other Communications

Agere's thread-bare assertions of waiver with respect to the communications between GE

Licensing and Motorola identified during depositions are equally baseless.  First, all of the

identified communications occurred after the Patent Purchase Agreement was executed and,

therefore, after the common legal interest was firmly established and formalized.  Exhibit E,

Haskett Dep. Tr., 21:12-21; Exhibit I, Maurer Dep. Tr., 47:9-48:12, June 17, 2008; Exhibit G,

Misiag Dep. Tr., 117:7-13, May 29, 2008; Exhibit J, Stolarski Dep. Tr., 110:3-11:3, June 18,

2008.  With respect to Mr. Stolarski's testimony, the identified communication took place two

months after GE Licensing and Motorola executed their Common Interest Agreement, which

further outlined the parties' existing status.  Exhibit J, Stolarski Dep. Tr., 110:3-11:3; *see also*

---

[6]  GE Licensing submits  that the common interest between GE and Motorola arose  prior to the
execution of the Patent Purchase Agreement.  However, that question need not be resolved in
this motion, as all withheld documents and testimony relating to Motorola at issue postdate the
Agreement.

Exhibit K (Common Interest Agreement acknowledging existence of oral agreement memorializing the parties' common interest).

Second, Agere's characterization of the GE Licensing and Motorola witnesses' testimony is inaccurate—both with respect to its contents and with respect to its relevance to this lawsuit—and smacks of a desperate effort to find evidence to support its sinking license defense.

With respect to Mr. Haskett, Agere writes "Mr. Haskett was instructed by counsel not to answer *numerous questions* about the substance of his communications with GE. . . ." Agere Br. at 6 (citing Haskett Dep. Tr. 21:22-24:4) (emphasis added). The only question within the cited testimony Mr. Haskett was instructed not to answer, however, was the identity of a party against whom GE was considering prospective litigation. Exhibit E, Haskett Dep. Tr., 23:16-24:4. GE Licensing's prospective enforcement strategy constitutes attorney work product, and communication of it to Motorola is squarely within the common legal interest of the two companies in enforcement of the patents, as provided in the Patent Purchase Agreement. Moreover, Agere has failed to identify any relevance the identity of a potential, prospective enforcement target would have to the present dispute. Instead, Agere makes the blanket—unsupported—statement that "[o]n information and belief, Mr. Haskett discussed with GE issues relating to the scope and coverage of the Patents-In-Suit, and possibly various defenses to infringement. . . ." Agere Br. at 6. Agere chose not to ask further questions and should not be given the opportunity to do so now.

With respect to Mr. Maurer, the identified testimony reveals that Motorola counsel asked Agere's counsel to clarify whether attorneys were present at the meeting in question before questioning the witness as to the purpose of the meeting. Exhibit I, Maurer Dep. Tr., 48:16-49:21. Agere's counsel declined to do so. Exhibit I, Maurer Dep. Tr., 49:22-24. The deposition

continued and Mr. Maurer went on to answer related questions about the meeting in question. Exhibit I, Maurer Dep. Tr., 50:1-51:11. Notably, Agere has not identified what relevance the purpose of the meeting has to this dispute.

    With respect to Mr. Misiag, Agere again makes the unsubstantiated statement that GE Licensing's witness "was instructed by counsel not to answer numerous questions about the substance of his communications with Motorola on the basis of an alleged 'common interest' privilege." Agere Br. at 6-7. Closer inspection of Mr. Misiag's deposition transcript reveals the disingenuous nature of Agere's claim. In the cited testimony, at the direction of counsel, Mr. Misiag declined to testify about the contents of a communication involving GE Licensing's counsel and Motorola employees providing support services to GE Licensing's in-house counsel under the Service Agreement. Exhibit G, Misiag Dep. Tr., 117:18-118:19. Any communication from Motorola to GE as to why Motorola had not brought a lawsuit against Agere under the patents would include Motorola attorney work product and privileged Motorola attorney-client communications. Any communications between GE and Motorola on this issue, made in the context of cooperation in assertion of the patents against Agere, would be within the common legal interest of the two companies. At any rate, as noted by Mr. Connelly, the answer to Agere's question had already been substantively provided by Mr. Misiag.

    With respect to Mr. Stolarski, Agere's claims should be rejected. The deposition testimony Agere identifies in its brief relate to the larger question "why Motorola did not sue Agere for infringement of . . . [certain of its] analog modem patents." Exhibit J, Stolarski Dep. Tr., 103:14-15. As the surrounding testimony demonstrates, Mr. Stolarski has already provided ample testimony on this subject. *See* Exhibit J, Stolarski Dep. Tr., 103:13-110:2. The only question Agere identifies Mr. Stolarski as having declined to answer on the basis of privilege

- 13 -

asked what Mr. Stolarski had discussed with GE Licensing's outside counsel, in preparing for

Mr. Stolarski's deposition, with regard to "Agere assertions against Motorola and Motorola

assertions against Agere in 2002 [and] 2003." Exhibit J, Stolarski Dep. Tr., 110:3-111:17.

Moreover, Mr. Stolarski's deposition was held on June 18, 2008, long after Agere had been

made aware of GE Licensing's and Motorola's position that the parties were protected under the

common interest doctrine.

### D.    Agere Has Not Demonstrated The Relevance Of Or Need For The Requested Information

At no point has Agere demonstrated the requisite need for the redacted information. "As

codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, documents prepared in

anticipation of litigation or for trial may only be obtained by the adverse party 'upon a showing

that the party seeking discovery has substantial need of the materials in the preparation of his

case and that he is unable without undue hardship to obtain the substantial equivalent of the

materials by other means.'" *Union Carbide Corp. v. Dow Chem. Co.*, 619 F. Supp. 1036, 1050

(D. Del. 1985). In many cases, the information Agere requests through further deposition is

either wholly unresponsive or has already been provided.[7]

### IV.    CONCLUSION

For the reasons set forth above, Agere's motion should be denied.

WDC99 1608727-5.037743.0051

---

[7] Agere has refused to produced any communications between Agere and LSI, Inc. related to Agere's license with Altocom or this litation that ocurred prior to LSI's purchase of Agere, during which time this litigation was pending. Agere's refusal is based entirely on grounds of relevance.

- 14 -