# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CIF LICENSING, LLC, d/b/a        :
GE LICENSING,                 :
                                    :
            Plaintiff,         :
                                    :   C.A. No. 07-170-LPS
          v.                :
                                    :
AGERE SYSTEMS LLC,        :    UNSEALED ON
                                    :    DECEMBER 6, 2012
            Defendant.     :

---

Richard L. Horwitz, Philip A. Rovner, David E. Moore, POTTER ANDERSON & CORROON LLP, Wilmington, DE

Joel M. Freed, Michael W. Connelly, MCDERMOTT WILL & EMERY LLP, Washington, DC

Edwin H. Wheeler, MCDERMOTT WILL & EMERY LLP, Menlo Park, CA

      Attorneys for Plaintiff.


Jeffrey T. Castellano, SHAW KELLER LLP, Wilmington, DE

David E. Sipiora, Daniel S. Young, Ryan D. Phillips, Kevin M. Bell, TOWNSEND AND TOWNSEND AND CREW LLP, Denver, CO

      Attorneys for Defendant.

---

## <u>MEMORANDUM OPINION</u>

December 3, 2012
Wilmington, Delaware.

**STARK, U.S. District Judge:**

Presently before the Court are Defendant Agere Systems Inc.'s ("Defendant" or "Agere")

Motion for a Trial on Remaining Defenses (D.I. 496), Objections to the Special Master's Report

and Recommendation (D.I. 494), and Renewed Motion for Judgment that the Jury's Damages

Award is Unsupported as a Matter of Law (D.I. 403), as well as Plaintiff CIF Licensing, LLC

d/b/a GE Licensing's ("Plaintiff") Motion for Pre and Postjudgment Interest (D.I. 395), Motion

for Entry of Permanent Injunction or the Conditioning of Continued Willfully Infringing Activity

on a Royalty (D.I. 396), Motion for Enhanced Damages (D.I. 397), Motion for Attorney Fees,

Expenses, Costs, and Interest (D.I. 398), and Motion for an Accounting of Agere's Sales Made

On or After January 1, 2009 (D.I. 399) (collectively referred to as Plaintiff's "five post-trial

motions").

## I.    BACKGROUND

On March 23, 2007, Plaintiff filed suit against Defendant for willful infringement of

Plaintiff's U.S. Patent Nos. 5,048,054 (the "'054 patent"), 5,428,641 (the "'641 patent"),

5,446,758 (the "'758 patent"), and 6,198,776 (the "'776 patent") (collectively, the "patents-in-

suit"). (D.I. 1) At that time, this case was assigned to the Honorable Joseph J. Farnan, Jr., who

subsequently retired from the bench in July 2010.[1]

On January 23, 2009, Judge Farnan heard oral argument on the Defendant's laches and

license defenses; at the hearing the parties also briefly addressed exhaustion. (D.I. 464) On

February 2, 2009, Judge Farnan entered an Oral Order denying Defendant's summary judgment

motions based on laches (D.I. 189) and license (D.I. 194).

---

[1]This case was reassigned to the undersigned judge on August 18, 2010.

1

The Court held a jury trial in February 2009. The jury found that the claims of three of the patents-in-suit – the '054, '758, and '776 patents – were invalid. (D.I. 371 Questions 2, 3) With respect to the remaining patent – the '641 patent – the jury found that Agere directly infringed the asserted claims and that its infringement had been willful. (*Id.* Questions 1, 4)

On March 3, 2009, Plaintiff filed its five post-trial motions. (D.I. 395; D.I. 396; D.I. 397; D.I. 398; D.I. 399) On April 3, 2009, Defendant moved for judgment as a matter of law that the jury's damages award was unsupported. (D.I. 403)

Thereafter, on March 2, 2010, the Court appointed Louis C. Bechtle as Special Master to resolve a dispute relating to Defendant's accusation that Plaintiff had engaged in discovery misconduct by withholding material evidence. On October 6, 2010, the Special Master issued a Report and Recommendation concluding that Plaintiff did not act with bad faith or engage in wrongful conduct. (D.I. 492)

On November 1, 2010, Defendant filed its Motion for a Trial on Remaining Defenses, requesting a bench trial on its defense of inequitable conduct with respect to the '758 patent as well as its defense of laches, and also seeking a jury trial on its defenses of patent exhaustion and license. (D.I. 496) On the same day, Defendant also filed its objections to the Special Master's Report and Recommendations. (D.I. 494)

## II.    DISCUSSION

### A.    Defendant's Motion for Trial on Remaining Defenses

Prior to trial, the parties filed cross-motions for summary judgment on Defendant's affirmative defenses of laches (D.I. 175; D.I. 189), patent license (D.I. 194; D.I. 196), and patent exhaustion (D.I. 172; D.I. 187) (the "Remaining Defenses"). On January 23, 2009, Judge Farnan

2

heard oral argument on Defendant's laches and license defenses (the "Oral Argument"). (D.I. 464) ("Tr.") During the Oral Argument, the parties also briefly addressed Defendant's exhaustion defense.

At the conclusion of the Oral Argument, Judge Farnan ruled from the bench that "the laches assertion is without merit," so Plaintiff would prevail on the cross-motions for summary judgment on laches. (Tr. at 75) Judge Farnan also "tentatively rule[d]" that Defendant's license defense, "like laches, is amenable to disposition on summary judgment," adding that "the license defense, as asserted by Agere, is inapplicable to the infringement claims at issue." (Tr. at 75-76) Judge Farnan stated that he would allow Agere "to renew its motion for license coverage over any infringement found by the jury." (Tr. at 76) With respect to exhaustion, when asked whether Defendant would be permitted to present evidence of exhaustion to the jury, Judge Farnan responded, "my instinct is no, but I will think about that a little bit. So for now it's no. If I change my mind, I will let you know . . . ." (Tr. at 76-77) During the February 2, 2009 trial, Judge Farnan clarified that Defendant was not permitted to present evidence to the jury on any of its Remaining Defenses but indicated that Defendant would be permitted to renew the motions at the conclusion of the case. (D.I. 382 at 1019-20)

In an Oral Order entered during trial on February 2, 2009, the Court held that Defendant's Motion for Summary Judgment of Laches (D.I. 189) and Defendant's Motion for Summary Judgment of Non-Infringement Due to License (D.I. 194) were denied.

Subsequently, in a written post-trial Order dated February 17, 2010, the Court observed that "oral argument on Defendant's licensing and laches defenses was heard on January 23, 2009, and at the conclusion of the hearing, the Court orally ruled that both defenses were without

3

merit." (D.I. 469 at 2) The February 17, 2010 Order also expressly granted Plaintiff's Motion (D.I. 175) for Summary Judgment that Plaintiff's Claims Are Not Barred By Laches. (D.I. 469 ¶ 3) Additionally, the February 17, 2010 Order expressly granted Plaintiff's Motion (D.I. 196) for Summary Judgment that Agere Systems Is Not Licensed To The Patents-In-Suit. (D.I. 469 ¶ 9) Finally, the February 17, 2010 Order expressly granted Plaintiff's Motion (D.I. 172) for Summary Judgment that Plaintiff's Claims Are Not Barred by Exhaustion and expressly denied Defendant's Motion for Summary Judgment of Non-Infringement Due to Patent Exhaustion (D.I. 187), adding that Defendants had "leave to renew in the form of a post-trial motion." (D.I. 469 ¶¶ 2, 7)

On March 2, 2010, Defendant filed a Motion to Amend the Court's February 17, 2010 Order Disposing of Certain Summary Judgment Motions or, in the Alternative, Defendant's Motion for Reconsideration. (D.I. 470) By this motion, Defendant asked the Court either to amend or reconsider the February 17, 2010 Order with respect to the affirmative defenses of laches, licensing, and exhaustion. On July 30, 2010, Judge Farnan denied Defendant's motion, concluding that his February 17, 2010 Order was "consistent with previous orders and with the record in the action as a whole." (D.I. 489 at 3) Judge Farnan added that his February 17, 2010 Order "reflects the record in this case: that Defendant did not prevail on its affirmative defenses of laches, licensing, and exhaustion at summary judgment, and was not allowed to put any evidence on those defenses before the jury." (*Id.* at 4) Judge Farnan further observed that "Defendant has not been precluded from asserting [these defenses] . . . post-trial." (*Id.*)

On November 1, 2010, Defendant filed a Motion for a Trial on the Remaining Defenses, requesting (1) a bench trial on its defense of inequitable conduct with respect to the '758 patent

and its defense of laches, and (2) a jury trial on its defenses of license and patent exhaustion.

(D.I. 496) In Defendant's Reply in Support of Its Motion for a Trial on Remaining Defenses,

Defendant stated that it no longer seeks a trial on its defense of inequitable conduct with respect

to the '758 patent (D.I. 505 at 1 n.1), in reliance on Plaintiff's decision to waive its right to

appeal the judgment that the '758 patent is invalid (D.I. 500 at 8).

### 1.    Laches

Judge Farnan has already ruled on the merits of Defendant's laches defense. Indeed, at

the conclusion of the Oral Argument, Judge Farnan described the laches defense as "without

merit" (Tr. at 75), a characterization he repeated in his written Order of February 17, 2010

granting Plaintiff's summary judgment motion with respect to laches (D.I. 469 at 2 & ¶ 3).

Defendant does not point to any facts that have come to light since Judge Farnan's ruling that

render summary judgment in favor of Plaintiff and against Defendant inappropriate.[2] Therefore,

Defendant's motion for a trial on laches will be denied.

Moreover, the Court agrees with Judge Farnan's conclusion that Defendant's laches

defense is without merit. To establish the defense of laches, a defendant must prove, by a

preponderance of the evidence, that: (1) the plaintiff delayed in filing suit for an unreasonable

and inexcusable length of time after the plaintiff knew or reasonably should have known of its

claim against the defendant; and (2) the defendant suffered material prejudice or injury as a result

of the plaintiff's delay. *See A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1028,

1045 (Fed. Cir. 1992) (en banc). When plaintiff's knowledge is alleged to be based on the

---

[2]Defendant did not allege in its Final Presentation to the Special Master that any of the
Withheld Evidence (discussed later in this Opinion) is material to its laches defense. (D.I. 495)

existence of a product that is a purported predecessor of the infringing product, the two products must be "the same or similar." *See Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1295 (Fed. Cir. 2008). The defense of laches is equitable in nature and its application is within the discretion of the court after considering the totality of the circumstances. *See Aukerman*, 960 F.2d at 1032.

A presumption of unreasonable delay arises if a patentee delayed filing suit for six years after it had "actual or constructive knowledge of the defendant's acts of alleged infringement." *Aukerman*, 960 F.2d at 1037. "If such a presumption is established, the burden shifts to the patentee . . . ." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 679 F. Supp. 2d 512, 521 (D. Del. 2010). The patentee must then produce "'affirmative evidence of a lack of prejudice or a legally cognizable excuse for its delay in filing suit.'" *Id.* (quoting *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1554 (Fed. Cir. 1996)).

Defendant has failed to establish a presumption of laches against Plaintiff. There is not evidence from which a reasonable factfinder could find that Defendant sold products before March 23, 2001 – six years before Plaintiff filed suit – that were "the same or similar" to the products that the jury found to infringe the '641 patent. Nor is there evidence from which a reasonable factfinder could find that the previous holder of the '641 patent, Motorola, knew or should have known that Defendant was selling infringing products before March 23, 2001. Additionally, no reasonable factfinder could conclude that Defendant suffered evidentiary or economic prejudice as a result of Plaintiff's alleged delay in bringing this suit. (*See* D.I. 177 at 5; D.I. 190 at 9-10, 13-14)

Thus, again, Defendant's request for a trial on its laches defense will be denied.

6

## 2.    License

Like Defendant's laches defense, Judge Farnan has already ruled that the license defense

is "without merit." (D.I. 469 at 2). Defendant does not point to any new facts since Judge

Farnan's ruling that render summary judgment in favor of Plaintiff and against Defendant

inappropriate.[3]  Therefore, Defendant's motion for a trial on its license defense will be denied.

Moreover, the Court agrees with Judge Farnan's conclusion that Defendant's license

defense is without merit. Defendant's license defense depends on a provision in a licensing

agreement between the previous holder of the '641 patent, Motorola, and AltoCom (the

"Motorola-AltoCom Agreement"). (D.I. 195 at 5-9, 12-17) Section 4.2 of the Motorola-

AltoCom Agreement provides:

> 4.2    MOTOROLA Grants to ALTOCOM
> MOTOROLA (including, without limitation, its AFFILIATES)
> hereby grants to ALTOCOM (including, without limitation its
> AFFILIATES), for the lives of each of MOTOROLA'S MODEM
> PATENTS a non-exclusive, non-transferable license (without the
> right to sublicense) throughout the world under MOTOROLA'S
> MODEM PATENTS, including, without limitation, any future
> MODEM PATENTS to make, have made, use, lease, sell, offer to
> sell, import, license or otherwise dispose of, exploit and/or
> distribute LICENSED MODEM PRODUCTS under the trade
> identity of ALTOCOM (including, without limitation, its
> AFFILIATES). To the extent the foregoing license applies to
> ALTOCOM sales or licenses to customers or licensees of
> standalone ALTOCOM software MODEMS (as opposed to
> MODEM CHIP SETS), such license shall extend only to customers
> or licensees of standalone ALTOCOM software MODEMS
> existing as of the EFFECTIVE DATE of this Agreement and shall
> not extend to any new customers or licensees of standalone
> ALTOCOM software MODEMS.

---

[3]Defendant's contention that the Withheld Evidence was material to its license defense is
discussed *infra*.

(D.I. 195 Ex. F at MOT 016389) At the summary judgment stage, both parties agreed that this provision of the Motorola-AltoCom Agreement was unambiguous. *(See, e.g.*, D.I. 195 at 11; D.I. 268 at 2)

The Motorola-AltoCom Agreement contains a Delaware choice-of-law provision. (D.I. 195 Ex. F at MOT 016400) Under Delaware law, "clear and unambiguous language" in a contract "should be given its ordinary and usual meaning." *See Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992). Mere disagreement between the parties as to a contract's meaning does not render a contract ambiguous. *Id.* at 1196.

The '641 patent is explicitly identified in the Motorola-AltoCom Agreement as one of "Motorola's Modem Patents." (D.I. 195 Ex. F at MOT 016387, 403) "Licensed Modem Products" include any modem product that, but for the license provision, would infringe Motorola's Modem Patents, including the '641 patent. *(Id.* at MOT 016388) The Motorola-AltoCom Agreement "grants to AltoCom a . . . license . . . [to] sell, offer to sell, . . . [or] license . . . LICENSED MODEM PRODUCTS under the trade identity of ALTOCOM . . . ." AltoCom was not, however, granted the authority to license its customers to sell Licensed Modem Products other than under the trade identity of AltoCom. Defendant did not dispute Plaintiff's contention that Defendant's accused soft modem products were not branded with the trade identity of AltoCom. *(Compare* D.I. 198 at 5-6 *with* D.I. 229 at 2-3)

The Court recognizes that Judge Farnan stated at the Oral Argument that Agere would be allowed post-trial to "renew its motion for license coverage," in the event the jury found infringement. (Tr. at 76) Subsequently, however, Judge Farnan issued his post-trial written Order of February 17, 2010 describing the license defense as "without merit" and granting

8

Plaintiff's motion for summary judgment that Agere was not licensed to the patents-in-suit. (D.I. 469 at 2 & ¶ 9) Later still, Judge Farnan denied Agere's motion to amend or reconsider the February 17, 2010 Order, finding it "consistent with previous orders and with the record in the action as a whole." (D.I. 489 at 3) In any event, for at least the reason stated above, the Court agrees with Judge Farnan that the license defense lacks merit.[4]

Thus, again, Defendant's request for a trial on its license defense will be denied.

### 3. Exhaustion

Unlike with the laches and license defenses, Judge Farnan did not rule on the merits of Agere's exhaustion defense. At the Oral Argument, exhaustion received relatively little attention compared to laches and license.[5] Neither at the conclusion of the Oral Argument nor in any subsequent oral or written order did Judge Farnan describe the exhaustion defense as having "no merit." Furthermore, in the February 17, 2010 written Order, Judge Farnan expressly granted Agere "leave to renew in the form of a post-trial motion" its Motion for Summary Judgment of Non-Infringement Due to Patent Exhaustion. (D.I. 469 ¶ 7)

"The patent exhaustion doctrine provides that a patented item's initial authorized sale terminates all patent rights to that item." *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 618 (2008). Here, a trial is necessary to resolve Agere's exhaustion defense. While it is undisputed that AltoCom had a license to the '641 patent under the Motorola-AltoCom

---

[4]The Court finds it unnecessary to evaluate Judge Farnan's reasoning at the Oral Argument that "as a matter of law, the license doesn't apply in the context of the facts asserted by Motorola-GE here" (Tr. at 26), nor the Special Master's finding that the license defense fails because Defendant was not an existing customer of AltoCom as of January 30, 2001 (D.I. 492 at 24).

[5]*See* D.I. 345, Tr. at 3; D.I. 464 at 33-36, 43-54; D.I. 469 at 2.

Agreement (D.I. 188 ¶ 8; D.I. 239 ¶ 8; Tr. at 34), the parties dispute whether AltoCom was authorized to sell to Defendant the particular software at issue. There is also a dispute as to whether the restriction in the Motorola-AltoCom Agreement related to existing versus new customers applies only to the extension of the license or also to AltoCom's authority to sell licensed modem products. Moreover, the parties have presented conflicting evidence regarding whether Defendant purchased the software from AltoCom and whether the sale was consistent with the terms of the Motorola-AltoCom Agreement. (D.I. 188 ¶¶ 12-13; D.I. 239 ¶¶ 12-13) There is also a lack of clarity as to whether the software AltoCom sold to Defendant was resold as a component of the soft modems accused of infringement. (D.I. 188 ¶¶ 16-17; D.I. 239 ¶¶ 16-17) There is a genuine dispute of fact as well as to whether the software was modified to the extent that (1) practicing the patents was not the only reasonable or intended use of the soft modems, (2) the soft modems do not embody the essential features of the patents, and (3) the processes or parts required to finish the final soft modem products were unique, creative, or inventive, rather than common or standard. (D.I. 188 ¶¶ 16-18; D.I. 239 ¶¶ 16-18; Tr. at 47).

Accordingly, Defendant's motion for a trial on its exhaustion defense will be granted.

### 4.     Inequitable Conduct

The jury trial resulted in a verdict that the '758 patent was invalid. Plaintiff's post-trial motion for judgment as a matter of law that the '758 patent was not invalid (D.I. 366) was denied (D.I. 491 at 2). Plaintiff has waived its right to appeal the judgment of invalidity of the '758 patent. (D.I. 500 at 8) Consequently, Defendant no longer seeks a trial on its defense of inequitable conduct. (D.I. 505 at 1 n.1) Thus, there is no reason for the Court to grant a trial on inequitable conduct with respect to the '758 patent.

**B.    Defendant's Objections to the Special Master's Report and Recommendation**

On March 2, 2010, the Court appointed retired United States District Court Judge Louis

C. Bechtle as the Special Master to resolve a discovery-related dispute. Specifically, Defendant

accused Plaintiff of engaging in discovery misconduct by withholding material evidence under

wrongful assertions of privilege. (D.I. 472; *see also* D.I. 495 ("Defendant's Final Presentation"))

Defendant contends that Plaintiff withheld evidence (the "Withheld Evidence") material to

Defendant's license and exhaustion defenses as well as its defense against willful infringement.

During discovery, pursuant to an assertion of common interest privilege arising from

Plaintiff's relationship with Motorola,[6] Plaintiff withheld portions of the Withheld Evidence by

clawing back documents, redacting or failing to produce documents, and instructing deponents

not to answer certain questions. (D.I. 494 at 4-5) Plaintiff withheld the remainder of the

Withheld Evidence – which it had shared with its financial consultants – under assertions of

attorney-client privilege and the work product doctrine. (*Id.* at 5)

Defendant filed a Motion to Compel Discovery, requesting production of the Withheld

Evidence. (D.I. 154) During the January 20, 2009 pretrial conference, Judge Farnan found that

Plaintiff and Motorola did not "have a common legal interest sufficient to trigger the common

interest exception to waiver of the attorney-client privilege. (D.I. 345 at 5-6) Thus, Plaintiff had

to produce relevant information. (*Id.* at 6)

Following trial, on March 2, 2010, Judge Farnan referred to the Special Master "the

current dispute regarding Defendant Agere System Inc.'s assertion that Plaintiff CIF Licensing,

LLC, d/b/a GE Licensing engaged in discovery misconduct and withheld material documents

---

[6]Plaintiff had purchased the rights to the patents-in-suit from Motorola.

relevant to Agere System Inc.'s defenses under a wrongful assertion of privilege." (D.I. 472 ¶ 2) In his October 6, 2010 Report and Recommendation, the Special Master found "that it was neither in bad faith nor wrongful conduct [for Plaintiff] to invoke the common interest doctrine." (D.I. 492 at 11) The Special Master further concluded that the Withheld Evidence was not material. (*Id.* at 16, 18, 20, 28)

On November 1, 2010, Defendant filed Objections to the Special Master's Report and Recommendation. (D.I. 494) On November 18, 2010, Plaintiff filed its response to the Objections. (D.I. 501) The Court now addresses the Objections.

### 1. Standard of Review

As stated in the Order Appointing Special Master, the Special Master's rulings are subject to the Court's review pursuant to Federal Rule of Civil Procedure 53(f)(3)-(5). (D.I. 472 ¶ 8) Thus, in connection with the Report and Recommendation, the Court "may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." Fed. R. Civ. P. 53(f)(1). "The court must decide de novo all objections to conclusions of law made or recommended by a master." Fed. R. Civ. P. 53(f)(4). The Court must also decide de novo all objections to the master's findings of fact unless the parties stipulate otherwise. Fed. R. Civ. P. 53(f)(3). "The Special Master's rulings on procedural matters are reviewed under the abuse of discretion standard." *Honeywell Int'l, Inc. v. Nikon Corp.*, 2009 WL 577274, at *1 (D. Del. Mar. 4, 2009) (citing Fed. R. Civ. P. 53(f)(5)).

### 2. Discussion

The Court addresses the issues of discovery misconduct and materiality of the Withheld

Evidence separately below.[7]

## a. Discovery Misconduct

Pursuant to Federal Rule of Civil Procedure 60(b)(3), a party may be granted relief from

an order or proceeding by reason of the opposing party's acts of fraud, misrepresentation, or

misconduct. "Importantly, the movant in a Rule 60(b) motion carries a heavy burden, as Rule

60(b) motions are viewed as extraordinary relief which should be granted only where

extraordinary justifying circumstances are present." *Kiburz v. Sec., U.S. Dept. of the Navy*, 446

F. App'x 434, 436 (3d Cir. Oct. 3, 2011) (internal quotation marks omitted). Hence, here, the

burden is on Defendant to produce clear and convincing evidence of Plaintiff's discovery

misconduct. *See Floorgraphics Inc. v. News Am. Mktg. In-Store Servs., Inc.*, 434 F. App'x 109,

111 (3d Cir. Apr. 20, 2011); *LG Elecs. U.S.A. v. Whirlpool Corp.*, 798 F. Supp. 2d 541, 569 (D.

Del. 2011). Defendant must further demonstrate that the misconduct prevented Defendant from

"fully and fairly presenting its case." *LG Elecs.*, 798 F. Supp. 2d at 569; *see also Floorgraphics*,

434 F. App'x at 111-12.

A party's refusal to "produce evidence requested in discovery *can* constitute Rule

60(b)(3) misconduct." *Floorgraphics*, 434 F. App'x at 112. "Whether there has been discovery

misconduct warranting relief under Rule 60(b)(3) requires not only consideration of the request

propounded, but also the response by one's adversary, and whether the moving party resorted to a

motion to compel or a request for sanctions . . . ." *Id.* That a party withheld evidence as

---

[7]For this reason, the Court does not find it necessary to address Defendant's objection that the Special Master made "the materiality analysis dependent on the analysis of discovery misconduct." (D.I. 494 at 7) To the extent other issues raised in Defendant's Objections are moot or unnecessary to address due to the Court's overall disposition of the matters before it, the Court will not address such matters.

13

privileged, but a court later determined the evidence was not privileged, does not by itself

establish that a party's conduct is worthy of sanction. *See In re Teleglobe Commc'ns Corp.*, 493

F.3d 345, 386 (3d Cir. 2007) (stating that district court may impose sanctions only if its finds bad

faith, willfulness, or fault). "To find bad faith, a court must find 'some indication of an

intentional advancement of a baseless contention that is made for an ulterior purpose, e.g.,

harassment or delay.'" *In re Intel Corp. Microprocessor Antitrust Litig.*, 562 F. Supp. 2d 606,

617 (D. Del. 2008) (quoting *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986)).

"The common interest doctrine is an exception to the general rule that the attorney-client

privilege will be waived following disclosure of privileged materials to a third party." *Corning*

*Inc. v. SRU Biosys., LLC*, 223 F.R.D. 189, 190 (D. Del. 2004). The Third Circuit has observed

that "[t]he Delaware courts seem not to have taken a position on whether the common legal

interest must be identical . . . . [I]t is sufficient to recognize that members of the community of

interest must share at least a substantially similar legal interest." *In re Teleglobe Commc'ns*

*Corp.*, 493 F.3d at 365; *see also Xerox Corp. v. Google Inc.*, 801 F. Supp. 2d 293, 303 (D. Del.

2011) (applying common interest doctrine to entities with "sufficiently imbued" legal interests).

Some courts in this District have stated that "for a communication to be protected [under

common interest privilege], the interests must be identical, not similar, and be legal, not solely

commercial." *Corning*, 223 F.R.D. at 190 (internal quotation marks omitted).

The first category of Withheld Evidence consists of communications between current and

former employees of Plaintiff and Motorola as well as these witnesses' responses to related

deposition questions. The subject matter concerned these employees' awareness of the

Motorola-Altocom Agreement, their speculation as to whether it licensed Defendant or one of

14

Defendant's predecessors to the patents-in-suit, and a possible investigation into whether Defendant had purchased software or licensing rights from AltoCom. (Defendant's Final Presentation at 11-14)

The second category of Withheld Evidence consists of communications between Plaintiff and its financial consultants. These communications discuss the value of Plaintiff's analog patent portfolio – which included the patents-in-suit – and a belief that the portfolio may have reduced value due to the possibility that Defendant was shielded from liability for some accused products due to either license or exhaustion. (*Id.* at 15-20) Plaintiff claimed that these communications were subject to attorney-client privilege.

Defendant argues that the Patent Purchase Agreement (D.I. 502 Ex. 1) between Motorola and Plaintiff, which includes Motorola's sale of the '641 patent to Plaintiff, made it clear that Motorola did not retain any legal interest in the patents-in-suit. (Defendant's Final Presentation at 24) Similarly, Defendant argues that the information Plaintiff exchanged with its financial consultants was solely for accounting purposes and not for legal advice. (*Id.* at 31) Therefore, Defendant argues, Plaintiff's assertion of attorney-client privilege was baseless. (*Id.* at 31-32)

Defendant further argues that Plaintiff asserted its claims of privilege in bad faith and only for the purpose of withholding material evidence. In support of this contention, Defendant alleges that Plaintiff withheld evidence that supported Defendant's Remaining Defenses while producing similar evidence that was innocuous. (Defendant's Final Presentation at 32-33) Defendant also alleges that Plaintiff violated the Court's January 20, 2009 order to produce the Withheld Evidence by failing to produce all of the information it shared with its financial consultants. (*Id.* at 34) Defendant claims that Plaintiff's failure prevented Defendant from

15

presenting material evidence at the Oral Argument on Defendant's Remaining Defenses. (*Id.*)

In response, Plaintiff asserts that Motorola retained a legal interest in the patents-in-suit because Motorola retained a license to the patents, was entitled to future licensing royalties, provided Plaintiff with technical support related to licensing and enforcement of the patents-in-suit, and maintained a right to be informed about potential enforcement litigation. (D.I. 502 at 3, 12) Plaintiff also asserts that its communications with its financial consultants were related to the legal risks of enforcement of the patents-in-suit and, therefore, were legal in nature. (*Id.* at 4) Plaintiff also points out that Defendant had possession of unredacted versions of the clawed-back documents for several months, yet Defendant waited four months from the time that it became aware of Plaintiff's claim of common interest privilege to file its Motion to Compel. (*Id.* at 6-7) Plaintiff claims that it believed it was not required to produce the documents that it continued to withhold because they were prepared in anticipation of litigation. (*Id.* at 8; *see also* D.I. 345 at 6)

Like the Special Master, the Court is persuaded that Plaintiff, "at the time it exercised its privilege to the documents and testimony in question, had grounds that could have, and did provide [Plaintiff] with a good faith reasonable belief that it had the right and the duty to invoke the common interest doctrine . . . ." (D.I. 492 at 12-13; *see also id.* at 11 (stating Patent Purchase Agreement did "not merely transfer ownership of the patents but establishe[d] a shared legal goal of maintaining and asserting the purchased patents and set[] forth specific mutual obligations between [Plaintiff] and Motorola for accomplishing that goal"))

The Special Master did not specifically address whether Plaintiff's communications with its financial consultants were subject to the January 20, 2009 Order or whether Plaintiff's assertion of attorney-client privilege with respect to these communications was in good faith.

16

The Special Master did, however, conclude that the Withheld Evidence related to the financial consultants was not material and Defendant had a full and fair opportunity to present its case. (D.I. 492 at 28-34) Because the Court has reached the same conclusions, it is not necessary for the Court to rule on the parties' conflicting views of Plaintiff's assertion of privilege with respect to its communications with its financial consultants.[8]

Because Defendant has failed to show by clear and convincing evidence that Plaintiff engaged in discovery misconduct, the Court will overrule Defendant's Objections to the Special Master's Report and Recommendation.

### b.    Materiality of the Withheld Evidence

Nevertheless, the Court assesses whether the Withheld Evidence was material to any aspect of Defendant's case. In this context, materiality depends on whether the Withheld Evidence could have altered the Court's determination to grant summary judgment for Plaintiff and against Defendant on the Remaining Defenses and/or the jury's finding of willful infringement of the '641 patent. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (stating that facts that can affect outcome are material). The Court considers each of the Remaining Defenses and willful infringement in turn.

### i)    Laches

Defendant does not allege that the Withheld Evidence is material to its laches defense, and Defendant does not request a trial on laches on this basis. (*See* Defendant's Final

---

[8]Nonetheless, it appears Defendant has fallen short of presenting clear and convincing evidence that Plaintiff's assertion of privilege was frivolous or in bad faith, particularly given that the information shared with the consultants was for accounting purposes and exchanged with an expectation of confidentiality. (Defendant's Final Presentation at 30; D.I. 502 at 15)

Presentation at 4 n.2) Therefore, the Court need not consider whether the Withheld Evidence is material to Defendant's laches defense.

### ii) License

The Withheld Evidence is not relevant to the interpretation of the Motorola-AltoCom Agreement, which is unambiguous and has been interpreted as a matter of law. Parol evidence is not admissible for the purpose of interpreting an unambiguous contract. *See Cohen v. Formula Plus, Inc.*, 750 F. Supp. 2d 495, 502 (D. Del. 2010) (applying Delaware law).[9]

### iii) Exhaustion

The Court need not reach the question of whether the Withheld Evidence is material to Defendant's exhaustion defense since the exhaustion defense will be tried. Relevant, admissible evidence will be admitted at trial.

### iv) Willful Infringement

"[T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). On this objective prong, "[t]he state of mind of the accused infringer is not relevant." *Id.* To prevail, "the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id.*

---

[9]Even to the extent the Withheld Evidence shows that individuals associated with Plaintiff or Motorola may have believed that the Motorola-AltoCom Agreement provided Defendant a license, the Withheld Evidence would not be material, as that agreement unambiguously fails to grant Defendant a license to sell modems under a trade identity other than AltoCom.

The Withheld Evidence concerns Plaintiff's beliefs and actions as well as those of third parties. It does not relate either to the objective likelihood of infringement or Defendant's subjective state of mind. Thus, the Withheld Evidence is not material to willful infringement.

Accordingly, again, Defendant's Objections will be overruled. The Court will adopt the Special Master's Report and Recommendation. The parties will share the Special Master's fees equally.

## C. Defendant's Renewed Motion for Judgment that the Jury's Damages Award is Unsupported as a Matter of Law

At the conclusion of the jury trial, the jury found Defendant liable for $7.6 million in damages for willful infringement of the '641 patent. (D.I. 371 Question 5) The jury designated a reasonable royalty for hard modems as 13.5 cents per modem and for soft modems as 4.5 cents per modem. (*Id.*) The parties do not dispute that these are reasonable royalties. However, the jury did not explicitly establish in its verdict the royalty base that it used to calculate damages.

Defendant has filed a Motion for Judgment as a Matter of Law that the jury's damages award is unsupported because the jury used a royalty base that includes products that do not directly infringe the '641 patent. (D.I. 403) Defendant speculates that the jury used one of the royalty bases proposed by Plaintiff's damages expert, Julie Davis ("Davis Royalty Base No. 1"). (D.I. 404 at 10) Davis Royalty Base No. 1, combined with the jury's royalty rates, yields the damages figure of $7.6 million, when rounded to the nearest one hundred thousand dollars. (*Id.*)

The Court acknowledges that there is uncertainty as to whether the jury adopted Davis Royalty Base No. 1 and, if so, whether this was a proper royalty base. (D.I. 433 at 11; D.I. 404 at 14-15) However, because there is going to be a trial on Defendant's exhaustion defense, which

could affect the judgment of liability and, therefore, damages, the Court will not at this time resolve Defendant's challenges to the royalty base used by the jury. Instead, the Court will deny Defendant's motion without prejudice to renew it following trial of the exhaustion defense.

### D. Plaintiff's Five Post-Trial Motions

Plaintiff has filed five post-trial motions: Motion for Pre and Postjudgment Interest (D.I. 395), Motion for Entry of Permanent Injunction or the Conditioning of Continued Willfully Infringing Activity on a Royalty (D.I. 396), Motion for Enhanced Damages (D.I. 397), Motion for Attorney Fees, Expenses, Costs, and Interest (D.I. 398), and Motion for an Accounting of Agere's Sales Made On or After January 1, 2009 (D.I. 399). Because there is going to be a trial on Defendant's exhaustion defense, which could affect the judgment of liability, the Court will not at this time address the merits of Plaintiff's five post-trial motions. Instead, the Court will deny Plaintiff's motions without prejudice to renew them following trial of the exhaustion defense.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Trial on Remaining Defenses (D.I. 403) will be granted in part and denied in part. Defendant's Objections to the Special Master's Report and Recommendation (D.I. 494) will be overruled and the Special Mater's Report and Recommendation will be adopted. Defendant's Renewed Motion for Judgment that the Jury's Damages Award is Unsupported as a Matter of Law (D.I. 403) will be denied without prejudice. Plaintiff's five post-trial motions (D.I. 395; D.I. 396; D.I. 397; D.I. 398; D.I. 399) will be denied without prejudice. An appropriate Order follows.